IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARMOUR CAPITAL MANAGEMENT LP, | ) | Civil Case No. 3:17cv00790 (JAM) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SS&C TECHNOLOGIES, INC., | ) | |
| Defendant. | ) | JUNE 22, 2017 |

**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>**

Defendant SS&C Technologies, Inc. ("SS&C"), by and through undersigned counsel, respectfully submits this Memorandum of Law in support of its Motion Dismiss the Complaint in part pursuant to Fed. R. Civ. P. 12(b)(6).

This case involves a dispute between two businesses regarding their respective duties and performance under a fully integrated, written agreement.  SS&C moves to dismiss all of Plaintiff's claims other than the breach of contract claim in Count I.  As demonstrated below, Plaintiff's attempts to embellish its garden-variety contract case with counts under the Connecticut Unfair Trade Practices Act ("CUTPA"), the common law tort of "conversion," and various equitable theories all fail on the face of the Complaint.  Accordingly, SS&C seeks dismissal of Count II, claiming a violation under CUTPA; Count III, claiming breach of express warranty; Count IV, claiming unjust enrichment; Count V, claiming conversion; and Count VI, seeking rescission.

**I.    PLAINTIFF'S ALLEGATIONS**

Headquartered in Windsor, Connecticut, SS&C provides financial services software and software-enabled services.  Compl., ¶¶ 3, 7.  Plaintiff Armour Capital

Management LP ("ACM") is a Florida-based, registered investment advisor that focuses on mortgage-related securities.  *Id.*, ¶ 3.

### A.  The Parties' Pre-Contractual Communications

In 2014, Plaintiff "sought to upgrade its accounting portfolio ledger to a full service investment accounting platform…."  *Id.*, ¶ 8.  In connection with that effort, Plaintiff communicated with SS&C about SS&C's software product called CAMRA.  *See id.*, ¶ 8.[1]  The parties discussed the uses and capabilities of CAMRA, ACM's requirements, SS&C's personnel, and SS&C's ability "to effectively and reliably install, implement, maintain, and support that software."  *Id.,* ¶ 10.  According to Plaintiff, SS&C represented in unspecified, pre-contractual communications between the parties that CAMRA was a "turnkey solution" that SS&C would somehow implement on its own within ACM's information technology system.  *See id.,* p. 1 (Introduction) and ¶¶ 8-9.  In the fall of 2014, SS&C provided ACM with a product demonstration of CAMRA.  *Id.*, ¶ 10.  After seeing CAMRA in use, Plaintiff chose SS&C's product for its investment accounting platform.  And "*a week before the contract was signed*," SS&C allegedly represented in an otherwise unspecified writing not reduced to contract "that the project would start in January 2015 and end by May 2015."  *Id.* (emphasis added).

### B.  ACM Contracts With SS&C For The CAMRA Software And Certain Services

On December 19, 2014, the parties executed a written agreement entitled "Master Agreement," which expressly includes all attachments and work requests

---

[1]  For purposes of this Motion to Dismiss only, the Court may assume as true the following allegations of Plaintiff's Complaint.  *E.g., A & R Body Specialty v. Progressive Cas. Ins. Co.,* No. 3:07-CV-0929 WWE, 2014 WL 129394, at *1 (D. Conn. Jan. 13, 2014).

thereto (the "Master Agreement").  *Id.*, ¶ 12.[2]  Under the Master Agreement, SS&C agreed to provide a limited license of CAMRA to ACM, and provide software maintenance and support consistent with the terms of the contract.  *Id.,* ¶¶ 12-16 and Ex. A ¶¶ 2 – 5.  ACM committed in the agreement to pay an upfront licensing fee of $500,000.  Ex. A, Attachment A.1. ¶ C.  The parties further agreed that ACM would be responsible to SS&C for an initial $100,000 Maintenance Program Fee, which would automatically renew annually, *id.*, A.1.II.A., and a monthly hosting fee of $10,000. Exh. A, Attachment B.1.

The Master Agreement also includes certain Work Requests.  Work Request One, included at the time of contract signing, details the assistance SS&C would provide on ***Plaintiff's* implementation** of the CAMRA software, and authorized **1,850 hours** of SS&C assistance at a rate of $225 per hour.  *Id.*, ¶ 20; Ex. A, p. 15.  Work Request Two, effective March 31, 2016, added certain additional implementation assistance SS&C would provide and capped the fees for implementation services at $728,725.  *Id.*, ¶ 21; Exh. B.

---

[2]  ACM has attached the Master Agreement and two subsequent work requests as Exhibits A–C to its Complaint.  For purposes of SS&C's Motion to Dismiss, the allegations of the Complaint include those documents attached as exhibits to the Complaint.  *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir. 2002).

3

Although the Complaint states that SS&C was solely responsible for implementing CAMRA for ACM, *see* Compl. ¶¶ 8, 9, 31, 26, the Master Agreement clearly provides otherwise.  In Work Request One, which governs "Initial Implementation Services," the parties agreed as follows:

> Description of Services to be Performed:  SS&C will provide on-site and remote implementation services including business workflow analysis, environmental setup, data conversion analysis, interface development and testing **in support of *Client's implementation* of the Software**.

Compl., Ex. A (Work Request One) (emphasis added, original underline).

Similarly, Work Request Two states that "implementation will be considered complete when ***Client personnel*** have successfully processed one month of transactions using CAMRA."  (Emphasis added).  In accordance with the understanding that ACM bore ultimate responsibility for implementation, the parties further agreed that "Client, including any requisite vendors, will have knowledgeable staff to participate in the project as required."  *Id.* (Work Request Two under heading "Completion of Implementation").  The Master Agreement does not state any deadline by which Plaintiff would complete implementation of the software.  *See* Compl., Ex. A generally.

### C.  The Parties' Post-Execution Performance and Conduct

After entering into the Master Agreement, the parties began implementation of CAMRA on ACM's systems.  Beginning in January 2015, ACM and SS&C held weekly status meetings.  *Id.* ¶24.  Throughout that time, a team of SS&C employees continuously provided assistance to ACM in support of the client's efforts to implement CAMRA within the ACM information technology system.  *Id.*, ¶¶ 24, 25.  The parties ran into technical difficulties along the way, which the Complaint attributes entirely to SS&C.

4

*See id.,* ¶¶ 24-29.  The Complaint does not, however, attribute the delays in implementation to any lack of effort or attention on the part of SS&C.  To the contrary, Plaintiff acknowledges that SS&C continuously devoted numerous employees to the project, *see id.,* ¶¶ 25-31, and participated in "countless meetings and hundreds of telephone calls," *id.* ¶ 32.  The Complaint also acknowledges that executives at the highest levels of SS&C management focused on ACM's concerns, and expressed belief that ACM could implement CAMRA.  *See id.* ¶¶ 29-31.[3]

Plaintiff alleges that it paid SS&C approximately $1.78 million under the Master Agreement.  Those payments include the $500,000 license fee, $300,000 plus tax for the initial Maintenance Program fee and two subsequent renewals, $260,000 in hosting fees, and $695,370  the in connection with written Work Requests.  *Id.* ¶¶ 16, 19, 23.

Despite SS&C's express commitment to supporting ACM through ACM's implementation without charging further fees for implementation, *see id.* ¶¶ 21, 29 - 30, ACM terminated the Master Agreement on May 1, 2017, *id.* p. 6, fn. 1.  ACM filed the present action on May 15, 2017.

## II.   ARGUMENT

### A.  Legal Standard Under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss for failure to state a claim, a complaint must contain factual allegations that, if accepted as true, state a plausible claim for relief." *Weldon v. MTAG Services, LLC*, No. 3:16-cv-783(JCH), 2017 WL 776648, *3 (D. Conn.

---

[3]  The Complaint identities by name no fewer than seven SS&C employees who worked directly on the installation of CAMRA over the course of more than two years, including, among others, the SS&C Project Manager Adriana Johnson, "who led most of the meetings[.]"  *See* Compl., ¶¶ 24-25.  In addition, two SS&C Vice Presidents, including Senior Vice President Timothy Reilly, dealt directly with ACM in an effort to address ACM's concerns.  *See id.* ¶¶ 26, 28-29.

5

February 28, 2017).  In ruling on a Rule 12(b)(6) motion, a court may consider only the

allegations made in the complaint, documents attached to the complaint, documents

incorporated into the complaint by reference, and any facts of which judicial notice may

be taken.  *See Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662

(2d Cir.1996).[4]

### B.  ACM's CUTPA Count Fails To State A Claim Upon Which Relief May Be Granted

Plaintiff's CUTPA claim in Count II should be dismissed because ACM fails to

offer factual allegations that, if accepted as true, would establish that SS&C acted in the

immoral, unethical, oppressive or unscrupulous manner necessary to elevate a contract

claim to a violation of the statute.

CUTPA prohibits the use of "unfair or deceptive acts or practices in the conduct

of any trade or commerce."  Conn. Gen. Stat. § 42-110b(a).  In determining whether

conduct violates CUTPA, "the following criteria are to be employed: (1)[W]hether the

practice, without necessarily having been previously considered unlawful, offends public

policy as it has been established by statutes, the common law, or otherwise—whether,

in other words, it is within at least the penumbra of some common law, statutory, or

other established concept of unfairness; (2) whether it is immoral, unethical, oppressive,

or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or

other businessmen]."  *Web Press Servs. Corp. v. New London Motors, Inc.,* 203 Conn.

345 (Conn.1987) (internal quotations omitted).  "To violate CUTPA, an unfair business

practice can either strongly satisfy one of these criteria or satisfy all of the criteria to a

---

[4]  Paragraph 6.7.9 of the Master Agreement specifies that all aspects of the Contract shall be construed under the laws of Connecticut. This Memorandum of Law will, therefore, apply Connecticut law.

lesser degree." *Aztec Energy Partners, Inc. v. Sensor Switch, Inc.,* 531 F.Supp.2d 226, 232 (D. Conn. 2007).

As demonstrated below, Plaintiff makes no effort to plead fraudulent inducement on the part of SS&C, and does not allege that SS&C made any commitments or promises without intent to perform.  Indeed, the Complaint contains no particularized allegations supporting a claim of immoral, unethical, oppressive or unscrupulous conduct.  Quite to the contrary, the facts alleged reflect continuous effort and commitment of resources by SS&C to assist ACM with implementation.  At most, Plaintiff states a claim for breach of contract despite SS&C's diligent efforts.  The Complaint fails as a matter of law, however, to state a claim under CUTPA.

### 1.  ACM Does Not Plead Fraudulent Conduct

ACM alleges in its CUTPA count that SS&C made "false and misleading statements" to ACM and caused delay in implementation.  Compl., ¶ 40.  Plaintiff does not make any attempt, however, to plead any type of fraud with particularity as required under Fed. R. Civ. P. 9(b).

"Claims that sound in fraud are subject to the heightened pleading standards of Fed.R.Civ.P. 9(b), which requires that averments of fraud be stated with particularity." *Aldi v. Wells Fargo Bank, NA*, No. 3:14-CV-00089-WWE, 2015 WL 3650297, at *4 (D. Conn. Feb. 17, 2015)(citing *Cohen v. S.A.C. Trading Corp,* 711 F.3d 353, 359 (2d Cir.2013)).  The particularity requirements of Rule 9(b) apply with equal force to CUTPA claims asserted in federal court that allege fraud or mistake.  *Aviamax,* 2010 WL 1882316, at *9 (citing *Tatum v. Oberg,* 650 F.Supp.2d 185, 195 (D. Conn. 2009); *Lentini v. Fid. Nat'l Title Ins. Co. of N.Y.,* 479 F.Supp.2d 292, 298 n. 2 (D. Conn. 2007) ("[T]o

7

the extent that the [CUTPA claims] rely on affirmative statements or omissions involving fraud or mistake, Rule 9(b) applies.")).

In order to comply with Rule 9(b), a claim must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290 (2d Cir. 2006)(internal quotation marks omitted).  "Although malice, intent, knowledge and other condition of mind of a person may be averred generally, the plaintiff must allege facts that give rise to a strong inference of fraudulent intent."  *Aviamax,* 2010 WL 1882316, at *5 (internal quotation marks omitted).

Here, ACM's allegations in support of its CUTPA claim fall far short of the pleading standard under Rule 9(b).  Count II alleges that SS&C "engaged in unfair and deceptive trade practices" by "making false and misleading statements" in "marketing the CAMRA software" and "after the inception of the Master Agreement," and by "continuously misleading ACM into believing that SS&C could cure its deficiencies with implementation."  Compl., ¶ 40.  But nowhere in the Complaint does ACM specify with particularity the false or misleading statements made by SS&C, who at SS&C made the statements, where and when they were made, and why those statements were fraudulent, rather than merely erroneous.  As a result, ACM has failed to meet the pleading requirements under Rule 9(b) necessary to support a claim rooted in fraud. *See Aviamax,* 2010 WL 1882316, at *9 (dismissing plaintiff's claim for failure to meet the Rule 9(b) standard where it did not "specifically identify which [of the defendant's]

8

employees made the claimed representations [to the plaintiff] or when and where these representations were made.").

### 2. ACM's CUTPA Claim is Merely One for Breach of Contract and Should Be Dismissed

Although a CUTPA claim may survive under certain circumstances in the absence of allegations of fraud, it is well established that a "simple breach of contract" does not offend traditional notions of fairness and does not constitute a violation of CUTPA.  *See Omni Corp. v. Sonitrol Corp.,* 476 F. Supp. 2d 125, 129 (D. Conn. 2007) (dismissing a CUTPA claim where the plaintiff's allegations, if true, amounted to merely a breach of contract, and not "immoral, unethical, or unscrupulous behavior.").  *See also Boulevard Assocs. v. Sovereign Hotels, Inc.,* 72 F.3d 1029, 1039 (2d Cir. 1995) ("simple contract breach is not sufficient to establish a violation of CUTPA.")(citing *Chaspek Mfg. Corp. v. Tandet,* No. CV9309-2714, 1995 WL 447948, *12 (Conn. Super. Ct. June 16, 1995) (quoting *Aussenhandel v. Grant AirMass Corp.,* 2 Conn.L.Rptr. 590, 1990 WL 283750 (Conn. Super. Ct.1990)); *Emlee Equip. Leasing Corp. v. Waterbury Transmission, Inc.,* 41 Conn. Supp. 575, 580 (1991) ("**A simple breach of contract, <u>even if intentional, does not amount to a violation</u> of the Act; a [claimant] must show <u>substantial aggravating circumstances</u> attending the breach to recover under the Act**. . . .") (emphasis and underline added).

In order to state a claim under CUTPA involving an alleged breach of contract, a plaintiff must allege *with particularity* the required, "substantial aggravating circumstances."  *See Birbarie v. C & H Shoreline, LLC,* No. NNHCV146045884S, 2014 WL 5394593, at *11 (Conn. Super. Ct. Sept. 22, 2014)("the plaintiff has not pleaded,

9

with particularity, the required elements under . . . a CUTPA claim [.]").  *See also Ferrari v. U.S. Equities Corp.,* No. 3:13-CV-00395 JAM, 2014 WL 5144736, at *3 (D. Conn. Oct. 14, 2014)(Meyer, J.) *aff'd,* 661 F. App'x 47 (2d Cir. 2016) ("A CUTPA claim must be pleaded with particularity to allow evaluation of the legal theory upon which the claim lies.")(citing *Sorisio v. Lenox, Inc.,* 701 F.Supp. 950, 962 (D. Conn. 1988)).

Of direct relevance here, "CUTPA liability should *not* be imposed ... when a defendant merely has not delivered on a promise unless the defendant made a representation as to a future act coupled with a present intent not to fulfill the promise." *Webster Financial Corp. v. McDonald,* No. CV–08–4016026–S, 2009 WL 416059, *14 (Conn. Super Ct. Jan. 28, 2009) (emphasis added).  As one Connecticut court reasoned in dismissing a CUTPA claim under similar circumstances:

> [i]f not for the requirement that the promise be coupled with a **present intent <u>not</u> to deliver, "every simple breach of contract claim would constitute a CUTPA violation** since in every breach of contract claim the party who is accused of the breach has not performed on a prior representation ... made at the time of contract formation."

*Cavaiuolo v. Ahearn*, No. NNHCV1460496508, 2015 WL 4430822, * 5 (Conn. Super. Ct. June 17, 2015) (quoting *Designs on Stone, Inc. v. Brennan Construction Co., Inc.,* No. CV–97–059997, 1998 WL 182406 (Conn. Super. Ct. April 9, 1998) (emphasis and underline added).

Plaintiff does not allege that SS&C ever had the "present intent not to deliver" necessary to support a CUTPA claim in this case.  ACM alleges in Count II that SS&C's "unfair and deceptive trade practices" include "false and misleading statements" in "marketing the CAMRA software" and "after the inception of the Master Agreement[,]" Compl., ¶40, and that it was "continuously misl[ed] … into believing that SS&C could

10

cure its deficiencies with implementation." *Id.* The Complaint contains no allegation, however, that SS&C made any commitments without a present intent to honor its word. To the contrary, the Complaint acknowledges that SS&C continued at all relevant times to work with, and provide diligent assistance to, ACM on its implementation of CAMRA. *See supra* at pp. 4-5; Compl., ¶¶24-31. The conduct alleged does not support a plausible inference of, let alone specifically plead, the sort of "immoral, unethical, or unscrupulous" behavior that may rise to the level of a CUTPA violation. *See e.g., Lavy v. W&M Const. Corp.,* No. X08CV010187185S, 2003 WL 21494198 (Conn. Super. Ct. June 10, 2003)(striking CUTPA claim based on alleged false statements in solicitation of plaintiff's business, in part because there were "no factual allegations of deceit". . . . The only allegation is that which was represented did not occur. That is not sufficient to support a claim that requires some unfairness, deception, immorality, unethical behavior or oppressive or unscrupulous conduct.").

Count II of the Complaint should, therefore, be dismissed.

### C. ACM's Claim For Breach of the Express Warranty Fails To State A Claim Upon Which Relief May Be Granted

The Plaintiff's claim in Count III alleging breach of the express warranty fails as a matter of law because the Master Agreement clearly disclaims all warranties not expressly stated in the contract, and the Complaint does not sufficiently plead breach of any such express warranty that was made to ACM.

Section 6.2.1 of the Master Agreement states: "Except as set forth in this Master Agreement or a relevant attachment, SS&C makes no warranties, whether express, implied, or statutory, regarding or relating to the Software or Documentation." Further,

Section 6.2.5 of the Master Agreement states: "Any written representation or warranty not expressly contained in this Master Agreement or a relevant Attachment or Work Request is not authorized or valid.  No employee, agent, representative, or affiliate of SS&C has authority to bind SS&C to any oral representations or warranty concerning the Software."

In addition, the Master Agreement contains a merger clause in Section 6.7.4, which states that the Master Agreement contains the entire agreement of the parties and "supersedes all previous communications, representations, understanding and agreements, either oral or written, between the parties with respect thereto."  "[A] merger clause inserted into an agreement establishes conclusive proof of the parties' intent to create a completely integrated contract, and the court is forbidden from considering extrinsic evidence on the matter unless there was unequal bargaining power between the parties."  *Vasily v. MONY Life Ins. Co. of Am.,* 104 F. Supp. 3d 207, 216 (D. Conn. 2015)(citing *Glidepath, LLC v. Lawrence Brunoli, Inc.,* No. HHDCV106014624S, 2012 WL 6924526, at *4 (Conn. Super. Ct. Dec. 21, 2012) and *Tallmadge Bros., Inc. v. Iroquois Gas Transmission Sys., LP,* 252 Conn. 479 (2000)).

ACM specifically states that its breach of express warranty claim relates to alleged statements made to ACM "during the sales process" and "while SS&C tried and failed to implement the software."  Compl., ¶44.  This claim of warranties made outside the Master Agreement is plainly barred by the terms of 6.2.1 and 6.2.5, to which ACM agreed.

The same allegation also makes reference, in Paragraph 44, to warranties made "in the contract," but ACM fails to identify any express warranty provision in the Master

Agreement that has allegedly been breached.  The Master Agreement contains only one limited, express warranty, which Plaintiff does <u>not</u> allege to have been breached. Specifically, Attachment A-1 to the Master Agreement, Section I(E), contains a limited warranty, that provides: "SS&C warrants that as of the Effective Date and for three hundred sixty-four (354) days thereafter, the Software will perform in substantial accordance with the Documentation."  The Effective Date of the Master Agreement was December 30, 2014 (Section 1.4); accordingly, the limited warranty has, by its express terms, expired.  In any event, ACM has not asserted in its Complaint a breach of this limited warranty, *see* Compl., Count III, and plaintiff cannot go outside the express warranties actually made to advance an express warranty theory[.]" *Lucas v. Subaru of Am., Inc.,* No. CV030476082S, 2005 WL 1155009, at *4 (Conn. Super. Ct. Apr. 20, 2005).[5]

Because the Complaint does not specify any express warranty in the Master Agreement that was allegedly breached, and any alleged warranty outside the agreement is barred by the plain language of the parties' written agreement, ACM's claim in Count III for breach of express warranty should be dismissed.

### D. The Plaintiff's Claim for Unjust Enrichment Fails to State a Claim Upon Which Relief May be Granted

ACM's claim in Count IV for unjust enrichment fails because the basis of Plaintiff's claim lies in contract.

 "An express contract between the parties *precludes* recognition of an implied-in-law contract governing the same subject matter."  *Meaney v. Connecticut Hospital*

13

*Assoc.*, *Inc.* 250 Conn. 500, 517(1999) (emphasis added).  *See also Edwards v. N. Am. Power & Gas, LLC,* 120 F. Supp. 3d 132, 148 (D. Conn. 2015) ("A plaintiff . . . cannot plead a claim of unjust enrichment if he also pleads the existence of an express contract."); *Gagne v. Vaccaro,* 255 Conn. 390, 401 (2001) ("Unjust enrichment applies whenever justice requires compensation to be given for property or services rendered under a contract and there is no remedy available by action on the contract . . . .  Indeed a lack of remedy under the contract is a precondition for recovery based upon unjust enrichment.").

Here, ACM clearly pleaded the existence of a valid contract, *see e.g.,* Compl.,¶12 (incorporated by reference in Count IV in ¶ 47), and attached that contract to the Complaint as Exhibit A.  The alleged factual grounds for the unjust enrichment claim also include allegations that ACM paid money to SS&C "under the terms of the Master Agreement" and SS&C "failed to implement the CAMRA software."  Compl., ¶¶ 48, 49. These allegations within Count IV are direct admissions that ACM's claim arises in contract, which ACM seeks to enforce.  ACM's claim, if any, lies in breach of contract, and the unjust enrichment claim must be dismissed.  *See Edwards,* 120 F. Supp. 3d at 148 (granting a motion to dismiss an unjust enrichment claim where the complaint alleged the existence of a valid contract).  *See also Levy v. World Wrestling Entertainment, Inc.,* No. 3:08-01289, 2009 WL 455258 (D. Conn. Feb. 23, 2009) (dismissing an unjust enrichment claim where a breach of contract claim existed and there was "nothing in the complaint to suggest" that the operative contract was invalid and "unjust enrichment cannot be seen as pled in the alternative.").

### E. ACM Also Cannot State A Claim for Conversion Where The Basis Of The Suit Is An Alleged Breach Of Contract

The contractual nature of Plaintiff's claim also precludes a conversion action. Under Connecticut law, "an action in tort is inappropriate where the basis of the suit is a contract, either express or implied." *Deming v. Nationwide Mut. Ins. Co.*, 279 Conn. 745, 772 (2000).  In *Deming*, the Connecticut Supreme Court adopted the general rule that "'[a]n action for conversion of funds may not be maintained to satisfy a mere obligation to pay money . . . .  [I]t must be shown that the money claimed, or its equivalent, at all times belonged to the plaintiff and that the defendant converted it to his own use.'"  *Id.* (quoting *Macomber v. Travelers Property & Casualty Corp.*, 261 Conn. 620, 650 (2002)).  Consistent with that rule, conversion claims have been permitted to proceed where a defendant has been accused of wrongfully taking money from a joint survivorship bank account, a trust placed with the defendant, or an elderly person's bank account without adequate consent.[6]  The tort of conversion does not apply where, as here, the plaintiff intentionally paid monies pursuant to a contract that has allegedly been breached or is voidable.

In *Park v. Anthony Devito, LLC,* 2015 WL 7941265, *7-8 (Conn. Super. Ct. Nov. 5, 2015), the plaintiff, who had contracted with the defendant to provide improvements on his property, sought through a conversion count to recover sums paid to the defendant under the agreement after the defendant failed to perform all promised services.  The court held that the plaintiff had not stated a claim for conversion because

---

[6] *See Devitt v. Manulik,* 176 Conn. 657, 662-63 (1979) (recovery of money wrongfully taken from joint survivorship bank account); *Dunham v. Cox,* 81 Conn. 268, 270-71 (1908) (recovery of a sum of money entrusted to the defendant for payment to a third person); *Howard v. MacDonald,* 270 Conn. 111, 111 (unlawful transfer of funds from elderly woman's bank account to defendant's bank account).

15

the plaintiff paid the defendant pursuant to the contract.  *Id.* at *8.  *See also Bratter v. Nova 22 Construction, Inc.,* HHDCV126033502S, 2014 WL 1674208, *3 (Conn. Super. Ct. Mar. 27 2014) ("The complaint alleges in paragraphs 6 through 8 that the plaintiff paid the money to the defendants in accordance with the contract and that the defendants did at least some work. . . pursuant to the contract.  The plaintiff's cause of action is properly based in breach of contract, not conversion."); *Hayn v. Sousa,* No. KNLCV126014880S, 2013 WL 4056309, at *4 (Conn. Super. Ct. July 24, 2013)(holding that a conversion claim was legally insufficient where the basis of the allegations was that the plaintiff had made payments to the defendant to be used to purchase supplies under a contract, despite the fact that the defendant never purchased the supplies).

The above cases are directly on point with the facts here.  The monies SS&C allegedly "converted" are the payments ACM intentionally made under the Master Agreement.  *See* Compl., ¶¶ 52-53 ("ACM made timely payments totaling more than $1.78 million to SS&C under the Master Agreement, but ACM did not receive anything in exchange. . . SS&C kept ACM's payments. . . .").  ACM's conversion claim is merely a restatement of its breach of contract claim, and should be dismissed.

### F.  Plaintiff's Claim For Rescission Fails To State A Claim Upon Which Relief Can Be Granted

ACM's claim for rescission should be dismissed because ACM has not offered to restore SS&C to its former position, a condition precedent to seeking rescission. Further, ACM has not sufficiently alleged that rescission is warranted under the facts at issue.

16

### 1. ACM Has Not Met the Condition Precedent for Seeking Rescission of a Contract

"A condition precedent to rescission is the offer to restore the other party to its former condition as nearly as possible." *Final Cut, LLC v. Sharkey,* No. FSTCV085007365S, 2009 WL 1532281, at *4 (Conn. Super. Ct. May 5, 2009)(internal quotation marks omitted)(citing *Paul Revere Life Ins. Co. v. Pastena,* 52 Conn. App. 318, 325 (2005)). "The very idea of rescinding a contract implies that what has been parted with shall be restored on both sides, and hence the general rule, which is to be reasonably applied . . . is that a party who wishes to rescind a contract must place the opposite party in status quo." *Metcalfe v. Talarski,* 213 Conn. 145, 153 (1989)(citing 17 Am.Jur.2d., Contracts § 512, p. 994).

"Since alleging this offer is a condition precedent to rescission, there is Superior Court authority to grant a motion to strike the rescission prayer for relief." *Final Cut,* 2009 WL 1532281, at *4 (citing *Lazzaro v. JFS, Inc.,* No. CV 96 0150751, 1998 WL 27148 (Conn. Super. Ct. Jan. 15, 1998)(granting motion to strike rescission claim for relief and noting that plaintiff's allegation that they "made written requests for rescission. . . in exchange for mutual releases between the parties" was not equivalent to alleging offer to return defendant to previous position); *Merson v. Berkoff,* No. CV 92 0122617, 1993 WL 286651 (Conn. Super. Ct. July 21, 1993)(granting motion to strike rescission prayer for relief for failure to allege offer to restore defendant to previous condition).

Here, there is no allegation in Count VI or elsewhere in the Complaint that ACM has offered to rescind the parties' contract and restore SS&C to its previous position by, *inter alia,* removing SS&C's licensed software from ACM's machines, returning all

17

materials received from SS&C in connection with the Master Agreement, and offering to execute mutual releases.  In the absence of such allegations, Count VI fails as a matter of law.

### 2. ACM Has Not Alleged That SS&C Knowingly Made False Representations to Warrant Rescission of the Contract

Rescission is also not warranted because ACM has not pleaded knowing misrepresentation on the part of SS&C, which is necessary to support a claim for such relief under Connecticut law.  ACM alleges in Count VI than that SS&C made "false representations about its ability to perform under the terms of the agreement[.]"  Compl., ¶ 56.  But Plaintiff does not allege there, or elsewhere in the Complaint, that SS&C *knowingly* misrepresented its ability to perform its obligations.  *See id.* and 24 -31.

"Rescission of a contract is an appropriate remedy if there has been a material misrepresentation of *fact* upon which a party relied and which caused her to enter the contract."  *Dorsey v. Mancuso*, 23 Conn. App. 629, 635 (1990)(citing *Kavarco v.  T.J.E., Inc.,* 2 Conn. App. 294, 298 (1984), *overruled in part on other grounds*) (emphasis added).  For a material misrepresentation to render a contract voidable under Connecticut law, however, "the misrepresenting party must *know* that he is making a false statement."  *Pinette v. Assurance Co. of Am.*, 52 F.3d 407, 409–10 (2d Cir. 1995) (emphasis added).  "'Innocent' misrepresentations – those made because of ignorance, mistake, or negligence are not sufficient grounds for rescission."  *Id.* (citing *Middlesex Mut. Assurance Co. v. Walsh,* 218 Conn. 681, 691-92 (1991)).  "When Connecticut courts speak of 'innocent' misrepresentations, they generally have in mind the situation in which the applicant does not know that the information he is providing is false."  *Id.* at

18

410 (citing *Lazar v. Metropolitan Life Ins. Co.,* 290 F.Supp. 179, 181 (D. Conn. 1968) (finding an applicant's misrepresentations on an application not "knowing" as a matter of law where the agent stated that the false answers were not within the scope of the question)).

As discussed above, ACM does not allege that SS&C knowingly misrepresented that it could perform its obligations under the Master Agreement. As Plaintiff acknowledges, upon execution of the agreement, SS&C continuously devoted extensive resources in its efforts to assist ACM in implementing the software. *See id.* ¶¶ 24 – 29. SS&C did so on a capped fee basis, *id.* ¶ 21, and expressed belief at all relevant times that the parties could achieve that objective, *id.* ¶¶ 29-30. The allegation that ACM was not able to implement and run the software as anticipated does not support an inference that SS&C knowingly misrepresented any facts. *See Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.,* No. 3:08-cv-1958, 2010 WL 1882316, at *6 (D. Conn. 2010)(allegations in the complaint that a contract was not completed within time frame anticipated did not give rise to an inference that the defendant did not intend to honor its obligations).

In the absence of any colorable allegation of knowing misrepresentation, Plaintiff fails to state a claim for rescission, and Count VI should be dismissed.

19

III.    CONCLUSION

For all the foregoing reasons, Defendant SS&C respectfully requests that the

Court ALLOW the Defendant's Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6),

Counts II, III, IV, V, and VI of the Complaint, and enter judgment in favor of Defendant

and against Plaintiff on those counts.

Respectfully submitted,

THE DEFENDANT,

SS&C TECHNOLOGIES, INC.


By____/s/ *Jeffrey J. Mirman*___ _____
       Jeffrey J. Mirman (ct05433)
       Alexa T. Millinger (ct29800)
       Hinckley, Allen & Snyder LLP
       20 Church Street, 18th Floor
       Hartford, Connecticut 06103
       jmirman@hinckleyallen.com
       amillinger@hinckleyallen.com
       Telephone: (860) 331-2762
       Facsimile: (860) 278-3802

       Kevin J. O'Connor (*pro hac vice*)
       Hinckley, Allen & Snyder LLP
       28 State Street
       Boston, MA 02109-1775
       koconnor@hinckleyallen.com
       Telephone: (617) 378-4394
       Facsimile: (617) 345-9020

       Its Attorneys

20

## **CERTIFICATION**

I hereby certify that on this June 22, 2017, a copy of the foregoing was filed

electronically and served by mail on anyone unable to accept electronic filing. Notice of

this filing will be send by email to all parties by operation of the Court's electronic filing

system or by mail to any counsel or self-represented party unable to accept electronic

filing, as indicated on the Notice of Electronic Filing. Parties may access this filing

through the Court's CM/ECF System.


         /s/  *Jeffrey J. Mirman*

Jeffrey J. Mirman (ct05433)

21