## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT
## NEW HAVEN DIVISION

| | |
|---|---|
| ARMOUR CAPITAL MANAGEMENT LP, | Case No. 17-cv-00790-JAM |
| Plaintiff, | |
| v. | July 20, 2017 |
| SS&C TECHNOLOGIES INC., | |
| Defendant. | |

### 26(F) REPORT OF PARTIES' PLANNING MEETING

Date Complaint Filed:            May 15, 2017

Date Complaint Served:           May 18, 2017

Date of Defendant's Appearance:  June 5, 2017

Date of First Amended Complaint: July 13, 2017

Pursuant to Fed. R. Civ. P. 16(b) and 26(f) and D. Conn. L. Civ. R. 16, a conference was held on June 26, 2017. The participants were Joseph Mamounas and Allison Kernisky of Holland & Knight LLP for Plaintiff, ARMOUR Capital Management LP ("ACM"), and Kevin J. O'Connor and Jeffrey J. Mirman of Hinckley of Allen & Snyder LLP for Defendant, SS&C Technologies Inc. ("SS&C") (together with ACM, the "Parties").

**I.     Certification.**

Undersigned counsel certify that, after consultation with their clients, they have discussed the nature and bases for the Parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case and, in consultation with their clients, have developed the following proposed case management plan. Counsel further certify that they have

forwarded a copy of this report to their clients.

**II.     Jurisdiction.**

    **A.     Subject Matter Jurisdiction.**

ACM alleges that it is a limited partnership, organized under the laws of Delaware, with 11 partners, ten of which are citizens of Florida and one of whom, Buford H. Ortale, is a citizen of Tennessee.

ACM alleges, and the Court found that ACM "has sufficiently alleged facts to suggest that federal diversity jurisdiction exists in this case (CM/ECF No. 34), that its partners are: (1) Remmiz LLC (General Partner); (2) Stacumny LLC (General Partner); (3) Jeffrey J. Zimmer (Limited Partner); (4) Scott J. Ulm (Limited Partner); (5) Buford H. Ortale (Limited Partner); (6) Susan E. Zimmer (Limited Partner); (7) Alexander R.A. Ulm (Limited Partner); (8) Carolyn M. Zimmer Irrevocable Trust ("CMZ Trust") (Limited Partner); (9) Isabella L. Zimmer Irrevocable Trust ("ILZ Trust") (Limited Partner); (10) Emanon Investments 1 LLC (Limited Partner); and (11) DM Bell Blank Check Family LP (Limited Partner).

ACM alleges, and the Court found that ACM "has sufficiently alleged facts to suggest that federal diversity jurisdiction exists in this case (*Id.*), that its partners have citizenship as follows:

Jeffrey J. Zimmer, Scott J. Ulm, Susan E. Zimmer, and Alexander R.A. Ulm are citizens of Florida, and Buford H. Ortale is a citizen of Tennessee.

Remmiz LLC is a Florida limited liability company; its sole member, Jeffrey Zimmer, is a citizen of Florida, making Remmiz LLC a citizen of Florida.

Stacumny LLC is a Florida limited liability company; its sole member, Scott Ulm, is a citizen of Florida, making Stacumny LLC a citizen of Florida.

CMZ Trust is a Florida trust; its co-trustees are Jeffrey J. Zimmer and Susan E. Zimmer,

both citizens of Florida, making CMZ Trust a citizen of Florida.

ILZ Trust is a Florida trust; its co-trustees are Jeffrey J. Zimmer and Susan E. Zimmer, both citizens of Florida, making ILZ Trust a citizen of Florida.

Emanon Investments 1 LLC is a Nevada limited liability company; its members are Marc Bell, a citizen of Florida, and Emanon LLLP, a limited liability limited partnership organized under the laws of Nevada. Emanon LLLP's only partners are (1) limited partner the Bell 2014 Family Trust, a Nevada trust whose trustee is Ruti K. Bell, a citizen of Florida, and (2) general partner Emanon LLC, a Nevada limited liability company whose members are (i) Marc Bell, a citizen of Florida, and (ii) the Marc H. Bell 2014 Family Irrevocable Trust, a Florida trust whose trustee is Ruti K. Bell, a citizen of Florida. Emanon Investments 1 LLC therefore is a citizen of Florida.

DM Bell Blank Check Family LP is a limited partnership organized under the laws of Wyoming; its partners are general partners (1) DS Blank Check LLC, a limited liability company organized under the laws of Delaware whose sole member is Daniel C. Staton, a citizen of Florida, (2) MS Blank Check LLC, a limited liability company organized under the laws of Delaware whose sole member is Maria V. Staton, a citizen of Florida; and limited partners (3) Daniel C. Staton, (4) Maria V. Staton, (5) Arianna E.B. Staton, (6) George E.B. Staton III, (7) John C. B. Staton, and (8) Daniela V.B. Staton, all citizens of Florida. DM Bell Blank Check Family LP therefore is a citizen of Florida.

SS&C is a corporation organized and existing under the laws of Delaware, with its principal office in Connecticut. Thus, SS&C is a citizen of Delaware and Connecticut.

ACM states that this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest, and costs.

SS&C can neither admit nor deny the citizenship of ACM, its limited partners, or any limited liability companies, individuals or trusts that Plaintiff has identified. Accordingly, SS&C intends to conduct discovery, *inter alia*, aimed at determining the citizenship of the entities and individuals identified by ACM. SS&C's position is that until such time as the issue of citizenship is resolved, the question of federal diversity jurisdiction remains unresolved as well.

**B.    Personal Jurisdiction.**

This Court has personal jurisdiction over SS&C because its principal office is located in this District and it conducts business in this District. Personal jurisdiction is not contested.

**III.    Brief Description of Case.**

Plaintiff's Statement:

In December 2014, ACM entered into a contract with SS&C under which SS&C agreed to provide ACM with a "turnkey solution" for portfolio accounting software to manage the investment portfolios of its clients. ACM made this decision based on SS&C's false representations that it had the qualifications and capabilities to implement CAMRA successfully; the "hosting" option for CAMRA was appropriate, and could be implemented, for ACM; and SS&C was capable of implementing CAMRA within four to six months of ACM's and SS&C's contract execution. ACM knew, or, alternatively, at least should have known these representations were false. ACM licensed from SS&C a software product called CAMRA and related products and support services. SS&C's implementation of CAMRA was fundamental to ACM's ability to use any of SS&C's promised products and services. Under the Parties' contract, implementation is considered complete when ACM is able to process one month of transactions using CAMRA. Implementation has never happened because CAMRA never has been able to process one month of transactions for ACM. Instead, ACM has been strung along for over two years by SS&C's repeated false assurances,

which SS&C made to induce ACM to not terminate the contract, not make a warranty claim, release to SS&C substantial payments to which SS&C was not entitled, and authorize SS&C to perform additional work for significant fees. SS&C defrauded ACM, SS&C has materially breached the Parties' contract by failing to implement CAMRA and failing to cure its inability to do so, and ACM has been damaged by SS&C's conduct. To date, ACM has paid more than $1.78 million to SS&C under the contract for worthless products and services and incurred more than $500,000 in other losses.

Defendant's Statement:

In response to SS&C's Motion to Dismiss ACM's original complaint (CM/ECF No. 29), ACM filed a First Amended Complaint and Demand for Jury Trial (the "Amended Complaint") on July 13, 2017 (CM/ECF No. 35). The Amended Complaint fails to state a claim. All five counts in the Amended Complaint rest on the facially defective premise that SS&C committed to implement unilaterally the CAMRA software and related products within ACM's information technology system. But as is clear on the face of the parties' December 19, 2014 written Master Agreement and related Work Requests (collectively, the "Master Agreement"), the parties agreed that SS&C would "provide on-site and remote implementation services … in support of [ACM's] implementation of the software." Indeed, the Master Agreement also expressly provides that SS&C would provide "[i]mplementation training" to ACM, which obviously would not have been necessary if – as Plaintiff asserts – ACM expected to have no material role in the implementation of the software. Plaintiff's claims are also barred by, *inter alia*, (i) the merger clause in the Master Agreement (§ 6.7.4), in which the parties expressly disclaimed representations or understandings outside the terms of the Agreement; and (ii) the time bar within the Master Agreement, which precludes each party from asserting claims for breach of contract and other claims more than one

year after the party knew or should have known of the alleged breach (§ 6.7.16).  Accordingly, SS&C anticipates that it will move to dismiss the Amended Complaint on or before August 16, 2017.  Finally, putting aside the dispositive, facial defects of the Amended Complaint, SS&C fully performed its material obligations under the Agreement and acted at all relevant times in good faith.  ACM's failure to implement CAMRA was a consequence of its own doing and decisions, and not the fault of SS&C.  Following the Court's ruling on SS&C's Motion to Dismiss, SS&C will assert affirmative defenses to any surviving claims, and  may also assert counterclaims for damages arising out of ACM's breach of the parties' Master Services Agreement and Work Requests.

   **A.** **Claims of Plaintiff in Amended Complaint:**

   Count I  Breach of Contract

   Count II  Violation of the Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. §§ 42-110A, *et seq.*)

   Count III  Intentional Misrepresentation

   Count IV  Negligent Misrepresentation

   Count V  Rescission

   **B.** **Defenses and Claims of Defendant:**

SS&C denies that it breached any contract between the parties or misled ACM.  SS&C further denies that the Plaintiff has stated claims in its Amended Complaint upon which relief can be granted.   As discussed above, SS&C anticipates that it will be timely moving to dismiss the Amended Complaint in its entirety  pursuant to F.R.C.P. Rule 12(b)(6).  SS&C will assert affirmative defenses to whatever claims remain following the Court's ruling on the anticipated Motion to Dismiss.  SS&C may also assert counterclaims for damages arising out of ACM's breach of the parties' written Master Services Agreement and Work Requests.

  **C.**  **Defenses and Claims of Third Party Defendant/s:**

Not applicable.

**IV.**  **Statement of Undisputed Facts.**

Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The Parties state that the following material facts are undisputed:

  1.  On December 19, 2014, the Parties entered into a Master Agreement for Software, Maintenance and Support, Professional Services and Other Services, which incorporates each attachment and Work Request thereto (collectively, the "Master Agreement").

**V.**  **Case Management Plan:**

  **A.**  **Standing Order on Scheduling in Civil Cases.**

The parties request modification of the pre-trial schedule as follows:

  1.  Written discovery commenced on June 26, 2017;

  2.  Written discovery shall be served in time to be completed by March 9, 2018;

  3.  Depositions of fact witnesses shall commence no sooner than August 17, 2017;

  4.  Depositions of fact witness shall be completed by March 9, 2018;

  5.  ACM shall disclose any expert witnesses by March 16, 2018;

  6.  The depositions of ACM's experts shall be completed by April 7, 2018;

  7.  SS&C shall disclose any expert witnesses by May 7, 2018;

  8.  The depositions of SS&C's experts shall be completed by May 28, 2018;

  9.  Dispositive motions shall be filed no later than June 28, 2018;

  10.  The case shall be ready for trial September 5, 2018.

ACM has agreed to these dates in order to accommodate SS&C's counsel, as follows:

SS&C's lead counsel, Kevin O'Connor, is scheduled to begin a two-week trial in mid-January, 2018, and has a scheduled family vacation in the third week of February, 2018.

SS&C intends to move to stay discovery pending briefing and the Court's decision on SS&C's forthcoming Motion to Dismiss the Amended Complaint in its entirety, which will be filed on or before August 16, 2017. SS&C believes that a stay of discovery will preserve the resources of the Court and the parties unless and until the Court determines whether the Plaintiff – in its second attempt at its complaint – has stated a cause of action upon which relief may be granted. ACM does not believe a stay of discovery is warranted and will oppose any such stay.

**B.      Scheduling Conference with the Court.**

The Parties do not request a pretrial conference with the Court before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b).

**C.      Early Settlement Conference.**

The Parties certify that they have considered the desirability of attempting to settle the case before undertaking significant discovery or motion practice. The Parties preliminarily have engaged and will, in good faith, continue to engage in settlement discussions. ACM is willing to participate in a settlement conference before a Magistrate Judge, provided that, for the reasons set forth in ACM's Amended Complaint, it is understood that ACM is not amenable to continuing to do business with SS&C in any capacity. SS&C is willing to participate in an early settlement conference before a Magistrate Judge.

**D.      Joinder of Parties and Amendment of Pleadings.**

1.      ACM should be allowed until July 31, 2017, to file motions to join additional parties and until July 31, 2017, to file motions to amend the pleadings.

    2.      SS&C should be allowed until July 31, 2017 to file motions to join additional parties.

    **E.**      **Discovery.**

    a.      Generally, ACM anticipates that discovery will be needed on the following subjects, among others:

    1.      SS&C's communications with and about ACM;

    2.      SS&C's applicable standards, policies, practices, procedures, and handbooks.

    3.      SS&C's efforts to market CAMRA and related products and services to ACM.

    4.      The different methods for using CAMRA, including licensing only, hosting and outsourcing, and the decision regarding what method ACM would license.

    5.      Agreements between SS&C and ACM, including the Master Services Agreement.

    6.      SS&C's implementation of CAMRA for ACM.

    7.      SS&C's training for ACM.

    8.      With respect to ACM, SS&C's Client Services Team.

    9.      The uncompleted implementation of CAMRA and any complaints, failures, accidents, incidents, problems, damages, or similar occurrences with CAMRA not involving ACM.

    10.      Lawsuits and investigations against SS&C relating to any products or services.

    11.      SS&C's defenses and expert witnesses.

SS&C anticipates that it will object to certain areas of ACM's proposed discovery, including, but not limited to, requests seeking documents and information about SS&C's other customers. Generally, SS&C anticipates that discovery will be needed on the following subjects, among others:

    1.      Facts relating to ACM's allegations of diversity of citizenship in this action.

  2.  ACM's communications with and about SS&C.

  3.  ACM's communications internally and externally regarding its knowledge of SS&C and CAMRA before it commenced discussion with SS&C.

  4.  The parties' negotiations of the Master Agreement and related Work Requests.

  5.  The technology, methods and practices for asset management accounting ACM used in the year before, and during the pendency of, the Master Agreement.

  6.  The reasons ACM chose to enter into the Master Agreement and related Work Orders with SS&C.

  7.  The background and experience of ACM's team responsible for implementation of the CAMRA and related software.

  8.  The parties' respective performance under the Master Agreement and related Work Requests.

  9.  ACM's claims of damages.

  10.  The different methods for using CAMRA, including licensing, hosting and outsourcing, and the decision made by ACM as to what method to use.

  11.  Each of the parties' claims, counterclaims and affirmative defenses.

  b.  Discovery commenced on June 26, 2017.

  c.  Notwithstanding the March 9, 2018 discovery cutoff, discovery will be conducted in phases, in that expert discovery will follow lay discovery.

  d.  Not applicable.

  e.  The Parties anticipate that ACM will require a total of 5-10 depositions of fact witnesses and that SS&C will require a total of approximately 10 depositions of fact witnesses.

  f.  The Parties will not request permission to serve more than 25 interrogatories.

      g-h.    Both parties intend to call expert witnesses at trial. The parties will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2). The parties' respective proposals regarding the timing of those disclosures, and related depositions are set forth above.

      i.    A damages analysis will be provided by any party who has a claim or counterclaim for damages by February 15, 2018.

      j.    Undersigned counsel have discussed the disclosure and preservation of electronically stored information ("ESI"), including, but not limited to, the form in which such ESI shall be produced, search terms to be applied in connection with the retrieval and production of such information, the location and format of ESI, appropriate steps to preserve ESI, and the allocation of costs of assembling and producing such ESI.

      k.    The Parties agree to the following procedures for the preservation, disclosure and management of ESI: (1) to enforce litigation hold notices that have already been issued to the Parties' relevant employees, instructing them to preserve documents and suspend any document deletion policies until further notice; (2) to de-NIST and de-duplicate documents and take all other reasonable measures to isolate responsive, non-privileged documents, and distill the Parties' document productions as much as practicable; (3) to each devise and run search terms to locate responsive documents; (4) to produce to the other party relevant, non-privileged ESI in an agreed-upon format; and (5) to work together in good faith to preserve and produce documents, including ESI, as necessary. The Parties will each bear their own fees and costs for reasonable and proportionate discovery, with the exception of potential discovery disputes, which may allow one party to seek attorney's fees and costs from the other party. The parties have agreed to exchange search terms and to meet and confer in advance of SS&C producing documents to ACM to narrow the

scope of discovery as much as practicable.

ACM intends to request that SS&C produce ESI in the following format:

Electronically stored information ("ESI") is to be produced in 300 x 300 DPI Group IV Monochrome Tagged Image File Format (.TIFF or .TIF) files, with color Documents in Joint Photographic Experts Group (.JPEG or .JPG) files. TIFF and JPEG files shall be produced in single-page format along with Concordance image load files (.OPT). All Documents are to be provided with multi-page extracted or OCR text (.TXT) files indicating page breaks. Extracted text and/or OCR text shall not be embedded in the .DAT file but rather shall be provided as separate, Document-level text files, the names of which shall contain the beginning bates number of the Document. If a Document is provided in native format with a placeholder TIFF (e.g., a MS-Excel or .CSV file), the text file shall contain the extracted text of the native file. Provide any metadata values associated with the produced electronic information in the form of a metadata load text file (.DAT file) and using Concordance standard delimiters. Unless such materials contain privileged information, MS-Excel and .CSV spreadsheets shall be produced in native format. The metadata load file (.DAT) shall contain a link to the produced MS-Excel spreadsheets via data values called "Native Link" and a "TextPath" field containing the path (including the file name) to the extracted text or OCR file for each Document. The Native Link values shall contain the full directory path and file name of the MS-Excel spreadsheet as contained in the produced media. Produce native MS-Excel and .CSV files accompanied by a placeholder .TIFF sheet containing the name of the bates number for each produced file. To the extent such materials contain information subject to a claim of privilege, they shall be produced in the form of redacted .TIFF images. Sequential bates numbers and any confidentiality designation shall be electronically branded on each TIFF image of ESI. Each file name shall be unique and match the bates number of the page. The file name shall not contain any blank spaces and shall be zero padded.

l.      Undersigned counsel have discussed discovery procedures that minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production. The Parties agree to the following procedures for asserting claims of privilege after production: (1) to notify counsel for the other party as soon as practicable once a party has discovered that privileged documents may have been inadvertently produced; (2) to allow the other party to clawback any documents upon which that party has asserted a claim of privilege; (3) to deliver the documents identified as privileged to the other party and delete all copies—in both electronic or paper form—from the party's files; and (4) to seek Court intervention

only where necessary if the Parties have been unable to agree to the resolution of any issues relating to the production of privileged documents.

### F.  Dispositive Motions:

The parties proposed schedule for dispositive motions is set forth above.

### G.  Joint Trial Memorandum.

The joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed by August 1, 2018.[1]

## VI.  TRIAL READINESS.

The case will be ready for trial by September 5, 2018.

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

Date:   July 20, 2017

Respectfully submitted,

| **HOLLAND & KNIGHT LLP** | **HINCKLEY, ALLEN & SNYDER LLP** |
|---|---|
| By: */s/ Christopher M. Cerrito*<br>    Christopher M. Cerrito (ct17183)<br>    chris.cerrito@hklaw.com<br>    One Stamford Plaza<br>    263 Tressler Boulevard, Suite 1400<br>    Stamford, CT 06901<br>    Telephone: (203) 905-4500<br>    Facsimile: (203) 724-3944<br><br>and<br><br>By: */s/ Joseph J. Mamounas*<br>    Joseph J. Mamounas (phv09010)<br>    joseph.mamounas@hklaw.com<br>    Allison Kernisky (phv09011)<br>    allison.kernisky@hklaw.com | By: /s/ *Jeffrey J. Mirman*<br>    Jeffrey J. Mirman (ct05433)<br>    jmirman@hinckleyallen.com<br>    Alexa T. Millinger (ct29800)<br>    amillinger@hinckleyallen.com<br>    20 Church Street, 18th Floor<br>    Hartford, CT 06103<br>    Phone: (860) 331-2762<br>    Fax: (860) 278-3802<br><br>and<br><br>By: /s/ *Kevin J. O'Connor*<br>    Kevin J. O'Connor (MA 555250)<br>    28 State Street<br>    Boston, MA 02109-1775 |

---

[1] Subject to the Court having already ruled on any pending motions for summary judgment.

Case No. 17-cv-00790-JAM

| | |
|---|---|
| 701 Brickell Avenue, Suite 3300<br>Miami, FL 33131<br>Telephone: (305) 374-8500<br>Facsimile: (305) 789-7799<br><br>*Counsel for ARMOUR Capital Management LP* | Phone: (617) 378-4394<br>Fax: (617) 378-4395<br><br>*Counsel for SS&C Technologies Inc.* |

# CERTIFICATE OF SERVICE

    I hereby certify that on July 20, 2017, a true and correct copy of this document has been furnished to counsel of record via CM/ECF.

By: */s/ Joseph J. Mamounas*
Joseph J. Mamounas (phv09010)