# Holland & Knight

701 Brickell Avenue, Suite 3300 | Miami, FL 33131 | T 305.374.8500 | F 305.789.7799
Holland & Knight LLP | www.hklaw.com

Allison Kernisky
305-349-2175
allison.kernisky@hklaw.com

September 28, 2017

*Via CM/ECF*

Honorable Jeffrey A. Meyer
U.S. District Judge, District of Connecticut
Richard C. Lee United States Courthouse
141 Church Street, Courtroom 3
New Haven, CT 06510

   Re: *ARMOUR Capital Management LP v. SS&C Technologies Inc.*, Case No. 17-cv-00790-JAM (D. Conn.)

Dear Judge Meyer:

  We respectfully submit this letter brief on behalf of our client, Plaintiff ARMOUR Capital Management LP ("ACM"), in support of certain of ACM's discovery requests to Defendant SS&C Technologies Inc. ("SS&C"), seeking information and documents on SS&C's other customers.

### *Background*

  SS&C marketed and sold to ACM an accounting software product called CAMRA, and related implementation, hosting, and other services. SS&C was never able to implement CAMRA, costing ACM over $2 million on a worthless product. This case involves SS&C's pre- and post-contractual misrepresentations to ACM during the sales process—that SS&C was qualified to implement CAMRA, hosting was appropriate, and SS&C could implement within four to six months—and after ACM entered into an agreement—that implementation would occur. SS&C made these statements, which were false, to induce ACM to enter into an agreement, and then, to secure continued payments from ACM and prevent it from terminating the agreement or making a warranty claim. ACM has sued SS&C for breach of contract, violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), intentional and negligent misrepresentation, and rescission.

  To support its claims and address SS&C's defenses, ACM served discovery requests on SS&C, for the identity of SS&C's other CAMRA customers (Interrogatory No. 3), information and documents for CAMRA customers where implementation never occurred (Interrogatory No. 4; Req. No. 19), where customers complained or had problems with implementation (Interrogatory No. 5; Req. No. 20), or where customers used CAMRA on an outsourced basis (Interrogatory No. 6). *See* Exhibit A (full text of ACM's requests and SS&C's responses and objections).

  SS&C has refused to produce anything on other customers, claiming irrelevance and

Hon. Jeffrey A. Meyer
September 28, 2017
Page 2

burden, on the grounds that it has too many CAMRA customers to be able to investigate and determine which ones had problems.[1] This information is relevant to ACM's claims, producing it will not burden SS&C, and ACM's need is critical because it is deposing SS&C employees next week, necessitating the Court's assistance.

### *SS&C's Other CAMRA Customers Are Relevant To ACM's Claims.*

SS&C's repeated misrepresentations that it could implement CAMRA, "hosting" was appropriate, and how long implementation would take are relevant to show notice and intent. One possible basis for these misrepresentations is SS&C's experiences with its other customers. The information ACM is requesting—if other customers experienced delays or problems with implementation, or, like ACM, had a complete failure of implementation—is relevant to whether SS&C's representations were false and whether SS&C knew that it had no reasonable basis for making such statements, and intentionally misrepresented its capabilities anyway. Such information is probative of whether SS&C committed fraud or simply made negligent misrepresentations. *See, e.g.*, *Bartold v. Wells Fargo Bank, N.A.*, No. 14-cv-00865, 2016 WL 7493950, at *5 (D. Conn. Dec. 30, 2016) (customer complaints, lawsuits, and concerns raised to defendant's compliance department relevant to "demonstrate whether the problems faced by [plaintiff] raised broader systemic issues as to how [defendant] conducted its [ ] business.").

After all, ACM is not in a position to know everything SS&C knew, and must rely on information obtained through discovery. Relevance in discovery is "generously construed." *See Benjamin v. Oxford Health Ins., Inc.*, No. 3:16-CV-00408 (AWT), 2017 WL 772328, at *4 (D. Conn. Feb. 28, 2017). Rule 26 provides that information sought in discovery "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Information on other customers is also relevant to causation. SS&C argues that ACM, not SS&C, "bore ultimate responsibility for implementation," or, if SS&C had the obligation, ACM thwarted SS&C's implementation through its own fault. (SS&C's Motion to Dismiss at 12, 28.) ("In fact, there are myriad reasons, including ACM's own deficiencies and inabilities, which may have contributed to the lack of successful implementation."). By raising the defense that ACM was an intervening cause of SS&C's failure to implement, SS&C has put at issue the chain of causation. ACM is entitled to rebut SS&C's defense with evidence of SS&C's ability (or inability) to implement CAMRA despite other customers' alleged "deficiencies and inabilities," which implicates issues of notice, causation, and defect. ACM's expert will need such information, too.

Although ACM has not brought a products-liability claim against SS&C, notice, causation, and defect are germane here. Information on other customers goes to notice and may lead to relevant evidence. *See, e.g.*, *Josephs v. Harris Corp.*, 677 F.2d 985, 991 (3d Cir. 1982) (information on persons defendant knew injured by product at issue "patently relevant" to duty to warn and may lead to relevant evidence). Moreover, Connecticut courts allow discovery on problems experienced by other customer's use of the same or similar product. *See Napolitano v.*

---

[1] SS&C's objection that ACM's requests call for trade secret or proprietary data is a red herring, given the Court's Standing Protective Order (ECF No. 4), and the ability of the parties to designate confidentiality.

*Synthes, Inc.*, No. 3:09-CV-828 (TLM), 2013 WL 1798790, at *3-4 (D. Conn. Apr. 29, 2013) (granting motion to compel on problematic medical devices similar to one at issue); *Barack v. Am. Honda Motor Co. Inc.*, No. 3:09-CV-565 (AWT), 2010 WL 11417797, at *2 (D. Conn. Nov. 12, 2010) (requiring defendants to produce records of similar incidents involving defective car parts); *see also Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 75 (D. Mass. 1976) (accidents similar to one at issue relevant to whether defendant knew product was dangerous when marketed).

### *SS&C Will Not Be Burdened By Providing Information on Other CAMRA Customers.*

To avoid production, SS&C must do more than simply object and claim burden; it must offer facts to establish burden. *See Barack*, 2010 WL 11417797, at *1 n.2 ("Under well-settled law, the party resisting production bears the responsibility of establishing undue burden."); *see also In re In–Store Advertising Sec. Lit.*, 163 F.R.D. 452, 455 (S.D.N.Y. 1995) ("If a party resists production on the basis of claimed undue burden, it must establish the factual basis for the assertion through competent evidence.").

SS&C repeats that it has over 500 clients which use CAMRA and it cannot be expected to investigate each one to ferret out "problem customers." SS&C's objection does not establish burden—nor could it.[2] Although SS&C has resisted providing ACM specific information, ACM is aware from its three years of pre-suit dealings with SS&C that it is organized into divisions responsible for CAMRA, "hosting," implementation, and ACM's specific industry, among others. Moreover, SS&C is a multibillion-dollar public company. So, as any business would, SS&C must have policies and procedures to identify and monitor dissatisfied customers, including a list of "problem customers" that SS&C can provide to ACM or use to locate responsive documents. At a minimum, SS&C has had three months since ACM served its discovery requests to investigate these requests and provide specific facts supporting burden; it has not.

Moreover, ACM has worked with SS&C for months to accommodate its purported objection to alleviate any conceivable burden on SS&C. The parties have telephonically met and conferred on August 1, 17, and September 22, 26, 2017, and exchanged more than a dozen emails. SS&C continues to stall. ACM served its requests three months ago, and cannot afford further delay—it is deposing SS&C employees next week, and information on other customers is critical.

For the reasons set forth above, ACM respectfully requests that the Court enter an order

---

[2] SS&C also objects that ACM's requests are not proportionate to the needs of this case. Discovery on other customers' problems is allowed if adequately focused. In *Bartold*, plaintiff sought "specific customer complaints, lawsuits, and previously identified concerns of which [defendant's] compliance department was aware" in order to "understand whether [defendant] knew of similar mistakes that had been made in other customers' reverse mortgages at the time that [defendant] engaged in the underlying dispute" with him. 2016 WL 7493950, at *5. The court disagreed with defendant that the requests were not proportional and would impose "impossible burdens" and found that it "would not be impossible for [defendant] to prepare; rather, it would simply require [it] to determine whether it was aware of any relevant prior instances where mistakes were made in connection with the onboarding or correction of a reverse mortgage." *Id.* Here, ACM's requests are proportional because they are limited to other CAMRA customers' problems with implementation from April 1, 2014 through May 1, 2017.

Hon. Jeffrey A. Meyer
September 28, 2017
Page 4

requiring SS&C to respond to ACM's Interrogatory Nos. 3-6 and Document Request Nos. 19 and 20, on an expedited basis, but no later than Tuesday, October 2, 2017.

        Respectfully submitted,

        HOLLAND & KNIGHT LLP

        Allison Kernisky

CC:    All counsel of record.