IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARMOUR CAPITAL MANAGEMENT LP, | ) | CIVIL CASE NO. |
| Plaintiff, | ) | 3:17cv00790 (JAM) |
| | ) | |
| v. | ) | |
| | ) | |
| SS&C TECHNOLOGIES, INC., | ) | |
| Defendant. | ) | OCTOBER 4, 2017 |

**DEFENDANT'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Defendant SS&C Technologies, Inc. ("SS&C"), by and through undersigned counsel, respectfully submits this reply in further support of its Motion to Dismiss First Amended Complaint and Demand for Jury Trial pursuant to Fed. R. Civ. P. 12(b)(6).

**INTRODUCTION**

**I.   ACM HAS SHIFTED ITS THEORY (AND ITS FACTUAL ALLEGATIONS) TO AVOID THE CONTRACTUAL LIMITATIONS PERIOD AND THE PROVISIONS OF THE MASTER AGREEMENT IT BARGAINED FOR.**

In its attempt to avoid the Contractual Limitations Period in the Master Agreement, Plaintiff Armour Capital Management, LP ("ACM") has attempted to alter the theories of its Amended Complaint ("Am. Compl.") (Dkt. No. 35) and ask the Court to disregard the factual allegations it has already made. ACM has already overhauled its theories to avoid SS&C's first motion to dismiss the original complaint. This latest attempt is no different than the first.

**A.   ACM's Inconsistent Assertions.**

ACM contends in its Amended Complaint that it "repeatedly notified SS&C of its failure to implement CAMRA in writing" as early as 2015. Am. Compl., ¶ 45. ACM further asserts that it "began to withhold payment due to SS&C's failure to implement

1

CAMRA" as early as fall of 2015, and that ACM "provided SS&C countless opportunities to cure that failure." *Id.*, at ¶¶ 44, 45. Leaving little doubt as to ACM's theory of breach, ACM explicitly states in its Amended Complaint that "SS&C **serially breached material terms** of the Master Agreement by, among other things, **failing to implement CAMRA** for ACM and **failing to cure** its inability to do so . . . ." *Id.*, at ¶ 58 (emphasis added).

After being confronted with the terms of the Contractual Limitations Period, which bars claims if not brought within one year of when "a party knew or reasonably should have known of the breach or claimed breach," and with ACM's own allegations identifying when ACM actually knew of the claimed breach, ACM makes the contrary assertion in its Opposition to the Motion to Dismiss that "[p]rior to May 1, 2017, ACM did not provide SS&C written notice of a material breach under the Master Agreement." Plaintiff's Opposition to Motion to Dismiss First Amended Complaint ("Opposition") (Dkt. No. 49), at p. 10. A party cannot hope to avoid dismissal of its complaint by making assertions contrary to its own allegations. *See Konrad v. Epley*, No. 12-CV-4021 JFB ETB, 2013 WL 6200009, at *24 (E.D.N.Y. Nov. 25, 2013), *aff'd,* 586 F. App'x 72 (2d Cir. 2014) (granting a defendant's motion to dismiss where the plaintiff "in an attempt to avoid the relevant statutes of limitations, submitted factual claims in her papers in opposition to the motions to dismiss that directly contradict the facts set forth in both the operative complaint and the proposed amended complaint."). *See also Uddoh v. United Healthcare*, No. 16CV1002BMCLB, 2017 WL 2242870, at *4 (E.D.N.Y. May 22, 2017) ("A plaintiff, however, is not permitted to interpose new factual allegations or a new legal theory in opposing a motion to dismiss, let alone new allegations that contradict the

allegations in their pleading."); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (complaint cannot be amended to add new factual allegations in opposition to motion to dismiss).

ACM's attempt to avoid dismissal under the Contractual Limitations Period should not be permitted. ACM asserted numerous allegations about SS&C in an effort to paint SS&C as a deceitful organization that devised a plan to defraud ACM. ACM deliberately asserted in its Amended Complaint that SS&C's alleged serial breaches began in the fall of 2015. ACM cannot now credibly dispute that the Contractual Limitations Period bars claims for alleged breaches beyond one year from the filing of the Original Complaint.

### B. ACM's Attempt to Create New Contractual Provisions and Avoid Those Currently in Place.

In its attempt to avoid the Contractual Limitations Period, ACM tried to create a new contractual provision, which is not in the Master Agreement or the Work Requests. In its Opposition, ACM suggests that the Master Agreement provides for two separate and distinct situations "in which a party can terminate: (1) the non-breaching party provides written notice to the breaching party of its material breach and the party fails to cure within 30 days; or (2) if a breach is incapable of being cured, the non-breaching party may declare a material breach without waiting for cure." Opposition, at p. 10.

Option 1 is set forth in Section 6.4.2(a) of the Master Agreement, which provides:

> "SS&C or Client may, by written notice to the other party, terminate this Master Agreement if . . . Either SS&C or Client is in breach of any material term, condition or provision of this Master Agreement . . . , which breach, if capable of being cured, is not cured within thirty (30) days after the non-breaching party gives written notice of such breach."

Indeed, as explained above, the written notification of breach and opportunity (and subsequent failure) to cure is the basis upon which ACM based its Amended Complaint.

Option 2, which ACM alleges the Master Agreement explicitly "defines" as an option for a party to terminate, is not in the Master Agreement at all, but rather, is made up by ACM out of whole cloth for the first time in its Opposition. ACM attempts to create this supposed option to unilaterally (and arbitrarily) declare a material breach, not only contrary to what ACM alleged in its Amended Complaint, but also as part of an attempt to avoid the Contractual Limitations Period in a way most convenient to ACM.

Section 6.4.2 of the Master Agreement identifies the circumstances upon which a party can terminate the Master Agreement. However, it is Section 6.7.16, the Contractual Limitations Period, which defines when a cause of action accrues. The Contractual Limitations Period explicitly provides that "a cause of action will be deemed to have accrued when a party knew or reasonably should have known of the breach or claimed breach." Am. Compl, Ex. A., at p. 9. The Contractual Limitations Period defines the degree of knowledge required for a cause of action to accrue. It does not provide an option, as ACM suggests in its Opposition, for a party to wait idly by knowing (or reasonably should be knowing) that another party is allegedly in breach of its obligations, and then pick an arbitrary point in time to "declare" a material breach.

ACM may now want a different contract than the one it bargained for; however, the negotiating table, not this Court, was the proper venue for ACM to seek terms different from those to which it agreed.

## II. THE CONTRACTUAL LIMITATIONS PERIOD OPERATES DIFFERENTLY THAN A STATUTE OF LIMITATIONS.

ACM's explanation as to why the Contractual Limitations Period should not apply is flawed for multiple reasons.

ACM fundamentally misunderstands that a contractual limitations period is different than a statute of limitations. Every Connecticut-based case that ACM cites deals with statutes of limitations, as opposed to contractual limitations periods. ACM inaccurately cites to *Fabcon E., L.L.C. v. Stegla Grp., Inc.*, No. CIV. 10-4601 DRD, 2011 WL 2293454, at *1 (D.N.J. June 8, 2011), Opposition, at p. 11, as authority coming from the District of Connecticut, when in fact that case was decided by the District Court for the District of New Jersey. Further, ACM's arguments are flawed, as explained more fully below.

This Court, citing to several controlling opinions from the Connecticut Supreme Court, has noted that "the state courts of Connecticut have held [contractual limitations] provisions valid and enforceable for more than a century, holding that a contractual provision that limits the time within which a party can bring suit is valid, **does not operate as a statute of limitations**, and **is not susceptible to exceptions that excuse suits which are untimely under the statute of limitations**." *Air Brake Sys., Inc. v. TUV Rheinland of N. Am., Inc.*, 699 F. Supp. 2d 462, 471 (D. Conn. 2010) (emphasis added). That is, with respect to contractual limitations periods, all of "[t]he rights of the parties flow from the contract" itself. *Chichester v. N.H. Fire Ins. Co.,* 74 Conn. 510 (1902).

ACM's Opposition to the effect of the Contractual Limitations Period relies on the

5

theory of equitable estoppel, a judicially-created doctrine used to excuse untimeliness in connection with statutes of limitations. This judicially-created excuse is not contained in the contract itself, which is the sole source of the parties' remedies. The estoppel theory that ACM posits, not being contained or contemplated by the contract itself, is therefore inapplicable. *See Air Brake Sys., Inc.*, 699 F. Supp. 2d at 471.

Moreover, even it were assumed that equitable estoppel could be asserted notwithstanding the lack of provision for such in the contract itself, that "extraordinary" relief would still not be available. The Second Circuit has firmly established that "[e]quitable estoppel . . . is an extraordinary remedy, which should be invoked sparingly and only under exceptional circumstances." *Twersky v. Yeshiva Univ.*, 579 F. App'x 7, 10 (2d Cir. 2014) (internal quotation marks and citations omitted). Further, the Second Circuit has stated that when a plaintiff tries to rely on equitable estoppel "the plaintiff must specifically plead facts that make entitlement to estoppel plausible (not merely possible)." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015).

To invoke equitable estoppel, there are two essential elements that must be established: one "party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done." *Johnnycake Mountain Assocs. v. Ochs*, 104 Conn. App. 194, 208–09 (2007).

ACM cannot—as a matter of law—establish entitlement to estoppel. Not only are its averments as to the alleged fraudulent inducements that supposedly strung ACM

6

along lacking in requisite specificity, but ACM again ignores the clear import of the Master Agreement. The Master Agreement specifies that ACM could have terminated the agreement after the requisite 30 days' notice and failure to cure, at which point a breach would have allegedly occurred by the terms of the contract. ACM was aware of any alleged breaches as early as the fall of 2015, yet waited until May of 2017 to bring suit. "Equitable estoppel principles have not saved untimely actions where induced delay did not justify the extent of plaintiff's subsequent slumber." *Kotec v. Japanese Educ. Inst. of N.Y.*, 321 F. Supp. 2d 428, 433 (D. Conn. 2004) (citing *Kavowras v. New York Times Co.*, 328 F.3d 50, 56-57 (2d Cir. 2003) (holding any inducement of delay in the third month of a six month statute of limitations did not justify plaintiff's ensuing sixteen month delay in filing suit)).

Even if ACM's allegations that it was aware of supposed breaches in 2015 in the Amended Complaint were disregarded, ACM admits that, "[b]y April 2016, SS&C had not implemented CAMRA and also exceeded the budget set by Work Request 1," Opposition, at p. 4, and that April 20, 2016, could serve as an appropriate limitations period accrual point for all work embodied in Work Request 1, *id.* at p. 9. Consequently, all work under Work Request 1, by ACM's own admission, is barred by the Contractual Limitations Period.

ACM's suggestion that Work Requests 2 and 3 revived its time-barred claims is refuted by the terms of the provisions in the documents themselves, and as a matter of Connecticut law. There is nothing contained in Work Request 2 or 3 to even suggest, let alone establish, that SS&C was somehow waiving any of its contractual defenses or

7

agreeing to toll the Contractual Limitations Period—and ACM does not allege otherwise. To the contrary, Work Requests 2 and 3 both contain explicit provisions that the Master "Agreement remains in full force and effect." Am. Compl, Ex. B at. p. 1; Am. Compl, Ex. C, at p.1.  Moreover, Connecticut law is clear that "the continuing course of conduct doctrine has no application after the plaintiff has discovered the harm." *Rosato v. Mascardo*, 82 Conn. App. 396, 405 (2004) (citing *Rivera v. Fairbank Management Properties, Inc.,* 45 Conn. Supp. 154, 160 (1997) (policy behind continuing course of conduct doctrine, which is to provide opportunity to remedy potential harm, no longer has any force once harm discovered)).

Here, ACM was, by its own admission, aware of alleged "serial[ ]" breaches of the Master Agreement by SS&C, but nevertheless, opted not to timely bring suit. ACM does not attempt to explain why the Contractual Limitations period does not release ACM's CUTPA and misrepresentation claims as set forth in Part I(C) of SS&C's Motion to Dismiss.  *See* Opposition, at p. 12.  Likewise, ACM makes no real effort to explain why the Economic Loss Doctrine does not bar its tort claims other than the conclusory assertion that the tort claims are "independent" from ACM's contract claims. ACM surprisingly cites to *Factory Mut. Ins. Co. v. Pike Co.*, No.  3:08-cv-01775 (VLB), 2009 WL 1939799, at *3 (D. Conn. July 6, 2009), wherein the court dismissed the plaintiff's tort claims because they were duplicative of the contract claims, which is exactly the scenario with ACM's tort claims.

In sum, ACM's claims are barred by the Contractual Limitations Period.

### III.  <u>ACM'S BAIT AND SWITCH NARRATIVE IS ILLOGICAL</u>

ACM's "bait and switch" narrative does not support its claims of fraud and misrepresentation.

ACM admits that it actively sought out SS&C for its services after the diligent research of ACM's CFO and COO.  Am. Compl, ¶ 14.  ACM then fundamentally mischaracterizes the nature of the complex accounting system project that the Master Agreement details.  ACM represents that it purchased a hands-off, "turnkey" solution.  AC, Introduction.  The notion of the complex CAMRA system and the necessary client involvement in the implementation process being "turnkey" is contradicted by the fact that ACM did not even seek the implementation option that would require the least amount of client involvement (i.e., outsourcing).  See Am. Compl, ¶ 19 (describing three implementation options).

In an effort to prop up ACM's "bait and switch" narrative, ACM ignores the language contained in the Master Agreement.  ACM represents that SS&C "cite[d] no contractual provision under which ACM undertook the duty to implement, and none exists."  Opposition, at p. 3.  In connection with that representation, ACM directs this Court's attention to p. 12 of the Motion to Dismiss.  Conveniently, ACM ignores SS&C's multiple references (see Motion to Dismiss, at pp. 2, 11) to Work Request 1's explicit language indicating that SS&C would be providing implementation services and training **"in support of [ACM's] implementation of the Software."** (emphasis added).

The "bait and switch" narrative is most clearly exposed by ACM's recognition that, from Work Request 2 onward, "SS&C expressly agreed **not to receive another**

**dollar** for implementation until CAMRA had been implemented for ACM." Opposition, at p. 5. As ACM states, at the time Work Request 2 was executed, "SS&C had not implemented CAMRA." *Id.* at p. 4. It would be completely unreasonable for SS&C to agree to Work Request 2, cap all its fees until successful implementation, and then proceed to work on the project (including staffing the project with, by ACM's own count, at least 7 employees, Am. Compl, ¶ 41) for over a year, if SS&C was trying to "bait and switch." Rather, ACM's own admissions of the actual facts shows that SS&C was actively engaged in an effort to make the project work, and aligned its own interests accordingly.

## CONCLUSION

For the foregoing reasons, Defendant SS&C Technologies, Inc. respectfully requests that the Court **GRANT** Defendant's Motion to Dismiss First Amended Complaint with prejudice, and without leave to amend.

Respectfully submitted,

THE DEFENDANT,
SS&C TECHNOLOGIES, INC.

By_____/s/ *Jeffrey J. Mirman*_____
Jeffrey J. Mirman (ct05433)
Alexa T. Millinger (ct29800)
HINCKLEY ALLEN & SNYDER, LLP
20 Church Street, 18th Floor
Hartford, Connecticut 06103
jmirman@hinckleyallen.com
Telephone: (860) 331-2762
Facsimile: (860) 278-3802

                                                Kevin J. O'Connor (phv09058)  
                                                Jason C. Williams (phv09212)  
                                                28 State Street, Boston, MA 02109-1775  
                                                koconnor@hinckleyallen.com  
                                                jwilliams@hinckleyallen.com  
                                                Tel: (617) 378-4394  
                                                Fax: (617) 345-9020

**CERTIFICATION**

I hereby certify that on October 4, 2017, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be send by email to all parties by operation of the Court's electronic filing system or by mail to any counsel or self-represented party unable to accept electronic filing, as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

　　　　　　　　　　　　　　　　　/s/ *Jeffrey J. Mirman*
　　　　　　　　　　　　　　　Jeffrey J. Mirman (ct05433)

#57201272