

28 State Street
Boston, MA 02109-1775

p: 617-345-9000  f: 617-345-9020
hinckleyallen.com

*Kevin O'Connor*
koconnor@hinckleyallen.com

November 17, 2017

**VIA CM/ECF**

The Honorable Jeffrey A. Meyer
United States District Court
141 Church Street
New Haven, CT 06510

    Re:    Civil Action No. 3:17cv00790 (JAM)
             <u>Armour Capital Management LP v. SS&C Technologies, Inc.</u>

Dear Judge Meyer,

    SS&C submits this brief reply to ACM's supplemental letter brief in opposition to ACM's Motion to Dismiss (Doc No. 60).

    The supplemental authority ACM cites is wholly distinguishable from the case at hand. The two Connecticut cases ACM cites do not support the premise that "the time of a services contract's completion – and not injury – may determine when breach occurs." (Doc. No. 60, p. 1). Importantly, as the Court predicted at oral argument, both of the Connecticut cases relied on the applicable statute of limitations, not a contractual limitations period, as here. In *Calabrese v. Finno Development,* NoCV990151991S, 2001WL59002 (Conn. Super. Ct. May 14, 2001), the court construed the statute of limitations for contract actions to hold that the earliest the plaintiffs could have maintained an action against the defendant contractor was when the home they contracted for was entirely built, not when just the roof was completed, since the contract was for the construction of an entire home. *Id.* at *2.

    *Skidmore, Owings and Merrill v. Connecticut General Life Insurance Co.,* 25 Conn. Supp. 76 (Conn. Super. Ct. 1963) is similarly inapposite. In that case, the court held that a plaintiff's demand to arbitrate a breach of contract claim against the defendant architect related to a contract to perform services on construction of an office was not time-barred because the breach of contract claim explicitly related to the architect's failure to use reasonable care and properly discharge its duties, which was a

The Honorable Jeffrey A. Meyer
November 17, 2017
Page 2

continuous obligation and therefore the statute of limitations did not begin to run until the project was complete. *Id.* at 92, 93-94.

In any event, those cases were not governed by a contractual limitations period, and, in light of the reasoning of the Court in *Air Brake Systems, Inc. v. TUV Rheinland of North America, Inc*., 699 F. Supp. 2d 462 (D. Conn. 2010), have no applicability here. Here, as in *Air Brake Systems*, "the period of limitation arises from contract, and not by statute. Because the continuing-course-of-conduct exception is a judicially created doctrine to toll statutes of limitation, it is doubtful whether it should apply in this case. . . .[P]eriods of limitation that the parties create by *contract* are not susceptible to statutes and doctrines that toll the relevant period of limitation that arises by *statute*. Id., at 474 (italics in original).

The two out-of-state cases ACM cites also have no bearing on this case. Those cases simply do not stand for the proposition that a claim accrues at the time of contract termination, as ACM argues. Those cases both rejected claims that a cause of action accrued at the time of a "target date" for implementation of software that was not memorialized a contractual condition. SS&C does not make any such claim here.

For instance, *SER Solution, Inc. v. Masco Corp.,* 103 Fed. Appx. 483 (4th Cir. 2004) involved the defendant contracting with the plaintiff for the plaintiff to install a software package. The contract did not have a fixed date for installation, but the parties set August 1, 2001 as a target date. *Id.* at 485. When installation was not complete seven months past the target date and the plaintiff recommended the defendant purchase additional products, the defendant terminated the contract. *Id*. The plaintiff sued the defendant for failing to pay and the defendant countersued. Before the court was the applicability of the contractual limitations period which stated that no action arising out of the agreement may be brought "more than one year after such action [accrued]." *Id.* at 486. The court disagreed with the plaintiffs contention that the defendant's breach of contract claim accrued on August 1, 2001, the informal completion date, because there was no evidence of breach at that time. *Id.* Rather, the court held that the cause of action accrued when "the first indication of serious problems with [the plaintiff's] product appeared in the spring of 2002" and the plaintiff, rather than correcting the problem, requested additional monies. *Id.* The court held that it was at that point that the defendant's cause of action accrued – which happened to be the same time the defendant decided to terminate the contract. *Id.* The court did not hold that the termination of the contract caused the claim to accrue. The termination merely happened to take place around the time the cause of action accrued.

The facts and ruling in *Ross Network, Inc. v. RSM McGladrey,* No. 19475, 2006 WL 1160007(N.Y. Sup. Ct. May 1, 2006) are even less relevant. In that case, the plaintiff had entered into a contract with the defendant to finance a new computer software from the defendant. *Id.* at *1. Despite no installation deadline fixed by the contract, the plaintiff brought suit against the defendant when the installation was not complete more than two years after the June 2003 target date. *Id.* The contract

contained a limitations clause that prohibited claims brought more than one year after the cause of action accrued. *Id.* The court rejected the argument that the cause of action accrued in June 2003, but held that it "cannot determine from a fair reading of the complaint . . . precisely when the events that give rise to the various breach of contract claims occurred. *Id*. at *2. The court, in dicta, discussed that a contract for continuing performance may involve various breaches and re-commencements of limitations periods, presumably because the parties had entered into a contract for a five-year period. *Id.* The court did not discuss the specific basis for the breach of contract claims, therefore it is impossible to determine if they bear any similarity to the present case.

Here, ACM cannot show a continuing obligation because ACM's claim explicitly refers to SS&C's alleged failure to implement CAMRA. ACM, by its own admission, had facts necessary to bring its claim of breach of contract in 2015 when it withheld payment from SS&C. (Am. Compl., Doc. No. 35, ¶¶44-45).  Furthermore, the out-of-state cases cited by ACM are also distinguishable because the contracts at issue in those actions contained contractual limitations language narrower than the language at issue here. Both of those cases barred claims brought later than one year after the "cause of action accrued." In this case, the relevant limitations language in the Master Agreement provides that "a cause of action will be deemed to have accrued when a party knew or reasonably should have known of the breach or claimed breach." (Am. Compl. Exh. A, §6.7.16). As discussed in SS&C's Motion to Dismiss and at oral argument, ACM cannot claim that it did not know or should not have reasonably known of any breach or claimed breach when it withheld payments in 2015 based on alleged breach of the Master Agreement.  (Mot. to Dismiss Am. Compl, Doc. No. 42, pp. 19-20).

For the foregoing reasons and all the reasons cited in SS&C's Motion to Dismiss ACM's Amended Complaint and Reply in support thereof, SS&C respectfully requests that this Court grant SS&C's Motion to Dismiss in its entirety, with prejudice.

Very truly yours,

HINCKLEY ALLEN & SNYDER, LLP


_____*/s/ Kevin J. O'Connor*_____
Kevin J. O'Connor
Counsel to Defendant SS&C Technologies

KJO/am