# Holland & Knight

701 Brickell Avenue, Suite 3300 | Miami, FL 33131 | T 305.374.8500 | F 305.789.7799
Holland & Knight LLP | www.hklaw.com

Allison Kernisky
305-349-2175
allison.kernisky@hklaw.com


March 1, 2018

*Via CM/ECF*

Honorable Jeffrey A. Meyer
U.S. District Judge, District of Connecticut
Richard C. Lee United States Courthouse
141 Church Street, Courtroom 3
New Haven, CT 06510

      Re:    *ARMOUR Capital Mgmt. LP v. SS&C Techs. Inc.*, No. 17-cv-00790-JAM.

Dear Judge Meyer:

      In accordance with ECF No. 65, ARMOUR Capital Management LP ("ACM") respectfully submits this letter brief in support of several discovery requests SS&C Technologies Inc. ("SS&C") has resisted. These requests focus primarily on the emergence in discovery of SS&C's "problematic" and "lengthy/over budget" implementations of CAMRA—the product at issue—for its four "licensed REIT clients," of which ACM was one, in 2015-17. ACM also seeks the Court's guidance with respect to four of the parties' remaining depositions.

### *Background*

      The heart of this dispute is the failure by SS&C, a multi-billion dollar technology outfit and CAMRA's developer, to implement CAMRA for ACM. ACM's First Amended Complaint (ECF No. 35) ("FAC") alleges claims for breach of contract based on that failure and SS&C's pre- and post-contractual misrepresentations regarding what products and services SS&C told ACM were appropriate for it and the qualifications, experience, and outcomes ACM could expect.

      Although SS&C has not yet filed an answer, its defensive theory has two parts: (1) ACM was required to implement CAMRA for itself and (2) the failed implementation was ACM's fault. The former enjoys no support in the parties' operative agreement or other documents. With respect to the latter, discovery has revealed that at the same time that ACM's implementation was failing, so too were the implementations of SS&C's other three "licensed REIT clients."[1] J. Timothy Reilly, a Senior Vice President at SS&C, termed this issue as "4 problem REIT implementations." Logically, these "problem[s]" have been the subject of follow-on discovery by ACM.

---

[1] They are Bimini Capital Management Inc. ("Bimini"), Resource Capital Corp. ("Resource") and Fortress Investment Group ("Fortress").

Anchorage | Atlanta | Austin | Boston | Charlotte | Chicago | Dallas | Denver | Fort Lauderdale | Houston | Jacksonville | Lakeland
Los Angeles | Miami | New York | Orlando | Portland | San Francisco | Stamford | Tallahassee | Tampa | Tysons
Washington, D.C. | West Palm Beach

Hon. Jeffrey A. Meyer
March 1, 2018
Page 2

### *Disputes Regarding ACM's Document Requests*

Discovery obtained as recently as the week of February 12, 2018, has shown that SS&C's approach to implementing CAMRA for "licensed REIT clients" was helter-skelter.

Iwona Olszewska, the head of SS&C's implementations team, Professional Services, complained frequently that Sales excluded her from the sales process, which put pressure on her to make solutions work. Another executive believed Sales underpriced implementations, forcing Professional Services to complete them with fewer resources. Nine months into ACM's contract— at the same time that SS&C restarted ACM's implementation from scratch—Ms. Olszewska was removed. Her "upgrade," as Mr. Reilly put it, himself was fired from SS&C in late 2016.

These events were not isolated. SS&C was having massive difficulties completing the implementations of its four "licensed REIT clients." As early as July 2015, the head of SS&C's REIT Servicing Group, Daniel Pallone, identified an SS&C "resource allocation" issue on the ACM implementation, which eventually infected all of SS&C's implementations for "licensed REIT clients." According to Mr. Pallone, SS&C was "cannibalizing" these clients with bad "onboarding experiences," and he worried that SS&C would lose *all* of its REIT business.

The bottom line is that SS&C had systemic problems with implementation for at least all four of its "licensed REIT clients." This is the material ACM's initial discovery responses in June 2017 sought to uncover because it is relevant to ACM's claims and SS&C's defenses, including issues of notice, causation, and defect. ACM also served follow-on discovery regarding these problems in December 2017. With the discovery ACM has elicited, a compelling predicate exists for SS&C to produce additional documents within the scope of ACM's prior requests.

### *Bimini*

On June 26, 2017, ACM served the following document requests:

> 19.   All Documents, including Communications, reflecting or relating to the uncompleted implementation of CAMRA for any Person other than ACM.

> 20.   All Documents, including Communications, reflecting or relating to any complaints, failures, accidents, incidents, problems, damages, or similar occurrences with CAMRA that did not involve ACM.

By the time of SS&C's July 26, 2017 responses, SS&C knew that Bimini's and Resource's (and perhaps also Fortress's) implementations were incomplete and years behind schedule, yet SS&C refused to produce responsive documents. This prompted a hearing in September 2017, during which SS&C argued primarily that producing such documents was burdensome. Thus, the Court, *without prejudice*, ordered SS&C to produce responsive documents subject to a carve out for implementations that were incomplete for reasons idiosyncratic to the SS&C client.

But when it came time for production, SS&C refused to produce documents relating to Bimini's implementation because they purportedly were subject to the carve-out. According to

Hon. Jeffrey A. Meyer
March 1, 2018
Page 3

SS&C, Bimini's implementation had been completed, but Bimini simply chose not to "go live" with CAMRA. This claim was false. In January 2018, Bimini attested that SS&C had failed to implement CAMRA for it on a hosted basis, even though Bimini had satisfied all of SS&C's requests concerning the implementation. *See* Jan. 29, 2018 Aff. G. Hunter Haas, IV at ¶¶ 6-7, attached at Exhibit A. Thus, SS&C knew that it was required to produce Bimini documents under the Court's September 29, 2017 order but   withheld them on a misleading premise. When confronted with this proof, SS&C promised to produce these documents, but to date, five months overdue, SS&C's production remains out of compliance with the Court's September 2017 order.

### *Fortress and Resource*

The Court also ordered at the September 2017 hearing that if ACM found, through discovery, that there was a basis for SS&C to produce additional documents related to other clients, ACM could seek modification of the September 29, 2017 order.

Since that time, discovery has shown that the massive problems and years-long delays with implementation were not limited to ACM or Bimini but also were happening with Resource and Fortress. This new information is responsive to ACM's June 26, 2017 requests, and in accordance with the September 2017 hearing, SS&C should be required to produce it. But rather than demand that SS&C produce *all* responsive documents, ACM voluntarily limited SS&C's burden to:

- SS&C's resource allocation, lack of client commitment, or any other issues that delayed implementations for the four "licensed REIT clients" or caused them to fail, including weekly status reports documenting SS&C's understanding of the causes of the delays;

- Leadership changes within Professional Services, including the removal and replacement of Ms. Olszewska in 2015, the hiring and firing of her replacement in 2015 and 2016, respectively, and the reduced responsibilities of Mr. Reilly starting in April 2017; and

- The strained relationship between Professional Services and Sales in 2014, before ACM signed its operative agreements with SS&C. (For a fuller description, see Exhibit B.)[2]

SS&C has refused to produce documents relating to even these issues. This despite the fact that ACM also agreed to exclude day-to-day minutiae by limiting SS&C's production to only the management-level custodians and narrowly tailored search terms.

At any rate, these documents are probative of the reasons ACM's implementation failed and SS&C's breach of its contract with ACM; the truth of SS&C's pre-contract misrepresentations that hosting was appropriate and SS&C had the qualifications and experience to implement CAMRA for ACM; and the truth of SS&C's post-contract misrepresentations on these matters.

---

[2] These issues also are discoverable because of the Bimini implementation, described *supra*, and, are responsive to ACM's June 26, 2017 Document Requests, attached at Exhibit C, Nos. 6, 11, 12, 13, 20, and 24, and its December 22, 2017 Document Request Nos. 4-11, attached at Exhibit D.

Hon. Jeffrey A. Meyer
March 1, 2018
Page 4

### *Disputes Regarding Certain Depositions*

SS&C has subpoenaed ARMOUR Residential REIT Inc. (the "REIT"), and ACM's auditors, Deloitte, for vast swaths of documents, including essentially Deloitte's entire working file, and to depose their corporate representatives (*see* Exhibits E and F, respectively).

These subpoenas should be quashed because SS&C has not established any predicate for this discovery, and it is a harassing fishing expedition. SS&C premises the subpoenas on a theory that ACM sought out SS&C to upgrade its portfolio accounting solution, which would seem true for any SS&C client. SS&C also claims that ACM was motivated by past accounting deficiencies, but despite its extensive document requests and deposition questioning on this issue, it has elicited no proof. SS&C similarly has elicited no proof that the REIT or Deloitte have any documents or knowledge about anything relevant to this case. And even if SS&C had any predicate for the discovery, the subpoenas are overbroad and unduly burdensome and invade various privileges.[3]

ACM also requests an extra hour each to complete Ms. Olszewska's and Mr. Pallone's depositions beyond the approximately one hour remaining in each deposition (i.e., for a total of two hours each). Although a non-controversial request given the witnesses' importance, SS&C has refused. SS&C abruptly terminated Mr. Olszewska's deposition (mid-question, no less), Mr. Pallone's deposition was unable to be completed despite starting earlier than scheduled at his request, and in both cases, SS&C's counsel's many lengthy speaking objections depleted ACM's time. Outstanding discovery from SS&C also supports this request. Among other things, it was not until Mr. Pallone's February 2018 deposition that ACM learned of SS&C's "Implementation Playbook," which appears to be squarely responsive to ACM's June 26, 2017 document request No. 10. SS&C has committed to producing that document to ACM but has not yet done so.

For the reasons set forth above, ACM respectfully requests that the Court enter an order requiring SS&C to fully respond to ACM's June 26, 2017 Document Request Nos. 6, 11, 12, 13, 20 and 24 and ACM's December 22, 2017 Document Request Nos. 4-11 by producing documents as described in Exhibit B, quashing the subpoenas to the REIT and Deloitte, and allowing ACM two hours with each Ms. Olszewska and Mr. Pallone to finish their depositions.

Respectfully submitted,

HOLLAND & KNIGHT LLP

Allison Kernisky

CC:     All counsel of record.

---

[3] ACM will submit formal briefing to quash the subpoenas if the Court so instructs.