# Exhibit C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | |
|---|---|
| ARMOUR CAPITAL MANAGEMENT LP, | Case No. 17-cv-00790-JAM |
| Plaintiff, | |
| v. | June 26, 2017 |
| SS&C TECHNOLOGIES INC., | |
| Defendant. | |

**ARMOUR CAPITAL MANAGEMENT LP'S**
**FIRST REQUEST FOR PRODUCTION TO SS&C TECHNOLOGIES INC.**

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff, ARMOUR Capital Management LP ("ACM"), serves its First Request for Production (the "First Request") to Defendant, SS&C Technologies Inc. ("SS&C"). Such production shall occur on July 26, 2017, at Holland & Knight LLP, One Stamford Plaza, 263 Tressler Boulevard, Suite 1400, Stamford, CT 06901.

**DEFINITIONS**

1. ACM incorporates by reference the definitions and rules of construction set forth in Rule 26(c) and (d) of the Local Civil Rules of the United States District Court for the District of Connecticut as if fully set forth herein, including the definitions of "Communication," "Document," "Parties," and "Concerning," and the rules of construction for "All/Each," "And/Or," and "Number."

2. "You," "Your," and "SS&C" mean Defendant, SS&C Technologies Inc., and Your employees, officers, directors, shareholders, members, partners, attorneys, agents, managers, representatives, and each and every Person acting on Your behalf or at Your direction.

3. "ACM" means Plaintiff, ARMOUR Capital Management LP and ACM's employees, officers, directors, shareholders, members, partners, attorneys, agents, managers, representatives, and each and every Person acting on ACM's behalf or at its direction.

4. "Complaint" means the Complaint and Demand for Jury Trial filed by ACM in this lawsuit on May 15, 2017.

5.      "Master Services Agreement" means the Master Agreement for Software, Maintenance and Support, Professional Services, and Other Services between ACM and SS&C dated December 19, 2014, including all incorporated attachments and work requests, as referenced in and attached to the Complaint at Exhibits A-C.

6.      "CAMRA" means, collectively, the products and services offered by SS&C to ACM under the Master Services Agreement, including CAMRA, CI Manager, Impairments Manager, Report Express, TBA Dollar Roll, Extend, Swaps, or Debt & Derivatives, and all versions of such software and all related services, including maintenance, support, and hosting, as referenced at paragraph 13 of the Complaint.

7.      "Including" means including but not limited to.

8.      The terms "discussing," "referring to," "referencing," "regarding," "reflecting," "relating to," "pertain to" or "pertaining to" mean setting forth, pertaining to, memorializing, constituting, embodying, discussing, analyzing, reflecting, concerning, relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts, or contradicts.

9.      The term "Person" or "Persons" shall mean any natural person, individual, corporation, real estate investment trust ("REIT"), partnership, joint venture, firm, voluntary or unincorporated association, other business association, entity or enterprise, proprietorship, trust, estate, governmental agency, board, authority, commission, bureau, department or such other governmental or quasi-governmental entity, group of natural persons, or other entity and includes any other natural person or person acting on behalf of a natural person in any capacity whatsoever.

10.     The term "Contact Information" shall refer to the full name and last known title, location, telephone number, street address, and e-mail address of any Person.  If the Person for which You are asked to provide Contact Information is or was an employee of You, please also identify all of the positions the employee held with You and the corresponding dates the employee held such positions.

## **INSTRUCTIONS**

1.      Unless otherwise indicated, the time frame applicable to these requests for production is **September 1, 2014, through the present.**

2.      When answering these requests, You must furnish all Documents available to You, including Documents in Your possession, custody or control or in the possession, custody or control of related entities, current or former attorneys, experts, accountants, banks, insurers, agents, investigators, employees, representatives, or any other Persons acting on Your behalf.

3.      If You believe that any of the following requests calls for Documents subject to a claim of privilege, answer or produce so much as is not objected to, state that part of each request raising an objection and set forth the basis for Your claim of privilege with respect to such information as You refuse to give, including a statement identifying the nature of the information withheld; for each Document as to which You claim privilege, state the date and subject matter of

2

Case No. 17-cv-00790-JAM

the Document, the name(s) of the Person(s) who prepared the Document and the name(s) of the Person(s) for whom the Document was intended.

4. If any requested Document was once in Your possession, custody, or control but has been destroyed or lost, set forth in writing the contents of the Document, the date the Document was destroyed or lost, and the name of the Person who authorized or directed the destruction of the Document or was last in possession of the Document.

5. If You cannot produce any of the Documents in full, produce to the extent possible and specify in writing the reasons for Your inability to produce the remainder of the Document.

6. After the date of Your initial production of responsive Documents, if additional responsive Documents come into Your possession, custody, or control, such additional responsive Documents must be produced immediately.

### INSTRUCTIONS AS TO ELECTRONICALLY STORED INFORMATION

Electronically stored information ("ESI") is to be produced in 300 x 300 DPI Group IV Monochrome Tagged Image File Format (.TIFF or .TIF) files, with color Documents in Joint Photographic Experts Group (.JPEG or .JPG) files. TIFF and JPEG files shall be produced in single-page format along with Concordance image load files (.OPT). All Documents are to be provided with multi-page extracted or OCR text (.TXT) files indicating page breaks. Extracted text and/or OCR text shall not be embedded in the .DAT file but rather shall be provided as separate, Document-level text files, the names of which shall contain the beginning bates number of the Document. If a Document is provided in native format with a placeholder TIFF (e.g., a MS-Excel or .CSV file), the text file shall contain the extracted text of the native file. Provide any metadata values associated with the produced electronic information in the form of a metadata load text file (.DAT file) and using Concordance standard delimiters. Unless such materials contain privileged information, MS-Excel and .CSV spreadsheets shall be produced in native format. The metadata load file (.DAT) shall contain a link to the produced MS-Excel spreadsheets via data values called "Native Link" and a "TextPath" field containing the path (including the file name) to the extracted text or OCR file for each Document. The Native Link values shall contain the full directory path and file name of the MS-Excel spreadsheet as contained in the produced media. Produce native MS-Excel and .CSV files accompanied by a placeholder .TIFF sheet containing the name of the bates number for each produced file. To the extent such materials contain information subject to a claim of privilege, they shall be produced in the form of redacted .TIFF images. Sequential bates numbers and any confidentiality designation shall be electronically branded on each TIFF image of ESI. Each file name shall be unique and match the bates number of the page. The file name shall not contain any blank spaces and shall be zero padded.

### REQUESTS FOR PRODUCTION

1. All Documents, including Communications, exchanged between SS&C and ACM.

2. All Documents, including Communications, reflecting or relating to any meetings or other Communications, including in-person, web-based, videographic, or telephonic meetings, between SS&C and ACM.

3

3. All other Documents reflecting or relating to Communications regarding ACM, including any Communications internally at SS&C relating to ACM or between You and any third parties (such as BNY Mellon or Citi Prime Finance) relating to ACM.

4. All Documents reflecting or relating to Your standards, policies, practices, procedures, or handbooks applicable to marketing or selling CAMRA.

5. All Documents reflecting or relating to any standards, policies, practices, procedures, or handbooks by which You assess or determine whether CAMRA is suitable for any Person, including whether CAMRA should be hosted, outsourced, or provided to such Person by some other mechanism.

6. All Documents, including Communications, reflecting or relating to SS&C's marketing of CAMRA to ACM.

7. All Documents, including Communications, reflecting or relating to any assessment or determination by You regarding whether CAMRA was suitable for ACM.

8. All Documents, including Communications, reflecting or relating to any agreements between SS&C and ACM, including the Master Services Agreement.

9. All Documents, including Communications, reflecting or relating to Your understanding of what products and services SS&C was required to provide to ACM under the Master Services Agreement.

10. All Documents reflecting or relating to Your standards, policies, practices, procedures, or handbooks applicable to the implementation or use of CAMRA, including any standards, policies, practices, procedures, or handbooks relating specifically to ACM.

11. All Documents reflecting or relating to the experience and qualifications of any Person employed or otherwise retained by You that worked on implementing CAMRA for ACM.

12. All Documents, including Communications, reflecting or relating to SS&C's uncompleted implementation of CAMRA for ACM, including any project plans, task assignments, staffing requests, project cost estimates, work-in-process summaries, percentage-of-completion analyses, time reports, expense reports, testing plans, test results, or status reports, as well as any problems or difficulties with CAMRA.

13. All Documents, including Communications, reflecting or relating to Your understanding of what ACM's role, if any, was in the uncompleted implementation of CAMRA.

14. All Documents, including Communications, reflecting or relating to the date(s) on which CAMRA was to be fully implemented for ACM, including any changes or delays to such date(s) and the cause of any such changes or delays.

15. All Documents, including Communications, reflecting or relating to any training of ACM by You.

16. All Documents, including Communications, reflecting or relating to work done by SS&C's Client Services Team for ACM.

17. All Documents, including Communications, reflecting or relating to any "tickets" submitted to SS&C's Solution Center by ACM or You related to the uncompleted implementation of CAMRA by ACM and any responses by You to such tickets, including all diary entries.

18. All Documents related to SS&C's financial accounting for CAMRA and related implementation and outsourcing services including accounting policies and procedures regarding revenue recognition, warranty liability and expenses as well as any ledger, journal, entry, transaction analysis, forecast, plan or summary of amounts accrued, recorded, recognized, unrecognized or anticipated.

19. All Documents, including Communications, reflecting or relating to the uncompleted implementation of CAMRA for any Person other than ACM.

20. All Documents, including Communications, reflecting or relating to any complaints, failures, accidents, incidents, problems, damages, or similar occurrences with CAMRA that did not involve ACM.

21. All Documents reflecting or relating to Your standards, policies, practices, procedures, or handbooks applicable to Your handling of complaints, failures, accidents, incidents, problems, damages, or similar occurrences.

22. All Documents, including Communications, reflecting or relating to any pending or threatened lawsuits or other claims, other than this one, brought against SS&C involving CAMRA.

23. All Documents, including Communications, reflecting SS&C's fees under the Master Services Agreement, including any fees You believe SS&C is owed.

24. All Documents, including Communications, relating to or supporting any defenses SS&C intends to raise in this lawsuit.

25. All Documents, including Communications, concerning any expert witness SS&C intends to use in this lawsuit.

Case No. 17-cv-00790-JAM

| | |
|---|---|
| Dated: June 26, 2017 | **HOLLAND & KNIGHT LLP** |

                                      By: */s/ Christopher M. Cerrito*
                                          Christopher M. Cerrito (ct17183)
                                          chris.cerrito@hklaw.com
                                          One Stamford Plaza
                                          263 Tressler Boulevard, Suite 1400
                                          Stamford, CT 06901
                                          Telephone: (203) 905-4500
                                          Facsimile: (203) 724-3944

                                      and

                                      By: */s/ Allison Kernisky*
                                            Joseph Mamounas (phv09010)
                                            joseph.mamounas@hklaw.com
                                            Allison Kernisky (phv09011)
                                            allison.kernisky@hklaw.com
                                            701 Brickell Avenue, Suite 3300
                                            Miami, FL 33131
                                            Telephone: (305) 374-8500
                                            Facsimile: (305) 789-7799

                                     *Counsel for ARMOUR Capital Management LP*

## CERTIFICATE OF SERVICE

      I hereby certify that on June 26, 2017, a true and correct copy of this document was served by electronic and U.S. mail on all counsel of record.

                                      By: */s/ Allison Kernisky*
                                           Allison Kernisky (phv09011)