# Holland & Knight

701 Brickell Avenue, Suite 3300 | Miami, FL 33131 | T 305.374.8500 | F 305.789.7799
Holland & Knight LLP | www.hklaw.com

Joseph Mamounas
305-789-7491
joseph.mamounas@hklaw.com

April 2, 2018

*Via CM/ECF*

Honorable Jeffrey A. Meyer
U.S. District Judge, District of Connecticut
Richard C. Lee United States Courthouse
141 Church Street, Courtroom 3
New Haven, CT 06510

      Re:    *ARMOUR Capital Mgmt. LP v. SS&C Techs. Inc.*, No. 17-cv-00790-JAM.

Dear Judge Meyer:

    In accordance with ECF No. 77, ACM[1] respectfully submits this letter brief in support of four outstanding discovery items: 1) SS&C's previous production of Bimini and other documents and its redaction and designation of those materials; 2) SS&C's withholding of documents relating to Fortress and Resource, two other REIT clients whose implementations were failing at the same time as ACM's; 3) SS&C's objection to ACM's deposition of an SS&C witness, Normand Boulanger; and 4) SS&C's depositions of ARMOUR Residential REIT Inc. ("ARR") and Deloitte.

### *Previous Productions of Bimini and Other Documents*

    On March 2, 2018, the Court ordered SS&C to produce internal e-mails relating to its effort to implement CAMRA for Bimini, another of its "4 problem REIT implementations." SS&C made a production on March 26, 2018, but numerous documents also reference ACM and previously should have been—but were not—produced. Whether SS&C's productions are complete thus is unclear. These e-mails also further support the fact that SS&C's deficiencies infected multiple CAMRA implementations, underscoring ACM's need for Resource and Fortress documents.

    Further, long after SS&C claimed in 2017 it had no written procedures for implementing CAMRA, ACM learned from one of SS&C's witnesses in February 2018 that SS&C had an "implementation playbook." By agreement, SS&C later produced one template of the "playbook" but has failed to produce any other iterations—including versions SS&C actually used—or related e-mails. These documents are critical for many reasons, including whether SS&C followed its own procedures for implementation and the allocation of tasks between SS&C and clients.

---

[1] All capitalized terms have the same meaning as in ECF Nos. 68 and 71.

Anchorage | Atlanta | Austin | Boston | Charlotte | Chicago | Dallas | Denver | Fort Lauderdale | Houston | Jacksonville | Lakeland
Los Angeles | Miami | New York | Orlando | Portland | San Francisco | Stamford | Tallahassee | Tampa | Tysons
Washington, D.C. | West Palm Beach

Hon. Jeffrey A. Meyer
April 2, 2018
Page 2

Finally, SS&C has made it a practice to redact and designate documents and information about clients other than ACM, including their implementations, as "Attorney's Eyes Only." There are no grounds for doing so. This designation prevents ACM's counsel from discussing these matters with ACM, which prejudices ACM's ability to prepare and prosecute its case, and the redactions prevent ACM from discovering additional relevant information. SS&C's productions moreover contain no information that is so sensitive or secret that it cannot be produced at all or must be shared with counsel only. SS&C has not identified any demand by its other clients to restrict the release of documents or information concerning their implementations in this litigation, and Bimini has authorized full release to ACM. *See* Jan. 29, 2018 Aff. of G. Hunter Haas IV ¶ 9, attached as Ex. A to ECF No. 68. Finally, any sensitive information is years old and thus stale.

### *Fortress and Resource*

As stated in ACM's earlier letter briefs (ECF Nos. 68 and 71), incorporated by reference, ACM seeks a limited set of documents relating to SS&C's efforts to implement CAMRA for Resource and Fortress, including relating to SS&C's resource allocation issues, leadership changes within Professional Services ("PS"), and its strained relationship with Sales prior to the Master Agreement (as described in the third, fifth, and sixth bullet points in Exhibit B to ECF No. 68). The Court's order on SS&C's motion to dismiss (ECF No. 75) (the "Order") does not change the discoverability analysis. Rather, these documents remain probative of notice (e.g., circumstances rendering SS&C's pre-contractual misrepresentations to ACM negligently made), causation (e.g., between either or both of SS&C's breaches or misrepresentations and ACM's damages), and reasons and defects resulting in the failure of SS&C's implementation for ACM.

### *Normand Boulanger*

The parties initially agreed to the deposition of Normand Boulanger, SS&C's President and COO, who once ran PS, SS&C's dedicated implementation team, in exchange for the deposition of Jeff Zimmer, one of ACM's co-CEOs.

SS&C now has reneged on that agreement and refuses to produce Mr. Boulanger on the basis of the Order.[2] But again, the Order does not change the analysis of whether Mr. Boulanger's deposition is appropriate. This is because Mr. Boulanger has important, unique knowledge and information relevant to this case. Not only did Mr. Boulanger sign the Master Agreement and Work Requests 2 and 3,[3] he also has formed a belief that *supports* ACM's claims. In May 2017, Mr. Boulanger told ACM that SS&C in 2014 "should have" sold ACM the outsourcing (i.e., not the hosting) deployment option for CAMRA. ACM alleges that SS&C negligently misrepresented to ACM during the sales process that hosting was appropriate for ACM.

---

[2] In contrast, ACM is not contesting SS&C's deposition of Mr. Zimmer.

[3] Work Request 2 "expressly incorporated the terms of the Master Agreement" and "imposed a renewed obligation on SS&C to implement the software." (*See* Order at 8.) SS&C's breach of that obligation and ACM's millions of dollars in resulting losses are central issues in this dispute.

Hon. Jeffrey A. Meyer
April 2, 2018
Page 3

SS&C also has admitted that Mr. Boulanger was involved in ongoing discussions about the progress of ACM's unsuccessful implementation, ACM's unpaid bills, and ACM's request in early 2017 to meet with him about its implementation. Finally, Mr. Boulanger participated in the sales process for ACM and other mortgage REITs, bi-weekly internal sales calls and approving sales commissions at SS&C, and personnel decisions for the three individuals who ran PS while ACM's and other mortgage REITs' implementations were failing. Mr. Boulanger, in December 2017, also rehired Iwona Olszewska, a key witness in this case whom SS&C just weeks earlier had fired and who since that time has received a paycheck in exchange for virtually no work.

### *ARR and Deloitte*

On March 2, the Court also ordered that SS&C's subpoenas to ARR and ACM's auditors, Deloitte, were only enforceable to the extent they sought production of certain limited documents. In addition to any objections raised by ARR and Deloitte, which are not a subject of the upcoming April 3, 2018 discovery hearing, ACM reiterates its opposition to any further discovery, including depositions, of these entities, given the absence of any reasonable basis for doing so.

For these reasons, ACM respectfully requests that the Court enter an order requiring SS&C to confirm the completeness of its production of Bimini and ACM documents and withdraw its prior redactions and "Attorney's Eyes Only" designations from and refrain from doing so in the future for information and documents relating to other clients; respond to ACM's June 26, 2017 Request Nos. 6, 11, 12, 13, 20 and 24 and ACM's December 22, 2017 Request Nos. 4-11 by producing documents as described in Exhibit B to ECF No. 68; allowing ACM to depose Mr. Boulanger; and precluding any further discovery of ARR or Deloitte.

Respectfully submitted,

HOLLAND & KNIGHT LLP

/s Joseph Mamounas

Joseph Mamounas

CC:   All counsel of record.