UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | |
|---|---|
| ARMOUR CAPITAL MANAGEMENT LP, | Case No. 17-cv-00790-JAM |
| Plaintiff, | |
| v. | April 20, 2018 |
| SS&C TECHNOLOGIES, INC., | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS**

Plaintiff, Armour Capital Management LP ("ACM"), submits this memorandum of law in support of its Motion to Dismiss Counterclaims (the "Motion").

## I. INTRODUCTION.

After a seven-month sales effort, ACM hired SS&C in December 2014 to provide it an "end-to-end" portfolio-accounting software solution within four to six months. But more than two years—and nearly $2 million in fees and at least $500,000 more in losses—later, SS&C's pitch turned out to be false and its implementation services and unimplemented software, useless.

SS&C now has turned around and sued ACM for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. (ECF No. 88.) These claims, which arise out of the same agreements underlying ACM's First Amended Complaint and Demand for Jury Trial (ECF No. 35) (the "FAC"), should be dismissed for at least four reasons.[1]

---

[1] SS&C's Counterclaims, (ECF No. 88 at 19-28) (the "Counterclaims"), are based on and repeatedly reference the parties' "Master Agreement and all related Work Requests," (*see, e.g.*, *id.*). A copy of the Master Agreement and Work Request One is attached to the FAC as Exhibit A. Work Requests Two and Three are attached to the FAC as Exhibits B and C, respectively.

**ORAL ARGUMENT REQUESTED**

First, ACM previously paid SS&C some of the damages it seeks in the Counterclaims. Second, SS&C's claims for breaches of contract and implied covenant of good faith and fair dealing are barred by the one-year limitations period in the parties' contracts. Third, SS&C's implied-covenant claim also fails because SS&C does not allege sufficient facts to state a claim. Fourth, SS&C's unjust-enrichment claim fails because its subject matter is governed by a contract, in which SS&C bargained away its right to seek any fees outside those allowed by the contract.

## II.   ARGUMENT.

To survive a motion to dismiss, a counterclaim "must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Anderson Trucking Serv., Inc. v. Eagle Underwriting Grp., Inc.*, No. 17-cv-817, 2018 WL 564569, at *2 (D. Conn. Jan. 25, 2018). Dismissal is warranted if, under the "set of facts" proffered by the counterclaimant, "it is clear that no relief can be granted." *W. World Ins. Co. v. Architectural Builders of Westport, LLC*, 520 F. Supp. 2d 408, 410 (D. Conn. 2007). A counterclaim "must offer more than labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions." *Bentley v. Tri-State of Branford, LLC*, No. 14-cv-1157, 2017 WL 3392547, at *2 (D. Conn. Aug. 6, 2017). [2]

### a.  SS&C's Claims Are Barred to the Extent It Has Suffered No Damages.

SS&C alleges ACM contracted for a "Maintenance Program" at a $100,000 annual fee and "has failed and refused to pay SS&C all amounts due and owing" for the "Program for 2017." (Countercls. ¶¶17-18.) But on November 30, 2016, ACM paid SS&C $108,567.55 for the entirety of the "Program for 2017" (which ACM in the FAC seeks to recover from SS&C).[3] Thus, SS&C

---

[2] Unless otherwise noted, all internal quotations and internal case citations contained in this Memorandum have been omitted for the sake of brevity.

[3] SS&C's November 21, 2016 Invoice No. 460805 in the amount of $108,567.55 for "Maintenance Fee Coverage Period: 1/1/17-12/31/17" and a check reflecting ACM's corresponding payment on November 30, 2016, are attached at Composite Exhibit A.

2

could not have suffered damages for the "Program for 2017," and its claims on that basis should be dismissed. *See Nwachukwu v. Liberty Bank*, 257 F. Supp. 3d 280, 293 (D. Conn. 2017).

### b. **SS&C's Claims Are Time-Barred by the Contractual Limitations Provision.**

The Court previously has found in this litigation that:

> [t]he Master Agreement includes a "Time Limit to Claim Breach" provision stating that any court action for breach must be brought within one year of when a party knew or reasonably should have known of a breach: "No action arising out of any breach or claimed breach of this Master Agreement or transactions contemplated by this Master Agreement may be brought by either party more than one (1) year after the cause of action has accrued. For purposes of this Master Agreement, a cause of action will be deemed to have accrued when a party knew or reasonably should have known of the breach or claimed breach."

(Order at 2-3.[4]) Further, "Work Request Two expressly incorporated the terms of the Master Agreement," "includ[ing] the terms of the one-year time limit provision," and "a claim arising out of a breach or claimed breach of the work requests may be brought within one year after a party knew or reasonably should have known of a breach or claimed breach." (*Id.* at 8.)

Here, SS&C alleges in Count I three breaches of the "Master Agreement and . . . related Work Requests" by ACM. SS&C filed its Counterclaims on April 2, 2018. So, for SS&C to sue ACM for any "breach or claimed breach" of the Master Agreement, "related Work Requests," or "contemplated" transactions, SS&C could not have known or be said to "reasonably should have known" of such "breach or claimed breach" before April 2, 2017. Otherwise, the claim is barred.[5]

---

[4] The "Order" is the Court's March 16, 2018 Order on Motion to Dismiss. (ECF No. 75.)

[5] Notably, the Court also has found that "there is nothing in the contract that provides . . . for delaying the accrual date or tolling the one-year limitations period." (Order at 7.) "Connecticut law does not allow for equitable tolling of a contractually agreed-upon statute of limitations, as distinct from a legislative statute of limitations." (*Id.* at 8.) Finally, even if tolling principles might apply, the date ACM instituted this action does not help SS&C. In diversity cases, "state law determines the related questions of what events serve to commence an action and to toll the statute of limitations." *Diffley v. Allied–Signal, Inc.,* 921 F.2d 421, 423 (2d Cir. 1990). In Connecticut, "a counterclaim does not relate back to the date of the complaint" for limitations purposes. *Bache Halsey Stuart Inc. v. Namm*, 446 F. Supp. 692, 697 (S.D.N.Y. 1978) (applying Connecticut law).

3

(*Cf.* Order at 7.)  As follows, SS&C "knew or reasonably should have known" of all three claimed breaches before April 2, 2017, and thus they are barred and should be dismissed with prejudice.

First, SS&C seeks from ACM "$107,300 that remains due and owing under Work Request Two" for SS&C's "implementation services."  (Countercls. ¶¶21-22.)  Under Work Request Two, fees are "payable" only upon "Completion of Implementation," as defined by Work Request Two. (*See* FAC Ex. B at 1.)  SS&C alleges that the "remaining $107,300 payment" became "due and owing" when "the standard for 'Completion of Implementation' . . . was satisfied in 2016." [6] (Countercls. ¶¶22, 38.)  SS&C did not first assert claims on this basis until April 2, 2018—more than a year after SS&C "knew or reasonably should have known" of the alleged breach—and so such claims are barred under the limitations provision and should be dismissed with prejudice.

Second, as stated, SS&C alleges ACM contracted for a "Maintenance Program" and "has failed and refused to pay SS&C all amounts due and owing" for the "Maintenance Program for 2017."  (Countercls. ¶¶17-18.)  SS&C asserts that the "related $100,000 annual fee . . . renew[s] automatically on January 1 of each calendar year."  (*Id.* ¶17.)  The Master Agreement further provides that "SS&C will invoice [ACM] annually on or about the Renewal Date, and [ACM] will pay the Maintenance Program fee within thirty (30) days of receipt of each invoice."  (FAC Ex. A at 4.)  Thus, the latest date by which ACM was required to pay for the "Maintenance Program for 2017" was January 31, 2017.  SS&C did not first assert claims on this basis until April 2, 2018— more than a year after it "knew or reasonably should have known" of the alleged breach—and so such claims are barred under the limitations provision and should be dismissed with prejudice.

Third, SS&C alleges ACM agreed to "'Hosting Services' for a monthly fee of $10,000" and "ACM has failed and refused to pay SS&C amounts owed under the Master Agreement for

---

[6] ACM strongly disputes that the "Completion of Implementation" standard ever was met.

4

Hosting Services." (Countercls. ¶¶19-20.) The Master Agreement further provides that payments for "Hosting Services" are "due and payable monthly in advance." (FAC Ex. A at 12.) SS&C acknowledges that ACM terminated the Master Agreement on May 1, 2017, (Countercls. ¶28), and so its last month of "Hosting Services" was April 2017, payment for which was due in March 2017, (FAC Ex. A at 12).[7] SS&C did not first assert claims on this basis until April 2, 2018—more than a year after it "knew or reasonably should have known" of the alleged breach—and so such claims are barred under the limitations provision and should be dismissed with prejudice.

### c. SS&C's Implied-Covenant Claim in Count II of the Counterclaims Fails.

SS&C claims in Count II that ACM breached the implied covenant of good faith and fair dealing regarding the Master Agreement and Work Request Two. This claim fails for two reasons.

First, to be clear, Count II arises out of the same breaches of the Master Agreement and Work Requests that are time-barred under the parties' contractual limitations period, as stated in section II(b), *supra*. The contractual limitations period applies with equal force to Count II. This is because "it is axiomatic that the . . . duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship." *Geysen v. Securitas Sec. Servs. USA, Inc.*, 142 A.3d 227, 237 (Conn. 2016). And so an implied-covenant claim "must be tied to an alleged breach of a specific contract term." *Landry v. Spitz*, 925 A.2d 334, 344 (Conn. App. Ct. 2007).

Second, to succeed on an implied-covenant claim, SS&C must adequately allege both the elements of a breach of contract claim *and* also that ACM acted in bad faith. *Nwachukwu*, 257 F.

---

[7] SS&C also alleges that the parties' "agreement for 'Hosting Services'" was terminable "at any time upon 120 days [sic] written notice to SS&C" and "ACM failed to provide SS&C with the required 120-day written notice." (Countercls. ¶¶18-19.) But SS&C does not allege whether it (also or only) seeks a dollar amount equivalent to 120 days of "Hosting Services" starting on May 1, 2017, or any facts showing why it should be entitled to such fees. At any rate, this claim is contradicted by the Master Agreement, which allowed ACM to terminate the "Hosting Services" on "written notice at least thirty (30) days prior to the end of the Initial Term." (FAC Ex. A at 12.)

5

Supp. 3d at 295.  SS&C has failed to adequately allege facts even to plausibly suggest that ACM acted in bad faith with respect to the Master Agreement and the Work Requests.

Under Connecticut law, bad faith implies "actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive."  *Geysen*, 142 A.3d at 238.  Simply put, bad faith requires "more than mere negligence; it involves a dishonest purpose."  *Id*.  Here, SS&C's only allegation of bad faith is that "ACM has and continues to impede SS&C's right to receive benefits that it reasonably expected to receive under the Master Agreement and corresponding Work Requests." (Countercls. ¶25.)  In other words, SS&C complains that ACM failed to pay SS&C the amounts for which it has sued ACM for breach of contract.  This is insufficient.  *See Keller v. Beckenstein*, 979 A.2d 1055, 1063-64 (Conn. App. Ct. 2009); *Blumberg Assocs. Worldwide, Inc. v. Brown & Brown of Conn., Inc.*, 30 A.3d 38, 48 (Conn. App. Ct. 2011), *aff'd sub nom.*, 84 A.3d 840 (2014).

Thus, SS&C's implied-covenant claim in Count II should be dismissed.

### d.  SS&C's Unjust Enrichment Claim in Count III Fails.

Lastly, SS&C has sued ACM for unjust enrichment in Count III.  The basis for the claim is that "SS&C agreed to help ACM implement CAMRA." (Countercls. ¶41.)  Although SS&C asserts that ACM "benefitted by receiving the full value and benefits of SS&C expertise," the only specific benefit SS&C has alleged is "over four-thousand [sic] (4,000) unbilled hours toward assisting ACM with the implementation of CAMRA" that SS&C purportedly "invested." (*Id.* ¶46.)  These "hours" allegedly "represent[] in excess of $900,000."[8] (*Id*.)

---

[8] SS&C does not allege when ACM purportedly received the benefit of these "hours" from SS&C. To the extent any benefit arose before April 2, 2017, however, SS&C's recovery for such hours is

In Connecticut, "[l]ack of a remedy under a contract is a precondition for recovery based upon unjust enrichment." *Edwards v. N. Am. Power & Gas, LLC*, 120 F. Supp. 3d 132, 147-48 (D. Conn. 2015). "A plaintiff, therefore, cannot plead a claim of unjust enrichment if he also pleads the existence of an express contract." *Id*. at 148; *see also Levy v. World Wrestling Entm't, Inc.*, No. 08-cv-1289, 2009 WL 455258, at *2–3 (D. Conn. Feb. 23, 2009) (unjust-enrichment claim could not be pled alongside allegations of a valid, express contract); *Meaney v. Conn. Hosp. Ass'n, Inc.*, 735 A.2d 813, 823 (Conn. 1999) ("an express contract between parties precludes recognition of an implied-in-law contract governing the same subject matter.").

Here, the parties entered into several contracts for implementation, the most relevant and recent of which is Work Request Two. (FAC Ex. A 15-16, Ex. B at 1-2.) That contract incorporated the "services and assumptions in Work Request One" and obligated SS&C to provide "addition[al] . . . on-site and remote implementation services" for ACM.[9] (FAC Ex. B at 1.) Work Request Two also required SS&C to "provide [the] implementation services described above for a fixed fee of $728,725," $421,425 of which had been paid by then. (*Id.*) In other words, Work Request Two governs the parties' agreement for implementation and provides a bargained-for price that SS&C agreed to accept—i.e., the exact "same subject matter" as Count III. So, SS&C bargained away its right to receive fees for the "help" it purportedly provided ACM with respect to implementation outside the fees allowed by Work Request Two, and SS&C cannot now seek to recover any "unbilled hours" on top of the fixed fee to which it agreed.

---

barred by the parties' contractual limitations period. Such "hours" are "transactions contemplated" by the Master Agreement and the Work Requests. (*See* section II(b), *supra*.)

[9] SS&C admits as much in the Counterclaims, alleging that Work Request Two concerned the "implementation assistance SS&C would provide to ACM" and "capped the fees for implementation services provided" by SS&C to ACM. (Countercls. ¶21.) SS&C has sued ACM in the Counterclaims for breach of Work Request Two, claiming that of the remaining $307,300 contemplated by Work Request Two, ACM owes SS&C $107,300. (*Id.* ¶¶22, 36-38.)

7

Because SS&C's unjust enrichment claim is governed by a valid, express contract—i.e., Work Request Two—Count III should be dismissed with prejudice. *See Alstom Power, Inc. v. Schwing Am., Inc.*, No. 04-cv-1311, 2006 WL 2642412, at *5 (D. Conn. Sept. 14, 2006) ("[W]here an express contract exists, restitution for unjust enrichment . . . is unavailable.").

The undersigned counsel certifies that they conferred with Kevin O'Connor, counsel for SS&C, in a good-faith effort to resolve the issues in this motion but was unable to do so.

### III.   CONCLUSION.

For the foregoing reasons, ACM respectfully requests that the Court **GRANT** its Motion to Dismiss Counterclaims, with prejudice and without leave to amend.

Dated: April 20, 2018            **HOLLAND & KNIGHT LLP**

By: */s/ Christopher M. Cerrito*
    Christopher M. Cerrito (ct17183)
    chris.cerrito@hklaw.com
    One Stamford Plaza
    263 Tresser Boulevard, Suite 1400
    Stamford, CT 06901
    Telephone: (203) 905-4500
    Facsimile: (203) 724-3944

and

By: */s/ Allison Kernisky*
    Joseph Mamounas (phv09010)
    joseph.mamounas@hklaw.com
    Allison Kernisky (phv09011)
    allison.kernisky@hklaw.com
    701 Brickell Avenue, Suite 3300
    Miami, FL 33131
    Telephone: (305) 374-8500
    Facsimile: (305) 789-7799

*Counsel for ARMOUR Capital Management LP*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2018, a true and correct copy of this document was served by electronic and U.S. mail on all counsel of record.

By: */s/ Allison Kernisky*
Allison Kernisky (phv09011)