## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT
## NEW HAVEN DIVISION

| | |
|---|---|
| ARMOUR CAPITAL MANAGEMENT LP, | Case No. 17-cv-00790-JAM |
| Plaintiff, | |
| v. | May 24, 2018 |
| SS&C TECHNOLOGIES, INC., | |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS

Plaintiff, Armour Capital Management LP ("ACM"), submits this memorandum of law in support of its Motion to Dismiss First Amended Counterclaims (the "Motion").

## I.     INTRODUCTION.

After a seven-month sales effort, ACM hired SS&C in December 2014 to provide it an "end-to-end" portfolio-accounting software solution within four to six months.  But more than two years—and nearly $2 million in fees and at least $1.4 million more in losses—later, SS&C's pitch turned out to be false and its implementation services and unimplemented software, useless.

SS&C now has turned around and sued ACM for breach of contract and unjust enrichment. (ECF No. 101.)  These claims, which arise out of and relate to the same agreements underlying ACM's First Amended Complaint and Demand for Jury Trial (ECF No. 35) (the "FAC"), are insufficient as a matter of law and should be dismissed for at least four reasons.[1]

---

[1] SS&C's First Amended Counterclaims, (ECF No. 101 at 19-26) (the "Counterclaims"), are based on and repeatedly reference the parties' "Master Agreement and all related Work Requests," (*see, e.g.*, *id.*).  The Master Agreement and Work Request One are attached to the FAC as Exhibit A. Work Requests Two and Three are attached to the FAC as Exhibits B and C, respectively.

First, ACM previously paid SS&C some of the damages it seeks in the Counterclaims. Second, SS&C's claim for breach of contract is barred by the one-year limitations period in the parties' contract. Third, the Court lacks subject-matter jurisdiction for SS&C's unjust enrichment claim because it depends on a contingency that has not transpired. Fourth, that contingency—that ACM prevail on its rescission claim against SS&C—is fatal to SS&C's unjust enrichment claim against ACM, because the contingency is mutually exclusive to SS&C's success on its claim.

## II.   ARGUMENT.

To survive a motion to dismiss, a counterclaim "must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Anderson Trucking Serv., Inc. v. Eagle Underwriting Grp., Inc.*, No. 17-cv-817, 2018 WL 564569, at *2 (D. Conn. Jan. 25, 2018). Dismissal is warranted if, under the "set of facts" proffered by the counterclaimant, "it is clear that no relief can be granted." *W. World Ins. Co. v. Architectural Builders of Westport, LLC*, 520 F. Supp. 2d 408, 410 (D. Conn. 2007). A counterclaim "must offer more than labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions." *Bentley v. Tri-State of Branford, LLC*, No. 14-cv-1157, 2017 WL 3392547, at *2 (D. Conn. Aug. 6, 2017). [2]

### a.   SS&C's Claims Are Barred to the Extent It Has Suffered No Damages.

SS&C alleges ACM contracted for a "Maintenance Program" at a $100,000 annual fee "but failed to terminate the Maintenance Program for 2017 in accordance with the terms of the Master Agreement." (Countercls. ¶¶17-18.) "The Master Agreement . . . provides that the Maintenance Program and related $100,000 annual fee shall renew automatically on January 1 of each calendar year unless terminated in writing by either party by prior written notice of at least thirty (30) days

---

[2] Unless otherwise noted, all internal quotations and internal case citations contained in this Memorandum have been omitted for the sake of brevity.

prior to expiration." (*Id.*)  On November 30, 2016, ACM paid SS&C $108,567.55 for the "Program for 2017" (which ACM in the FAC seeks to recover from SS&C).[3]  Because that payment compensated SS&C for all of 2017, ACM had until December 2017 to terminate the Maintenance Program without additional payment of any penalty.  (FAC Ex. A at 5.)  SS&C alleges ACM terminated the Master Agreement on May 1, 2017.  (Countercls. ¶28.)  Thus, SS&C at best could not have suffered damages for the "Program for 2017," and its claims on that basis should be dismissed.  *See Nwachukwu v. Liberty Bank*, 257 F. Supp. 3d 280, 293 (D. Conn. 2017).

### b. SS&C's Claims Are Time-Barred by the Contractual Limitations Provision.

The Court previously has found in this litigation that:

> [t]he Master Agreement includes a "Time Limit to Claim Breach" provision stating that any court action for breach must be brought within one year of when a party knew or reasonably should have known of a breach:  "No action arising out of any breach or claimed breach of this Master Agreement or transactions contemplated by this Master Agreement may be brought by either party more than one (1) year after the cause of action has accrued.  For purposes of this Master Agreement, a cause of action will be deemed to have accrued when a party knew or reasonably should have known of the breach or claimed breach."

(Order at 2-3.[4])  Further, "Work Request Two expressly incorporated the terms of the Master Agreement," "includ[ing] the terms of the one-year time limit provision," and "a claim arising out of a breach or claimed breach of the work requests may be brought within one year after a party knew or reasonably should have known of a breach or claimed breach."  (*Id.* at 8.)

Here, SS&C alleges in Count I three breaches of the "Master Agreement and . . . related Work Requests" by ACM.  SS&C first filed its Counterclaims on April 2, 2018.  (ECF No. 88.)  So, for SS&C to sue ACM for any "breach or claimed breach" of the Master Agreement, "related

---

[3] SS&C's November 21, 2016 Invoice No. 460805 in the amount of $108,567.55 for "Maintenance Fee Coverage Period: 1/1/17-12/31/17" and a check reflecting ACM's corresponding payment on November 30, 2016, are attached as Composite Exhibit A.

[4] The "Order" is the Court's March 16, 2018 Order on Motion to Dismiss.  (ECF No. 75.)

Work Requests," or "contemplated" transactions, SS&C could not have known or be said to "reasonably should have known" of such "breach or claimed breach" before April 2, 2017. Otherwise, the claim is barred.[5]  (*Cf.* Order at 7.)  As follows, SS&C "knew or reasonably should have known" of the three claimed breaches before April 2, 2017, and thus those breaches at a minimum are time barred, and the Court should dismiss them with prejudice.

First, SS&C seeks from ACM "$107,300 that remains due and owing under Work Request Two" for SS&C's "implementation services." (Countercls. ¶¶21-22.)  Under Work Request Two, fees are "payable" only upon "Completion of Implementation," as defined by Work Request Two. (*See* FAC Ex. B at 1.)  SS&C alleges that the remaining $107,300 payment became "due and owing" when "the standard for 'Completion of Implementation' . . . was satisfied in 2016."[6] (Countercls. ¶22.)  SS&C did not first assert claims on this basis until April 2, 2018—more than a year after SS&C "knew or reasonably should have known" of the alleged breach—and so such claims are barred under the limitations provision and should be dismissed with prejudice.

Second, SS&C alleges ACM agreed to "'Hosting Services' for a monthly fee of $10,000" and "ACM has failed and refused to pay SS&C amounts owed under the Master Agreement for Hosting Services." (Countercls. ¶¶19-20.)  The Master Agreement further provides that payments for "Hosting Services" are "due and payable monthly in advance."  (FAC Ex. A at 12.)  SS&C

---

[5] Notably, the Court also has found that "there is nothing in the contract that provides . . . for delaying the accrual date or tolling the one-year limitations period." (Order at 7.) "Connecticut law does not allow for equitable tolling of a contractually agreed-upon statute of limitations, as distinct from a legislative statute of limitations." (*Id.* at 8.) Finally, even if tolling principles might apply, the date ACM instituted this action does not help SS&C. In diversity cases, "state law determines the related questions of what events serve to commence an action and to toll the statute of limitations." *Diffley v. Allied–Signal, Inc.,* 921 F.2d 421, 423 (2d Cir. 1990). In Connecticut, "a counterclaim does not relate back to the date of the complaint" for limitations purposes. *Bache Halsey Stuart Inc. v. Namm*, 446 F. Supp. 692, 697 (S.D.N.Y. 1978) (applying Connecticut law).

[6] ACM strongly disputes that the "Completion of Implementation" standard ever was met.

alleges that ACM terminated the Master Agreement on May 1, 2017, (Countercls. ¶28), and so its last month of "Hosting Services" was April 2017, payment for which was due in March 2017, (FAC Ex. A at 12).[7]  SS&C did not first assert claims on this basis until April 2, 2018—more than a year after it "knew or reasonably should have known" of the alleged breach—and so such claims are barred under the limitations provision and should be dismissed with prejudice.

The third breach concerns the 2017 "Maintenance Program."  If SS&C seeks to recover for any related breach of which it knew or reasonably should have known prior to April 2, 2017, it, too, is barred.  In its first Counterclaims, SS&C alleged that ACM "has failed and refused to pay SS&C for all amounts due and owing" for the "Maintenance Program for 2017."  (4/2/2018 Countercls. (ECF No. 88) ¶¶17-18.)  SS&C has struck this language in its amended Counterclaims, but it continues to allege that the $100,000 annual fee for the "Maintenance Program" renews on January 1 of each year.  (Countercls. ¶17.)  This payment is due within 30 days of receipt of an invoice, (FAC Ex. A at 4), and so for the 2017 "Maintenance Program," the payment was due by January 31, 2017, at the latest.  If SS&C seeks to recover this amount, it is barred.  SS&C does not articulate any other amounts for which it seeks to hold ACM liable for the 2017 "Maintenance Program," another defect in SS&C's claim rendering it legally insufficient and subject to dismissal.

Thus, SS&C's breach of contract claim in Count I should be dismissed with prejudice.

---

[7] SS&C also alleges that the parties' "agreement for 'Hosting Services'" was terminable "at any time upon 120 days [sic] written notice to SS&C" and "ACM failed to provide SS&C with the required 120-day written notice."  (Countercls. ¶¶18-19.)  But SS&C does not allege whether it (also or only) seeks a dollar amount equivalent to 120 days of "Hosting Services" starting on May 1, 2017, or any facts showing why it should be entitled to such fees.  At any rate, this claim is contradicted by the Master Agreement, which allowed ACM to terminate the "Hosting Services" on "written notice at least thirty (30) days prior to the end of the Initial Term."  (FAC Ex. A at 12.)

### c. SS&C's Unjust Enrichment Claim in Count II Fails.

SS&C also asserts an unjust enrichment claim against ACM "as an alternative theory, should ACM succeed on Count V 'Rescission' of its First Amended Complaint." (Countercls. ¶34.) The basis for the claim is that "SS&C agreed to help ACM implement CAMRA." (*Id.* ¶36.) The only specific benefit SS&C has alleged is "over four-thousand [sic] (4,000) unbilled hours toward assisting ACM with the implementation of CAMRA" that SS&C purportedly "invested." (*Id.* ¶41.) These "hours" allegedly "represent[] in excess of $800,000."[8] (*Id.*)

SS&C's unjust enrichment claim fails as a matter of law for two reasons.

First, regardless of whether truly an "alternative theory," as SS&C alleges, SS&C's unjust enrichment claim is premised upon a contingency: that ACM succeed on its rescission claim.[9] In Connecticut, a Court lacks subject matter jurisdiction to entertain claims that are contingent on the outcome of "some event that has not and indeed may never transpire." *Milford Power Co., LLC v. Alston Power, Inc.*, 822 A.2d 196, 202 (Conn. 2003). Issues regarding justiciability implicate the Court's subject matter jurisdiction and must be resolved as a threshold matter. *Id.* at 201. In deciding whether a counterclaim presents a justiciable claim, courts "consider only whether the matter in controversy is capable of being adjudicated by judicial power." *Id.* at 202. The Court "must be satisfied that the case before [it] does not present a hypothetical injury or a claim

---

[8] SS&C does not allege when ACM purportedly received the benefit of these "hours" from SS&C. To the extent any benefit arose before April 2, 2017, however, SS&C's recovery for such hours is barred by the parties' contractual limitations period. Such "hours" are "transactions contemplated" by the Master Agreement and Work Requests. (*See* section II(b), *supra*.)

[9] SS&C ostensibly resorted to relying on this contingency—which was not included in its first Counterclaims—to circumvent the existence of the Master Agreement and Work Requests. These agreements concern the same subject matter of—and thus bar—SS&C's unjust enrichment claim. *See Edwards v. N. Am. Power & Gas, LLC*, 120 F. Supp. 3d 132, 147-48 (D. Conn. 2015) ("Lack of a remedy under a contract is a precondition for recovery based upon unjust enrichment.").

contingent upon some event that has not and indeed may never transpire." *Id*. Stated differently, justiciability requires "that there be an actual controversy between or among the parties." *Town of Wallingford v. Dep't of Pub. Health*, 817 A.2d 644, 651 (Conn. 2003).

Courts routinely dismiss claims that are contingent on the outcome of other causes of action for lack of subject matter jurisdiction. *See, e.g.*, *BQI, LP v. Commonwealth Land Title Ins. Co., Inc.*, No. 054003429, 2005 WL 3508660, at *1-3 (Conn. Super. Ct. Nov. 23, 2005) (dismissing claim "conditioned on the outcome of [] counterclaim"); *DeMarchant v. Middletown Zoning Bd. of Appeals*, No. 020097143S, 2002 WL 31928600, at *1-3 (Conn. Super. Ct. Dec. 19, 2002) (contingent claim "was not a real and actual hardship, but a potential hardship that would occur if, and only if, [defendant] did not prevail" in separate action against plaintiff); *Sosin v. Scinto*, 750 A.2d 478, 482 (Conn. App. Ct. 2000) (same); *Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 704 A.2d 243, 246 (Conn. App. Ct. 1997), *cert. denied*, 710 A.2d 174 (Conn. 1998) (same); *Brown v. Stone*, 66 F. Supp. 2d 412, 430 (E.D.N.Y. 1999) ("[I]t is impermissible to assert a counterclaim that is dependent on the outcome of a plaintiff's lawsuit.").

Because the contingency upon which SS&C's unjust enrichment claim is predicated—i.e., ACM's success on its rescission claim against SS&C in the FAC—has not yet occurred, there presently is no "actual controversy between or among the parties" with respect to the unjust enrichment claim. Thus, that claim is not ripe for adjudication, and the Court should dismiss it for lack of subject matter jurisdiction. *See, e.g.*, *Town of Wallingford*, 817 A.2d at 651.

Second, the contingency that ACM succeed on its rescission claim against SS&C logically is exclusive to and precludes SS&C's success on its unjust enrichment claim against ACM.

In Connecticut, rescission is allowed where consent "was procured . . . by the other party's nonfraudulent material misrepresentations." *Munroe v. Great Am. Ins. Co*., 661 A.2d 581, 584 n.4

(Conn. 1995). Thus, for rescission to be awarded to ACM and the contingency underlying SS&C's unjust enrichment claim to be met, ACM must prove that SS&C made material misrepresentations that induced ACM to contract with SS&C. *Id*. And if the contingency is met, SS&C also "will have already presented, and failed to persuade the fact-finder," that it did not make material misrepresentations to ACM. *See Haddock v. Nationwide Fin. Servs., Inc*., 272 F.R.D. 61, 68 (D. Conn. 2010) (counterclaim contingent on finding of liability against defendant was "fatal").[10]

Conversely, to prevail on its unjust enrichment claim, SS&C must prove that ACM "unjustly failed to pay" SS&C for "benefits." *Gagne v. Vaccaro*, 766 A.2d 416, 428 (Conn. 2001). But having found that SS&C made material misrepresentations to ACM such that rescission is warranted, no factfinder plausibly could then *also* find that any enrichment of ACM was "unjust," because the two conclusions are mutually exclusive. *Haddock*, 272 F.R.D. at 68. This makes sense because Connecticut courts "refuse[] to apply unjust enrichment to protect a party from the consequences of its bad acts," even when someone may have benefitted from those acts. *Vanacore v. Kennedy*, 86 F. Supp. 2d 42, 54 (D. Conn. 1998), *aff'd sub nom.*, *Vanacore v. Space Realty, Inc*., 208 F.3d 204 (2d Cir. 2000). SS&C's construction of its unjust enrichment claim as contingent on a finding that it made material misrepresentations is precisely such a request for "protect[ion]." As a matter of law, SS&C cannot possibly succeed on its unjust enrichment claim if ACM succeeds on its rescission claim—the very predicate of SS&C's unjust enrichment claim.

Thus, SS&C's unjust enrichment claim in Count II should be dismissed with prejudice.

---

[10] In *Haddock*, the defendant's counterclaim was contingent on a finding of liability against the defendant. *Id*. at 68. The Court found that the contingency was "fatal" and "eliminate[d] the possibility that [defendant] could succeed on its counterclaim." *Id*. As the court explained, "no rational trier of fact could find the [plaintiffs] wholly responsible for the [] losses after first finding that [defendant] is liable . . . for its breach," two propositions that "are mutually exclusive." *Id*.

## III.   CONCLUSION.

For the foregoing reasons, ACM respectfully requests that the Court **GRANT** its Motion to Dismiss Amended Counterclaims, with prejudice and without leave to amend.

Dated: May 24, 2018                          **HOLLAND & KNIGHT LLP**

By: */s/ Christopher M. Cerrito*
    Christopher M. Cerrito (ct17183)
    chris.cerrito@hklaw.com
    One Stamford Plaza
    263 Tresser Boulevard, Suite 1400
    Stamford, CT 06901
    Telephone: (203) 905-4500
    Facsimile: (203) 724-3944

and

By: */s/ Allison Kernisky*
    Joseph Mamounas (phv09010)
    joseph.mamounas@hklaw.com
    Allison Kernisky (phv09011)
    allison.kernisky@hklaw.com
    701 Brickell Avenue, Suite 3300
    Miami, FL 33131
    Telephone: (305) 374-8500
    Facsimile: (305) 789-7799

*Counsel for ARMOUR Capital Management LP*

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2018, a true and correct copy of this document was served by electronic and U.S. mail on all counsel of record.

By: */s/ Allison Kernisky*
    Allison Kernisky (phv09011)