# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT
## NEW HAVEN DIVISION

| | |
|---|---|
| ARMOUR CAPITAL MANAGEMENT LP, | Case No. 17-cv-00790-JAM |
| Plaintiff, | |
| v. | May 30, 2018 |
| SS&C TECHNOLOGIES INC. | |
| Defendant. | |

## NOTICE OF TAKING CONTINUED VIDEOTAPED
## DEPOSITION OF SS&C TECHNOLOGIES INC. (FOUR HOURS, BY AGREEMENT)

To:    All Counsel of Record

PLEASE TAKE NOTICE that the undersigned will continue the videotaped deposition of:

**NAME:**    SS&C Technologies Inc.

**DATE:**    Thursday, June 7, 2018

**TIME:**    8:30 A.M.

**LOCATION:**    Holland & Knight LLP
31 West 52nd Street
12th Floor
New York, NY 10019
Tel.: (212) 513-3200

**VIDEOGRAPHER:** U.S. Legal Support
90 Broad Street
Suite 603
New York , NY 10004
Tel.: (877) 479-2484

As required by Federal Rule of Civil Procedure 30(b)(6), SS&C must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf on each topic listed on Exhibit A.  The person or persons designated must testify about information known or reasonably available to SS&C on each topic listed on Exhibit A.

The deposition will be taken before a court reporter, Notary Public, in and for the state of New York at large or some other officer duly authorized by law to take depositions. The deposition is being taken for the purpose of discovery, for use at trial, or both of the foregoing, or for such other purposes as are permitted under the applicable and governing rules.

Dated: May 30, 2018

Respectfully Submitted,

**HOLLAND & KNIGHT LLP**

By: */s/ Christopher M. Cerrito*
Christopher M. Cerrito (ct17183)
One Stamford Plaza
263 Tresser Boulevard, Suite 1400
Stamford, CT 06901
Phone: (203) 905-4500
Fax: (203) 724-3944
E-mail: chris.cerrito@hklaw.com

and

By: */s/ Allison Kernisky*
Joseph Mamounas (phv09010)
joseph.mamounas@hklaw.com
Allison Kernisky (phv09011)
allison.kernisky@hklaw.com
701 Brickell Avenue
Suite 3300
Miami, FL 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799

*Counsel for ARMOUR Capital Management LP*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2018, a copy of the foregoing document was served on counsel of record via email and U.S. mail.

By: */s/ Allison Kernisky*
     Allison Kernisky (phv09011)

Case No. 17-cv-00790-JAM

**EXHIBIT A**

A.     **Definitions.**  The following definitions apply to this Notice of Deposition:

      1.     "Document," "Communication" and "Concerning" have the same meaning as in ACM's Second Request for Production of Documents dated December 22, 2017, and includes electronically-stored information or "ESI."

      2.     "Amended Complaint" means the First Amended Complaint and Demand for Jury Trial filed by ACM in this action on July 13, 2017.

      3.     "ACM" means Plaintiff, ARMOUR Capital Management LP, and its employees, officers, directors, shareholders, members, partners, attorneys, agents, managers, representatives, and each and every person or entity acting on its behalf or at its direction.

      4.     "SS&C," "You" and "Your" means Defendant, SS&C Technologies Inc., and its employees, officers, directors, shareholders, members, partners, attorneys, agents, managers, representatives, and each and every person or entity acting on its behalf or at its direction.

      5.     "Bimini" means Bimini Capital Management Inc., and its employees, officers, directors, shareholders, members, partners, attorneys, agents, managers, representatives, and each and every person or entity acting on its behalf or at its direction.

      6.     "Answer and Amended Counterclaims" means the Answer to First Amended Complaint and Amended Counterclaims filed by SS&C in this lawsuit on May 11, 2018.

      7.     "Master Agreement" means the Master Agreement for Software, Maintenance and Support, Professional Services, and Other Services between ACM and SS&C dated December 19, 2014, including all incorporated attachments and Work Requests One, Two, and Three, as referenced in and attached to the Amended Complaint at Exhibits A-C.

      8.     "CAMRA" means, collectively, the products, including modules such as RECON, and services offered by SS&C to ACM under the Master Services Agreement, including CAMRA, CI Manager, Impairments Manager, Report Express, TBA Dollar Roll, Extend, Swaps, or Debt & Derivatives, and all versions of such software and all related services, including maintenance, support, and hosting, as referenced at paragraph 28 of the Amended Complaint.

      9.     "Including" means including but not limited to, and "discussing," "referring to," "referencing," "regarding," "reflecting," "relating to," "pertain to" or "pertaining to" mean setting forth, pertaining to, memorializing, constituting, embodying, discussing, analyzing, reflecting, concerning, relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts, or contradicts.

      10.     "Person" or "Persons" shall mean any natural person, individual, corporation, real estate investment trust ("REIT"), partnership, joint venture, firm, voluntary or unincorporated association, other business association, entity or enterprise, proprietorship, trust, estate, governmental agency, board, authority, commission, bureau, department or such other governmental or quasi-governmental entity, group of natural persons, or other entity and includes any other natural person or person acting on behalf of a natural person in any capacity whatsoever.

**B.     Matters on Which the Designated Person or Persons Must Testify.**

1. The actions You took to license CAMRA to ACM before 12/19/2014, including Communications and Documents You exchanged with ACM; the information You learned and did not learn about ACM, including about its accounting methodology, data sources (including custodians), resource availability, and processes; Your processes to qualify CAMRA, including RECON, for ACM and/or to evaluate which products and services were suitable, appropriate, or similar for ACM in light of the information You learned about ACM; the bases for the processes, including any bases derived from prior experiences with other of Your clients or other research; Your proofs of concept for ACM; and the full and complete factual basis for such issues.

2. Deleted.

3. Deleted.

4. The implementation of CAMRA at ACM, including the responsibilities of You and ACM concerning such implementation; performance or non-performance of such responsibilities; completion or non-completion of such implementation; any daily processing at ACM using CAMRA; any "successful[] process[ing of] one complete month of transactions using CAMRA as implemented" at ACM; any "clean" monthly closes at ACM using CAMRA; errors by Outsourcing Technology Services; and the full and complete factual basis for all such issues.

5. Deleted.

6. Deleted.

7. The full and complete factual basis for Your 10/10/2017 supplemental response to ACM's Interrogatory Nos. 3 and 5 and 2/6/2018 responses to ACM's Interrogatory Nos. 10-17 and 19-22, including incomplete or incorrect data from ACM or its custodians, remedies for same, and/or Your formatting or normalizing of any data; ACM's reconciliation processes and evaluation of such processes; changes to ACM's data sources and processes; ACM's staff availability and lack of project management or adequately trained staff, all Documents relating to such issues; Your knowledge or anticipation of such issues before 12/19/2014, including any knowledge or expectation derived from prior experiences with other of Your clients or other research; and any specific impact of these issues on the implementation of CAMRA at ACM.

8. Deleted.

9. The factual basis for the Answer and Amended Counterclaims, including the amount of Your claimed damages, how that amount was calculated, and all evidence supporting Your basis for Your affirmative defenses, amended counterclaims, and claimed damages.

10. Your knowledge before 12/19/2014 of: the general functionality, modification, and/or implementation of CAMRA; any bugs, errors, problems, issues, or other difficulties that prevented CAMRA from working as intended for mREITs; Your process for testing, establishing, and verifying data feeds with custodians, including differences for licensed, hosted, or outsourced clients or between commingled and separate feeds; and as to Citi, BONY, and AVM, when You first established data feeds, types of such feeds (including Workbench and Velocity), types and formats of data provided; and problems, issues, or difficulties such as inadequate or commingled feeds, missing or unformatted data, transition difficulties, or delayed responses to Your inquiries.