# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

ARMOUR CAPITAL MANAGEMENT LP,

                Plaintiff,

v.

SS&C TECHNOLOGIES INC.,

                Defendant.

Case No. 17-cv-00790-JAM

JUNE 6, 2018

### SUPPLEMENTAL RESPONSE TO ARMOUR CAPITAL MANAGEMENT LP'S SECOND SET OF INTERROGATORIES TO SS&C TECHNOLOGIES INC.

The Defendant SS&C Technologies Inc. ("SS&C") hereby serves its supplemental response to Plaintiff ARMOUR Capital Management LP's ("ACM") Second Set of Interrogatories (the "Second Interrogatories") dated December 22, 2017.

### PRELIMINARY STATEMENT

The responses set forth below are submitted subject to objections set forth in SS&C's initial Objections and Responses to Plaintiff's Second Set of Interrogatories dated February 6, 2018. This supplemental response is based upon the current knowledge of SS&C. SS&C expressly reserves the right to make such additional or modified responses as may be appropriate in light of further discovery and/or investigation.

1

## SUPPLEMENTAL RESPONSE TO INTERROGATORIES

10.     Identify all reasons You believe that CAMRA was not implemented for ACM. Include in Your answer an identification of the Communications and Documents that support each reason You identify, the Communications and Documents in which You told ACM about each such reason, ACM's response, and the actions You took to remedy such reasons.

## INITIAL OBJECTIONS AND RESPONSE:

In addition to the General Objections, SS&C objects to Interrogatory No. 10 on the grounds that it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, calculated to harass, seeks information that is already in ACM's possession, seeks confidential and proprietary information and trade secrets, and is not proportionate to the needs of this case.

Subject to and without waiving the foregoing objections, SS&C rejects the implied premise of this interrogatory. The plain language of the Work Request states that SS&C will assist ACM with its implementation effort. Further, SS&C does not agree with ACM's assertion that CAMRA was not implemented. ACM was processing daily transactions in CAMRA for much of 2016 and all of 2017 (through ACM termination). ACM had concluded, prior to the termination date, to continue reliance on its previous ACM platform, and was therefore not prioritizing use of CAMRA.

In connection with the implementation, there were many delays incurred. Those delays were attributable to causes including but not limited to the following: (1) ACM's incomplete and incorrect data; (2) ACM's manual processing and inability to automate workflows; (3) changes to data sources and processes; (4) accounting methodology differences; (5) difficulties encountered with ACM's third-party providers, including custodian banks; and (6) other delays caused by ACM including availability of staff, lack of project management, ACM's incomplete reconciliation preparation, and lack of adequately trained staff. For further explanation, also see Powerpoint presentation entitled "Armour Implementation Cost Overview" dated April 5, 2016 [Bates No. SSC049980].

Communications included but not limited to the following, are relevant to the occasioned delays: Bates Nos. SSC002920; SSC012208; SSC013795; SSC014251; SSC015107; SSC033924; SSC021499; SSC033949; SSC113880; SSC119771; SSC021972; SSC049074; SSC143762; SSC050808; SSC143958; SSC143984; SSC054011; SSC120943; SSC054157; SSC121311; SSC054176; SSC054182; SSC150279; SSC058063; SSC150362; SSC147283; SSC147292; SSC030769; SSC147390; SSC147396; SSC58586.

SS&C expressly reserves the right to amend or supplement its response to the extent new facts may be discovered.

## SUPPLEMENTAL RESPONSE:

In addition to the General Objections, SS&C objects to Interrogatory No. 10 on the grounds that it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, calculated to harass, seeks information that is already in ACM's possession, seeks confidential and proprietary information and trade secrets, and is not proportionate to the needs of this case.

Subject to and without waiving the foregoing objections, SS&C rejects the implied premise of this interrogatory. The plain language of the Work Request states that SS&C will assist ACM with its implementation effort. Further, SS&C does not agree with ACM's assertion that CAMRA was not implemented. ACM was processing daily transactions in CAMRA for much of 2016 and all of 2017 (through ACM termination). ACM had concluded, prior to the termination date, to continue reliance on its previous ACM platform, and was therefore not prioritizing use of CAMRA.

In connection with the implementation, there were many delays incurred as a result of ACM's conduct. Those delays were attributable to causes including but not limited to the following: (1) ACM's incomplete and incorrect data; (2) ACM's inability or unwillingness to automate or modify its CAMRA-related workflows; (3) changes to data sources and processes during the implementation; (4) accounting methodology and related system election differences and/or errors, including ACM not maintaining the accuracy of their security master file and timely uploading security factor information; (5) difficulties encountered with ACM's third-party providers, including custodian banks (Citibank and BNY Mellon) and ACM's lack of ownership for resolving issues related to its custodians' extensive and extended unresponsiveness to data requests; (6) unavailability of ACM's staff during implementation; (7) lack of ACM project management execution including ACM's completion of reconciliations, and review and supervision of ACM staff (i.e. ensuring accuracy of trade up-loads, completeness and accuracy of reconciliations, timeliness of sign-offs); (8) ACM's incomplete reconciliation preparation (including critical reconciliations between 3rd party custodians and CAMRA related to cash positions and securities); (9) lack of adequately trained ACM staff (including ACM staff's missed attendance at training courses); (10) over-reliance on SS&C staff and resources as opposed to leveraging SS&C operating manuals and the development of ACM employee CAMRA-related workflow knowledge, experience and expertise; and (11) ACM's lack of providing requisite "CAMRA-ready file formats."

ACM and SS&C entered into the Master Agreement on December 19, 2014. Immediately following the contract signing, SS&C provided ACM with an Armour-specific "Welcome Package." The Welcome Package outlined specific responsibilities of Armour for the upcoming conversion. These responsibilities included ACM's completion of multiple conversion files for initial security positions and custodial data. The Hosting Agreement attached to the parties' Master Agreement detailed ACM's responsibility for providing such data in an upload-able format. As detailed in dozens of emails, phone calls and weekly status reports, for most of 2015 ACM's custodian banks caused extensive delays to the original implementation timeline. These delays were caused in part because

3

ACM was unable to provide SS&C with electronically formatted security data, submitted erroneous initial positions data, and failed to provide timely "sign-off" of the financial impact analyses. Further, SS&C made multiple attempts during this time to engage ACM in resolving the third party custodial data issues with Citibank and BNY Mellon. SS&C informed ACM of the custodian issues on multiple occasions in the 2015 status reports and meetings, and requested ACM become more involved, to no avail. These issues included delays in ACM providing required authorizations to the vendors, ACM's vendors being unable to access any historical data, ACM's vendors not responding to data requests, and ACM not instructing its vendors to provide properly formatted data, among other things. ACM was well aware of the implementation dependencies with respect to data quality, as this was detailed in both the Hosting, Process Automation and Data Management Services ("Hosting Services") Agreement and Work Request One. (*See* SSC011284, SSC014797, SSC014807, SSC015046, SSC015116, SSC017173, SSC017190, SSC019373, SSC136645, SSC136858, SSC136886, SSC045054, SSC045085, SSC141025, SSC045509, SSC045584, SSC045640, SSC046203).

Data issues were not isolated to ACM's custodian banks. Many of the 2015 implementation delays caused by ACM providing SS&C with erroneous and unreconciled repurchase agreement ("repo") files, where ACM provided SS&C files for upload that were missing over fifty repo positions. As a result, the corrected files needed to be re-uploaded into CAMRA and new reconciliations prepared (SSC013800), both contributing to implementation delays. ACM also delayed in providing SS&C with CAMRA formatted-data with respect to its repurchase agreements, further contributing to implementation delays (*see* 2015 Status Reports).

As early as October 2, 2015, SS&C was communicating to ACM's CFO and COO that they needed to dedicate additional resources to the project. In the same meeting, ACM communicated that its team was in fact not able to respond to SS&C requests timely due to non-implementation related responsibilities. ACM staff's unavailability to work on the implementation project was an issue during monthly, quarterly and annual financial closings. In December 2015, SS&C conducted three full days of training at ACM's office in Vero Beach. ACM had designated ten CAMRA license users in advance of the training. The actual attendance at the three-day training session was poor, with there being only about three or four individuals attending at any one point. This lack of commitment to learning how to properly operate the software was evident throughout 2016 and 2017, as further described below.

From January 2016 through May 2016, ACM continued to be the root cause of implementation issues and related delays. ACM continued providing SS&C with incomplete, inaccurate and unreconciled data. For example, throughout the implementation process, ACM did not perform reconciliations between their custodians and CAMRA, which were required to identify requisite differences (SSC136989), as well as cash reconciliations (SSC120834) and due and accrued interest (SSC025693). ACM's lack of complete and timely reconciliations caused issues into March 2017, as evidenced by continued lack of custodian reconciliations (SSC059366). As a result, SS&C regularly made efforts to advance the implementation by performing reconciliations on ACM's

4

behalf (SSC051633), which was ACM's responsibility and SS&C was not required to do. ACM also regularly intermingled non-security cash transactions with security cash transactions without providing the requisite detail for input into CAMRA, causing additional data quality issues (SSC0141307). ACM increased its ownership of non-agency securities from under $100 million to approximately $1 billion after signing the Master Agreement. Non-agency securities require extensive cash-flow data, which ACM had difficulty in providing (SSC050131/0144021). On April 6, 2016, SS&C management met with ACM's CFO and COO and provided them with a detailed summary of the continuing ACM issues that were causing continuing delays with respect to (i) Incomplete & Incorrect Data, (ii) Manual Processing & Inability to Automate Workflows, and (iii) Changes to Data Sources and Processes and other similar items (ACM013612).

On June 28, 2016, ACM's COO, formally signed off to SS&C that the May 2016 CAMRA balances were complete on May 26, 2016, ACM's COO also signed off that the April 2016 was complete)(ACM0014525; *see also* SSC144471/014525 (signing off on May balances)). This sign-off was concurrent with SS&C completing the implementation-related services and transitioning ACM to its client support team. At that point, ACM was responsible for running the software and deciding when to discontinue use of its legacy system.

In the latter part of 2016 and through April 2017, ACM staff continued to exhibit a lack of requisite skill and training, as well as commitment to project management. SS&C provided ACM with customized CAMRA operating Policies & Procedures (SSC150302) and mREIT best practices material with respect to daily and monthly processing procedures, checklists and controls (SSC150289). This material was in addition to training material provided in December 2015 and the ACM Monthly Accounting Checklist provided to ACM in early 2015 (*see* SS&C Implementation Roadmap). Unfortunately, ACM would not adopt recommended workflow around CAMRA, including fundamental process, internal controls, and reconciliations. For instance, ACM's COO, in January of 2017, stated "they don't use checklists," despite SS&C advising multiple times that they should do so to establish and maintain a consistent, complete and accurate process. Furthermore, ACM's primary users of CAMRA - Jonna Terry, Alicia Hill, Kristin Davies and Shane Rand - made repeated errors, demonstrated a lack of knowledge, were overly reliant on SS&C and lacked adequate supervision when it came to operating CAMRA. Examples include on December 2, 2016, Hill communicated she "didn't even know what 99% of the below means" in response to how to perform a reconciliation of cash (ACM 70857). Rand requested SS&C to perform Factor Uploads for ACM rather than perform himself (SSC0025958), despite the fact that ACM had been trained on how to do this. Hill also stated to our help desk in 2017 that Factor Uploads were SS&C's responsibility, despite SS&C providing Armour training on such. Terry stated to SS&C's Help Desk in 2017 that maintaining ACM's Security Master File was SS&C's responsibility, despite SS&C providing Armour training on maintaining the Security Master File (SSC033755). Terry, as late as April 2017, was uploading erroneous pricing data into CAMRA (for instance, using 2/28/17 pricing information when performing the 3/31/17 closing, *see* SSC061851). Errors by Rand to the Security Master file also impacted data quality in 2016 and 2017 (SSC027552/25919, *see also* SSC027568). Despite ACM's reluctance to adopt

standard workflow practices throughout 2016, SS&C continued to reinforce the importance of doing so into 2017 by devoting additional SS&C resources to assist ACM (SSC117472). SS&C diligently responded to all of ACM's Help Desk inquiries, as evidenced that all inquiries were ultimately logged "resolved". (*See also* SSC120723, SSC117412, SSC146716, SSC146721, SSC025443, SSC025468, SSC054130, AMC0023531, SSC026931, SSC027151, AMC0020384, SSC029725, SSC150852, SSC122343).

As was apparent from ACM's operation, and confirmed by testimony by Hill, Davies, Rand, and Terry at their depositions, there was no regular review by anyone within ACM of the work they performed with respect to CAMRA to ensure completeness and accuracy. ACM also lacked a substantive commitment to the implementation's project management. This is despite the fact that establishment of sufficient review and supervision of ACM's financial reporting process is a requisite part of a public company reporting responsibilities under Sarbanes-Oxley.

For further explanation, also see Powerpoint presentation entitled "Armour Implementation Cost Overview" dated April 5, 2016 (SSC049980).

Documents included but not limited to the following, are relevant to the occasioned delays: Bates Nos. SSC002920; SSC012208; SSC013795; SSC014251; SSC015107; SSC033924; SSC021499; SSC033949; SSC113880; SSC119771; SSC021972; SSC049074; SSC143762; SSC050808; SSC143958; SSC143984; SSC054011; SSC120943; SSC054157; SSC121311; SSC054176; SSC054182; SSC150279; SSC058063; SSC150362; SSC147283; SSC147292; SSC030769; SSC147390; SSC147396; SSC58586; SSC136261; SSC045037; SSC045057; SSC140985; SSC046189; SSC046296; SSC142635; SSC047535; SSC048164; SSC048167; SSC048242; SSC053299; SSC053718; SSC144988; SSC745810; SSC136389; SSC141235; SSC113986; SSC144021; SSC116862; SSC146767; SSC150421; SSC136801; SSC136460; SSC144002; SSC0033950; SSC136434; SSC011284; SSC014797; SSC014807; SSC015046; SSC015116; SSC017173; SSC017190; SSC019373; SSC136645; SSC136858; SSC136866; SSC045054; SSC045085; SSC141025; SSC045509; SSC045584; SSC045640; SSC046203; SSC0010369; SSC0010615; SSC010976; SSC136279; SSC136299; SSC033932; SSC0013796; SSC136333; SSC141286; SSC143734.

SS&C expressly reserves the right to amend or supplement its response to the extent new facts may be discovered.

## **VERIFICATION**

I, Timothy Reilly, a duly authorized representative of SS&C Technologies, Inc., state under penalty of perjury that:

I have read the foregoing Supplemental response to Armour Capital Management, LP's Second Set of Interrogatories and hereby verify that the foregoing response is true and correct to the best of my knowledge and belief.

SS&C TECHNOLOGIES, INC.

By _____
      Timothy Reilly
      Its

THE DEFENDANT,
SS&C TECHNOLOGIES, INC.


By _____ */s/ Alexa T. Millinger*_____
     Jeffrey J. Mirman (ct05433)
     Alexa T. Millinger (ct29800)
     HINCKLEY ALLEN & SNYDER, LLP
     20 Church Street, 18th Floor
     Hartford, Connecticut 06103
     jmirman@hinckleyallen.com
     amillinger@hinckleyallen.com
     Telephone: (860) 331-2762
     Facsimile: (860) 278-3802

     Kevin J. O'Connor (*pro hac vice*)
     HINCKLEY, ALLEN & SNYDER LLP
     28 State Street
     Boston, MA 02109-1775
     koconnor@hinckleyallen.com
     Telephone: (617) 378-4394
     Facsimile: (617) 345-9020

     Its Attorneys

## CERTIFICATE OF SERVICE

This is to certify that on this 6th day of June, 2018, a copy of the foregoing was sent via electronic mail to the following counsel of record:

Joseph Mamounas
Allison Kernisky
Holland & Knight, LLP
701 Brickell Ave., Suite 3300
Miami, FL 33131
Joseph.mamounas@hklaw.com
Allison.kernisky@hklaw.com

_____/s/ Alexa T. Millinger_____
Alexa T. Millinger