IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARMOUR CAPITAL MANAGEMENT LP,<br>Plaintiff/Counterclaim Defendant<br><br>v.<br><br>SS&C TECHNOLOGIES, INC.,<br>Defendant/Counterclaimant | )<br>)<br>)<br>)<br>)<br>)<br>) | Civil Case No. 3:17cv00790 (JAM)<br><br><br><br><br><br>JUNE 25, 2018 |

**DEFENDANT/COUNTERCLAIMANT SS&C TECHNOLOGIES, INC.'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS**

Defendant/Counterclaimant SS&C Technologies, Inc. ("SS&C"), by and through undersigned counsel, respectfully submits this opposition to Plaintiff/Counterclaim Defendant Armour Capital Management, LP's ("ACM") Motion to Dismiss SS&C's First Amended Counterclaims (Doc. 105). As demonstrated below, SS&C timely alleged sufficient facts to support a counterclaim for breach of contract and for unjust enrichment in connection with ACM's claim for rescission of the parties' contract.

## I. RELEVANT ALLEGATIONS AND CONTRACTUAL TERMS

This case involves a dispute between two highly-sophisticated businesses regarding the implementation of asset-accounting software and related services. ACM is a Florida-based, registered investment advisor that focuses on "mortgage related securities." (*See* Doc. 35) (First Amended Complaint and Demand for Jury Trial ("FAC") at p. 1 and Ex. A thereto at p.1). At all relevant times, ACM managed – among other assets – more than $ 7.5 billion in assets for public shareholders on the New York Stock

Exchange.[1] Headquartered in Windsor, Connecticut, SS&C is a leading provider of financial services technology solutions. (FAC ¶¶ 10,14.)

The parties executed a written "Master Agreement" and related "Work Request One," effective December 30, 2014. (*Id.* ¶ 26 and Ex. A.)[2] Under the Master Agreement and Work Request One, ACM purchased

- a license for SS&C's asset accounting, CAMRA software;
- 1,850 hours of implementation services and training "**in support of *[ACM's] implementation* of the Software**";
- related maintenance and support of the software; and
- "hosting" of the software in SS&C's data center (and certain related services). (*See* FAC, and Ex. A).

Attachment B.1 to the Master Agreement contains the parties' agreement concerning Hosting, Process Automation, and Data Management Services ("Hosting Services"). (*Id.*, Ex. A, p. 12). The Hosting Services agreement required ACM to pay SS&C a monthly $10,000 hosting fee, payable in advance of each month the agreement remained in effect. (*Id.*, ¶ C). The parties expressly agreed that the Hosting Services would continue for an "Initial Term" of *five years* from the December 30, 2014 "effective

---

[1] *See* Armour Residential REIT, Inc., Annual Report (Form 10-K), at 24 (February 24, 2015); Armour Residential REIT, Inc., Annual Report (Form 10-K), at 27 (February 18, 2016); Armour Residential REIT, Inc., Annual Report (Form 10-k), at 30, (February 14, 2017); and Armour Residential REIT, Inc., Annual Report (Form 10-k), at 31, (February 14, 2018). *See also Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (1991) ("a district court may take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC as facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned'").

[2] A copy of the Master Agreement and related attachments and Work Orders is attached to the Plaintiff's First Amended Complaint (Doc. 35) as Exhibits A – C. Exhibit A contains the Master Agreement and Work Request One. Exhibits B and C contain Work Requests Two and Three, respectively.

date" of the Master Agreement, with automatic annual renewal thereafter. (*Id.*, ¶ B). The Hosting Services agreement was terminable, however, in either of two ways. First, "either party [could] terminate ... [the Hosting Agreement] *following the Initial Term* or any Renewal Term by giving the other party written notice at least thirty (30) days prior to the end of the Initial Term or any Renewal Term." (*Id.*)[3] Second, ACM could terminate it for any reason, at any time, upon giving SS&C *120 days prior written notice*. (*Id.*) (emphasis added).

The Master Agreement contains a contractually stipulated, one-year limitation period for any claim of breach by the other party (the "Contractual Limitations Period"). Specifically, ¶ 6.7.16 of the Master Agreement provides the following:

> Time Limit to Claim Breach. No action arising out of any breach or claimed breach of this Master Agreement or any transactions contemplated by this Master Agreement may be brought by either party more than one (1) year after the cause of action has accrued. For purposes of this Master Agreement, a cause of action will be deemed to have accrued when a party knew or reasonably should have known of the breach or claimed breach.

The parties subsequently entered into two additional Work Requests. (*See* FAC, Exs. B and C). Of relevance to this Opposition, Work Request Two required ACM to pay SS&C a fixed fee of $307,300 for additional implementation services, due upon Completion of the Implementation. (*See* FAC, Ex. B, p.1). Work Request Two defines "Completion of Implementation" as "when [ACM] personnel have successfully processed one complete month of transactions using CAMRA as implemented." (*Id.*). Work Request Two became effective on March 31, 2016. (*Id.*).

[3] Unless otherwise indicated, emphasis and underlining within quotations of other documents has been added herein.

SS&C alleges that, thereafter in 2016, the standard for "Completion of Implementation" set forth in Work Request Two was satisfied. (Doc. 101)(Amended Counterclaim, ¶ 22). In recognition of that fact, ACM paid SS&C $200,000 of the $307,300 called for under Work Request Two. *(See id.)*. ACM has failed and refused, however, to pay the remaining $107,300 due for Completion of Implementation, and thereby breached Work Request Two. (*Id.*).

ACM alleges that it terminated the Master Agreement, and all related attachments and Work Requests, on May 1, 2017. (FAC at p. 11, n.1).

## II. PROCEDURAL HISTORY

ACM filed its Complaint on May 15, 2017. (Doc. 1). SS&C responded to the Complaint by filing a motion to dismiss on June 22, 2017. (Doc. 29). Rather than oppose that motion, Plaintiff amended its complaint on July 13, 2017. (Doc. 35).

On July 20, 2017, the parties filed their Joint Report pursuant to Fed. R. Civ. P. 26(f). (Doc. 36). In that report, SS&C placed ACM on notice that SS&C considered ACM to be in breach of the Master Agreement and related Work Orders. Specifically, SS&C stated that "[f]ollowing the Court's ruling on SS&C's Motion to Dismiss, SS&C will assert affirmative defenses to any surviving claims, and may also assert counterclaims for damages arising out of ACM's breach of the parties' Master Services Agreement and Work Requests." (*Id.* at p.6).

SS&C moved to dismiss the First Amended Complaint on August 16, 2017. (Doc. 43). Plaintiff opposed that motion on September 20, 2017. (Doc. 49). SS&C filed its reply brief in support of its Motion to Dismiss the First Amended Complaint on October 4, 2017. (Doc. 57). The Court held oral argument on that motion on November

14, 2017 (Doc. 62), and issued its Order granting in part, and denying in part, SS&C's motion to dismiss on March 16, 2018. (Doc. 75). Of relevance here, the Court permitted ACM's claim for rescission to proceed in its March 16, 2018 Order. (*See id.*).

SS&C filed its Answer to the First Amended Complaint and Counterclaims on April 2, 2018. (Doc. 88). SS&C amended its counterclaims as a matter of right on May 11, 2018 (the "Amended Counterclaims") (Doc. 101).

## III. LEGAL STANDARD

A court should deny a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6) if the claims or counterclaims at issue "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim or counterclaim satisfies the requisite plausibility standard "when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See id.* Thus, in ruling on a Rule 12(b)(6) motion, a court should "merely ... assess the legal feasibility of the complaint, not ... assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 113 (2d Cir. 2010) (internal quotation marks omitted).

## IV. ARGUMENT

SS&C asserts two counterclaims in this action, both of which readily survive the requirements of Fed. R. Civ. P. 12(b)(6).

Counterclaim I, for breach of contract, alleges breaches based on: (a) ACM's failure to pay monthly hosting fees as required under the Hosting Services agreement contained in Attachment B.1 of the Master Agreement, and (b) ACM's failure to pay the

remaining $107,300 it owes SS&C under Work Request Two. ACM contends that the Contractual Limitations Period bars relief for both breaches of contract at issue in Count I of the Amended Counterclaim. That argument fails for two reasons. First, under the Hosting Services agreement, ACM agreed to give SS&C 120 days' written notice before any termination within the first five years of that agreement. ACM terminated the Master Agreement on May 1, 2017, but remained obligated to make monthly payments under the Hosting Services agreement until at least *August 29,* 2017 (120 days from May 1, 2017). SS&C filed its Answer to First Amended Complaint and Counterclaims on *April* 2, 2018. All monthly payments owed or incurred by ACM under the Hosting Agreement from at least April 2, 2017 until August 29, 2017 remain unpaid and indisputably fall within the Contractual Limitations Period.

Second, SS&C's Counterclaim for breach of contract is a "compulsory counterclaim" under Fed. R. Civ. P. 13 and, therefore, could only be asserted in this action after the Court decided SS&C's motion to dismiss the First Amended Complaint. SS&C provided ACM fair notice of the counterclaim in the parties' joint filing pursuant to Fed. R. Civ. P. 26(f) on July 20, 2017. (Doc. 36). In the interests of judicial economy and fairness, federal courts generally deem deadlines for compulsory counterclaims to be tolled as of the date of the original complaint. That sound policy can and should apply to SS&C's counterclaim for breach of contract because SS&C could not have properly asserted its contract counterclaim any earlier once ACM sued for breach of contract and subsequently amended its complaint.[4]

---

[4] SS&C does not assert a counterclaim based on the Maintenance and Support Agreement within the Master Agreement.

With respect to SS&C's unjust enrichment counterclaim, contrary to ACM's contention, the claim is ripe because SS&C has clearly suffered harm. The cases ACM cites in support of its motion all involve circumstances in which the party asserting the claim had not yet suffered the injuries underlying the claim. Here, in stark contrast, SS&C already incurred the loss of more than 4,000 documented, uncompensated professional services hours no later than 2017. ACM offers no meaningful basis for dismissal of that counterclaim.

## A. Plaintiff/Counterclaim Defendant Fails to Identify Any Bar to Count I of SS&C's Counterclaims.

### 1. ACM's Breach of the Hosting Services Agreement

By its own admission, ACM breached the Hosting Services agreement. Accepting as true ACM's allegation that it terminated the Master Agreement on May 1, 2017 (*see* FAC, at p. 11, n.1), ACM remained obligated to pay SS&C for several months of Hosting Services fees. As discussed above, the Hosting Services agreement expressly required ACM to provide 120 days written notice *before* its termination could take effect. (Master Agreement at p. 12, §B). ACM failed to provide the required advance, written notice. (Amended Counterclaim at ¶ 20). Accordingly, ACM's contractual commitment to pay SS&C a monthly, $10,000 hosting fee remained in effect through and until August 29, 2017 (120 days from May 1, 2017).

SS&C filed its Answer to First Amended Complaint and Counterclaims on April 2, 2018 (Doc. 88) – less than a year after receiving ACM's purported termination of the Master Agreement. Thus, under the most conservative interpretation of the relevant provisions of the parties' Agreement, ACM remains obligated to pay, *inter alia*, *all* Hosting Agreement fees due and owing to SS&C on or after April 2, 2017. ACM failed

to make the required payments. (*Id.*).[5] All of those overdue payments fall within the one-year Contractual Limitations Period.

**2. ACM's Breach of Work Request Two**

ACM also asks to be excused from its breach of Work Request Two based on the one-year Contractual Limitations Period. SS&C asserted its breach of contract counterclaim at the first opportunity available. Under the Federal Rules, SS&C was required to bring its breach of contract claim as a compulsory counterclaim in this action, *see* Fed. R. Civ. P. 13(a)(1), but could not properly do so until the Court resolved SS&C's motion to dismiss the First Amended Complaint, *see* Fed. R. Civ. P. 12(a)(4)(A)(stating that a party is required to serve a responsive pleading after the court's denial of a motion to dismiss). SS&C's counterclaim for breach of the Hosting Services agreement and Work Request Two – Count I of the Amended Counterclaim – is clearly a compulsory counterclaim because it arises from the same facts and circumstances alleged in ACM's Complaint. Thus, once ACM filed this action, SS&C could not bring its breach of contract claim in a separate action to avoid the running of the Contractual Limitations period. Indeed, if it had done so, SS&C would have been accused of forum shopping and claim splitting and its claims would have appropriately been subject to dismissal. *See United States v. Aquavella,* 615 F.2d 12, 22 (2d Cir.1979) (instructing district court to dismiss suit consisting of compulsory counterclaims and to consider the claims in context of pending first action); *United States v. Eastport Steamship Corp.*, 255 F.2d 795, 802 (2d Cir.1958) (holding that

[5] *See also* FAC at p.11, n.1 (alleging ACM does not owe SS&C amounts incurred under the Master Agreement on or after May 1, 2017).

dismissal of second action, consisting solely of compulsory counterclaim to first action, "was proper even though no judgment had previously been rendered" in first action).[6]

Fed. R. Civ. P. 13(a) defines a compulsory counterclaim as one that: "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." *See e.g Sheng Jian Lin v. Kobe Grill, Corp.*, No. 3:16-CV-184(AWT), 2016 WL 9307135, at *1 (D. Conn. Aug. 17, 2016).[7] Notably, "[t]he scope of a compulsory counterclaim under Rule 13(a) is to be given a *broad interpretation*." *Waltham Indus. Corp. v. Thompson,* 53 F.R.D. 93, 95 (D. Conn. 1971) (emphasis added). "A compulsory counterclaim under Rule 13(a) is intended to avoid a multiplicity of suits." *Id.*

SS&C's breach of contract counterclaim (Count I of the Amended Counterclaim) fits squarely within the compulsory counterclaim definition under Rule 13(a). Count I asserts claims for monies owed for services performed in connection with the Master Agreement and related Work Requests, the very same agreement under which ACM's Amended Complaint seeks relief. (*Compare* Amended Counterclaim, ¶¶ 55-59, and FAC ¶¶25-59).

---

[6] As noted above, ACM was on notice from the outset of this litigation of SS&C's intention to bring a counterclaim, as memorialized in the parties' Fed. R. Civ. P. 26(f) report (Doc. No. 36).

[7] "Whether a counterclaim is compulsory or permissive turns on whether the counterclaim 'arises out of the transaction or occurrence that is the subject matter of the opposing party's claim,' and this Circuit has long considered this standard met when there is a 'logical relationship' between the counterclaim and the main claim.'" *Id.* (quoting *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004)). "This test does not require 'an absolute identity of factual backgrounds" between the claims and counterclaims. *Id.* (quoting *United States v. Aquavella,* 615 F.2d 12, 22 (2d Cir. 1979)). "Rather, the 'essential facts of the claims [must be] so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Id.* (quoting *Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.*, 233 F.3d 697, 699 (2d Cir. 2000)).

Because SS&C's breach of contract claim is a compulsory counterclaim, Rule 13(a) requires SS&C to assert the claim in this action. *See* Fed. R. Civ. P. 13(a)(1). As federal courts have widely held in this context, the filing of a complaint tolls the deadline for a defendant to assert its compulsory counterclaims. *See e.g. Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, No. 96 CIV. 3231 (RPP), 2003 WL 22358805, at *1 (S.D.N.Y. Oct. 15, 2003) (holding that statute of limitations did not bar otherwise untimely compulsory counterclaims); *Andre v. Schenectady Cty.*, No. 95-CV-573, 1997 WL 135910, at *2 (N.D.N.Y. Mar. 13, 1997) (citing *Burlington Indus. v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir.1982); *Aramony v. United Way of Am.*, No. 96 CIV. 3962 (SAS), 1998 WL 205331, at *3 (S.D.N.Y. Apr. 27, 1998) ("Federal courts have adopted a rule that the statute of limitations on compulsory counterclaims is tolled when a plaintiff files its complaint. . . ." (citing *Employers Insur. of Wausau v. United States*, 764 F.2d 1572, 1576 (Fed.Cir.1985) (citing *Burlington Indus., Inc. v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir.1982)); *S. New England Tel. Co. v. Glob. NAPS, Inc.*, No. CIVA 3:04-CV-2075 JC, 2007 WL 521162, at *3 (D. Conn. Feb. 14, 2007) (suggesting an untimely counterclaim may be asserted if it is a compulsory counterclaim).[8]

---

[8] *See also Giordano v. Claudio*, 714 F. Supp. 2d 508, 522–23 (E.D. Pa. 2010)("Although Rule 13 does not provide for relation back, the majority view is that the institution of plaintiff's suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim.") (internal citation and quotation marks omitted); *UST Capital Corp. v. Charter Nat. Life Ins. Co.*, 684 F. Supp. 757, 759 (D. Mass. 1986) ("Because the first counterclaim is a compulsory counterclaim, Fed.R.Civ.P. 13(a), it is not time-barred as against plaintiff UST."); *Yates v. Washoe Cty. Sch. Dist.*, No. 03:07-CV-00200LRHRJJ, 2007 WL 3256576, at *2 (D. Nev. Oct. 31, 2007)("The Ninth Circuit has not addressed the issue of whether the filing of an action tolls the running of the statute of limitations with respect to a compulsory counterclaim. . . . However, the majority of courts to address the issue have concluded that a plaintiff's institution of a suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim.") (internal citations and quotation marks omitted).

ACM contends that "even if tolling principles might apply, the date ACM instituted this action does not help SS&C." (ACM's Brief, p. 4, n. 5). ACM argues that any tolling is determined by Connecticut law, and cites to *Bache Halsey Stuart Inc., v. Namm*, 446 F. Supp. 692, 697 (S.D.N.Y. 1978) for the proposition that "a counterclaim does not relate back to the date of the complaint" for limitations purposes. But neither that case nor the ones cited within it for the same proposition are on point. They all address permissive counterclaims, rather than compulsory counterclaims under Rule 13(a). ACM has not cited any case law, and indeed there is no authority in Connecticut to SS&C's knowledge, that would prohibit tolling with respect to compulsory counterclaims, as other courts in the Second Circuit and across the country have done.

Furthermore, the underlying rationale behind limitations periods, as well as the Contractual Limitations period, strongly favors tolling of the compulsory counterclaims asserted here. Like the Contractual Limitations period, statutes of limitation "represent a ... judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *See United States v. Kubrick*, 444 U.S. 111, 117 (1979)(internal citation and quotation marks omitted). Here, ACM had notice from the inception of this action that SS&C planned to file a counterclaim if the complaint was not dismissed in its entirety at the motion to dismiss stage. *See* Fed. R. Civ. P 26(f) Report of Parties' Planning Meeting (Doc.36, at p. 6); *see also* 6 Fed. Prac. & Proc. Civ. § 1419 (3d ed.)('[the] plaintiff [is not] apt to be prejudiced by the tolling of the statute [for compulsory counterclaims], since plaintiff presumably has notice at the time the action is commenced of any counterclaim arising out of the same transaction as the main

claim."). ACM surely understood when it filed its complaint for breach of contract in Federal Court that SS&C could seek to recover, through a compulsory counterclaim, amounts due and owing under the parties' agreement.

There is no dispute SS&C did so at the first available opportunity. SS&C's counterclaim for breach of the Hosting Services agreement and Work Request Two is, therefore, timely.

**B. SS&C's Counterclaim for Unjust Enrichment Satisfies the Applicable Pleading Standards.**

ACM's motion to dismiss also fails with regard to SS&C's alternative counterclaim for unjust enrichment. SS&C asks the Court – if the Court rescinds the Master Agreement and related Work Requests – for compensation in equity for the more than 4,000 hours of *documented*, but unbilled hours spent assisting ACM with ACM's implementation of the CAMRA software.[9] ACM contends that SS&C's unjust enrichment counterclaim is premised impermissibly on the uncertainty of whether the Court will grant ACM's rescission claim. However, the cases ACM cites in support of its argument are inapposite because they turn on the uncertainty as to whether actual harm has occurred. Here, SS&C alleges that it already suffered the harm it claims – *i.e.*, the thousands of documented, but uncompensated hours it devoted to assisting ACM with ACM's hapless efforts to implement CAMRA. (Amended Counterclaim ¶ 41). ACM has failed to offer any other meaningful grounds for dismissing SS&C's counterclaim to recover the cost of those lost hours.

---

[9] SS&C does not seek recovery on these unbilled amounts under its breach of contract claim.

Indeed, ACM invited this counterclaim by pursuing its claim for rescission of the parties' contract, a possibility that the Court acknowledged in its ruling on SS&C's Motion to Dismiss:

> SS&C argues that 'at the very least' this would require ACM 'to compensate SS&C for all of its time, energy, and information, which would frustrate the very purpose of a rescission.' Doc. #43-1 at 26. Even if this is true, this only challenges the wisdom of ACM's request for rescission; it does not show that ACM has failed to state a claim for rescission.

(Doc. 75, at p. 17). The Court appropriately recognized that SS&C would pursue the very counterclaim at issue here.

ACM argues that SS&C cannot bring a claim for unjust enrichment that depends upon the Court's rescission of the contract. (ACM's Brief, p. 6). But unjust enrichment is available as a remedy where a contract has been rescinded. *See Eli Attia Architects v. Safra,* No. 94 CIV. 2928 (KMW), 1996 WL 480721, at *6 (S.D.N.Y. Aug. 23, 1996) ("The doctrine of *quantum meruit* allows a plaintiff to recover even where an express contract has been rescinded, is unenforceable or has been abrogated because it enforces the enriched party's implied promise to pay for benefits conferred by the plaintiff.").

Further, ACM does not cite to any cases that support its argument that unjust enrichment is unavailable in this action. The cases ACM cites are factually distinct. The case cited by ACM for the proposition that "a Court lacks subject matter jurisdiction to entertain claims that are contingent on the outcome of 'some event that has not and indeed may never transpire'" is inapposite, as it deals with the Court's ability to hear a declaratory judgment claim. *See Milford Power Co., LLC v. Alston Power, Inc.*, 822 A.2d 196, 202 (Conn. 2003). And the language taken out of context by ACM ostensibly

refers to an *injury* that is merely speculative and may not occur. The cases ACM cites in its motion to dismiss on this issue similarly address *injuries* that have not yet occurred. *See e.g. BQI, LP v. Commonwealth Land Title Ins. Co., Inc.,* No. CV054003429, 2005 WL 3508660 (Conn. Super. Ct. Nov. 23, 2005) (dismissing the plaintiff's claim for indemnification where it was conditioned upon the defendant's counterclaim because the plaintiff had not yet suffered any injury with respect to that claim).

Here, SS&C alleges that it already suffered an injury that is both very real and very measurable. SS&C invested "over four-thousand (4,000) unbilled hours toward assisting ACM with implementing CAMRA. . . [representing] in excess of $800,000" for which it has not been paid by ACM. (Amended Counterclaim ¶ 41).

The fact that SS&C's unjust enrichment claim depends upon rescission of the contract does not invalidate the claim. It merely affords SS&C a route by which to recover for the injury it has already suffered if the Court were to rescind the parties' contract. Courts allow parties to assert unjust enrichment claims, despite the existence of a valid contract, where – as here – the unjust enrichment claim is premised on the possibility of the contract being rescinded. *See Catamount Radiology, P.C. v. Bailey,* No. 1:14-cv-213, 2015 WL 5089104, *3 (where the plaintiff sought to amend its complaint to add an unjust enrichment claim, the court held that such claim was not futile and allowed the amendment because "if [the plaintiff] succeed[s] on their fraudulent inducement claim, they could seek rescission of the Shareholders' Agreement and claim unjust enrichment.").

Finally, ACM argues (ACM's Brief, pp. 7-8) that SS&C's unjust enrichment counterclaim should be dismissed because the requisite findings for a holding on unjust enrichment are incongruous with the requisite findings for a holding on rescission. (*See* ACM's Brief, p. 8) ("having found that SS&C made material misrepresentations to ACM such that rescission is warranted, no factfinder plausibly could then *also* find that any enrichment of ACM was "'unjust.'"). But ACM fails to cite any authority that prohibits such a parallel finding. This argument rests solely on ACM's speculation as to hypothetical factual assertions. In the absence of any legal grounds, ACM offers no basis for dismissing the counterclaim for unjust enrichment. Indeed, SS&C's counterclaim for unjust enrichment is precisely the scenario contemplated by the Court in its Order, as discussed above.

## V. CONCLUSION

For the foregoing reasons, Defendant/Counterclaimant SS&C Technologies, Inc. respectfully requests that this Court **DENY** ACM's Motion to Dismiss the Amended Counterclaims.

Respectfully submitted,

DEFENDANT/COUNTERCLAIMANT

SS&C TECHNOLOGIES, INC.

By: *\/s/ Kevin J. O'Connor*

Jeffrey J. Mirman (ct05433)
Alexa T. Millinger (ct29800)
Hinckley, Allen & Snyder LLP
20 Church Street, 18th Floor
Hartford, Connecticut 06103
jmirman@hinckleyallen.com
amillinger@hinckleyallen.com
Telephone: (860) 331-2762
Facsimile: (860) 278-3802

Kevin J. O'Connor (*pro hac vice*)
Jason C. Williams (*pro hac vice*)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109-1775
koconnor@hinckleyallen.com
jwilliams@hinckleyallen.com
Telephone: (617) 378-4394
Facsimile: (617) 345-9020

Its Attorneys

**CERTIFICATION**

I hereby certify that on this June 25, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be send by email to all parties by operation of the Court's electronic filing system or by mail to any counsel or self-represented party unable to accept electronic filing, as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: *_/s/ Kevin J. O'Connor_*