**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION**

| | |
|---|---|
| ARMOUR CAPITAL MANAGEMENT LP, <br><br> Plaintiff, <br><br> v. <br><br> SS&C TECHNOLOGIES, INC., <br><br> Defendant. | Case No. 17-cv-00790-JAM <br><br> July 9, 2018 |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS**

Plaintiff, Armour Capital Management LP ("ACM"), replies in support of its Motion to Dismiss First Amended Counterclaims (ECF No. 105) (the "Motion").

**I.   INTRODUCTION.**

SS&C Technologies, Inc.'s ("SS&C") breach of contract and unjust enrichment claims are insufficient as a matter of law and should be dismissed. The breach of contract claims are time-barred, and the unjust enrichment claim fails as a matter of law. In its Opposition, SS&C argues against dismissal for two principal reasons.[1] Neither has any merit.

First, SS&C asserts that its breach of contract claim—which otherwise is untimely—should not be dismissed primarily because under Federal Rule of Civil Procedure 13, ACM's May 15, 2017 filing of its Complaint [D.E. 1] tolled the limitations period for SS&C's counterclaims. But SS&C disregards the Court's prior finding that the operative one-year contractual limitations provision is not susceptible to tolling—as SS&C itself previously argued in moving to dismiss.

---

[1] "Counterclaims" is SS&C's First Amended Counterclaims (ECF No. 101 at 19-26). "Opposition" or "Opp." is SS&C's Opposition to Motion to Dismiss First Amended Counterclaims (ECF No. 117). All capitalized terms have the same meaning as in the Motion.

And even if tolling did apply, SS&C misapprehends its own authorities, as Connecticut law, not any federal tolling principles, governs the tolling of SS&C's state-law counterclaims. In Connecticut, the filing of a complaint does not toll the limitations period for counterclaims.

Second, SS&C asserts that its unjust enrichment claim is ripe for adjudication and ACM's request for dismissal of mutually exclusive claims is "speculation" and "hypothetical." But SS&C cannot dispute that the fundamental condition underlying its claim—ACM's success on its pending rescission claim against SS&C—logically is antithetical, and thus exclusive, to SS&C's success on its own claim. And at any rate, ACM's success on its claim is a hypothetical contingency that has not yet occurred, depriving the Court of subject-matter jurisdiction over SS&C's claim.

Last, SS&C concedes that in light of the one-year contractual limitations provision, its claim for breach of the Hosting Services Agreement is limited to 120 days.[2]

For these reasons, and those described below, the Motion should be granted.

## II.   ARGUMENT.

### a.   SS&C's 2016 Claim Under Work Request Two Is Time-Barred.[3]

Under the Master Agreement and related Work Requests, all breach claims must be brought within one year of the date the non-breaching party knew or should have known of the breach or claimed breach. (Order at 2-3.[4]) SS&C concedes its claim for breach of Work Request Two

---

[2] SS&C in the Opposition seemingly suggests the Court should make factual findings in resolving the Motion. (*See* Opp. at 1-2, 4, 7.) The invitation is inappropriate at this stage, and ACM denies all factual allegations in the Counterclaims and the Opposition, many of which also are irrelevant. For example, SS&C makes allegations about non-party Armour Residential REIT Inc. to argue that this case is "between two highly sophisticated businesses." (Opp. at 1-2 & n.1.) These allegations, which do not appear in the Counterclaims, have nothing to do with SS&C's claims.

[3] ACM moved to dismiss all claims arising out of the Maintenance Program for 2017 on the basis that SS&C suffered no damages and the claims are time barred. (Motion at 2-5.) In the Opposition, SS&C withdrew all claims "based on the Maintenance and Support Agreement." (Opp. at 6 n.4.) Accordingly, these claims should be dismissed with prejudice.

[4] The "Order" is the Court's March 16, 2018 Order on Motion to Dismiss (ECF No. 75).

2

accrued in 2016. (Opp. at 8.) Because SS&C first filed its Counterclaims more than a year later, on April 2, 2018 (ECF No. 88), SS&C's breach claim is time-barred. SS&C attempts to avoid the one-year contractual limitations provision (in its own form agreement) by invoking tolling (after arguing that tolling is inapplicable to the provision throughout this litigation, (*see* ECF No. 43-1 at 18-23; ECF No. 57 at 5-8)). But this argument is flawed for three reasons.

First, whatever the "underlying rationale behind limitations provisions," (Opp. at 11), SS&C cannot rely on tolling, including under Rule 13, to save its claims. A contractual limitations provision, as SS&C previously argued against ACM, operates differently than a statute of limitations. "[P]eriods of limitation that the parties create by contract are not susceptible to statutes and doctrines that toll the relevant period of limitation." *Air Brake Sys., Inc. v. TUV Rheinland of N. Am., Inc.*, 699 F. Supp. 2d 462, 474 (D. Conn. 2010); *Known Litig. Holdings, LLC v. Navigators Ins. Co.*, 934 F. Supp. 2d 409, 419 n.5 (D. Conn. 2013) ("tolling doctrines are inapplicable to contractual suit-limitation provisions unless the contract provides for tolling of the limitation"). Applying this law and agreeing with SS&C, the Court has found that "nothing" in the Master Agreement or Work Request Two "provides . . . for delaying the accrual date or tolling the one-year limitations period." (Order at 7-10.) Thus, regardless of whatever tolling might be available under Rule 13 or elsewhere,[5] it is inapplicable to SS&C's claim against ACM here.

Second, SS&C invokes Rule 13 to argue that the Counterclaims were tolled by ACM's filing of its Complaint on May 15, 2017. (Opp. at 8-12.) According to SS&C, "[a]s federal courts have widely held in this context, the filing of a complaint tolls the deadline for a defendant to assert its compulsory counterclaims." (*Id*. at 6, 10-11.) But SS&C misapprehends the law governing the

---

[5] This includes SS&C's claim that it generally "placed ACM on notice that SS&C considered ACM to be in breach of the Master Agreement and related Work Orders" in a July 20, 2017 filing. (Opp. at 4, 11.) The contractual-limitations provision here requires claims to "be brought" within one year after they accrued, (Order at 2); mere "notice" is not contemplated by the provision.

time for filing counterclaims arising under state law, and so assuming tolling even applies, which it does not, (see *supra*), Rule 13 does not avert dismissal of SS&C's claim.

Under settled Second Circuit precedent, Connecticut law governs what events commence an action and toll limitations with respect to SS&C's counterclaims. *Diffley v. Allied–Signal, Inc.*, 921 F.2d 421, 423 (2d Cir. 1990). Where a federal court is adjudicating claims arising under state law, "state statutes of limitations govern the timeliness of state law claims, and *state law determines the related questions of what events serve to commence an action and to toll the statute of limitations*." *Id.* (emphasis added); *Converse v. Gen. Motors Corp.*, 893 F.2d 513, 515 (2d Cir. 1990) ("It is well established that the doctrine enunciated in *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), applies to the manner in which a diversity action is considered commenced for purposes of state statutes of limitations."); *Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980).

This rule applies with equal force to SS&C's counterclaims. *See, e.g.*, *Aramony v. United Way of Am.*, No. 96-cv-3962, 1998 WL 205331, at *3 (S.D.N.Y. Apr. 27, 1998) (New York law, "not the federal tolling rule, governs the tolling of state law counterclaims"); *Meridien Int'l Bank Ltd. v. Gov't of the Republic of Liberia*, 23 F. Supp. 2d 439, 448 (S.D.N.Y. 1998) ("tolling of the statutes of limitations for counterclaims is also governed by state law"); *Gibson v. Par.*, 360 F. App'x 974, 977-78 (10th Cir. 2010). This is because Rule 13 "reflects no federal policy on the tolling or revival of counterclaims," *id.* at 978, and was never "'intended to toll a state statute of limitations" or "displace state tolling law," *Aramony*, 1998 WL 205331, at *3 (cited by SS&C in the Opposition). In short, federal courts follow state-law tolling doctrines to determine the timeliness of a state-law counterclaim, such as SS&C's breach claim against ACM here. *Id.*

SS&C does not dispute that "[t]he law of Connecticut is that a counterclaim does not relate back to the date of the complaint." *Bache Halsey Stuart Inc. v. Namm*, 446 F. Supp. 692, 697 (S.D.N.Y. 1978) (applying Connecticut law); *Consol. Motor Lines v. M & M Transp. Co.*, 20 A.2d

621 (Conn. 1941); *Seletsky v. Roy*, 177 A.2d 805 (Conn. C.P. 1961); *Brown v. Hipshire*, 553 S.W.2d 570 (Tenn. 1977) (Connecticut law).  In one case, the defendants filed their Connecticut law counterclaims in April 1977, one month after the court denied their motions to dismiss. *Bache Halsey*, 446 F. Supp. at 693, 697.  Those counterclaims were subject to a three-year limitations period and had accrued in July 1973. *Id*. at 697.  Because the defendants filed the counterclaims more than three years after the claims accrued, the federal court, applying Connecticut law, granted plaintiff's motion to dismiss. *Id*.  Here, SS&C waited until April 2018, to file its Counterclaims—more than a year after its breach claim accrued, by its own admission, in 2016.[6]

Finally, SS&C's claim that the pendency of its own motion to dismiss prevented it from complying with the contractual limitations provision is a red herring.  (Opp. at 6, 8.)  SS&C supplies no authority for any such prohibition, and Rule 12(a)(4)(A) simply extends the deadline by which a defendant must respond after moving to dismiss.  *See* Fed. R. Civ. P. 12(a)(4)(A); 5B Fed. Prac. & Proc. Civ. § 1346 (3d ed.).  Even assuming the accuracy of SS&C's position, nothing *prevented* it from, for example, initiating a lawsuit asserting its 2016 breach claim before May 15, 2017 (when ACM filed this case), declining to move to dismiss (or moving for partial dismissal, as SS&C first moved (ECF No. 29)) and counterclaiming before the end of 2017 (when the claim would expire), or timely filing a separate lawsuit or seeking this Court's guidance.  Instead, SS&C did nothing.  SS&C cannot invoke alleged loopholes in the Rules to wield its motion to dismiss against the limitations provision it at the same time sought to enforce against ACM.

---

[6] The authorities on which SS&C relies on this point are inapposite. *See, e.g.*, *Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, No. 96-cv-3231, 2003 WL 22358805, at *1 (S.D.N.Y. Oct. 15, 2003) (counterclaim asserted under federal RICO statute, not state law); *S. New England Tel. Co. v. Glob. NAPS, Inc.*, No. 04-cv-2075, 2007 WL 521162, at *4 (D. Conn. Feb. 14, 2007) (addressing scope of counterclaims defendant may assert "in response" to amended pleading).

5

Relatedly, SS&C attempts to make much of the fact that its Counterclaims are compulsory. (Opp. at 8-12.) But the distinction is irrelevant where a state-law limitations period governs. *See King v. Barbour*, 240 F. Supp. 3d 136, 140 (D.D.C. 2017) (compulsory nature of counterclaim irrelevant to one-year state-law limitations period because state law, and not Rule 13, provides "solution" to "problem of whether the institution of an action tolls the running of the limitations period on compulsory counterclaims" (citations omitted)); *Keckley v. Payton*, 157 F. Supp. 820 (N.D. W. Va. 1958) (Rule 13(a) inapplicable to counterclaim barred by state limitations law). And SS&C's effort to distinguish ACM's cited case law as "all address[ing] permissive counterclaims, rather than compulsory counterclaims under Rule 13(a)," (Opp. at 11), is wrong. *See, e.g.*, *Bache Halsey*, 446 F. Supp. at 693 (defendants sued by stock broker for deficit in account counterclaimed for alleged overtrading); *Consol. Motor*, 20 A.2d at 621 (defendant sued for negligence of employee while driving a motor truck counterclaimed for damages to the motor truck).

Thus, SS&C's breach of contract claim in Count I should be dismissed with prejudice.

### b. SS&C's Unjust Enrichment Claim in Count II Should be Dismissed.

SS&C's unjust enrichment claim suffers a similar fate for at least two reasons.

For starters, SS&C does not dispute that its unjust enrichment claim is contingent on ACM first succeeding on its pending rescission claim against SS&C. But SS&C writes off ACM's argument in the Motion that ACM's success is antithetical to SS&C's claim as "rest[ing] solely on ACM's speculation as to hypothetical factual assertions." (Opp. at 15.) SS&C again is wrong.

ACM's rescission claim is based on SS&C's "pre-contract negligent misrepresentations." (Order at 16.) So, for ACM to succeed on this claim, a jury necessarily will need to find that SS&C made misrepresentations and they were both material and procured ACM's consent to enter into

6

the Master Agreement.[7] (*See id.*)  That these findings of material wrongdoing must occur before SS&C's claim even arises is not "speculation" or "hypothetical"—it is the law.  (*Contra* Opp. at 15.)  Nor is the reality that for SS&C to succeed on the claim, the same jury also then will have to turn around and find that SS&C is entitled to compensation despite its wrongdoing.

This outcome, however, is legally impossible.  (*Contra* Opp. at 15.)  In Connecticut, courts "refuse[] to apply unjust enrichment to protect a party from the consequences of its bad acts," even if someone benefitted.  *Vanacore v. Kennedy*, 86 F. Supp. 2d 42, 54 (D. Conn. 1998), *aff'd sub nom.*, *Vanacore v. Space Realty, Inc.*, 208 F.3d 204 (2d Cir. 2000).  This makes sense.  If ACM is awarded rescission, then the *only* reason SS&C incurred the hours for which it seeks recovery is SS&C's own misrepresentations to ACM, which caused SS&C allegedly to "assist[] ACM" with implementation.  (Opp. at 12.)  This is because but for SS&C's misrepresentations, ACM never would have been induced, and SS&C never would have rendered its purported "assist[ance]."[8]  Thus, the contingency "eliminate[s] the possibility that [SS&C] could succeed" on, and is "fatal" to, its counterclaim.[9]  *Haddock v. Nationwide Fin. Servs., Inc.*, 272 F.R.D. 61, 68 (D. Conn. 2010).

Second, what presently is "speculation" and "hypothetical," however, is whether ACM will succeed on its rescission claim in the first place, such that SS&C might have a legally cognizable unjust enrichment claim.  Under Connecticut law, "'[i]n the absence of a justiciable controversy,

---

[7] Otherwise, ACM's rescission claim will fail, and SS&C's contingency never will occur.

[8] Putting aside the damages limitation in Work Request Two, (*see infra*), an analogous situation might be if SS&C were to claim it could recover for unjust enrichment in the event ACM succeeds on its breach of contract, negligent misrepresentation, or Connecticut Unfair Trade Practices Act claims.  As here, the notion that SS&C could be rewarded with compensation for time spent under a contract it breached or into which its misrepresentations induced ACM to enter is illogical.

[9] SS&C's effort to misconstrue the Order is baseless.  The Court did not "recognize[] that SS&C would pursue the very counterclaim at issue here"—and instead rejected SS&C's arguments for dismissal of ACM's rescission claim, (Opp. at 13)—much less prospectively bless it as a legally viable theory (which did not even appear in SS&C's initial Counterclaims (ECF No. 88)).

the courts have no jurisdiction.'" *Sosin v. Scinto*, 750 A.2d 478, 482 (Conn. App. Ct. 2000); *see also Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) ("Under Article III of the Constitution, federal courts have jurisdiction only over 'Cases' and 'Controversies.' . . . If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim.").

Thus, Connecticut courts routinely dismiss cases that are predicated on future events that may or may not ever transpire as not presenting a justiciable controversy. *See*, *e.g.*, *Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 704 A.2d 243, 244-47 (Conn. App. Ct. 1997) (court found that no actual controversy existed and dismissed claims that could not be decided until another court decided related interpretation of various deeds); *Milford Power Co., LLC v. Alston Power, Inc.*, 822 A.2d 196, 202 (Conn. 2003); *DeMarchant v. Middletown Zoning Bd. of Appeals*, No. 020097143S, 2002 WL 31928600, at *1-3 (Conn. Super. Ct. Dec. 19, 2002) (contingent claim "was not a real and actual hardship, but a potential hardship that would occur if, and only if, [defendant] did not prevail" in separate action); *Sosin*, 750 A.2d at 482 (contract claims not justiciable because of then-pending appeal in injunction action). So, the question is not simply, as SS&C argues,[10] "whether actual harm has occurred," (Opp. at 14), but rather whether that harm is encompassed by an actual controversy and thus is capable of adjudication. *See Sosin*, 750 A.2d at 482; *Merck-Medco Managed Care*, 433 F.3d at 198. If not, the claim must be dismissed.

The facts here make the point. SS&C resorts to its contingent claim because its maximum recovery for the hours at issue is limited by Work Request Two to what SS&C concedes to be $107,300 (i.e., far less than the more than $800,000 it seeks by its unjust enrichment claim). (FAC

---

[10] SS&C's authorities on this point are inapposite because they deal not with contingent claims, but rather with plaintiffs pleading unjust enrichment alternatively to other claims. *See Elia Attia Architecs Safra*, No. 94 CIV. 2928, 1996 WL 480721, at *6 (S.D.N.Y. Aug. 23, 1996); *Catamount Radiology, P.C. v. Bailey*, No. 14-cv-213, 2015 WL 5089104, at *3 (D. Vt. Aug. 27, 2015).

Ex. B at 1; Opp. at 5-6.)  If anything, that $107,300 obligation under Work Request Two is the only actual controversy that presently could exist between the parties and be capable of adjudication by the Court—but SS&C's breach claim is barred by the one-year contractual limitations period, (*see supra*).  And so, since Work Request Two, the incorporated Master Agreement included, have not been rescinded, that contract controls, SS&C presently *cannot* bring an unjust enrichment claim,[11] and there *cannot* be any actual controversy between the parties as to it.  *See Brown v. Stone*, 66 F. Supp. 2d 412, 430 (E.D.N.Y. 1999) ("[I]t is impermissible to assert a counterclaim that is dependent on the outcome of a plaintiff's lawsuit.").

Thus, SS&C's unjust enrichment claim in Court II should be dismissed with prejudice.

### c. SS&C's Concedes Its Hosting Services Agreement Claim Is Limited.

SS&C argues its claim for breach of the Hosting Services Agreement accrued when ACM terminated the Master Agreement on May 1, 2017, SS&C sued "less than a year" later, and thus the claim "fall[s] within the one-year Contractual Limitations Period." (Opp. at 6-8.)  As a result, SS&C concedes the claim is limited to "120 days" of "monthly . . . hosting fee[s]." (*Id.*)  If the Court declines to dismiss this claim in its entirety, (Mot. at 3-5), it still should limit it to the 120-day period SS&C admits is only at issue and dismiss the remainder, if any, with prejudice.

### III. CONCLUSION.

For the foregoing reasons, ACM respectfully requests that the Court **GRANT** its Motion, with prejudice and without leave to amend.

---

[11] In Connecticut, "[l]ack of a remedy under a contract is a precondition for recovery based upon unjust enrichment." *Edwards v. N. Am. Power & Gas, LLC*, 120 F. Supp. 3d 132, 147-48 (D. Conn. 2015).  "A plaintiff, therefore, cannot plead a claim of unjust enrichment if he also pleads the existence of an express contract." *Id.* at 148.

Dated: July 9, 2018 **HOLLAND & KNIGHT LLP**

By: */s/ Christopher M. Cerrito*
    Christopher M. Cerrito (ct17183)
    chris.cerrito@hklaw.com
    One Stamford Plaza
    263 Tresser Boulevard, Suite 1400
    Stamford, CT 06901
    Telephone: (203) 905-4500
    Facsimile: (203) 724-3944

and

By: */s/ Allison Kernisky*
    Joseph Mamounas (phv09010)
    joseph.mamounas@hklaw.com
    Allison Kernisky (phv09011)
    allison.kernisky@hklaw.com
    701 Brickell Avenue, Suite 3300
    Miami, FL 33131
    Telephone: (305) 374-8500
    Facsimile: (305) 789-7799

*Counsel for ARMOUR Capital Management LP*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 9, 2018, a true and correct copy of this document was served by electronic and U.S. mail on all counsel of record.

By: *<u>/s/ Allison Kernisky</u>*
Allison Kernisky (phv09011)