# Holland & Knight

701 Brickell Avenue, Suite 3300 | Miami, FL 33131 | T 305.374.8500 | F 305.789.7799
Holland & Knight LLP | www.hklaw.com

Allison Kernisky
305-349-2175
allison.kernisky@hklaw.com

September 12, 2018

*Via CM/ECF*

Honorable Jeffrey A. Meyer
U.S. District Judge, District of Connecticut
Richard C. Lee United States Courthouse
141 Church Street, Courtroom 3
New Haven, CT 06510

   Re: *ARMOUR Capital Mgmt. LP v. SS&C Techs. Inc.*, No. 17-cv-00790-JAM.

Dear Judge Meyer:

In accordance with ECF No. 146, ARMOUR Capital Management LP ("ACM") respectfully submits this letter brief regarding two discovery disputes with SS&C Technologies Inc. ("SS&C").

### *SS&C Refuses to Produce Responsive ESI from a Previously Concealed Repository.*

In a nutshell, SS&C refuses to produce responsive ESI from a previously undisclosed repository—instant messages (or "chats") exchanged internally at SS&C using the Microsoft Lync platform. SS&C already has searched that repository for responsive ESI[1] and provided the results to its counsel. But SS&C continues to withhold that ESI—totaling about *200,000 rows of text*, or based on SS&C's information, 25,000-40,000 chats in Microsoft Excel spreadsheets—to ACM.

ACM is entitled to this ESI, and SS&C must be compelled to produce it, for several reasons.

First, SS&C never disclosed that the chats existed, in its Initial Disclosures or elsewhere, during fact discovery. To the contrary, in response to ACM's inquiries, SS&C certified that its document production was full and complete. 5/10/18 A. Millinger email, attached at Ex. A. The only reason this repository ever came to light was because of ACM's questioning of SS&C about an email during a court-ordered June 28, 2018 deposition—more than a year after this litigation began.

Immediately following that deposition, ACM requested that SS&C produce all responsive chats. 6/29/18 A. Kernisky email, attached at Composite Ex. B. But despite SS&C's serial unmistakable discovery violations—including its failure to disclose the repository of chats at the outset of this litigation or afterward, its failure to produce responsive chats, and its false certification about its

---

[1] According to SS&C's counsel, this search occurred using the same ESI protocol SS&C has applied throughout this litigation, including the same limited search terms that SS&C has refused ever to expand at ACM's request, *i.e.*, "ACM," "ARMOUR," or "Bimini."

Anchorage | Atlanta | Austin | Boston | Charlotte | Chicago | Dallas | Denver | Fort Lauderdale | Houston | Jacksonville | Lakeland
Los Angeles | Miami | New York | Orlando | Portland | San Francisco | Stamford | Tallahassee | Tampa | Tysons
Washington, D.C. | West Palm Beach

production—SS&C consumed the following many weeks variously committing to "follow up" about the chats, then failing to do so, and objecting to their production as "disproportionate" and having "marginal relevance." *See, e.g.*, 7/6/18 & 7/23/18 K. O'Connor emails, attached at Composite Ex. B. SS&C has done everything it can to obstruct ACM's discovery of SS&C's responsive chats.

Second, SS&C has no basis for withholding these chats. The fact that SS&C ultimately had no choice but admit to the existence of *200,000 rows of responsive text* belies its objections. And there can be no doubt that the chats are responsive because SS&C ran the same search terms it has used throughout this litigation to locate them. There also is no undue burden to SS&C because it already has identified and gathered the chats and provided them to its counsel, and there has been no claim that the chats involve SS&C's counsel and are likely privileged.

Third, SS&C cannot shift the blame for its discovery malfeasance to ACM. Rule 26 did not permit SS&C to conceal the existence of the chats from ACM in the "hope" that ACM would not discover them before fact discovery closed. *See Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*, 272 F.R.D. 350 (W.D.N.Y. 2011) ("[P]arties should not be permitted to conceal potential sources of responsive information in the hope that the opposing party does not discover their deliberate omission until the discovery deadline has expired.").

### *SS&C Seeks ACM's Protected Work Product.*

SS&C seeks production from ACM of work-product-protected emails prepared at the direction of counsel after this litigation commenced. SS&C is not entitled to the emails.

In May 2018, ACM proposed resolving a discovery dispute by providing SS&C a schedule of information about salary, bonus, and benefits for ACM's employees in lieu of testimony on the topic; SS&C accepted. *See* J. Mountain Aff., at ¶2, attached at Ex. C. In turn, ACM's counsel in this action instructed James Mountain, ACM's Chief Financial Officer, to prepare the schedule. *Id.* at ¶5. Mr. Mountain asked ACM's employees to research and provide him with their best estimate of the time they spent dealing with SS&C's failed implementation of CAMRA. *Id.* at ¶6. Some employees responded by email. *Id.* at ¶7. ACM produced the schedule to SS&C, *id.* at ¶5, and SS&C later questioned ACM on the schedule (Ex. 14 to 5/11/18 ACM Dep.).

Thus, the aforementioned emails were created at the direction of counsel for the purposes of this litigation, did not exist before counsel's instruction to Mr. Mountain, and would not have been created but for that instruction. *See* J. Mountain Aff., at ¶¶8-10. In fact, the emails were generated as part of ACM's accommodation of SS&C to avoid a discovery dispute—not expose its work product. The emails as such are protected work product. Fed. R. Civ. P. 26(b)(3).

                      Respectfully submitted,

                      HOLLAND & KNIGHT LLP

                      /s Allison Kernisky
                      Allison Kernisky

CC:    All counsel of record.