

20 Church Street
Hartford, CT 06103-1221

p: 860-725-6200  f: 860-278-3802
hinckleyallen.com

September 12, 2018

**VIA CM/ECF ELECTRONIC FILING**

Honorable Jeffrey Alker Meyer
Richard C. Lee United States Courthouse
141 Church Street
New Haven, Connecticut 06510

   Re: **Civil Docket No. 17cv790**
     ***Armour Capital Management, LP v. SS&C Technologies, Inc.***

Dear Judge Meyer:

  This letter brief addresses SS&C's position with respect to the discovery dispute to be heard by the Court on Friday, September 14, 2018, between Plaintiff Armour Capital Management, LP ("ACM") and Defendant SS&C Technologies, Inc. ("SS&C").

**I.** **SS&C's Request for Jim Mountain Emails Relating to ACM's Damages**

  **A.** **Background of the Dispute**

  In its Complaint, ACM asserts a claim for damages based on lost employee time. ACM's employees testified that ACM did not have timekeeping practices and that they could not estimate or recreate the time spent on CAMRA.[1]

  Despite this testimony given under oath, at ACM's 30(b)(6) deposition on May 11, 2018, ACM introduced as an exhibit a document purporting to show the hours each Armour employee worked on ACM's CAMRA implementation. (ACM0079836-41). At this point, the parties were already more than a year into litigation, and the document introduced purported to increase ACM's damages to $1.5 million, nearly 300% more than its previous sworn interrogatory representation about lost employee time it had allegedly suffered. ACM's Chief Financial Officer, Jim Mountain,

---

[1] *See* Nov. 28, 2017 Deposition of Mark Gruber ("Gruber Depo."), at 246:18-21, 258:17:259:10)(stating that he nor any other ACM employee tracks their time by project and he would have no way of recreating the time spent on the CAMRA implementation); Deposition of Jonna Terry ("Terry Depo."), at 162:2-10(stating that she did not maintain records of her work on the CAMRA implementation and did not track her time).

▶ ALBANY  ▶ BOSTON  ▶ HARTFORD  ▶ MANCHESTER  ▶ NEW YORK  ▶ PROVIDENCE

HINCKLEY, ALLEN & SNYDER LLP, ATTORNEYS AT LAW

Honorable Jeffrey A. Meyer
September 12, 2018
Page 2

had previously testified under oath in November 2017 that the value of ACM's employee time damages was $500,000. *See* Nov. 29, 2017 Jim Mountain Deposition at 166:10-167:2.[2]

At ACM's continued 30(b)(6) deposition on June 18, 2018, SS&C's counsel questioned Mr. Mountain on how those new estimates were reached. Mountain testified that he had orally asked each of the employees listed on the document to come up with an estimate of their time spent on the SS&C implementation, they had emailed him back their response, and that he relied on those estimates in putting together the damages calculation. ACM 30(b)(6) Deposition, June 18, 2018, at 19:23-20:2, 35:15-22, 39:10-40:20, 43:15-21, 44:12-14.

At that time, SS&C's counsel indicated on the record that it would be seeking production of those emails (the "Mountain Emails"). SS&C has requested them several times since then, but ACM has refused, claiming they are protected work product prepared at the request of counsel. The Mountain Emails are the only evidence existing as to the basis for ACM's lost employee time damages claim.

    **B.**    **The Mountain Emails Are Not Protected By the Work Product Doctrine Because There is No Other Means to Obtain This Evidence and SS&C Needs It to Substantiate $1.5 Million of ACM's Claimed Damages.**

ACM seeks to avoid production of the only evidence supporting its $ 1.5 million lost employee time claim. ACM claims the Mountain Emails are protected by the work product doctrine because they were prepared at the request of ACM's counsel. ACM bears the burden of establishing that these documents are protected work product. It has not done so, as a mere conclusory assertion by its counsel does not satisfy the requisite standard.[3] Even if this Court finds they are work product, the Mountain emails are necessary to SS&C's defense and are the only source of that evidence, and therefore not shielded by the work produce doctrine.[4]

---

[2] *See also* ACM's Initial Disclosures (estimating lost employee time damages as "about $500,000, based on 4,000 hours of employee time"); ACM's Response to SS&C's First Set on Interrogatories, referring to computation of damages in Initial Disclosures.

[3] It was not established by the witness that the emails were prepared at the request of counsel, he merely testified that he requested his employees to estimate their hours worked on the CAMRA implementation. *See* ACM 30(b)(6) Deposition, June 18, 2018, at 19:23-20:2.

[4] There is no doubt the Mountain Emails were clearly within the scope of SS&C's previous discovery requests, and were not previously identified as privileged. SS&C's first request for production of documents, served on ACM on August 17, 2017, included a request for "[a]ll documents concerning ACM's alleged damages in this Action, including, without limitation, all documents upon which ACM bases any damages claim."

Honorable Jeffrey A. Meyer
September 12, 2018
Page 3

"It is well-established that the privilege derived from the work-product doctrine is not absolute and may be waived." *Lavatec Laundry Tech., GmbH v. Lavatec, Inc.,* No. 3:13CV00056 SRU, 2014 WL 1665018, at *2 (D. Conn. Apr. 25, 2014)(citing *United States v. Nobles,* 422 U.S. 225, 239 (1975)). In fact, documents protected by work product may be disclosed upon a showing of the requesting party's "substantial need for the document and an inability to obtain its contents elsewhere without undue hardship." *In re Aggrenox Antitrust Litig.,* No. 3:14-CV-00572 (SRU), 2017 WL 5885664, at *12 (D. Conn. Nov. 29, 2017).

Here, SS&C has substantial need to test ACM's newly-minted $1.5 million claim for lost employee time damages – a number that has remarkably increased nearly three-fold throughout the course of this litigation, even after ACM's witnesses testified that no ACM employees track their time and could not recreate time spent on the CAMRA implementation. Then, after their depositions, these ACM employees somehow provided to Mountain a written description of the time they spent on CAMRA. That means either these witnesses either did not testify honestly at deposition, or the Mountain Emails and related $1.5 million damages summary are manufactured evidence. It is well-established that manufactured evidence cannot be used to support a claim. SS&C cannot otherwise obtain this information from any source.[5] Therefore, to the extent ACM wants to maintain a claim for damages, it must produce these emails.

SS&C requests that this Court order ACM to produce the Mountain Emails as they are the only existing evidence to substantiate ACM's substantial claim for lost employee damages.

## II.     ACM's Request for SS&C's Internal Microsoft Lync (Chat) Records

### A.     Background of the Dispute

ACM seeks through this discovery dispute production of all records from SS&C's internal instant messaging system (Microsoft Lync), relating to ACM (the "chats").

On June 29, 2018, more than one year into litigation and more than a month after the discovery deadline had passed, ACM first requested that SS&C produce the chats in their original form. SS&C had not previously produced any chats, but had previously produced an email document that included a copy of a conversation between Adriana Johnson and Scott Rice. That document was produced on October 3, 2017. There has been no testimony throughout the course

---

[5] In refusing to produce the Mountain Emails, ACM has contended that SS&C can or should have deposed the ACM employees listed on the document on the basis for their hours estimate. But the document showing $1.5 million in lost employee time was not produced until May 11, 2018, after all six of the ACM employees identified in the document had already been deposed. It would not be cost efficient to travel to Florida to re-depose six witnesses to inquire into one limited issue.

▶ ALBANY ▶ BOSTON ▶ CONCORD ▶ HARTFORD ▶ NEW YORK ▶ PROVIDENCE

HINCKLEY, ALLEN & SNYDER LLP, ATTORNEYS AT LAW

Honorable Jeffrey A. Meyer
September 12, 2018
Page 4

of this litigation as to any relevant information the chats may contain, and no witness has testified that they used the chats in connection with the ACM implementation. Indeed, they did not come up in any form until June 2018. Indeed, ACM never bothered to use any of its 11 depositions to question Ms. Johnson, Mr. Rice, or David LaMonica, the author of the chat that supposedly prompted ACM's interest in this line of material.

As ACM is well aware, SS&C did not identify chats as a type of ESI that SS&C would be relying on in its case. ACM certainly could have followed up with respect to chats but chose not to. Based on that information, SS&C's initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1), served on ACM on July 10, 2017, in Section II, identified four categories of locations of potentially relevant documents that SS&C would be searching. MS Lync chats were not identified among them.

SS&C has since investigated the chats and the potential burden of production, in the interest of streamlining this discovery dispute. The chats that contain the words "Armour" and/or "Bimini", as exported into Excel spreadsheets, amount to about 208,556 lines of text. Further, the chats are only stored as far back as July 2015, therefore anything prior to that date is unavailable.

SS&C declined to produce the chats as their production would be wholly disproportionate to the needs of the case. Regardless, SS&C has made an offer to ACM to produce the chats as limited by ten search terms of ACM's choosing, but ACM declined that offer and insisted on production of the entire set.

B. **The Production of SS&C's Chats is Unduly Burdensome, Not Relevant, and Not Proportional to the Needs of the Case.**

SS&C is not required, under the Federal Rules, to produce the chats because there is no evidence that they have any relevance to this case. And regardless, any relevance would be outweighed by the substantial burden of production.

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows parties to "obtain discovery regarding any non-privileged matter that is relevant to any party's claims or defenses." In order to be discoverable, however, the information sought must appear to be "proportional to the needs of the case, considering the importance of the issues at stake in the action . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit" Fed. R.Civ.P. 26(b)(1).

Here, the proportionality factors weigh against production of the chats. Of initial importance, ACM has not and cannot identify **any** basis for believing the chats contain relevant information. No

Honorable Jeffrey A. Meyer
September 12, 2018
Page 5

witness has testified regarding any use of chats on the ACM implementation, let alone any particular conversations that occurred in such chats. *See H.J. Heinz Co. v. Starr Surplus Lines Ins. Co.*, No. 2:15-CV-00631-AJS, 2015 WL 12791338, at *4 (W.D. Pa. July 28, 2015)(denying motion to compel production of Lync chats in a case claiming $34 million in damages in part because Heinz has established "that they did not use the Lync instant messaging system to conduct substantive Heinz business.").

Further, after this Court's ruling on SS&C's Motion to Dismiss, ACM's claims are limited largely to pre-contractual representations. But the chats are only stored as far back as July 2015. ACM's contract was signed in December 2014. Therefore, there are no pre-contract chats. Accordingly, the chats are largely irrelevant to ACM's claims.

Additionally, as mentioned, ACM did not raise this issue until after the close of discovery, despite the fact that they had known SS&C was not producing chats since its initial disclosures in July 2017, and about the existence of chats since at least October 3, 2017. Courts have declined motions to compel when filed after the close of discovery. *See e.g. Courtney v. Ivanov,* No. CV 3:13-227, 2016 WL 1367755, at *4 (W.D. Pa. Apr. 6, 2016)(citing cases declining to grant a motion to compel after close of discovery); *Bryan v. United States*, No. 10-CV-66, 2012 U.S. Dist. LEXIS 152668, at *16 (D.V.I. Oct. 24, 2012) (denying motion to compel because "although plaintiffs claim to have continuously complained about discovery deficiencies, the fact is they simply failed to file their motions in anything resembling a timely manner, and they give no sufficient reason why the motions could not have been filed sooner").

Moreover, the burden of production on SS&C would be great. There are over 208,556 lines of text contained in the chats. SS&C roughly estimates that this would take nearly 100 hours to review for relevance and confidential information, and then put in a production-ready format. SS&C has already spent hundreds of hours on discovery and produced over 700,000 documents in this matter.

Notwithstanding these objections, SS&C has offered to produce a limited portion of the chats in the interest of expediting this dispute, but ACM has insisted on production of the entire set. SS&C asks this Court to deny ACM's unreasonable request. *See Cheney v. IPD Analytics, L.L.C.,* No. 08-23188-CIV, 2009 WL 10667049, at *3 (S.D. Fla. June 29, 2009)(court sustained as overbroad a written discovery objection to a request for "all instant messaging logs. . . relating to Plaintiffs or any issue in this lawsuit.")

Honorable Jeffrey A. Meyer
September 12, 2018
Page 6

          We look forward to conferring with the Court to resolve this matter.  Thank you for your time.

          Very Truly Yours,

          */s/ Kevin J. O'Connor*
          Kevin J. O'Connor

cc:    All counsel of record via ecf