# Holland & Knight

701 Brickell Avenue, Suite 3300 | Miami, FL 33131 | T 305.374.8500 | F 305.789.7799
Holland & Knight LLP | www.hklaw.com

Allison Kernisky
305-349-2175
allison.kernisky@hklaw.com

October 3, 2018

*Via CM/ECF*

Honorable Jeffrey A. Meyer
U.S. District Judge, District of Connecticut
Richard C. Lee United States Courthouse
141 Church Street, Courtroom 3
New Haven, CT 06510

      Re:    *ARMOUR Capital Mgmt. LP v. SS&C Techs. Inc.*, No. 17-cv-00790-JAM.

Dear Judge Meyer:

In accordance with ECF No. 153, ARMOUR Capital Management LP ("ACM") respectfully requests that the Court enter an order precluding SS&C Technologies Inc. ("SS&C") from relying on any information or witnesses as to which ACM was prevented from taking discovery, including SS&C's other customers. The Court's intervention is necessary to prevent SS&C's improper trial-by-ambush that, if allowed, would work significant prejudice and injustice on ACM.

## *Introduction*

The Court has stated that this case is about "a broken relationship between [ACM] and SS&C." 4/27/18 Hearing Tr. at 15:15-16:8, attached at Ex. 1. For all of fact discovery, SS&C agreed and objected every time ACM sought any form of discovery on SS&C's implementation of CAMRA for its other customers. This effort by SS&C resulted in the Court issuing four orders precluding ACM's discovery of SS&C's other customers (apart from one not at issue here, Bimini).

But now that fact discovery has closed, SS&C suddenly relies on a library of new—and untested—information and witnesses regarding its implementations for other customers in its two proposed experts' reports. ACM never was allowed any discovery on these subjects, because of the four Court orders entered at SS&C's invitation. SS&C's shift—relying on undisclosed information and witnesses about its other customers even though the Court repeatedly precluded ACM from taking discovery on the same issues—only can cause massive prejudice to ACM.

With its prejudicial post-fact discovery conduct, SS&C attempts to revisit the Court's numerous orders on this issue and has violated the Federal Rules of Civil Procedure in at least four ways.

First, SS&C failed to identify in its Initial Disclosures (or afterward) anyone as a fact witness with discoverable information on SS&C's other customers, in violation of Federal Rules of Civil

Hon. Jeffrey A. Meyer
October 3, 2018
Page 2

Procedure 26(a) and (e).[1] *See* Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring SS&C to make initial disclosures, including the names of "each individual likely to have discoverable information"); Fed. R. Civ. P. 26(e)(1)(A) (obligating SS&C to timely supplement its disclosures if it learns that they are incomplete or incorrect). In fact, one of SS&C's two experts, a former Chief Technology Officer who oversaw SS&C's implementations of CAMRA for two SS&C clients, appears to be little more than an undisclosed, paid fact witness disguised as an expert witness.[2]

Second, SS&C violated Federal Rule of Civil Procedure 33 by not providing full interrogatory responses and omitting evidence on SS&C's other customers, including mortgage REITS, asset managers, and insurance companies—the very clients that SS&C consistently fought to "protect" from discovery up until the day it served its expert reports—on which it purports now to rely. Fed. R. Civ. P. 33(b)(3) (imposing duty to answer interrogatories "fully").

Third, SS&C triggered Rule 37 by failing to comply with Rules 26(a) and (e). Fed. R. Civ. P. 37(c)(1) (party that "fails to provide information or identify a witness as required by Rule 26(a) or (e) . . . is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial"). SS&C has no justification for prejudicing ACM by forcing it to proceed with expert discovery on issues the Court already has held numerous times not to be discoverable. ACM faces substantial harm under any scenario; for example, it can either ask SS&C's experts no questions about other customers and risk waiving the right ever to do so, or question SS&C without having been permitted any discovery and thus acquiesce to SS&C's version of the truth.

Lastly, SS&C's late production of documents appearing to name SS&C's 2014 and current CAMRA customers violates this Court's orders limiting discovery to ACM (and Bimini).

### *Relevant Background on the Parties' Discovery Disputes on SS&C's Other Customers*

In its Initial Disclosures, SS&C did not mention anyone with discoverable information about its other customers or identify other customers as relevant, and SS&C never supplemented the disclosures. In June 2017, ACM served discovery requests on SS&C for the identity of SS&C's other CAMRA customers (Interrogatory No. 3), information and documents for CAMRA customers whose implementation never occurred (Interrogatory No. 4; Req. No. 19), customers which complained or had problems with implementation (Interrogatory No. 5; Req. No. 20), and customers which used CAMRA on an outsourced basis (Interrogatory No. 6).

In late July 2017, SS&C objected to these requests as overbroad and not proportionate. 7/26/17 SS&C Resp. and Obj. to ACM's First RFP at 10-11. At a September 29, 2017 hearing, SS&C made its position clear—calling discovery on other customers "irrelevant," "unduly invasive," "unwarranted," and "burdensome." 9/29/17 Tr. at 31:19-22, attached at Ex. 3. The Court limited

---

[1] In addition to failing to disclose any other customer discovery (apart from Bimini), SS&C's experts also purport to rely on information from five witnesses that SS&C failed to disclose: Steve Kremidas, Chris Furlo, Barbara Arnold, Brian Lawrence, and Mike Parlapiano. SS&C also has failed to disclose other reliance information to ACM, including a CAMRA demonstration administered by Ms. Arnold. SS&C also should be precluded from relying on these witnesses and this information for the reasons outlined in this letter brief.

[2] Mr. Maffattone signed the Court's standing protective order on July 12, 2018 (attached at Ex. 2) and was presumably engaged then. SS&C did not disclose him then, even though he is a fact witness. SS&C also failed to inform the Court about Mr. Maffattone when it sought to postpone ACM's expert deposition on the premise that its expert was on an overseas vacation. SS&C failed to inform the Court that it had a second expert who could attend the deposition.

Hon. Jeffrey A. Meyer
October 3, 2018
Page 3

discovery to implementations of CAMRA for mortgage REITs during 2014-2017 which were incomplete for reasons that were attributable to SS&C (and not "idiosyncratic" to the customer). *Id.* at 28:12-29:11. The only opening the Court allowed ACM was to ask deposition questions on other customers—but that expressly was not fair and full discovery on those customers, but instead was for the limited purpose of building a predicate to later seek such discovery. *Id.* at 30:1-22 ("[I]f it turns out that there is a reason to think that there is some other company out there, that there were similar kinds of complaints or concerns, [ACM will] have a fuller record to make.").

SS&C subsequently claimed that no other customers met the narrowed discovery parameters set by the Court.[3] But after learning from SS&C's production of ACM-related documents that SS&C had "four problem REIT implementations"—i.e., ACM, Bimini, Fortress, and Resource—ACM sought discovery from SS&C about Fortress and Resource and served subpoenas on both. In letter briefing, SS&C argued that "documents relating to SS&C's implementations for other clients [are] simply not probative of any issue in the present case." ECF No. 69 at 3; *see also id.* ("CAMRA implementations for other customers ha[ve] no bearing on ACM's case."). At an April 3, 2018 hearing, SS&C argued that ACM's discovery to SS&C about Fortress and Resource was "outside the scope." ECF No. 85 at 5. The Court later sustained SS&C's objections.

On April 27, 2018, the Court heard argument on ACM's Fortress and Resource subpoenas. SS&C told the Court its position still was that other customers are "not relevant . . . because, for example, the length of implementation that it would take to implement CAMRA on Fortress is going to be vastly different than what it is for [ACM] based on the size of the company, based on the custodian, based on the complexity of the work request, so on and so forth." 4/27/18 Tr. at 6:2-24. The Court again agreed with SS&C, stating it was "a little surprised to see [other customer discovery] coming back" and its belief "that this lawsuit is about a broken relationship between [ACM] and SS&C, and it is not a lawsuit in which it privileges [ACM] to inquire into many other client relationships of SS&C beyond what I've already allowed here." *Id.* at 15:15-16:8.

The sum total of these orders was that ACM was prevented any meaningful discovery on SS&C's other customers. And SS&C fully embraced these orders, routinely objecting at deposition even to the extremely limited deposition questioning the Court allowed. *See, e.g.,* 5/3/18 N. Boulanger Tr. at 79:21-82:19 (SS&C: "this [discovery about Annaly] has been deemed irrelevant by the court"); 5/10/18 T. Reilly Tr. at 136: 23-25 (SS&C objecting to "[o]utsourced clients that are not relevant to this case."); 4/30/18 T. Gonzalez Tr. at 211:7-9 (SS&C: "This is a client the judge has deemed to be not relevant to this case."), attached at Exs. 4-6, respectively.

### *Post-Fact Discovery, SS&C Relies on Undisclosed Other Customer Information and Witnesses*

In a complete about-face, after fact discovery closed, SS&C exchanged two expert reports that purport to rely on a seemingly endless litany of information and witnesses about other customers that SS&C repeatedly prevented ACM (successfully) from obtaining in discovery in this case.

---

[3] SS&C falsely claimed that one other customer, Bimini, met the Court's exception for implementations that failed for reasons idiosyncratic to the customer. Bimini's Chief Operating Officer, Hunter Haas, provided an affidavit that rendered SS&C's position plainly false. Caught, SS&C then produced some external communications with Bimini, and then only later produced internal emails about Bimini after the Court ordered SS&C to do so.

One report, by Michael Maffattone, is especially problematic because the expert was Annaly's Chief Technology Officer and assisted with implementing CAMRA there and at Chimera, a related fund. Both are mortgage REIT clients of SS&C as to which SS&C permitted ACM no meaningful discovery. Yet, Mr. Maffattone's report relies, for instance, on his involvement in SS&C's sales process, his involvement with implementing CAMRA at Annaly and Chimera, his experience with BONY and Citi custodial connections to CAMRA for Annaly and Chimera, SS&C's allegedly successful implementation of CAMRA for six other REITs, SS&C's alleged implementation of CAMRA in less than six months for seven clients before ACM and six clients after, and the experiences of other asset managers and CAMRA clients, and he opines on the functionality of CAMRA based on his personal experience at Annaly. *See* Maffattone Report at 6-7, 13-14, 16, 17-19, attached at Ex. 7. ACM was allowed no discovery on any of these subjects.

SS&C's second expert report, purportedly authored by Brooks Hilliard, fares no better. For one thing, Mr. Hilliard's report relies on information provided to him by Mr. Maffattone concerning his experience with CAMRA at Annaly and Chimera. Further, among other things, Mr. Hilliard also relies on SS&C's purported implementation of CAMRA for seven clients before ACM and six clients after, only one of which was a mortgage REIT, the alleged fact that SS&C managed to implement other mortgage REITs and non-mortgage REIT clients on CAMRA in four to six months, and the alleged fact that numerous other CAMRA customers, including mortgage REITs and non-mortgage REITs, purportedly were implemented, and he opines on Annaly and Chimera's use of CI Manager instead of Recon (software related to CAMRA). *See* Hilliard Report at 6, 15-16, 19-21, 40-41, attached at Ex. 8.[4] Again, ACM was allowed no discovery on these subjects.

Finally, after serving it expert reports, SS&C produced 10 entirely new documents on which its purported experts claim to rely. As with the experts' reports, these documents provide previously undisclosed information about SS&C's other customers, including a list of unnamed companies that used CAMRA before ACM (SSC746542), what appears to be the same document but naming only SS&C's other mortgage REITs customers (SSC746543), and a list of 46 "active" CAMRA clients, including not just mortgage REITs but also asset managers and insurance companies (i.e., other customers exceeding the discovery parameters the Court set at the first hearing on the other customers issue in September 2017) (SSC746544), attached at Exs. 9-11, respectively. Yet again, ACM was allowed no discovery on any of these subjects during the course of this case.

### *ACM Has Been and Will Continue to Be Prejudiced by SS&C's Misconduct*

Until the day SS&C served its expert reports, SS&C's litigation position—following the Court's numerous orders, all of which SS&C invited—was that SS&C's other customers are irrelevant and not discoverable. ACM thus had no indication SS&C would surprise ACM after the fact discovery cutoff and suddenly rely on information about other customers, and because of the Court's orders, ACM was prevented from taking discovery on these subjects. ACM's inability to plan its case and take full and fair discovery alone caused substantial prejudice to ACM. *Doe v. Hicks*, 15-cv-1123, 2016 WL 5172814, at *6-8 (D. Conn. Sept. 21, 2016) (disclosure of witness on eve of discovery cut-off prejudiced plaintiff by "impact[ing] discovery strategies" by its counsel).

---

[4] ACM has moved to file SS&C's expert reports under seal in light of SS&C's confidentiality designations.

Hon. Jeffrey A. Meyer
October 3, 2018
Page 5

Courts in this district have sanctioned, through exclusion, defendants who have failed to identify fact witnesses in their initial disclosures or at all during fact discovery. *Cope v. Wal-Mart Stores East, LP*, 15-cv-1523, 2017 WL 2802722, at *6-7 (D. Conn. June 28, 2017) (excluding affidavit after defendant failed to identify affiant or her investigation or notes in initial disclosures because "[w]ithout ever seeking to depose [affiant], Plaintiff had no opportunity to question her investigation, her allegations, or her notes."). Here, ACM's inability to take discovery on SS&C's other customers also will work ongoing, future prejudice on ACM. As to expert discovery, not having such discovery unavoidably results in a situation in which, for example, ACM must decline to question SS&C's expert witnesses about other customers (at risk of waiving its right to do so) or so question them without any discovery on the subject (effectively precluding ACM from cross-examining the experts). Both outcomes are unfair and prejudicial.

As a remedy for its conduct, SS&C should not be permitted to rely on information or witnesses about other customers (apart from Bimini), including in SS&C's expert reports, during its experts' depositions, or at any other time in this litigation.[5] Courts frequently invoke this remedy to address belated disclosures of information and witnesses under Rule 37(c)(1). *Providence Piers, LLC v. SMM New England, Inc.*, No. 12-532, 2015 WL 9699936, at *3 (D.R.I. Oct. 1, 2015) (excluding fact/expert witness identified months after discovery closed under Rule 37(c)(1) because disclosing party failed to identify witness in its initial disclosures and interrogatory answers); *Pearlman v. Cablevision Sys. Corp.*, No. 10-CV-4992, 2015 WL 8481879, at *10-12 (E.D.N.Y. Dec. 8, 2015) (striking fact/expert witness whose report contained facts on defendant's business because fact discovery was closed and Plaintiffs had not "had the opportunity to depose [him]" or take fact discovery on him"); *Pena–Crespo v. P.R.*, 408 F.3d 10, 13 (1st Cir. 2005) ("[E]xclusion of evidence is a standard sanction for a violation of the duty of disclosure under Rule 26(a)."); *Grajales–Romero v. Am. Airlines, Inc.*, 194 F.3d 288, 297 (1st Cir. 1999) ("Rule 37(c)(1) provides an exclusionary sanction for failures to disclose witnesses as required by [Rule] 26").

For these reasons, ACM respectfully requests that the Court enter an order (1) precluding SS&C from relying on any information or witnesses as to which ACM was not allowed discovery, such as other customers, including in SS&C's expert reports, (2) allowing ACM a reasonable time to prepare for and depose SS&C's experts after SS&C complies with the Court's ruling, and (3) awarding ACM its "reasonable expenses, including attorney's fees, caused by [SS&C's] failure" to disclose the information and witnesses, as allowed by Rule 37(c)(1)(A).

             Respectfully submitted,

             HOLLAND & KNIGHT LLP

             /s Allison Kernisky

CC:  All counsel of record.

---

[5] ACM reserves all rights to subsequently challenge SS&C's proposed experts on other grounds.