**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K. GARRISON  (1946-1991)
RANDOLPH E. PAUL   (1946-1956)
SIMON H. RIFKIND   (1950-1995)
LOUIS S. WEISS     (1927-1950)
JOHN F. WHARTON    (1927-1977)

WRITER'S DIRECT DIAL NUMBER

(212) 373-3986

WRITER'S DIRECT FACSIMILE

(212) 492-3986

WRITER'S DIRECT E-MAIL ADDRESS

nahmed@paulweiss.com

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING, 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
JACOB A. ADLERSTEIN
ALLAN J. ARFFA
ROBERT A. ATKINS
DAVID J. BALL
SCOTT A. BARSHAY
PAUL M. BASTA
JOHN F. BAUGHMAN
J. STEVEN BAUGHMAN
LYNN B. BAYARD
CRAIG A. BENSON
MITCHELL L. BERG
MARK S. BERGMAN
DAVID M. BERNICK
JOSEPH J. BIAL
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
DAVID W. BROWN
SUSANNA M. BUERGEL
PATRICK S. CAMPBELL*
JESSICA S. CAREY
JEANETTE K. CHAN
GEOFFREY R. CHEPIGA
ELLEN N. CHING
WILLIAM A. CLAREMAN
LEWIS R. CLAYTON
YAHONNES CLEARY
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
LESLIE GORDON FAGEN
ROSS A. FIELDSTON
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY
ANDREW J. FORMAN*
HARRIS B. FREIDUS
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
NEIL GOLDMAN
ROBERTO J. GONZALEZ*
CATHERINE L. GOODALL
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRIAN S. GRIEVE
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
ALAN S. HALPERIN
JUSTIN G. HAMILL
CLAUDIA HAMMERMAN
BRIAN S. HERMANN
MICHELE HIRSHMAN
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
JAREN JANGHORBANI
BRIAN M. JANSON
JEH C. JOHNSON
MEREDITH J. KANE

JONATHAN S. KANTER
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
BRIAN KIM
KYLE J. KIMPLER
DAVID M. KLEIN
ALAN W. KORNBERG
DANIEL J. KRAMER
DAVID K. LAKHDHIR
STEPHEN P. LAMB*
JOHN E. LANGE
GREGORY F. LAUFER
BRIAN C. LAVIN
XIAOYU GREG LIU
JEFFREY D. MARELL
MARCO V. MASOTTI
EDWIN S. MAYNARD
DAVID W. MAYO
ELIZABETH R. McCOLM
ALVARO MEMBRILLERA
MARK F. MENDELSOHN
CLAUDINE MEREDITH-GOUJON
WILLIAM B. MICHAEL
JUDIE NG SHORTELL*
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K. OH
BRAD R. OKUN
KELLEY D. PARKER
LINDSAY B. PARKS
VALERIE E. RADWANER
CARL L. REISNER
LORIN L. REISNER
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JACQUELINE P. RUBIN
CHARLES F. "RICK" RULE*
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
DAVID R. SICULAR
MOSES SILVERMAN
AUDRA J. SOLOWAY
SCOTT M. SONTAG
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
RICHARD C. TARLOWE
MONICA K. THURMOND
DANIEL J. TOAL
LIZA M. VELAZQUEZ
RAMY J. WAHBEH
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
MARK B. WLAZLO
JULIA MASON WOOD
JENNIFER H. WU
BETTY YAP*
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
TAURIE M. ZEITZER
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

October 3, 2018

<u>Via CM/ECF</u>

Honorable Jeffrey Alker Meyer
United States District Judge for the District of Connecticut
Richard C. Lee United States Court House
141 Church Street
New Haven, Connecticut 06510

*Armour Capital Management LP v. SS&C Technologies, Inc.*
<u>Case No.: 3:17-cv-00790-JAM</u>

Dear Judge Meyer:

    We write on behalf of Defendant SS&C Technologies, Inc. ("SS&C"). Since the beginning of this case, SS&C has made clear that its flagship product, CAMRA, is a leading investment accounting software that has been successfully implemented at multiple mortgage REIT clients. Documents and testimony provided to Plaintiff Armour Capital Management LP ("ACM") prior to the filing of this case and the close of discovery corroborate these facts. SS&C's expert reports (the "Expert Reports") thus, predictably, discuss CAMRA's successful track record with other SS&C clients. Faced with this evidence, but unwilling to confront it head on, ACM asks this Court to strike unspecified sections of each Expert Report that discuss SS&C clients other than ACM and Bimini Capital Management, Inc. ("Bimini"). But neither the Federal Rules of Civil Procedure nor this Court's prior orders provide a basis for Plaintiff's requested relief. In connection with the reply letter to be filed tomorrow, SS&C will submit a consolidated declaration with all material cited in this letter and that one.

**<u>Background</u>**

    On June 2, 2014, at a CAMRA sales pitch meeting with ACM, SS&C shared the names of the following satisfied mortgage REIT CAMRA customers: Annaly, Chimera, Western Asset Mortgage Capital ("Western Asset"), Apollo Residential Trust

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Jeffrey Alker Meyer                                                                                         Page 2

("Apollo"), CYS, Ares, and New York Mortgage Trust.[1] Jim Mountain, ACM's Chief Financial Officer, and Mark Gruber, ACM's Chief Operating Officer and Head of Portfolio Management, attended that meeting. ACM's pre-contractual misrepresentation claim is based on the information presented *at this meeting*.[2]

Nevertheless, for whatever the reason, throughout fact discovery, ACM did not ask for documents concerning satisfied SS&C CAMRA clients. Rather, ACM focused its document requests on SS&C clients who experienced "uncompleted" or "problematic" implementations.[3]

Faced now with Expert Reports that refer to seven successful CAMRA implementations—all of which were previously disclosed—ACM shifts tactics. With no basis in law, on September 18, 2018, ACM asked SS&C to excise all mentions of successful CAMRA implementations from the Expert Reports. When SS&C asked ACM to identify the statements or paragraphs at issue, ACM **(i)** refused to do so despite SS&C's repeated requests for this information,[4] and **(ii)** further argued that the expert depositions scheduled (pursuant to a Court order)[5] for October 2 and 4, 2018 should be adjourned. SS&C explained to ACM that it should move forward with the depositions because doing so would cure any claimed prejudice resulting from the content of the Expert Reports. ACM, however, declined to do so. It now entreats this Court to force SS&C to self-censor the Expert Reports and to retroactively endorse ACM's unilateral decision to cancel the previously scheduled expert depositions. ACM's application should be rejected.

Tellingly, the Court orders ACM points to in support of its application confirm that ACM was on notice of satisfied CAMRA clients but elected not to seek documents about them. The September 29, 2017 order required SS&C to provide to ACM "a list of SS&C's REIT clients that used CAMRA, licensed, hosted, or outsourced from May 1, 2014, to May 1, 2017."[6] SS&C complied and, on October 10, 2017, identified Apollo, Western Asset, Annaly, Chimera, Five Oaks, and Anworth as clients for which it implemented CAMRA in 12 months or less.[7] Then, on February 15, 2018, ACM deposed Timothy Reilly, a Senior Vice-President at SS&C. Reilly testified that Apollo, Western Asset, Annaly, Chimera, Five Oaks, Anworth, Ladder Capital, and New York Mortgage Trust were all satisfied customers.[8] ACM, however, did not ask SS&C to produce any

---

[1] *See* SS&C, "Introduction to SS&C Technologies: Specialized Solutions for Publicly Traded Mortgage REITs," presented to Armour Residential REIT on June 2, 2014 (ACM0025350–60).
[2] First Am. Compl. ¶¶ 16, 23, 67–77, ECF No. 35.
[3] *See* ACM Discovery Letters to Court, ECF Nos. 51, 68, 71, 84, 94.
[4] On September 20, 2018, the parties held two telephonic meet-and-confers.
[5] ECF No. 132 (SS&C's experts "shall be subject to deposition on October 1, 2018 (or any earlier date that may be mutually agreed upon by counsel")).
[6] Sept. 29, 2017 Telephonic Disc. Conference at 28:21–23, ECF No. 56.
[7] SS&C's Supp. Interrog. Resp. to ACM's First Interrog. at 3–4 (Oct. 10, 2017).
[8] John Timothy Reilly, Dep. Tr. (Feb. 15, 2018), at 101:13–106:21, 152:15–153:22; *see also* Jeffrey Fecteau, Dep. Tr. (Oct. 5, 2017), at 132:13–22 (New York Mortgage Trust); 134:16–17 (Apollo); 141:13–20 (Western Asset); 149:5–7 (Ladder Capital); 173:2–3 (Five Oaks); 173:8–174:10 (Anworth); 225:5–6 (Annaly and Chimera).

Honorable Jeffrey Alker Meyer                                                                                   Page 3

documents concerning these clients.

Instead, ACM cabined its document requests to Bimini, Fortress, and Resource, purportedly unsatisfied customers—in contrast to the many happy clients named above. This Court's March 2, April 3, and April 27, 2018 discovery orders thus focus on the appropriate scope of discovery concerning these three clients.[9] While the Court rejected ACM's bid for additional Resource and Fortress documents, it allowed discovery to proceed with respect to Bimini.[10] At no time, however, did ACM raise any issue with the Court concerning *satisfied* customers.

## Discussion

There is nothing wrong with SS&C's experts discussing customers other than ACM and Bimini in their Expert Reports. Accordingly, ACM's request for relief under Rule 37(c)(1), premised on purported violations of Rules 26(a) and (e), is unfounded, and ACM's only available mode for relief is a motion *in limine*. SS&C does not dispute that ACM has the right to bring such a motion, but ACM's backdoor motion to strike should be denied.

**I.    ACM Fails to Establish Any Discovery Violation**

Rule 37 exists "to prevent the practice of 'sandbagging' an adversary with new evidence." *Emilio v. Sprint Spectrum L.P.*, 2017 WL 946333, at *4 (S.D.N.Y. 2017) (denying plaintiff's Rule 37 motion because plaintiff was already aware of the data at issue). Rule 26 is not violated where, as here, the information in question has "otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1)(A). Nor does a violation occur where failure to disclose the information was "harmless." Fed. R. Civ. P. 37(c)(1). *First*, as discussed above, ACM has long been on notice that SS&C successfully implemented CAMRA at multiple mortgage REIT clients. *Second*, even assuming *arguendo* that SS&C's initial disclosures could have more precisely identified the mortgage REIT implementations it would use in support of its defenses, any omission was "harmless." *Id*. *Third*, ACM has not asked for, nor has SS&C refused to produce, additional documents about the successful CAMRA implementations discussed in the Expert Reports.

In the end, because every implementation mentioned in the Expert Reports was already known to ACM, it cannot claim that information in the Expert Reports amounts to prejudice such that it is entitled to relief. *See Aboeid v. Saudi Arabian Airlines Corp.*, 2011 WL 5117733, at *2 (E.D.N.Y. 2011) ("Failure to comply with the mandate of Rule 26 is harmless when there is no prejudice to the party entitled to the disclosure."). Indeed, the material ACM finds objectionable was either made available by SS&C during the discovery process or is available to the world in public filings:

---

[9]   *See* ECF No. 74, at 5:19–13:3; No. 99, at 5:7–17:13; No. 100, at 3:15–16:13.
[10]  *See* ECF No. 74, at 11:23–13:3; ECF No. 99, at 7:11–16 (Bimini), 16:22–17:13 (Fortress and Resource); ECF No. 100, at 15:15–19 (Fortress).

Honorable Jeffrey Alker Meyer                                                                                      Page 4

- Mr. Hilliard's report identifies Annaly and Chimera as CAMRA customers **(i)** with asset portfolios similar to ACM that **(ii)** used "CI Manager," a CAMRA module, successfully.[11] His report also briefly refers in footnotes to publicly available details about the assets under management of five other "REIT clients" disclosed to ACM on October 10, 2017.[12]

- Mr. Maffattone's report provides similar information, but also offers details about his personal experience implementing CAMRA while employed at Annaly and Chimera.[13] Other than this information, which ACM could have probed further during his expert deposition, Mr. Maffattone's report presents facts about which ACM has been on notice for at least 12 months, if not more.

ACM's unilateral waiver of its right to depose SS&C's experts prior to the close of discovery does not constitute prejudice. To the extent ACM wants to argue that SS&C's proffered expert evidence is inadmissible, it is free to file *Daubert* and *in limine* motions. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589–95 (1993); *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).

**II.      ACM's Motion to Strike Should Be Denied**

ACM's application to strike portions of the Expert Reports is a "drastic remedy," *Lab Crafters, Inc. v. Flow Safe, Inc.*, 2017 WL 7034303, at *2 (E.D.N.Y. 2007), at odds with courts' "general preference to determine issues on the merits," *Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, 2014 WL 1572746, at *6 (D. Conn. 2014). Courts evaluating whether to strike an expert report consider the four *Softel* factors: **(i)** the opposing party's explanation concerning any failure to comply with a discovery order, **(ii)** the importance of the expert testimony at issue, **(iii)** any prejudice likely to be suffered by the party seeking to strike the report, and **(iv)** whether a trial date has been set or may be continued. *See id*. at *4 (citing *Softel Inc. v. Dragon Med. & Scientific Comm., Inc.*, 118 F.3d. 955, 961 (2d Cir. 1997)). No factor is dispositive on its own. *Powerweb*, 2014 WL 1572746, at *4. Analysis of all four factors weighs in favor of denying ACM's request.

*First*, SS&C did not fail to comply with any discovery order. ACM never asked SS&C to produce documents concerning satisfied mortgage REIT CAMRA customers and SS&C never refused to do so. ACM contends that this Court's April 27, 2018 ruling, prohibiting further burdensome discovery requests targeting SS&C clients, precludes any mention of other SS&C clients in the Expert Reports. To the contrary, the scope of that dispute concerned Fortress and Resource, clients ACM characterized as dissatisfied CAMRA customers.[14] The Court's ruling does not apply to the present dispute.

---

[11] Brooks L. Hilliard, *Expert Report, In the Matter of Armour Capital Management LP v. SS&C Technologies, Inc.* (Sept. 12, 2018), at 21.

[12] *See id.* at 15 n. 26 (discussing assets under management of Apollo Residential Mortgage, Ladder Capital, Western Asset Mortgage Capital, Chimera Investment, and New York Mortgage Trust); *id.* at n. 28 (discussing assets under management of Anworth Mortgage Asset Corporation); *supra* n. 7.

[13] *See* Michael Maffattone, *Expert Report* (Sept. 12, 2018), at 2, 6–7, 13–19.

[14] *See supra* nn. 9–10.

Here, ACM has long known about the existence of satisfied CAMRA customers. Entry of this information into the record does not constitute violation of a discovery order on a wholly different topic.

*Second*, the Expert Reports go to the heart of this case. Expert testimony meets this standard when it is "undoubtedly substantial, even if not essential." *This, LLC v. Jaccard Corporation*, 2017 WL 123421, at *2 (D. Conn. 2017). Such is the case here. Both Expert Reports address, among other critical points, the relevance of successful CAMRA implementations and whether, in turn, **(i)** the pre-contractual representations made about CAMRA were appropriate, **(ii)** CAMRA was a viable product for a mortgage REIT like ACM, and **(iii)** the contractual breaches identified by ACM are unfounded.

*Third*, the only prejudice ACM encountered in the face of these Expert Reports is of its own making—when it waived its right to take expert depositions without obtaining relief from the Court before the close of discovery. Any claimed prejudice set forth by these reports, which do not identify a single SS&C CAMRA customer that was unknown to ACM, could have been cured by deposing SS&C's experts. *See, e.g.*, *Lab Crafters*, 2017 WL 7034303, at *8 ("Courts to address [the third *Softel* factor] have stated that any prejudice to the opposing party can be alleviated by allowing them to depose the expert prior to trial.") ACM chose instead to cancel these depositions.

*Fourth*, because no trial date has been set, striking any portion of the Expert Reports at this juncture would be improper. *See Lassen v. Hoyt Livery, Inc.*, 2015 WL 2352491, at *3 (D. Conn. 2015) (finding that the absence of a trial date favored denial of defendant's motion to exclude or strike plaintiffs' proffered expert witness designation).

*Finally*, because ACM cannot point to "bad faith or other dilatory purpose" on SS&C's part, the relief ACM seeks should be rejected. *Liberty Mut. Fire Ins. Co. v. Omega Flex, Inc.*, 2013 WL 6047203, at *2 (D. Conn. 2013).

*   *   *

For the foregoing reasons, ACM's requested relief should be denied. Further, it should not now be allowed to reschedule the expert depositions it opted to unilaterally cancel. Discovery has closed and there are no grounds to reopen it. Alternatively, if the Court permits ACM to reschedule these depositions, it should order ACM to pay SS&C's reasonable expenses and attorney's fees. *See* Fed. R. Civ. P. 30(d)(2) (expenses and fees allowed where party impedes or delays fair examination of deponent).

Respectfully Submitted,

/s/ Nora Ahmed
Nora Ahmed