# EXHIBIT 6

```
                                                              Page 224
 1                       - Timothy Reilly -

 2     UNITED STATES DISTRICT COURT

 3     DISTRICT OF CONNECTICUT - NEW HAVEN DIVISION

 4     -------------------------------- X

 5     ARMOUR CAPITAL MANAGEMENT LP,        )

 6                  Plaintiff,              )   Case No:

 7          -vs-                            )   17-cv-00790-JAM

 8     SS&C TECHNOLOGIES, INC.,             )

 9                  Defendant.              )

10     -------------------------------- X

11

12     DATE:  June 8, 2018

13     TIME:  11:19 a.m.

14

15              CONTINUED VIDEOTAPED DEPOSITION OF

16     TIMOTHY REILLY, a 30(b)6) witness, held at the

17     offices of Holland & Knight, 31 West 52nd Street,

18     New York, New York, pursuant to Notice, before

19     Hope Menaker, a Shorthand Reporter and Notary

20     Public of the State of New York.

21

22

23

24

25
```

|  | Page 381 |
|---|---|
| | - Timothy Reilly - Attorneys' Eyes Only |

```
 1              - Timothy Reilly - Attorneys' Eyes Only
 2     that -- that utilized State Street or others and
 3     he's already -- Mr. Mountain testified that he --
 4     he had a relationship with another Deloitte
 5     partner at Western Asset Management, that was a
 6     State Street client utilizing the State Street
 7     product, in a -- in a publicly-traded mortgage
 8     REIT.
 9              And I suspect he may have consulted
10     on engagements of publicly-traded mortgage REITs
11     when he was at Deloitte because Deloitte had some
12     presence in this space so I had reason to believe
13     that -- we had reason to believe that they were a
14     sophisticated buyer of this technology either
15     through prior usage or -- or prior experiences.
16              So I had no reason to challenge these
17     individuals as to whether they knew what they were
18     doing.
19         Q.   And as to whether they believed what
20     SS&C was telling them, right?
21              MR. O'CONNOR:  Objection.
22         A.   I didn't ask them that either.
23         Q.   Did Bimini issue an RFP to SS&C?
24         A.   I don't recall.
25         Q.   Did Fortress issue an RFP to SS&C?
```

Page 382
```
 1              - Timothy Reilly - Attorneys' Eyes Only
 2         A.   I don't recall.
 3         Q.   Did Resource issue an RFP to SS&C?
 4              MR. O'CONNOR:  Objection.
 5              If you're going to be asking about
 6         other SS&C clients other than Bimini, I'm
 7         going ask the client representatives to leave
 8         the room and designate this attorneys' eyes
 9         only.
10         Q.   Go ahead, sir.
11         A.   No.
12         Q.   There's one question:  Did Resource
13     issue an RFP to SS&C?
14              MR. O'CONNOR:  I'm instructing him
15         not to answer.  Unless you -- I'm designating
16         this attorneys' eyes only.
17              MR. MAMOUNAS:  These are facts that
18         are four years old.  Come on.
19              MR. O'CONNOR:  No.
20              MR. MAMOUNAS:  This is an abuse of
21         the confidentiality order.  Give me a break.
22              MR. O'CONNOR:  No, it's not.
23              MR. MAMOUNAS:  Give me a break.
24              MR. O'CONNOR:  No, no.  I'm
25         instructing him not to answer.
```

Page 383
```
 1              - Timothy Reilly - Attorneys' Eyes Only
 2              MR. MAMOUNAS:  Give me a break come
 3         one.
 4              MR. O'CONNOR:  The court already
 5         ruled on your overreach with respect to these
 6         clients.
 7              MR. MAMOUNAS:  There's no overreach.
 8              MR. O'CONNOR:  I'm going to instruct
 9         him to answer and --
10              MR. MAMOUNAS:  Stop wasting my time.
11              MR. O'CONNOR:  -- I'm going to
12         designate this portion the transcript
13         attorneys eyes only.  We can continue if the
14         client representatives want to leave,
15         otherwise I'm instructing the witness not to
16         answer.
17              MR. MAMOUNAS:  Note our amazement and
18         amusement, please, for the record that as to
19         one simple question four years past, there
20         might be some level of sensitivity or
21         concern.  We'll come back to it.
22         Q.   Prior to the Armour contract, did
23     SS&C ask Citi what would be required to set up an
24     interface with Citi as Armour's custodian?
25         A.   Citi was the custodian that -- that
```

Page 384
```
 1              - Timothy Reilly - Attorneys' Eyes Only
 2     was being transitioned out of Armour.  Armour had
 3     that contractual relationship with Citi and I
 4     don't know why we would have had to have a
 5     discussion or why we would have had a discussion
 6     with Citi.
 7         Q.   Okay.  My question didn't ask why, my
 8     question asked if SS&C asked Citi what would be
 9     required to set up access for Armour as its
10     custodian?
11              MR. O'CONNOR:  Objection.
12         A.   As I've already testified, that
13     responsibility is on Armour.
14         Q.   My question isn't about
15     responsibility, my question is about facts.
16              Did SS&C ask Citi what would be
17     required to set up an interface with Citi as
18     Armour's custodian?
19              MR. O'CONNOR:  Objection.
20         A.   Why would SS&C have any
21     responsibility to ask Citi about setting up an
22     interface with SS&C when our contractual
23     responsibility was for that data to flow through
24     Armour.
25         Q.   Okay.  That's not how this works.
```