PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS     NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING, 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
(212) 373-3986

WRITER'S DIRECT FACSIMILE
(212) 492-0986

WRITER'S DIRECT E-MAIL ADDRESS
nahmed@paulweiss.com

October 4, 2018

**Via CM/ECF**

Honorable Jeffrey Alker Meyer
United States District Judge for the District of Connecticut
Richard C. Lee United States Courthouse
141 Church Street
New Haven, Connecticut 06510

*Armour Capital Management LP v. SS&C Technologies, Inc.*
**Case No.: 3:17-cv-00790-JAM**

Dear Judge Meyer:

We write to reply to ACM's letter brief, filed on October 3, 2018, ECF No. 156 ("ACM Ltr."). SS&C's Expert Reports discuss successful CAMRA implementations and satisfied customers, which ACM never sought to probe throughout fact discovery. Accordingly, neither law nor facts support ACM's application, which asks this Court to **(i)** strike portions of the Expert Reports, and **(ii)** endorse ACM's unilateral decision to cancel the depositions of SS&C's experts.

*First*, SS&C expected and prepared for ACM to depose its experts, Mr. Michael Maffattone and Mr. Brooks Hilliard, prior to the close of fact discovery. On September 7, 2018, SS&C informed ACM that it planned to submit two expert reports on September 12, 2018.[15] ACM did not object to this disclosure and proceeded to schedule the depositions for October 2 and 4, 2018. On September 10, 2018, ACM informed SS&C that it was "all set for the depos on Oct. 2 and 4 at H&K's New York offices and agree[s] to SS&C serving its expert reports on Wednesday, Sept. 12."[16] It was only on September 18, 2018, after mulling over the contents of the Expert Reports for six days, that ACM teed up this dispute.

ACM's application, however, does not comport with the law. It fails to satisfy the four-factor test that courts use to assess the propriety of a motion to strike. Significantly, ACM's letter brief omits any mention of three of the four factors at issue, including that **(i)** ACM was put on notice of all information in the Expert Reports long before they were served; **(ii)** the Expert Reports go to the heart of the issues in this case; and **(iii)** the absence of a trial date. (*See* SS&C's Ltr. Br. at 4–5, ECF No. 157 ("SS&C Ltr.").) Indeed, as the cases relied on by ACM show,

---

[15] *See* e-mail chain between counsel for ACM and SS&C (Sept. 10, 2018).
[16] *Id.*

Honorable Jeffrey Alker Meyer                                                                                          Page 2

deposing SS&C's experts would have cured any prejudice ACM claims it will face at trial. *Cope v. Wal-Mart Stores East, LP*, 2017 WL 2802722, at *7 (D. Conn. 2017), held that defendant's late disclosure of an affidavit prejudiced plaintiff largely because *plaintiff had no opportunity to depose* the affidavit's author. *Pearlman v. Cablevision Sys. Corp.*, 2015 WL 8481879, at *11 (E.D.N.Y. 2015), likewise held that the *lack of opportunity to depose the proffered expert* witness contributed to the prejudice suffered. Here, ACM had the opportunity to depose SS&C's experts but unilaterally decided not to do so. Thus, the only prejudice to which ACM has been subjected is of its own making. Moreover, prejudice alone is not dispositive in assessing the propriety of a motion to strike. *See Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, 2014 WL 1572746, at *4 (D. Conn. 2014). Striking any portion of the Expert Reports would therefore be improper.

*Second*, undisclosed information does not trigger a Rule 37 violation when the lack of disclosure was "harmless." Fed. R. Civ. P. 37(c)(1). Far from containing an "endless litany of information and witnesses about other customers" (AMC Ltr. Br. at 3), the Expert Reports largely recite generic facts long known by ACM about successful mortgage REIT CAMRA implementations (SS&C Ltr. at 4). Accordingly, SS&C did not violate Rules 26(a) or (e). But even if this Court were to find that ACM's initial disclosures were lacking—and they were not—any alleged omissions were "harmless" because the information was otherwise made known to ACM. *See* Fed. R. Civ. P. 26(e)(1)(A); *see also* SS&C's Ltr. at 4–5.[17]

Nor may ACM fault SS&C's rebuttal experts for asking for, and relying on, information produced to ACM along with the Expert Reports. Rule 26(a)(2)(B)(ii) requires experts submitting reports to include with their reports "the facts and data considered" in forming their opinions. Where, as here, this information falls within the proper scope of an expert's rebuttal report, Rule 26 is not violated. *See, e.g.*, *S.W. v. City of New York*, 2011 WL 3038776, at *4 (E.D.N.Y. 2011). Here, SS&C's experts not only discussed information known to ACM, they did so to rebut allegations about CAMRA's functionality and the competence of SS&C's staff *raised by ACM's own expert*, Professor Steven Kursh.[18] Tellingly, Professor Kursh discusses CAMRA implementations at customers other than ACM and Bimini, including Annaly, Chimera, Western Asset, Apollo, New York Mortgage Trust, Resource, and Fortress.[19]

*Third*, ACM has not identified a Court order in support of its claim that it was

---

[17] The cases ACM relies on to support a Rule 37 violation are inapposite. *Grajales-Romero*, *Providence Piers*, and *Hicks* imposed Rule 37 sanctions because witnesses to be presented at trial were disclosed *after* discovery closed, or on the eve of the discovery cut-off date. *See Grajales-Romero v. Am. Airlines, Inc.*, 194 F.3d 288, 297 (1st Cir. 1999); *Providence Piers, LLC v. SMM New England, Inc.*, 2015 WL 9699936, at *3 (D.R.I. 2015); *Doe v. Hicks*, 2016 WL 5172814, at *6–8 (D. Conn. Sept. 21, 2016). These facts are not present here. As an initial matter, neither of SS&C's experts are fact witnesses, as was the case in *Grajales-Romero* and *Hicks*. And each disclosed their expert report to ACM on a date agreed to by the parties, in advance of the close of fact discovery. *Pena-Crespo v. P.R.*, 408 F.3d 10, 13–14 (1st Cir. 2005), is similarly inapt. There, the court levied sanctions because the expert failed to submit a report. Both Mr. Maffattone and Mr. Hilliard submitted reports and the underlying facts and data relied on to establish their opinions. To the extent ACM is arguing that Steve Kremidas, Chris Furlo, Barbara Arnold, Brian Lawrence, and Mike Parlapiano are witnesses that SS&C plans to use at trial, they are wrong. Nor may ACM complain about not having received a CAMRA demonstration when one was provided as part of the sales pitch process. Any information that ACM believes SS&C's experts improperly relied on is properly challenged on a motion *in limine*. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).

[18] *See, e.g.*, Steven R. Kursh, *Expert Report* (July 11, 2018), at ¶¶ 165–75, 187–97.

[19] *Id.* at ¶¶ 53, 61, 99 n. 73, 221.

Honorable Jeffrey Alker Meyer                                                                                      Page 3

precluded from taking discovery on successful CAMRA implementations. ACM twice quotes from this Court's April 27, 2018 order—which states that this lawsuit is about ACM and SS&C's "broken relationship"—to suggest that the Expert Reports are barred from discussing CAMRA customers other than ACM. (ACM Ltr. at 1, 3.)[20] They are not because the scope of the dispute before the Court on April 27 grew out of ACM's quest for information and documents **(i)** "for CAMRA customers where implementation never occurred," and **(ii)** "where customers complained or had problems with implementation."[21] At no point before, during, or after that hearing did ACM ask for documents about *satisfied* CAMRA customers or *successful* CAMRA implementations about which it had been on notice since as early as June 2, 2014.[22] On the contrary, the Court recognized that ACM was interested in other companies "out there" that had expressed "similar kinds of complaints or concerns" to ACM.[23] Indeed, one of the deposition excerpts upon which ACM relies shows that ACM never followed up when it learned about happy CAMRA clients.[24] ACM's primary interest was always in purportedly dissatisfied clients, including Bimini, Fortress, and Resource.[25]

*Fourth*, ACM's contention under Rule 33 concerning interrogatories is equally meritless. Following discussion with the Court, SS&C produced information relating to ten clients for which CAMRA was successfully implemented—including all customers discussed by Mr. Maffattone and Mr. Hilliard in the Expert Reports.[26] The idea that SS&C hid information from ACM is simply false.

*Finally*, ACM's complaint that Mr. Maffattone is a fact, not an expert, witness is appropriately addressed on a *Daubert* motion. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589–95 (1993). Should ACM choose to file one, SS&C will respond.

Respectfully Submitted,

/s/ Nora Ahmed
Nora Ahmed

---

[20] ACM's assertion that the Court was "a little surprised to see [other customer discovery] coming back" does not place the statement in context. ACM Ltr. at 3. Indeed, the Court was clear that it was "surprised to see" discussions about "Fortress" and "Resource" "coming back" because it had already ruled that no further discovery would be taken on these CAMRA clients. Apr. 27, 2018 Hr'g Tr., ECF No. 100 ("Apr. 27 Hr'g Tr."), at 15:19–22.

[21] *See* ACM's Sept. 28, 2017 Ltr. Br., ECF No. 51, at 1 (identifying Document Request Nos. 19 and 20 as forming the primary basis for ACM's motion to compel).

[22] *See also* Sept. 29, 2017 Hr'g Tr., ECF No. 56 ("Sept. 29 Hr'g Tr."), at 29:24–30:5 (granting ACM permission to ask broad questions about SS&C customers at depositions).

[23] Sept. 29 Hr'g Tr. at 30:3–4.

[24] *See* Normand Boulanger Dep. Tr. (May 3, 2018), at 79:21–82:22 (upon learning that Annaly is a satisfied CAMRA client, ACM pivots to inquire about dissatisfied clients).

[25] *See, e.g.*, Tony Gonzalez Dep. Tr. (Apr. 30, 2018), at 209:22–211:9 (Fortress). The objections made by SS&C's counsel that ACM calls out in its filing were directed toward this Court's ruling precluding ACM from further investigating issues concerning Fortress and Resource. SS&C's counsel, however, never directed a witness not to answer a question asked by ACM's counsel. If ACM's counsel sought to continue a line of inquiry that it believed SS&C prevented, the appropriate remedy would have been for ACM to timely file a motion to compel.

[26] *See* Sept. 29 Hr'g Tr. 28:20–23; SS&C's Supp. Interrog. Resp. to ACM's First Interrog. at 3–4 (Oct. 10, 2017).