EXHIBIT C
(Letter, Dkt#51, dated Sept.
28, 2017, FNs 3 & 21)

# Holland & Knight

701 Brickell Avenue, Suite 3300 | Miami, FL 33131 | T 305.374.8500 | F 305.789.7799
Holland & Knight LLP | www.hklaw.com

Allison Kernisky
305-349-2175
allison.kernisky@hklaw.com

September 28, 2017

*Via CM/ECF*

Honorable Jeffrey A. Meyer
U.S. District Judge, District of Connecticut
Richard C. Lee United States Courthouse
141 Church Street, Courtroom 3
New Haven, CT 06510

   Re: *ARMOUR Capital Management LP v. SS&C Technologies Inc.*, Case No. 17-cv-00790-JAM (D. Conn.)

Dear Judge Meyer:

  We respectfully submit this letter brief on behalf of our client, Plaintiff ARMOUR Capital Management LP ("ACM"), in support of certain of ACM's discovery requests to Defendant SS&C Technologies Inc. ("SS&C"), seeking information and documents on SS&C's other customers.

### *Background*

  SS&C marketed and sold to ACM an accounting software product called CAMRA, and related implementation, hosting, and other services. SS&C was never able to implement CAMRA, costing ACM over $2 million on a worthless product. This case involves SS&C's pre- and post-contractual misrepresentations to ACM during the sales process—that SS&C was qualified to implement CAMRA, hosting was appropriate, and SS&C could implement within four to six months—and after ACM entered into an agreement—that implementation would occur. SS&C made these statements, which were false, to induce ACM to enter into an agreement, and then, to secure continued payments from ACM and prevent it from terminating the agreement or making a warranty claim. ACM has sued SS&C for breach of contract, violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), intentional and negligent misrepresentation, and rescission.

  To support its claims and address SS&C's defenses, ACM served discovery requests on SS&C, for the identity of SS&C's other CAMRA customers (Interrogatory No. 3), information and documents for CAMRA customers where implementation never occurred (Interrogatory No. 4; Req. No. 19), where customers complained or had problems with implementation (Interrogatory No. 5; Req. No. 20), or where customers used CAMRA on an outsourced basis (Interrogatory No. 6). *See* Exhibit A (full text of ACM's requests and SS&C's responses and objections).

  SS&C has refused to produce anything on other customers, claiming irrelevance and

Anchorage | Atlanta | Austin | Boston | Charlotte | Chicago | Dallas | Denver | Fort Lauderdale | Houston | Jacksonville | Lakeland
Los Angeles | Miami | New York | Orlando | Portland | San Francisco | Stamford | Tallahassee | Tampa | Tysons
Washington, D.C. | West Palm Beach

Hon. Jeffrey A. Meyer
September 28, 2017
Page 2

burden, on the grounds that it has too many CAMRA customers to be able to investigate and determine which ones had problems.[1]  This information is relevant to ACM's claims, producing it will not burden SS&C, and ACM's need is critical because it is deposing SS&C employees next week, necessitating the Court's assistance.

### *SS&C's Other CAMRA Customers Are Relevant To ACM's Claims.*

SS&C's repeated misrepresentations that it could implement CAMRA, "hosting" was appropriate, and how long implementation would take are relevant to show notice and intent.  One possible basis for these misrepresentations is SS&C's experiences with its other customers.  The information ACM is requesting—if other customers experienced delays or problems with implementation, or, like ACM, had a complete failure of implementation—is relevant to whether SS&C's representations were false and whether SS&C knew that it had no reasonable basis for making such statements, and intentionally misrepresented its capabilities anyway.  Such information is probative of whether SS&C committed fraud or simply made negligent misrepresentations.  *See, e.g.*, *Bartold v. Wells Fargo Bank, N.A.*, No. 14-cv-00865, 2016 WL 7493950, at *5 (D. Conn. Dec. 30, 2016) (customer complaints, lawsuits, and concerns raised to defendant's compliance department relevant to "demonstrate whether the problems faced by [plaintiff] raised broader systemic issues as to how [defendant] conducted its [ ] business.").

After all, ACM is not in a position to know everything SS&C knew, and must rely on information obtained through discovery.  Relevance in discovery is "generously construed."  *See Benjamin v. Oxford Health Ins., Inc.*, No. 3:16-CV-00408 (AWT), 2017 WL 772328, at *4 (D. Conn. Feb. 28, 2017).  Rule 26 provides that information sought in discovery "need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).

Information on other customers is also relevant to causation.  SS&C argues that ACM, not SS&C, "bore ultimate responsibility for implementation," or, if SS&C had the obligation, ACM thwarted SS&C's implementation through its own fault.  (SS&C's Motion to Dismiss at 12, 28.) ("In fact, there are myriad reasons, including ACM's own deficiencies and inabilities, which may have contributed to the lack of successful implementation.").  By raising the defense that ACM was an intervening cause of SS&C's failure to implement, SS&C has put at issue the chain of causation.  ACM is entitled to rebut SS&C's defense with evidence of SS&C's ability (or inability) to implement CAMRA despite other customers' alleged "deficiencies and inabilities," which implicates issues of notice, causation, and defect.  ACM's expert will need such information, too.

Although ACM has not brought a products-liability claim against SS&C, notice, causation, and defect are germane here.  Information on other customers goes to notice and may lead to relevant evidence.  *See, e.g.*, *Josephs v. Harris Corp.*, 677 F.2d 985, 991 (3d Cir. 1982) (information on persons defendant knew injured by product at issue "patently relevant" to duty to warn and may lead to relevant evidence).  Moreover, Connecticut courts allow discovery on problems experienced by other customer's use of the same or similar product.  *See Napolitano v.*

---

[1] SS&C's objection that ACM's requests call for trade secret or proprietary data is a red herring, given the Court's Standing Protective Order (ECF No. 4), and the ability of the parties to designate confidentiality.

Hon. Jeffrey A. Meyer
September 28, 2017
Page 3

*Synthes, Inc.*, No. 3:09-CV-828 (TLM), 2013 WL 1798790, at *3-4 (D. Conn. Apr. 29, 2013)
(granting motion to compel on problematic medical devices similar to one at issue); *Barack v. Am.
Honda Motor Co. Inc.*, No. 3:09-CV-565 (AWT), 2010 WL 11417797, at *2 (D. Conn. Nov. 12,
2010) (requiring defendants to produce records of similar incidents involving defective car parts);
*see also Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 75 (D. Mass. 1976) (accidents similar
to one at issue relevant to whether defendant knew product was dangerous when marketed).

### SS&C Will Not Be Burdened By Providing Information on Other CAMRA Customers.

To avoid production, SS&C must do more than simply object and claim burden; it must
offer facts to establish burden. *See Barack*, 2010 WL 11417797, at *1 n.2 ("Under well-settled
law, the party resisting production bears the responsibility of establishing undue burden."); *see
also In re In-Store Advertising Sec. Lit.*, 163 F.R.D. 452, 455 (S.D.N.Y. 1995) ("If a party resists
production on the basis of claimed undue burden, it must establish the factual basis for the assertion
through competent evidence.").

SS&C repeats that it has over 500 clients which use CAMRA and it cannot be expected to
investigate each one to ferret out "problem customers." SS&C's objection does not establish
burden—nor could it.[2] Although SS&C has resisted providing ACM specific information, ACM
is aware from its three years of pre-suit dealings with SS&C that it is organized into divisions
responsible for CAMRA, "hosting," implementation, and ACM's specific industry, among others.
Moreover, SS&C is a multibillion-dollar public company. So, as any business would, SS&C must
have policies and procedures to identify and monitor dissatisfied customers, including a list of
"problem customers" that SS&C can provide to ACM or use to locate responsive documents. At
a minimum, SS&C has had three months since ACM served its discovery requests to investigate
these requests and provide specific facts supporting burden; it has not.

Moreover, ACM has worked with SS&C for months to accommodate its purported
objection to alleviate any conceivable burden on SS&C. The parties have telephonically met and
conferred on August 1, 17, and September 22, 26, 2017, and exchanged more than a dozen emails.
SS&C continues to stall. ACM served its requests three months ago, and cannot afford further
delay—it is deposing SS&C employees next week, and information on other customers is critical.

For the reasons set forth above, ACM respectfully requests that the Court enter an order

---

[2] SS&C also objects that ACM's requests are not proportionate to the needs of this case. Discovery on other
customers' problems is allowed if adequately focused. In *Bartold*, plaintiff sought "specific customer complaints,
lawsuits, and previously identified concerns of which [defendant's] compliance department was aware" in order to
"understand whether [defendant] knew of similar mistakes that had been made in other customers' reverse mortgages
at the time that [defendant] engaged in the underlying dispute" with him. 2016 WL 7493950, at *5. The court
disagreed with defendant that the requests were not proportional and would impose "impossible burdens" and found
that it "would not be impossible for [defendant] to prepare; rather, it would simply require [it] to determine whether
it was aware of any relevant prior instances where mistakes were made in connection with the onboarding or correction
of a reverse mortgage." *Id.* Here, ACM's requests are proportional because they are limited to other CAMRA
customers' problems with implementation from April 1, 2014 through May 1, 2017.

Hon. Jeffrey A. Meyer
September 28, 2017
Page 4

requiring SS&C to respond to ACM's Interrogatory Nos. 3-6 and Document Request Nos. 19 and 20, on an expedited basis, but no later than Tuesday, October 2, 2017.

Respectfully submitted,

HOLLAND & KNIGHT LLP

Allison Kernisky

CC:     All counsel of record.

# Exhibit A

Request Nos. 19 and 20 from ARMOUR Capital Management LP's ("ACM") First Request for Production to SS&C Technologies, Inc. ("SS&C"), served June 26, 2017, and SS&C's Responses and Objections, served July 26, 2017:

      19.     All Documents, including Communications, reflecting or relating to the uncompleted implementation of CAMRA for any Person other than ACM.

**OBJECTIONS AND RESPONSE:**

**SS&C objects to Request No. 19 on the grounds that the Request is overly broad,**

**unduly burdensome, not reasonably calculated to lead to the discovery of admissible**

**evidence, calculated to harass, and not proportionate to the needs of this case. SS&C also**

**objects to the extent the Request calls for confidential, proprietary or trade secret documents**

**or information, and/or documents or information protected by the attorney client-privilege,**

**the work-product doctrine, the common-interest privilege, or any other applicable privilege.**

      20.     All Documents, including Communications, reflecting or relating to any complaints, failures, accidents, incidents, problems, damages, or similar occurrences with CAMRA that did not involve ACM.

**OBJECTIONS AND RESPONSE:**

**SS&C objects to Request No. 20 on the grounds that the Request is vague, unclear,**

**overly broad, not reasonably calculated to lead to the discovery of admissible evidence,**

**calculated to harass, and not proportionate to the needs of this case. SS&C also objects to the**

**extent the Request calls for confidential, proprietary or trade secret documents or**

**information, and/or documents or information protected by the attorney client-privilege, the**

**work-product doctrine, the common-interest privilege, or any other applicable privilege.**

Interrogatory Nos. 3-6 from ACM's First Set of Interrogatories, served June 26, 2017, and SS&C's Responses and Objections, served July 26, 2017:

> 3.   Identify the Contact Information for all Persons, including any mortgage REITs, that ever have used or currently are using CAMRA. For each Person You identify, state (a) the length of time from the execution of Your contract with such Person until CAMRA was fully implemented and (b) whether CAMRA was hosted by such Person, hosted by You, operated by You as an outsourced service, or provided by some other mechanism.

**OBJECTIONS AND RESPONSE:**

**In addition to the General Objections, SS&C objects to Interrogatory No. 3 on the grounds that it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, calculated to harass, seeks information that is not relevant to any claim or defense asserted in this matter, seeks confidential and proprietary information and trade secrets, and is not proportionate to the needs of this case. SS&C also objects to Interrogatory No. 3 because the phrase "ever have used or currently are using CAMRA" is vague and unclear.**

**Subject to and without waiving the foregoing objections, SS&C states that Plaintiff has used CAMRA, and SS&C uses CAMRA. SS&C also refers Plaintiff to the list of Persons with knowledge of relevant facts and the categories of facts described in SS&C's Initial Disclosures, as well as information contained the documents produced in this action by Plaintiff, and the documents SS&C produces in response to Plaintiff's document requests.**

4.   Identify the Contact Information for all Persons other than ACM for which CAMRA was
     attempted to be, but ultimately was not, fully implemented. For each Person You identify,
     state (a) the length of time from the execution of Your contract with such Person until work
     to fully implement CAMRA ended, (b) whether CAMRA was (or was intended to be)
     hosted by such Person, hosted by You, operated by You as an outsourced service, or
     provided by some other mechanism, and (c) the reasons that CAMRA was not fully
     implemented.

## OBJECTIONS AND RESPONSE:

In addition to the General Objections, SS&C objects to Interrogatory No. 4 on the

grounds that it is overbroad, unduly burdensome, not reasonably calculated to lead to the

discovery of admissible evidence, calculated to harass, seeks information that is not relevant

to any claim or defense asserted in this matter, seeks confidential and proprietary

information and trade secrets, and is not proportionate to the needs of this case.

5.   Identify the Contact Information for all Persons other than ACM for which You have any
     knowledge or belief about any complaints, failures, accidents, incidents, problems,
     damages, or similar occurrences with CAMRA, including all Persons who have
     discontinued their use of CAMRA. For each Person You identify, state the date of and
     describe each such complaint, failure, accident, incident, problem, damage, discontinuance
     or similar occurrence with CAMRA.

## OBJECTIONS AND RESPONSE:

In addition to the General Objections, SS&C objects to Interrogatory No. 5 on the

grounds that it is overbroad, unduly burdensome, not reasonably calculated to lead to the

discovery of admissible evidence, calculated to harass, seeks information that is not relevant

to any claim or defense asserted in this matter, seeks confidential and proprietary

information and trade secrets, and is not proportionate to the needs of this case. SS&C

further objects to interrogatory No. 5 because the terms "complaints," "failures,"

"accidents," "incidents," "problems," "damages," and "similar occurrences" are unduly

vague and unclear.

6.      Identify the Contact Information for all Persons other than ACM who use or used CAMRA on an outsourced basis in which SS&C personnel operate and maintain, or provide substantial direct support for the operation and maintenance of CAMRA. Identify when each Person began using CAMRA on an outsourced basis, whether such Person had previously attempted to implement or use CAMRA on some other basis of operation, and when such attempt began.

## OBJECTIONS AND RESPONSE:

**In addition to the General Objections, SS&C objects to Interrogatory No. 6 on the grounds that it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, calculated to harass, seeks information that is not relevant to any claim or defense asserted in this matter, seeks confidential and proprietary information and trade secrets, and is not proportionate to the needs of this case.**

# EXHIBIT C
# (Letter, Dkt#68, dated March 1, 2018, FN 3)

# Holland & Knight

701 Brickell Avenue, Suite 3300 | Miami, FL 33131 | T 305.374.8500 | F 305.789.7799
Holland & Knight LLP | www.hklaw.com

Allison Kernisky
305-349-2175
allison.kernisky@hklaw.com

March 1, 2018

*Via CM/ECF*

Honorable Jeffrey A. Meyer
U.S. District Judge, District of Connecticut
Richard C. Lee United States Courthouse
141 Church Street, Courtroom 3
New Haven, CT 06510

    Re:    *ARMOUR Capital Mgmt. LP v. SS&C Techs. Inc.*, No. 17-cv-00790-JAM.

Dear Judge Meyer:

        In accordance with ECF No. 65, ARMOUR Capital Management LP ("ACM") respectfully submits this letter brief in support of several discovery requests SS&C Technologies Inc. ("SS&C") has resisted. These requests focus primarily on the emergence in discovery of SS&C's "problematic" and "lengthy/over budget" implementations of CAMRA—the product at issue—for its four "licensed REIT clients," of which ACM was one, in 2015-17. ACM also seeks the Court's guidance with respect to four of the parties' remaining depositions.

### *Background*

        The heart of this dispute is the failure by SS&C, a multi-billion dollar technology outfit and CAMRA's developer, to implement CAMRA for ACM. ACM's First Amended Complaint (ECF No. 35) ("FAC") alleges claims for breach of contract based on that failure and SS&C's pre- and post-contractual misrepresentations regarding what products and services SS&C told ACM were appropriate for it and the qualifications, experience, and outcomes ACM could expect.

        Although SS&C has not yet filed an answer, its defensive theory has two parts: (1) ACM was required to implement CAMRA for itself and (2) the failed implementation was ACM's fault. The former enjoys no support in the parties' operative agreement or other documents. With respect to the latter, discovery has revealed that at the same time that ACM's implementation was failing, so too were the implementations of SS&C's other three "licensed REIT clients."[1] J. Timothy Reilly, a Senior Vice President at SS&C, termed this issue as "4 problem REIT implementations." Logically, these "problem[s]" have been the subject of follow-on discovery by ACM.

---

[1] They are Bimini Capital Management Inc. ("Bimini"), Resource Capital Corp. ("Resource") and Fortress Investment Group ("Fortress").

Anchorage | Atlanta | Austin | Boston | Charlotte | Chicago | Dallas | Denver | Fort Lauderdale | Houston | Jacksonville | Lakeland
Los Angeles | Miami | New York | Orlando | Portland | San Francisco | Stamford | Tallahassee | Tampa | Tysons
Washington, D.C. | West Palm Beach

Hon. Jeffrey A. Meyer
March 1, 2018
Page 2

### *Disputes Regarding ACM's Document Requests*

Discovery obtained as recently as the week of February 12, 2018, has shown that SS&C's approach to implementing CAMRA for "licensed REIT clients" was helter-skelter.

Iwona Olszewska, the head of SS&C's implementations team, Professional Services, complained frequently that Sales excluded her from the sales process, which put pressure on her to make solutions work. Another executive believed Sales underpriced implementations, forcing Professional Services to complete them with fewer resources. Nine months into ACM's contract— at the same time that SS&C restarted ACM's implementation from scratch—Ms. Olszewska was removed. Her "upgrade," as Mr. Reilly put it, himself was fired from SS&C in late 2016.

These events were not isolated. SS&C was having massive difficulties completing the implementations of its four "licensed REIT clients." As early as July 2015, the head of SS&C's REIT Servicing Group, Daniel Pallone, identified an SS&C "resource allocation" issue on the ACM implementation, which eventually infected all of SS&C's implementations for "licensed REIT clients." According to Mr. Pallone, SS&C was "cannibalizing" these clients with bad "onboarding experiences," and he worried that SS&C would lose *all* of its REIT business.

The bottom line is that SS&C had systemic problems with implementation for at least all four of its "licensed REIT clients." This is the material ACM's initial discovery responses in June 2017 sought to uncover because it is relevant to ACM's claims and SS&C's defenses, including issues of notice, causation, and defect. ACM also served follow-on discovery regarding these problems in December 2017. With the discovery ACM has elicited, a compelling predicate exists for SS&C to produce additional documents within the scope of ACM's prior requests.

### *Bimini*

On June 26, 2017, ACM served the following document requests:

> 19. All Documents, including Communications, reflecting or relating to the uncompleted implementation of CAMRA for any Person other than ACM.

> 20. All Documents, including Communications, reflecting or relating to any complaints, failures, accidents, incidents, problems, damages, or similar occurrences with CAMRA that did not involve ACM.

By the time of SS&C's July 26, 2017 responses, SS&C knew that Bimini's and Resource's (and perhaps also Fortress's) implementations were incomplete and years behind schedule, yet SS&C refused to produce responsive documents. This prompted a hearing in September 2017, during which SS&C argued primarily that producing such documents was burdensome. Thus, the Court, *without prejudice*, ordered SS&C to produce responsive documents subject to a carve out for implementations that were incomplete for reasons idiosyncratic to the SS&C client.

But when it came time for production, SS&C refused to produce documents relating to Bimini's implementation because they purportedly were subject to the carve-out. According to

Hon. Jeffrey A. Meyer
March 1, 2018
Page 3

SS&C, Bimini's implementation had been completed, but Bimini simply chose not to "go live" with CAMRA. This claim was false. In January 2018, Bimini attested that SS&C had failed to implement CAMRA for it on a hosted basis, even though Bimini had satisfied all of SS&C's requests concerning the implementation. *See* Jan. 29, 2018 Aff. G. Hunter Haas, IV at ¶¶ 6-7, attached at Exhibit A. Thus, SS&C knew that it was required to produce Bimini documents under the Court's September 29, 2017 order but withheld them on a misleading premise. When confronted with this proof, SS&C promised to produce these documents, but to date, five months overdue, SS&C's production remains out of compliance with the Court's September 2017 order.

### *Fortress and Resource*

The Court also ordered at the September 2017 hearing that if ACM found, through discovery, that there was a basis for SS&C to produce additional documents related to other clients, ACM could seek modification of the September 29, 2017 order.

Since that time, discovery has shown that the massive problems and years-long delays with implementation were not limited to ACM or Bimini but also were happening with Resource and Fortress. This new information is responsive to ACM's June 26, 2017 requests, and in accordance with the September 2017 hearing, SS&C should be required to produce it. But rather than demand that SS&C produce *all* responsive documents, ACM voluntarily limited SS&C's burden to:

- SS&C's resource allocation, lack of client commitment, or any other issues that delayed implementations for the four "licensed REIT clients" or caused them to fail, including weekly status reports documenting SS&C's understanding of the causes of the delays;

- Leadership changes within Professional Services, including the removal and replacement of Ms. Olszewska in 2015, the hiring and firing of her replacement in 2015 and 2016, respectively, and the reduced responsibilities of Mr. Reilly starting in April 2017; and

- The strained relationship between Professional Services and Sales in 2014, before ACM signed its operative agreements with SS&C. (For a fuller description, see Exhibit B.)[2]

SS&C has refused to produce documents relating to even these issues. This despite the fact that ACM also agreed to exclude day-to-day minutiae by limiting SS&C's production to only the management-level custodians and narrowly tailored search terms.

At any rate, these documents are probative of the reasons ACM's implementation failed and SS&C's breach of its contract with ACM; the truth of SS&C's pre-contract misrepresentations that hosting was appropriate and SS&C had the qualifications and experience to implement CAMRA for ACM; and the truth of SS&C's post-contract misrepresentations on these matters.

---

[2] These issues also are discoverable because of the Bimini implementation, described *supra*, and, are responsive to ACM's June 26, 2017 Document Requests, attached at Exhibit C, Nos. 6, 11, 12, 13, 20, and 24, and its December 22, 2017 Document Request Nos. 4-11, attached at Exhibit D.

Hon. Jeffrey A. Meyer
March 1, 2018
Page 4

### *Disputes Regarding Certain Depositions*

SS&C has subpoenaed ARMOUR Residential REIT Inc. (the "REIT"), and ACM's auditors, Deloitte, for vast swaths of documents, including essentially Deloitte's entire working file, and to depose their corporate representatives (*see* Exhibits E and F, respectively).

These subpoenas should be quashed because SS&C has not established any predicate for this discovery, and it is a harassing fishing expedition. SS&C premises the subpoenas on a theory that ACM sought out SS&C to upgrade its portfolio accounting solution, which would seem true for any SS&C client. SS&C also claims that ACM was motivated by past accounting deficiencies, but despite its extensive document requests and deposition questioning on this issue, it has elicited no proof. SS&C similarly has elicited no proof that the REIT or Deloitte have any documents or knowledge about anything relevant to this case. And even if SS&C had any predicate for the discovery, the subpoenas are overbroad and unduly burdensome and invade various privileges.[3]

ACM also requests an extra hour each to complete Ms. Olszewska's and Mr. Pallone's depositions beyond the approximately one hour remaining in each deposition (i.e., for a total of two hours each). Although a non-controversial request given the witnesses' importance, SS&C has refused. SS&C abruptly terminated Mr. Olszewska's deposition (mid-question, no less), Mr. Pallone's deposition was unable to be completed despite starting earlier than scheduled at his request, and in both cases, SS&C's counsel's many lengthy speaking objections depleted ACM's time. Outstanding discovery from SS&C also supports this request. Among other things, it was not until Mr. Pallone's February 2018 deposition that ACM learned of SS&C's "Implementation Playbook," which appears to be squarely responsive to ACM's June 26, 2017 document request No. 10. SS&C has committed to producing that document to ACM but has not yet done so.

For the reasons set forth above, ACM respectfully requests that the Court enter an order requiring SS&C to fully respond to ACM's June 26, 2017 Document Request Nos. 6, 11, 12, 13, 20 and 24 and ACM's December 22, 2017 Document Request Nos. 4-11 by producing documents as described in Exhibit B, quashing the subpoenas to the REIT and Deloitte, and allowing ACM two hours with each Ms. Olszewska and Mr. Pallone to finish their depositions.

Respectfully submitted,

HOLLAND & KNIGHT LLP

Allison Kernisky

CC:     All counsel of record.

---

[3] ACM will submit formal briefing to quash the subpoenas if the Court so instructs.

# Exhibit A

## AFFIDAVIT OF G. HUNTER HAAS, IV

Before me personally appeared G. Hunter Haas, IV, who, being duly sworn, deposes and states as follows:

1.     I am over eighteen years of age, am competent to make this affidavit, and have personal knowledge of the facts that follow.

2.     I am the President, Chief Investment Officer, Chief Financial Officer, and Treasurer of Bimini Capital Management, Inc. ("Bimini"). I also am a director and the Secretary and Treasurer of Bimini Advisors, Inc., which in turn is the manager of Bimini Advisors, LLC ("Bimini Advisors"), the registered investment advisor for Bimini.

3.     Bimini is a publicly-traded company, located at 3305 Flamingo Drive, Vero Beach, FL 32963. Bimini serves as an asset manager which invests primarily in residential mortgage-related securities and trades on the OTC Bulletin Board ("OTCBB") under the ticker BMNM.

4.     Effective September 2, 2015, Bimini Advisors entered into a Master Agreement for Software, Maintenance and Support, Professional Services, and Other Services ("Master Agreement") with SS&C Technologies Inc. ("SS&C"). That agreement incorporates, among other things, the following: Attachment A-1, a License and Maintenance Program Agreement under which Bimini licensed the "CAMRA" software package from SS&C; Attachment B-1, a Hosting, Process Automation, and Data Management Services Agreement ("Hosting Agreement") under which SS&C was to provide and maintain a hosted software environment for CAMRA; and Work Request One, under which SS&C agreed to provide implementation services ("WR One").

5.     I signed the Master Agreement on Bimini's behalf and am the Bimini representative who worked most closely with SS&C with respect to the software and services at issue in the Master Agreement, including the Hosting Agreement and WR One.

6.     Under the Master Agreement, and specifically WR One, SS&C was, and Bimini always understood SS&C to be, responsible for implementing CAMRA on a hosted basis for Bimini with the assistance of Bimini.

7.     Bimini satisfied all requests made of it to support CAMRA being fully implemented for Bimini on a hosted basis.  Unfortunately, SS&C never fully implemented CAMRA for Bimini on a hosted basis.

8.     Out of frustration with the failed implementation process, Bimini renegotiated its agreement with SS&C and opted to switch from hosting to outsourcing.

9.     Bimini does not object to SS&C providing documents that refer or relate to Bimini to counsel for ARMOUR Capital Management LP in its lawsuit against SS&C.

Under penalties of perjury, I declare that the foregoing is true and correct.

Executed on January 2̸9̸, 2018
in Indian River County, Florida.

G. Hunter Haas, IV

# Exhibit B

ACM Follow On Discovery Requests

- <u>Implementation playbook</u> – Responsive to ACM's June 26, 2017 Request No. 10.

- <u>Resource plans</u> – Responsive to ACM's June 26, 2017 Request No. 12.

- <u>Documents relating to the leadership changes in Professional Services</u>, including Iwona Olszewska's move out of Professional Services in 2015 and her termination and re-hiring in December 2017, Dan Pallone's April 2015 hiring, the hiring and termination of Tony Gonzalez in 2016, and Tim Reilly's reduced responsibilities in April 2017 – Responsive to ACM's June 26, 2017 Request Nos. 11, 12 and 20.

- <u>Weekly status reports for Bimini, Fortress and Resource</u> – Responsive to ACM's June 26, 2017 Request Nos. 13, 20 and 24 and ACM's Dec. 22, 2017 Request Nos. 4-11.

- <u>Documents relating to resource allocation issues or lack of client commitment, involving implementation for the four "problem" REITs (ACM, Bimini, Resource and Fortress)</u> – Responsive to ACM's June 26, 2017 Request Nos. 13, 20 and 24 and ACM's Dec. 22, 2017 Request Nos. 4-11.

  o For purposes of eliminating any conceivable burden on SS&C, we agree to narrow this search to the following custodians:

    ▪ Norm Boulanger
    ▪ Tim Reilly
    ▪ Dan Pallone
    ▪ Iwona Olszewska
    ▪ David Russell
    ▪ Tony Gonzalez
    ▪ Dave LaMonica
    ▪ Josh Brown
    ▪ Don Johnson

  o We further agree to narrow this search to the following terms, or related terms devised by SS&C:

    ▪ (delay* OR solution OR risk OR "root cause" OR "all hands" OR "outstanding issues" OR consultant* OR "on board*" OR lengthy OR "over budget" OR commitment OR "all hands" OR FTE* OR "go live" OR (track* /5 red) OR closure OR accountability OR bandwidth OR "resource allocation" OR "resource issue" OR "resource requirement* OR staffing OR understaff* OR "short staff*" OR overstaff* OR capacity OR status OR "close out" OR "lean* on" OR "lack of support" OR "REIT franchise" OR "clean close" OR resolution OR progress OR (substantive /5 plan) OR "on track" OR "off track" OR overbid OR underbid OR underestimate OR overestimate OR "how much time" OR "free services" OR independen* OR "best practices") AND implement*

- ((Incomplete OR incorrect) /10 (data OR format)) OR "manual process*" OR (automat* /10 workflow*) OR "accounting methodology" OR "project manager" OR (staff /10 availab*) OR (lack /10 train*) OR ((incomplete OR missing)) /10 reconciliation*) OR (implement* /10 (fail* OR unsuccessful OR "not succeed"))

- ((hylton /5 socher) OR (dav* /5 bryant) OR (hunter /5 haas))

  o Note that ACM provides these search terms to assist SS&C with locating responsive documents, including those that relate to the above-mentioned topics and terms, irrespective of whether they refer on their face to ACM/ARMOUR, Bimini, Fortress or Resource. If SS&C intends to limit its production to such documents, please let us know immediately so that we can take it up with the court.

- <u>Documents relating to the relationship between Professional Services and Sales in 2014</u> – Responsive to ACM's June 26, 2017 Request No. 6.

  o For purposes of eliminating any conceivable burden on SS&C, we agree to narrow this search to the following custodians:

    - Norm Boulanger
    - Tim Reilly
    - Iwona Olszewska
    - Jack Quinn
    - Jeff Fecteau
    - Dennis Moore
    - David Russell
    - Josh Brown

  o We further agree to narrow this search to the following terms, or related terms devised by SS&C:

    - (Budget OR timeline OR competent* OR "high level" OR milestone OR "brought in" OR "internal work" OR "work effort" OR "get involved" OR (overall /10 solution) OR "profit center" OR ((problem OR issue*) /10 "license* client*") OR "no idea" OR "know what they are doing" OR wrong OR "more resources" OR "more expertise" OR (manage /5 success* OR finish)) AND implement*

  o Again, if SS&C intends to limit its production to documents that only mention ACM/ARMOUR, Bimini, Fortress or Resource on the face of the document, please let us know immediately so that we can take it up with the court.

- <u>Profit and Loss Statements for Professional Services, the REIT Servicing Group, and Institutional and Investment Management from 2014-2017</u> – responsive to ACM's June 26, 2017 Request No. 18.

2

# Exhibit C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | |
|---|---|
| ARMOUR CAPITAL MANAGEMENT LP, | Case No. 17-cv-00790-JAM |
| Plaintiff, | |
| v. | June 26, 2017 |
| SS&C TECHNOLOGIES INC., | |
| Defendant. | |

**ARMOUR CAPITAL MANAGEMENT LP'S**
**FIRST REQUEST FOR PRODUCTION TO SS&C TECHNOLOGIES INC.**

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff, ARMOUR Capital Management LP ("ACM"), serves its First Request for Production (the "First Request") to Defendant, SS&C Technologies Inc. ("SS&C"). Such production shall occur on July 26, 2017, at Holland & Knight LLP, One Stamford Plaza, 263 Tressler Boulevard, Suite 1400, Stamford, CT 06901.

**DEFINITIONS**

1.      ACM incorporates by reference the definitions and rules of construction set forth in Rule 26(c) and (d) of the Local Civil Rules of the United States District Court for the District of Connecticut as if fully set forth herein, including the definitions of "Communication," "Document," "Parties," and "Concerning," and the rules of construction for "All/Each," "And/Or," and "Number."

2.      "You," "Your," and "SS&C" mean Defendant, SS&C Technologies Inc., and Your employees, officers, directors, shareholders, members, partners, attorneys, agents, managers, representatives, and each and every Person acting on Your behalf or at Your direction.

3.      "ACM" means Plaintiff, ARMOUR Capital Management LP and ACM's employees, officers, directors, shareholders, members, partners, attorneys, agents, managers, representatives, and each and every Person acting on ACM's behalf or at its direction.

4.      "Complaint" means the Complaint and Demand for Jury Trial filed by ACM in this lawsuit on May 15, 2017.

5.     "Master Services Agreement" means the Master Agreement for Software, Maintenance and Support, Professional Services, and Other Services between ACM and SS&C dated December 19, 2014, including all incorporated attachments and work requests, as referenced in and attached to the Complaint at Exhibits A-C.

6.      "CAMRA" means, collectively, the products and services offered by SS&C to ACM under the Master Services Agreement, including CAMRA, CI Manager, Impairments Manager, Report Express, TBA Dollar Roll, Extend, Swaps, or Debt & Derivatives, and all versions of such software and all related services, including maintenance, support, and hosting, as referenced at paragraph 13 of the Complaint.

7.     "Including" means including but not limited to.

8.     The terms "discussing," "referring to," "referencing," "regarding," "reflecting," "relating to," "pertain to" or "pertaining to" mean setting forth, pertaining to, memorializing, constituting, embodying, discussing, analyzing, reflecting, concerning, relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts, or contradicts.

9.     The term "Person" or "Persons" shall mean any natural person, individual, corporation, real estate investment trust ("REIT"), partnership, joint venture, firm, voluntary or unincorporated association, other business association, entity or enterprise, proprietorship, trust, estate, governmental agency, board, authority, commission, bureau, department or such other governmental or quasi-governmental entity, group of natural persons, or other entity and includes any other natural person or person acting on behalf of a natural person in any capacity whatsoever.

10.     The term "Contact Information" shall refer to the full name and last known title, location, telephone number, street address, and e-mail address of any Person.  If the Person for which You are asked to provide Contact Information is or was an employee of You, please also identify all of the positions the employee held with You and the corresponding dates the employee held such positions.

## **INSTRUCTIONS**

1.     Unless otherwise indicated, the time frame applicable to these requests for production is **September 1, 2014, through the present.**

2.     When answering these requests, You must furnish all Documents available to You, including Documents in Your possession, custody or control or in the possession, custody or control of related entities, current or former attorneys, experts, accountants, banks, insurers, agents, investigators, employees, representatives, or any other Persons acting on Your behalf.

3.     If You believe that any of the following requests calls for Documents subject to a claim of privilege, answer or produce so much as is not objected to, state that part of each request raising an objection and set forth the basis for Your claim of privilege with respect to such information as You refuse to give, including a statement identifying the nature of the information withheld; for each Document as to which You claim privilege, state the date and subject matter of

the Document, the name(s) of the Person(s) who prepared the Document and the name(s) of the Person(s) for whom the Document was intended.

4.      If any requested Document was once in Your possession, custody, or control but has been destroyed or lost, set forth in writing the contents of the Document, the date the Document was destroyed or lost, and the name of the Person who authorized or directed the destruction of the Document or was last in possession of the Document.

5.      If You cannot produce any of the Documents in full, produce to the extent possible and specify in writing the reasons for Your inability to produce the remainder of the Document.

6.      After the date of Your initial production of responsive Documents, if additional responsive Documents come into Your possession, custody, or control, such additional responsive Documents must be produced immediately.

## INSTRUCTIONS AS TO ELECTRONICALLY STORED INFORMATION

Electronically stored information ("ESI") is to be produced in 300 x 300 DPI Group IV Monochrome Tagged Image File Format (.TIFF or .TIF) files, with color Documents in Joint Photographic Experts Group (.JPEG or .JPG) files. TIFF and JPEG files shall be produced in single-page format along with Concordance image load files (.OPT). All Documents are to be provided with multi-page extracted or OCR text (.TXT) files indicating page breaks. Extracted text and/or OCR text shall not be embedded in the .DAT file but rather shall be provided as separate, Document-level text files, the names of which shall contain the beginning bates number of the Document. If a Document is provided in native format with a placeholder TIFF (e.g., a MS-Excel or .CSV file), the text file shall contain the extracted text of the native file. Provide any metadata values associated with the produced electronic information in the form of a metadata load text file (.DAT file) and using Concordance standard delimiters. Unless such materials contain privileged information, MS-Excel and .CSV spreadsheets shall be produced in native format. The metadata load file (.DAT) shall contain a link to the produced MS-Excel spreadsheets via data values called "Native Link" and a "TextPath" field containing the path (including the file name) to the extracted text or OCR file for each Document. The Native Link values shall contain the full directory path and file name of the MS-Excel spreadsheet as contained in the produced media. Produce native MS-Excel and .CSV files accompanied by a placeholder .TIFF sheet containing the name of the bates number for each produced file. To the extent such materials contain information subject to a claim of privilege, they shall be produced in the form of redacted .TIFF images. Sequential bates numbers and any confidentiality designation shall be electronically branded on each TIFF image of ESI. Each file name shall be unique and match the bates number of the page. The file name shall not contain any blank spaces and shall be zero padded.

## REQUESTS FOR PRODUCTION

1.      All Documents, including Communications, exchanged between SS&C and ACM.

2.      All Documents, including Communications, reflecting or relating to any meetings or other Communications, including in-person, web-based, videographic, or telephonic meetings, between SS&C and ACM.

3.     All other Documents reflecting or relating to Communications regarding ACM, including any Communications internally at SS&C relating to ACM or between You and any third parties (such as BNY Mellon or Citi Prime Finance) relating to ACM.

4.     All Documents reflecting or relating to Your standards, policies, practices, procedures, or handbooks applicable to marketing or selling CAMRA.

5.     All Documents reflecting or relating to any standards, policies, practices, procedures, or handbooks by which You assess or determine whether CAMRA is suitable for any Person, including whether CAMRA should be hosted, outsourced, or provided to such Person by some other mechanism.

6.     All Documents, including Communications, reflecting or relating to SS&C's marketing of CAMRA to ACM.

7.     All Documents, including Communications, reflecting or relating to any assessment or determination by You regarding whether CAMRA was suitable for ACM.

8.     All Documents, including Communications, reflecting or relating to any agreements between SS&C and ACM, including the Master Services Agreement.

9.     All Documents, including Communications, reflecting or relating to Your understanding of what products and services SS&C was required to provide to ACM under the Master Services Agreement.

10.    All Documents reflecting or relating to Your standards, policies, practices, procedures, or handbooks applicable to the implementation or use of CAMRA, including any standards, policies, practices, procedures, or handbooks relating specifically to ACM.

11.    All Documents reflecting or relating to the experience and qualifications of any Person employed or otherwise retained by You that worked on implementing CAMRA for ACM.

12.    All Documents, including Communications, reflecting or relating to SS&C's uncompleted implementation of CAMRA for ACM, including any project plans, task assignments, staffing requests, project cost estimates, work-in-process summaries, percentage-of-completion analyses, time reports, expense reports, testing plans, test results, or status reports, as well as any problems or difficulties with CAMRA.

13.    All Documents, including Communications, reflecting or relating to Your understanding of what ACM's role, if any, was in the uncompleted implementation of CAMRA.

14.    All Documents, including Communications, reflecting or relating to the date(s) on which CAMRA was to be fully implemented for ACM, including any changes or delays to such date(s) and the cause of any such changes or delays.

15.    All Documents, including Communications, reflecting or relating to any training of ACM by You.

16.     All Documents, including Communications, reflecting or relating to work done by SS&C's Client Services Team for ACM.

17.     All Documents, including Communications, reflecting or relating to any "tickets" submitted to SS&C's Solution Center by ACM or You related to the uncompleted implementation of CAMRA by ACM and any responses by You to such tickets, including all diary entries.

18.     All Documents related to SS&C's financial accounting for CAMRA and related implementation and outsourcing services including accounting policies and procedures regarding revenue recognition, warranty liability and expenses as well as any ledger, journal, entry, transaction analysis, forecast, plan or summary of amounts accrued, recorded, recognized, unrecognized or anticipated.

19.     All Documents, including Communications, reflecting or relating to the uncompleted implementation of CAMRA for any Person other than ACM.

20.     All Documents, including Communications, reflecting or relating to any complaints, failures, accidents, incidents, problems, damages, or similar occurrences with CAMRA that did not involve ACM.

21.     All Documents reflecting or relating to Your standards, policies, practices, procedures, or handbooks applicable to Your handling of complaints, failures, accidents, incidents, problems, damages, or similar occurrences.

22.     All Documents, including Communications, reflecting or relating to any pending or threatened lawsuits or other claims, other than this one, brought against SS&C involving CAMRA.

23.     All Documents, including Communications, reflecting SS&C's fees under the Master Services Agreement, including any fees You believe SS&C is owed.

24.     All Documents, including Communications, relating to or supporting any defenses SS&C intends to raise in this lawsuit.

25.     All Documents, including Communications, concerning any expert witness SS&C intends to use in this lawsuit.

Case No. 17-cv-00790-JAM

Dated: June 26, 2017      **HOLLAND & KNIGHT LLP**

By: */s/ Christopher M. Cerrito*
    Christopher M. Cerrito (ct17183)
    chris.cerrito@hklaw.com
    One Stamford Plaza
    263 Tressler Boulevard, Suite 1400
    Stamford, CT 06901
    Telephone: (203) 905-4500
    Facsimile: (203) 724-3944

and

By: */s/ Allison Kernisky*
    Joseph Mamounas (phv09010)
    joseph.mamounas@hklaw.com
    Allison Kernisky (phv09011)
    allison.kernisky@hklaw.com
    701 Brickell Avenue, Suite 3300
    Miami, FL 33131
    Telephone: (305) 374-8500
    Facsimile: (305) 789-7799

*Counsel for ARMOUR Capital Management LP*

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2017, a true and correct copy of this document was served by electronic and U.S. mail on all counsel of record.

By: */s/ Allison Kernisky*
    Allison Kernisky (phv09011)

# Exhibit D

<div align="center">

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

</div>

| | |
|---|---|
| ARMOUR CAPITAL MANAGEMENT LP, | Case No. 17-cv-00790-JAM |
| Plaintiff, | |
| v. | December 22, 2017 |
| SS&C TECHNOLOGIES INC., | |
| Defendant. | |

<div align="center">

**ARMOUR CAPITAL MANAGEMENT LP'S**
**SECOND REQUEST FOR PRODUCTION TO SS&C TECHNOLOGIES INC.**

</div>

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff, ARMOUR Capital Management LP ("ACM"), serves its Second Request for Production (the "Second Request") to Defendant, SS&C Technologies Inc. ("SS&C"). Such production shall occur on January 22, 2018, at Holland & Knight LLP, One Stamford Plaza, 263 Tressler Boulevard, Suite 1400, Stamford, CT 06901.

<div align="center">

**<u>DEFINITIONS</u>**

</div>

1. ACM incorporates by reference the definitions and rules of construction set forth in Rule 26(c) and (d) of the Local Civil Rules of the United States District Court for the District of Connecticut as if fully set forth herein, including the definitions of "Communication," "Document," and "Concerning," and the rules of construction for "All/Each," "And/Or," and "Number."

2. "You," "Your," and "SS&C" mean Defendant, SS&C Technologies Inc., and Your employees, officers, directors, shareholders, members, partners, attorneys, agents, managers, representatives, and each and every Person acting on Your behalf or at Your direction.

3. "ACM" means Plaintiff, ARMOUR Capital Management LP and ACM's employees, officers, directors, shareholders, members, partners, attorneys, agents, managers, representatives, and each and every Person acting on ACM's behalf or at its direction.

4. "Amended Complaint" means the First Amended Complaint and Demand for Jury Trial filed by ACM in this lawsuit on July 13, 2017.

5. "Master Agreement" means the Master Agreement for Software, Maintenance and Support, Professional Services, and Other Services between ACM and SS&C dated December 19, 2014, including all incorporated attachments and work requests, as referenced in and attached to the Complaint at Exhibits A-C.

6.    "CAMRA" means, collectively, the products and services offered by SS&C to ACM under the Master Services Agreement, including CAMRA, CI Manager, Impairments Manager, Report Express, TBA Dollar Roll, Extend, Swaps, or Debt & Derivatives, and all versions of such software and all related services, including maintenance, support, and hosting, as referenced at paragraph 28 of the Amended Complaint.

7.    "Including" means including but not limited to.

8.    The terms "discussing," "referring to," "referencing," "regarding," "reflecting," "relating to," "pertain to" or "pertaining to" mean setting forth, pertaining to, memorializing, constituting, embodying, discussing, analyzing, reflecting, concerning, relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts, or contradicts.

9.    The term "Person" or "Persons" shall mean any natural person, individual, corporation, real estate investment trust ("REIT"), partnership, joint venture, firm, voluntary or unincorporated association, other business association, entity or enterprise, proprietorship, trust, estate, governmental agency, board, authority, commission, bureau, department or such other governmental or quasi-governmental entity, group of natural persons, or other entity and includes any other natural person or person acting on behalf of a natural person in any capacity whatsoever.

10.    The term "Contact Information" shall refer to the full name and last known title, location, telephone number, street address, and e-mail address of any Person.  If the Person for which You are asked to provide Contact Information is or was an employee of You, please also identify all positions the employee held with You and the corresponding dates of employment.

## INSTRUCTIONS

1.    When answering these requests, You must furnish all Documents available to You, including Documents in Your possession, custody or control or in the possession, custody or control of related entities, current or former attorneys, experts, accountants, banks, insurers, agents, investigators, employees, representatives, or any other Persons acting on Your behalf.

2.    If You believe that any of the following requests calls for Documents subject to a claim of privilege, answer or produce so much as is not objected to, state that part of each request raising an objection and set forth the basis for Your claim of privilege with respect to such information as You refuse to give, including a statement identifying the nature of the information withheld; for each Document as to which You claim privilege, state the date and subject matter of the Document, the name(s) of the Person(s) who prepared the Document and the name(s) of the Person(s) for whom the Document was intended.

3.    If any requested Document was once in Your possession, custody, or control but has been destroyed or lost, set forth in writing the contents of the Document, the date the Document was destroyed or lost, and the name of the Person who authorized or directed the destruction of the Document or was last in possession of the Document.

4.    If You cannot produce any of the Documents in full, produce to the extent possible and specify in writing the reasons for Your inability to produce the remainder of the Document.

Case 2:17-cv-00790-JAM Document 163-4 Filed 10/04/18 Page 32 of 111
Case 2:17-cv-00790-JAM Document 68-4 Filed 08/01/18 Page 2 of 26

Case No. 17-cv-00790-JAM

5.      After the date of Your initial production of responsive Documents, if additional responsive Documents come into Your possession, custody, or control, such additional responsive Documents must be produced immediately.

6.      Unless otherwise indicated, the time frame applicable to these requests for production is **May 1, 2014 through May 1, 2017**.

## INSTRUCTIONS AS TO ELECTRONICALLY STORED INFORMATION

Electronically stored information ("ESI") is to be produced in 300 x 300 DPI Group IV Monochrome Tagged Image File Format (.TIFF or .TIF) files, with color Documents in Joint Photographic Experts Group (.JPEG or .JPG) files. TIFF and JPEG files shall be produced in single-page format along with Concordance image load files (.OPT). All Documents are to be provided with multi-page extracted or OCR text (.TXT) files indicating page breaks. Extracted text and/or OCR text shall not be embedded in the .DAT file but rather shall be provided as separate, Document-level text files, the names of which shall contain the beginning bates number of the Document. If a Document is provided in native format with a placeholder TIFF (e.g., a MS-Excel or .CSV file), the text file shall contain the extracted text of the native file. Provide any metadata values associated with the produced electronic information in the form of a metadata load text file (.DAT file) and using Concordance standard delimiters. Unless such materials contain privileged information, MS-Excel and .CSV spreadsheets shall be produced in native format. The metadata load file (.DAT) shall contain a link to the produced MS-Excel spreadsheets via data values called "Native Link" and a "TextPath" field containing the path (including the file name) to the extracted text or OCR file for each Document. The Native Link values shall contain the full directory path and file name of the MS-Excel spreadsheet as contained in the produced media. Produce native MS-Excel and .CSV files accompanied by a placeholder .TIFF sheet containing the name of the bates number for each produced file. To the extent such materials contain information subject to a claim of privilege, they shall be produced in the form of redacted .TIFF images. Sequential bates numbers and any confidentiality designation shall be electronically branded on each TIFF image of ESI. Each file name shall be unique and match the bates number of the page. The file name shall not contain any blank spaces and shall be zero padded.

## REQUESTS FOR PRODUCTION

1.      All Documents, including Communications, reflecting or relating to items or tickets involving CAMRA submitted to TFS or Applix, including Your monthly lists of open items.

2.      All Documents, including Communications, reflecting or relating to discussions about switching a CAMRA customer, or a CAMRA customer being switched, from hosting or licensing to outsourcing.

3.      All Documents, including Communications, reflecting or relating to efforts to implement CAMRA for Bimini Capital Management, Inc., or NY Mortgage Trust.

4.      All Documents, including Communications, reflecting or relating to "delays on a solution for these asset types," as referenced in David Russell's September 22, 2015 email to Tim Reilly and others (SSC136496), attached at Exhibit A, including all Documents and Communications reflecting or relating to the reasons for such "delays."

Case 2:17-cv-00790-JAM Document 163-4 Filed 10/04/18 Page 33 of 111
Case 3:17-cv-00790-JAM Document 68-4 Filed 03/04/18 Page 3 of 26

Case No. 17-cv-00790-JAM

5.      All Documents, including Communications, reflecting or relating to the reasons that SS&C had, or may have had, "3 implementations at risk," as referenced in Mr. Russell's September 22, 2015 email to Daniel Pallone and others (SSC136497), *see* Exhibit A, including all Documents and Communications reflecting or relating to the reasons for such "risk."

6.      All Documents, including Communications, reflecting or relating to the "problem[s]" that caused the "4 . . . REIT implementations" to be considered "problem REIT implementations" as referenced in Mr. Reilly's February 1, 2016 email to Mr. Pallone (SSC095414), attached at Exhibit B, including all Documents and Communications reflecting or relating to the reasons for such "problem[s]."

7.      All Documents, including Communications, reflecting or relating to the "less than ideal on boarding experiences" referenced in Mr. Pallone's February 11, 2016 email to Mr. Reilly and others (SSC148165), attached at Exhibit C, including all Documents and Communications reflecting or relating to the reasons such "experiences" were "less than ideal."

8.      All Documents, including Communications, reflecting or relating to the reasons for the "lengthy/over budget implementation[s]" and such "implementation[s]" being "in the marketplace and becoming a common negative in [SS&C's] new business discussions" as referenced in Mr. Reilly's February 11, 2016 email to Mr. Pallone (SSC148166), *see* Exhibit C.

9.      All Documents, including Communications, reflecting or relating to SS&C's "approach to CAMRA license implementations," as referenced in Mr. Pallone's August 18, 2016 email to Mr. Reilly and others (SSC145636), attached at Exhibit D, including all Documents and Communications reflecting or relating to the reasons for any changes to that approach.

10.     All Documents, including Communications, reflecting or relating to "the issues with our licensed clients" referenced in Joshua Brown's August 18, 2016 email to Mr. Pallone and others (SSC054003), attached at Exhibit E, including all Documents and Communications reflecting or relating to the reasons for such "issues."

11.     All Documents, including Communications, reflecting or relating to "the CS issue with the license clients," that Mr. Pallone stated would cause SS&C to "lose the REIT franchise," in his November 17, 2016 email to Mr. Reilly (SSC146951), attached at Exhibit F, including all Documents and Communications reflecting or relating to the reasons for such "issue."

Dated: December 22, 2017           **HOLLAND & KNIGHT LLP**

By: */s/ Christopher M. Cerrito*
        Christopher M. Cerrito (ct17183)
        chris.cerrito@hklaw.com
        One Stamford Plaza
        263 Tressler Boulevard, Suite 1400
        Stamford, CT 06901
        Telephone: (203) 905-4500
        Facsimile: (203) 724-3944

        and

By: */s/ Allison Kernisky*
    Joseph Mamounas (phv09010)
    joseph.mamounas@hklaw.com
    Allison Kernisky (phv09011)
    allison.kernisky@hklaw.com
    701 Brickell Avenue, Suite 3300
    Miami, FL 33131
    Telephone: (305) 374-8500
    Facsimile: (305) 789-7799

*Counsel for ARMOUR Capital Management LP*

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2017, a true and correct copy of this document was served by electronic and U.S. mail on all counsel of record.

By: */s/ Allison Kernisky*
    Allison Kernisky (phv09011)

Message

| | |
|---|---|
| **From:** | Johnson, Adriana [ajohnson@sscinc.com] |
| **Sent:** | 9/23/2015 1:12:53 PM |
| **To:** | Olszewska, Iwona [iolszewska@sscinc.com] |
| **Subject:** | RE: Need your Opinion.... |

ok I'll ask them what works best Tuesday morning or early afternoon. the kick off meeting is at 3:30.

**From:** Olszewska, Iwona
**Sent:** Wednesday, September 23, 2015 9:12 AM
**To:** Johnson, Adriana
**Subject:** RE: Need your Opinion....

Ok. see if you can get me in there for ether Tuesday or Wednesday....

**From:** Johnson, Adriana
**Sent:** Wednesday, September 23, 2015 9:10 AM
**To:** Olszewska, Iwona
**Subject:** RE: Need your Opinion....

I think it'll work best if you visit them as you'll be able to maybe get something out of them. I think if I'm there they may not be as open.

**From:** Olszewska, Iwona
**Sent:** Wednesday, September 23, 2015 9:04 AM
**To:** Johnson, Adriana
**Subject:** RE: Need your Opinion....

Hi, should we go on Monday afternoon to meet with Armour or it does not make any difference? Or, I can can visit Armour either Tuesday or Wednesday...thougths?

**From:** Johnson, Adriana
**Sent:** Wednesday, September 23, 2015 8:35 AM
**To:** Olszewska, Iwona
**Subject:** RE: Need your Opinion....

So, what about ▮▮▮▮ When are you going? I need to book airfare. I was planning on going Tuesday morning and coming back Wednesday night. who else is going?

**From:** Olszewska, Iwona
**Sent:** Wednesday, September 23, 2015 8:16 AM
**To:** Johnson, Adriana
**Subject:** RE: Need your Opinion....

Good. I assume that covers MSRs, right?

**From:** Johnson, Adriana
**Sent:** Wednesday, September 23, 2015 8:13 AM
**To:** Olszewska, Iwona
**Subject:** RE: Need your Opinion....



**EXHIBIT**

_A_

CONFIDENTIAL

SSC136493

Gary is collecting the August data today.

---

**From:** Olszewska, Iwona
**Sent:** Wednesday, September 23, 2015 8:09 AM
**To:** Johnson, Adriana
**Subject:** RE: Need your Opinion....

Great news on yesterday.....

I will ping Dave, Sasha is a bit too optimistic I think...we have not seen their data? When is that coming? We should plan for asap.

---

**From:** Johnson, Adriana
**Sent:** Wednesday, September 23, 2015 8:08 AM
**To:** Olszewska, Iwona
**Subject:** RE: Need your Opinion....

I sent Dave, Sasha's response, which I'm not 100% comfortable with and he didn't respond.  Sasha thinks that we know, but I don't think we'll have a full understanding until we see the data.

Btw, yesterday's visit went well.  the format of showing them the screens on camra and talking through them worked better than just looking at the spreadsheets.  I think we should do something like this for ████ The question is who will do it? Pravin knows the screens, I can talk through the document while he displays the screens and Dave can fill in the business knowledge.

---

**From:** Olszewska, Iwona
**Sent:** Wednesday, September 23, 2015 6:51 AM
**To:** Johnson, Adriana
**Subject:** RE: Need your Opinion....
**Importance:** High

Sorry about it, I forgot to respond.....

There is nothing simple on MSRs (you're absolutely correct). Do we have 100% understanding of MSR processing for ██
██?

Check your email below, Dave R escalated and there is a good reason.

Given the situation, make sure you run it by Dave R...how is ████ getting these numbers? Plus, what do we think is going to be in 7.04? which piece of the functionality.

Put me on your response, interesting how DP didn't have me on his email.

---

**From:** Johnson, Adriana
**Sent:** Tuesday, September 22, 2015 8:35 PM
**To:** Olszewska, Iwona
**Subject:** Re: Need your Opinion....

How should I respond?

CONFIDENTIAL

SSC136494

On Sep 22, 2015, at 1:52 PM, Olszewska, Iwona <iolszewska@sscinc.com> wrote:

Give me 10 min

**From:** Johnson, Adriana
**Sent:** Tuesday, September 22, 2015 1:52 PM
**To:** Olszewska, Iwona
**Subject:** FW: Need your Opinion....

How do you want me to respond to Dan Pallone's fwd. I was going to say:

███████ has up to 700 MSRs that CAMRA will need to handle. I believe the outstanding question is whether CAMRA currently has the functionality to process them and feed them downstream through CAMRA GL. ████████ is a point in time conversion and we will begin with 9/30 data.

But I checked with Sasha just to be sure and see her email below.

Not sure that I feel comfortable saying that FO MSR will be simple as we haven't seen the data yet.

**From:** DeMarino, Sasha
**Sent:** Tuesday, September 22, 2015 12:47 PM
**To:** Johnson, Adriana
**Subject:** RE: Need your Opinion....

I would prefer we had 7.05, but we can fudge it in the meantime.

████████ MSR's are pretty simple, not like ████████ I think we are fine in putting them in CAMRA. They are based off of the amount of the securitized loans, which we will be feeding the valuation party (████████ or one of those) from LMS and then getting a file back that will update the MSR book value in CAMRA. I believe also they will be providing us the additional cashflows for these. Which we can book in CAMRA as manual projections of income.

Dave O is right in that all we will be doing with MSR's is inputting values into CAMRA for tracking purposes but it won't be doing actual "accounting". Those numbers will still have to come from ████████ ████████ but in their case, this is very helpful for them because they will also show up on their 10K's and 10Q's in the right buckets.

Sasha

Sasha DeMarino
SS&C Technologies Inc.
Director, Training and Development
Lean Six Sigma Green Belt
t: (860) 731-5027 | f: (860) 298-4900
sdemarino@sscinc.com | www.sscinc.com
Follow us: Twitter | Facebook | LinkedIn

**From:** Johnson, Adriana
**Sent:** Tuesday, September 22, 2015 11:27 AM
**To:** DeMarino, Sasha

SSC136495

**Subject:** Need your Opinion....
**Importance:** High

Sasha,

Before I respond, I wanted to check with you on MSR's.  My understanding was that we were waiting for the functionality in CAMRA to be developed for us to be able to process them.  Based on what Dave O. says below it seems that CAMRA currently has the capability to handle?  I'm not sure if we have enough detail on MSR's for ███████

Let me know.
Thanks,
Adriana

---

**From:** Pallone, Daniel
**Sent:** Tuesday, September 22, 2015 10:49 AM
**To:** Reilly, Timothy
**Cc:** Russell, David; Johnson, Adriana; Huie, Viana
**Subject:** Re: Working from home today/NRZ update...

My understanding is the ████ s business requirement for MSRs is very simple and does not require any additional coding in CAMRA or Precision.

I am ccing Adriana and Viana to confirm.

Sent from my iPhone

On Sep 22, 2015, at 10:42 AM, Reilly, Timothy <treilly@sscinc.com> wrote:

> Dan - your thoughts?  I thought Dave O was fully engaged?
>
> J. Timothy Reilly
>
> Begin forwarded message:
>
>> **From:** "Russell, David" <DRussell@sscinc.com>
>> **Date:** September 22, 2015 at 9:38:55 AM CDT
>> **To:** "Reilly, Timothy" <treilly@sscinc.com>
>> **Cc:** "Olszewska, Iwona" <iolszewska@sscinc.com>
>> **Subject:** FW: Working from home today/NRZ update...
>>
>> Tim,
>>
>> I believe you need to intervene at this point.
>>
>> We cannot have any more delays on a solution for these asset types.
>>
>> It is affecting ████████████████
>>
>> Dave

CONFIDENTIAL

**From:** Russell, David
**Sent:** Tuesday, September 22, 2015 10:37 AM
**To:** Orszulak, David; Doyle, Michael; Brown, Joshua; Olszewska, Iwona; Pallone, Daniel; Barry, Michael; Arnold, Barbara
**Cc:** Reid, David
**Subject:** RE: Working from home today/NRZ update...

What is the timing on getting this done?

You have known that CAMRA needed to be vetted for MSR's since January and looks to me as though we are going back to square one and we will soon have 3 implementations at risk because we do not yet have a solution.

---

**From:** Orszulak, David
**Sent:** Tuesday, September 22, 2015 10:20 AM
**To:** Russell, David; Doyle, Michael; Brown, Joshua; Olszewska, Iwona; Pallone, Daniel; Barry, Michael; Arnold, Barbara
**Cc:** Reid, David
**Subject:** RE: Working from home today/NRZ update...

████████ has MSRs as well.

Perhaps it is still not clear what I am proposing, and just as importantly what I am <u>not</u>.  The current thesis - developed jointly with Michael Linn and David Schneider, and still to be formally ratified by ██████ - is a follows:

1.      It no longer makes business sense to do full year catchup processing on MSRs, SAs, and the RM. This is because if all we're doing is manually forcing CAMRA to match their spreadsheets there is little to no value add.  In addition, when initially contemplated the manual catchup period was expected to be 3 months to end of Q1 before CAMRA core processing would kick in.  It is now understood that the prospect of a 9 month catchup period creates an unnecessary drag on the project with little or no value add.

2.      The onboarding date for these assets gets deferred to 9/30. While a full year's data and #s is always preferred when converting to a new system, in this case the benefits of doing so are far outweighed by the costs and project drag/risks.  It is understood that a financial reporting 'bridge' would have to be assembled to marry Q3 YTD (legacy) + Q4 (CAMRA) for full year #s.

3.      The current process, and by definition the current COA mappings, is admittedly flawed and purely a function of the constraints imposed by the spreadsheet model.  ███████ is open to change that facilitates automation, makes things more simple, and avoids development wherever possible.  We need to lead wherever possible with creative solutions (an ongoing BPR and optimization approach) that minimize risk for both the client and SS&C.

CONFIDENTIAL

4.      The final <u>production</u> processing model and workflow – factor-based vs. TBD? (with at least moderate development required) – has <u>not</u> yet been determined.  While there are of course still unknowns, it is Mike's, Josh's and my joint opinion that the factor-based approach is feasible and likely would require little to no development.  Again, <u>this has to and will be proven inclusive of cash and GL</u>.


Regards, Dave

David J. Orszulak, CPA, CFA
VP, Operations & Business Controls
Institutional Outsourcing

D: 860.731.5036 | M: 860.212.0609


-----Original Message-----
From: Russell, David
Sent: Tuesday, September 22, 2015 8:59 AM
To: Orszulak, David; Doyle, Michael; Brown, Joshua; Olszewska, Iwona; Pallone, Daniel; Barry, Michael; Arnold, Barbara
Cc: Reid, David
Subject: RE: Working from home today/NRZ update...

Dave,

Just to make you aware this is no longer just a ▮▮▮▮▮ssue, next week is the kick off with ▮▮▮▮ and they have MSR's as well.

I spoke with Mike yesterday and he agreed that we still need the transactions that I requested to be set up to meet the accounting that Fortress requires per their chart of accounts.

I am onsite at ▮▮▮▮ today and tomorrow so let me know when you are ready and we can do a WebEx to go thru your proposal.

Dave

-----Original Message-----
From: Orszulak, David
Sent: Monday, September 21, 2015 12:44 PM
To: Russell, David; Doyle, Michael; Brown, Joshua; Olszewska, Iwona; Pallone, Daniel; Barry, Michael; Arnold, Barbara
Cc: Reid, David
Subject: RE: Working from home today/NRZ update...

I have been proactively, transparently and completely communicating this across PS and Direct since last Wed, inclusive of socializing and buy-in with the client.  Through the working sessions we had with them last week we opened the door to avoid the hours upon hours of catchup processing from 1/1.

CONFIDENTIAL

SSC136498

What has been agreed to and vetted with NRZ is makes no sense to do catch-up processing from 1/1 based on a model where we manually force CAMRA to match their numbers and inappropriate - which they 100% acknowledge - work-flow as it relates to 'forward processing' the next period's remittance.  In NRZ's view, since CAMRA is NOT doing any independent processing or calcs during catch-up there is no value-add to doing so, and we are wasting time and creating a drag on the project.  The development we had been working on to support catch-up processing will likely be complete throw-away post conversion.

The proposal is to onboard the servicing assets as of 9/30 and roll from there.  Hopefully you can see this significantly reduces project risks and timings, frees up resources that can be redirected to the securities conversion, and helps our realization rates for implementation services.

We are not yet at a point where I am recommending a different workflow post on-boarding.  As I have been stating, we need to model factor based processing for MSRs and SAs - factor based processing already has all the hooks and processes to do the required retrospective adjustment and recast without any development.

I'll be in tomorrow and will set up a time to review.

Regards, Dave

David J. Orszulak, CPA, CFA
VP, Operations & Business Controls
Institutional Outsourcing

D: 860.731.5036 | M: 860.212.0609

---

From: Russell, David
Sent: Monday, September 21, 2015 11:57 AM
To: Orszulak, David; Doyle, Michael; Brown, Joshua; Olszewska, Iwona; Pallone, Daniel; Barry, Michael; Arnold, Barbara
Cc: Reid, David
Subject: RE: Working from home today/NRZ update...

Dave,

We will need to review your approach prior to Thursday, any change in the process must be accompanied by a workflow that has been 'proven' in CAMRA thru to the General Ledger.

Stopping development at this point is based upon theory will put us at risk of delaying these assets even further.

I am not comfortable with ceasing the requested development until I see something more concrete.

CONFIDENTIAL

SSC136499

Please let me know when you are ready to present a workflow inclusive of reporting, cash reconciliation, and the general ledger that can be reviewed internally .

Thanks,

Dave

From: Orszulak, David
Sent: Monday, September 21, 2015 11:25 AM
To: Doyle, Michael; Brown, Joshua; Olszewska, Iwona; Pallone, Daniel; Russell, David; Barry, Michael; Arnold, Barbara
Cc: Reid, David
Subject: Working from home today/NRZ update...

I'm under the weather, so I'll be working from home but online most of the day.

I'm working on the revised plan for implementation of the servicing assets (MSRs and SAs), loans (PWL and NP pools), and Reverse Mortgage position.  The plan was developed and vetted last week with Michael Linn and David Schneider, who are running point internally to run the plan up the chain at NRZ.  They are setting up a meeting - that will likely include Naftalee, Jon Brown and Hylton - for Thursday this week to review.

As it stands now, as communicated last week we should suspend all servicing assets catch-up processing pending Thursday's meeting.

Call me on 860-212-0609 if you need me.

Regards, Dave

David J. Orszulak, CPA, CFA
VP, Operations & Business Controls
Institutional Outsourcing

D: 860.731.5036 | M: 860.212.0609

CONFIDENTIAL

SSC136500

Message

| | |
|---|---|
| **From:** | Reilly, Timothy [treilly@sscinc.com] |
| **Sent:** | 2/1/2016 3:32:22 PM |
| **To:** | Pallone, Daniel [DPallone@sscinc.com] |
| **Subject:** | Re: Armour |
| **Attachments:** | image001.jpg |

We need to be all hands getting the 4 problem REIT implementations done...

Sent from my iPad

On Feb 1, 2016, at 10:24 AM, Pallone, Daniel <DPallone@sscinc.com> wrote:

> I am not sure Tony going down is the best use of his time and I would prefer to be part of any dialogue he has with the mREIT clients.
>
> **Daniel M. Pallone**
> *Vice President*
> Mortgage REITs and Loan Servicing
>
> <!--[if !vml]--><image002.jpg><!--[endif]-->SS&C Technologies Inc.
> 1114 Avenue of the Americas, 33th Fl
> New York, NY 10036
> Tel: 212-659-4631 (NY) / Mobile: 973-476-3928
> Email: DPallone@sscinc.com
>
> ---
>
> **From:** Gonzalez, Tony
> **Sent:** Monday, February 01, 2016 10:22 AM
> **To:** Johnson, Adriana; Russell, David; Moore, Dennis; Reilly, Timothy; Pallone, Daniel; Fecteau, Jeff
> **Subject:** RE: Armour
>
> I am planning a trip down there this week and we are preparing internally.
>
> Many thanks,
>
> Tony Gonzalez
> Vice President, Professional Services
> Institutional Consulting & Outsourcing
> SS&C Technologies Inc.
> 1114 Avenue of the Americas I New York, NY 10110
> (646) 927-9759
> tgonzalez@sscinc.com | www.sscinc.com
> Follow us: Twitter | Facebook | LinkedIn

        

**EXHIBIT**

tubbier  B

CONFIDENTIAL
SSC095414

**From:** Johnson, Adriana
**Sent:** Monday, February 01, 2016 10:13 AM
**To:** Gonzalez, Tony; Russell, David
**Subject:** FW: Armour

FYI:

**From:** Moore, Dennis
**Sent:** Monday, February 01, 2016 10:12 AM
**To:** Johnson, Adriana
**Cc:** Reilly, Timothy; Pallone, Daniel; Fecteau, Jeff
**Subject:** Re: Armour

Mark Gruber and I just met. He is not confident they will be live before the end of Q1. He specifically mentioned our previous promise to have them live by the end of the year and missing our mark. He does not think we necessarily need to go back down there, but how are we going to instill confidence in Mark and meet this new deadline?

Dennis Moore

SS&C Technologies, Inc.
t: (860) 298-4763 | m: (860) 214-9580
dennis.moore@sscinc.com | www.sscinc.com

On Nov 24, 2015, at 11:36 AM, Johnson, Adriana <ajohnson@sscinc.com> wrote:

> Hi Dennis,
>
> This week we're in the Red because the team has experienced issues with the GL. The 1st month after initialization is always a challenge. This doesn't stop us from moving forward with processing the following month which we're doing and we're on schedule to complete that. We should deliver the September TB on Monday (since this is a short week) and that will bring us back to green status. Attached is this week's update and schedule.
>
> Thanks,
> Adriana
>
>> **From:** Moore, Dennis
>> **Sent:** Tuesday, November 24, 2015 7:54 AM
>> **To:** Johnson, Adriana
>> **Subject:** Armour
>>
>> Hi Adriana,
>>
>> I hope you're doing well. I just wanted to see how we're doing with ARMOUR and if we're on target for their go-live.

CONFIDENTIAL

SSC095415

Please let me know.

Thanks,

Dennis Moore

SS&C Technologies, Inc.
t: (860) 298-4763  |  m: (860) 214-9580
dennis.moore@sscinc.com  | www.sscinc.com

<ARMOUR Weekly Status 112415.pptx>

<ARMOUR Monthly Roll.xlsx>

CONFIDENTIAL

Message

| | |
|---|---|
| **From:** | Russell, David [DRussell@sscinc.com] |
| **Sent:** | 2/11/2016 3:56:50 PM |
| **To:** | Olszewska, Iwona [iolszewska@sscinc.com] |
| **Subject:** | FW: ▓▓▓▓ |

-----Original Message-----
From: Russell, David
Sent: Thursday, February 11, 2016 10:50 AM
To: Pallone, Daniel
Cc: Reilly, Timothy; Gonzalez, Tony; Cossin, Diane; Reid, David
Subject: RE: ▓▓▓▓▓

Dan,

I do not understand you comment, if the data is not available from the source electronically what is there to fix?

You have to work with what is available.

Dave

-----Original Message-----
From: Pallone, Daniel
Sent: Thursday, February 11, 2016 10:44 AM
To: Russell, David
Cc: Reilly, Timothy; Gonzalez, Tony; Cossin, Diane; Reid, David
Subject: Re: ▓▓▓▓▓

Is there a well documented play book with all the procedures to do this?  How many PS staff know how to do this?  This sounds like the root cause of the problem for the long duration and rework but a also a real opportunity to improve.  I would not assume ▓▓▓▓ is going to have the ability to transform their own data.

What are your thoughts to fix this?

Dan Pallone
973-476-3928 Mobile

> On Feb 11, 2016, at 9:26 AM, Russell, David <DRussell@sscinc.com> wrote:
>
> It is not just the trades, you also have 3,000 positions that have cash flows that need to be processed and reconciled.  You have the additional reconciliation of tying out to the clients trial balance during roll forward.  You are not considering the full effort.
>
> 4 to 5 FTE's, automation does not happen day 1 and we need to start day 1, data needs to be available electronically in order to be converted, as an example, in the case of Armour there was no ability to get the historic custody data we needed in electronic format so we had process cash manually until we caught up to the date that we had electronic data for CI Manager.
>
> -----Original Message-----
> From: Pallone, Daniel
> Sent: Thursday, February 11, 2016 10:15 AM
> To: Russell, David
> Cc: Reilly, Timothy; Gonzalez, Tony; Cossin, Diane; Reid, David
> Subject: Re: ▓▓▓▓
>
> 2 weeks to close includes the inputting of 150 repo, 25 agency, 25 dollar rolls, and 20 futures trades per month ? sounds like a real opportunity to automate and reduce the time, don't we have in house tools to transform the data and load faster? Isn't this was OTS does for a living?
>
> And how many FTEs are devoted to this for the 2 weeks per month?
>
> Dan Pallone
> 973-476-3928

**EXHIBIT**

tabbies

C

CONFIDENTIAL

>
>> On Feb 11, 2016, at 9:01 AM, Russell, David <DRussell@sscinc.com> wrote:
>>
>> OK, so we need to do all the same work as a normal month end but in a compressed time period, this will require more FTE's and not less to accomplish.
>>
>> In a production mode you are assuming everything is automated from interfaces to reconciliations.
>>
>> This is not the case during implementations where we are setting up the interfaces and setting up the automated RECONs, during the initial roll forward processing data may or may not be available in our format and electronic so it is typically manual to process and reconcile the first few month until OTS is online. The General Ledger reconciliation is also typically more difficult due to trying to figure out the client chart of accounts and adding the additional reconciliation to the clients trial balance (which is not done during production).
>>
>> In order to close each month in 2 weeks (which is what we projected) there is an assumption of about a 50% increase in FTE's to accomplish.
>>
>> The only way to reduce the cost is to adjust the hourly charge for this work, the effort does not change.
>>
>> Comparing the implementation fees to the annual cost for this account is not accurate an comparison as this account was sold at a discount to our target profit margins.
>>
>> At 2.5 FTE's with an average salary of 65,000 and a 50% load for expenses and salaries your all in expenses are 243,750 which puts you at a 19% profit margin, in order to hit the 50% profit margin which we typically try to maintain this account should have been sold for $500,000 not $300,000.
>>
>> Dave
>>
>> -----Original Message-----
>> From: Pallone, Daniel
>> Sent: Thursday, February 11, 2016 9:39 AM
>> To: Russell, David
>> Cc: Reilly, Timothy; Gonzalez, Tony; Cossin, Diane; Reid, David
>> Subject: Re: ███████
>>
>> Yes
>>
>> Dan Pallone
>> 973-476-3928
>>
>>> On Feb 11, 2016, at 8:30 AM, Russell, David <DRussell@sscinc.com> wrote:
>>>
>>> OK so the all in support model including OTS and Viana is more in the 2.5 to 3 FTE range, do you agree?
>>>
>>> -----Original Message-----
>>> From: Pallone, Daniel
>>> Sent: Thursday, February 11, 2016 9:29 AM
>>> To: Russell, David
>>> Cc: Reilly, Timothy; Gonzalez, Tony; Cossin, Diane; Reid, David
>>> Subject: Re: ███████
>>>
>>> No only direct team
>>>
>>> Dan Pallone
>>> 973-476-3928
>>>
>>>> On Feb 11, 2016, at 8:26 AM, Russell, David <DRussell@sscinc.com> wrote:
>>>>
>>>> Also you considered the OTS FTE allocation to support as well?
>>>>
>>>> -----Original Message-----
>>>> From: Russell, David
>>>> Sent: Thursday, February 11, 2016 9:23 AM
>>>> To: Pallone, Daniel
>>>> Cc: Reilly, Timothy; Gonzalez, Tony; Cossin, Diane; Reid, David
>>>> Subject: RE: ███████
>>>>
>>>> Is this 2 for CAMRA only or CAMRA and D&D?

CONFIDENTIAL

SSC148164

>>>>
>>>> -----Original Message-----
>>>> From: Pallone, Daniel
>>>> Sent: Thursday, February 11, 2016 9:19 AM
>>>> To: Russell, David
>>>> Cc: Reilly, Timothy; Gonzalez, Tony; Cossin, Diane; Reid, David
>>>> Subject: Re: ▉▉▉▉▉
>>>>
>>>> 2 FTEs full time with part time RM manager Viana Huie, primarily based on 90% agency, the volumes, and trade desk as front end
>>>>
>>>> The CAMRA, DD, and trade desk is phase 1 per Joe McAdams, if he likes what he sees then he will outsource the GL and they are planning on buying whole resi loans and want to eventually discuss Precision
>>>>
>>>> They could be another ▉▉▉▉▉▉ with trade desk and what the ultimate goal is.
>>>>
>>>> Dan Pallone
>>>> 973-476-3928
>>>>
>>>>> On Feb 11, 2016, at 8:02 AM, Russell, David <DRussell@sscinc.com> wrote:
>>>>>
>>>>> Dan,
>>>>>
>>>>> What is your FTE estimate to support ▉▉▉▉▉ when it is in production?
>>>>>
>>>>> Dave
>>>>>
>>>>> -----Original Message-----
>>>>> From: Pallone, Daniel
>>>>> Sent: Thursday, February 11, 2016 8:43 AM
>>>>> To: Reilly, Timothy
>>>>> Cc: Gonzalez, Tony; Cossin, Diane; Russell, David; Reid, David
>>>>> Subject: Re: ▉▉▉▉▉▉
>>>>>
>>>>> Some ideas:
>>>>>
>>>>> 1 - Split PS into implementation and value add services, both have different objectives. The implementation teams are the initial client interaction into a long term license or direct relationship and eases them into SS&C. This should be very client friendly and accommodating as possible to cover the basic costs to enable the recurring revenues as soon as possible. The value add PS is how we leverage and showcase our intellectual capital into profitable revenues with existing or new clients. It appears to me we have commingled these two, but this deserves a re-examination in my mind and I strongly recommend.
>>>>>
>>>>> 2 - stop charging for rework due to our errors, I have seen this on ▉▉▉▉▉ and the lack of transparency on the substance of the hours charged by either party prevents the understanding of the nature of the work. I recommend we review the hours with all implementation clients on a weekly basis with names and the nature of the work, similar to what is now in place with ▉▉▉▉▉ We should also not charge for rework caused by SSC.
>>>>>
>>>>> 3 - for outsourcing implementations, the direct staff who will be supporting the client need to be engaged during the entire implementation with a lead role engaging with the client. The direct team will be managing the client post implementation and it appears awkward to me you have a PS lead for 9 months and then tell the client to start dealing with this other team and lead. My recommendation would be primarily staff the implementation team with the direct staff who will be servicing the client.
>>>>>
>>>>> 4 - the number of resources is a consistent theme. First idea is to look at using consultants in the existing direct or client support roles to free up the best and brightest to assign to the implementations, I have used this in the past when doing significant system implementation and process transformations at Freddie Mac, Citi, Doral and JPM very effectively. Second idea is to leverage 3rd party firms who have automated tools to do data transformation, an example is Investech.
>>>>>
>>>>> We all work for SSC and have to recognize the new business we are seeing, like the REITs and non bank lenders, eg Colchis Capital will provide a significant opportunity we need to adapt and seize the market share and revenues. We are cannibalizing our new clients with less than ideal on boarding experiences.
>>>>>
>>>>> I am available anytime to discuss what I believe is an easy fix if we can change how we do things.
>>>>>
>>>>> Dan Pallone
>>>>> 973-476-3928 Mobile

CONFIDENTIAL

```
>>>>>
>>>>>> On Feb 11, 2016, at 8:05 AM, Reilly, Timothy <treilly@sscinc.com> wrote:
>>>>>>
>>>>>> We need to discuss today.   I don't want anyone incurring anytime on anworth until we are
confident there is a substantive implementation plan.
>>>>>>
>>>>>> We need to get better.  Our lengthy/over budget implementations are "in the marketplace" and
becoming a common negative in our new business discussions.  I am seeing lots of emails rationalizing why
a 300k estimate should be a 1 million estimate (but I have yet to see the emails with suggestions on how
we can use better conversion tools, leverage the client, better moralize our teams, etc)??
>>>>>>
>>>>>>
>>>>>>
>>>>>> Sent from my iPad
```

CONFIDENTIAL

Message

| | |
|---|---|
| **From:** | Pallone, Daniel [DPallone@sscinc.com] |
| **Sent:** | 8/18/2016 12:31:31 PM |
| **To:** | Reilly, Timothy [treilly@sscinc.com]; Reid, David [DReid@sscinc.com] |
| **Subject:** | FW: Armour |

Read below. Josh took a leadership role with Armour CAMRA license implementation.  The controller called Adriana on Friday and was threatening to pull the contract given all the issues they are encountering and the lack of support from Scott and Andrew.  This took Adriana by surprise who has been relying on Scott and Andrew on client feedback.  They are nice guys but need coaching on how to interact with clients and also need to understand the daily and month end process.

We have to change the approach to CAMRA license implementations and leverage the direct team much sooner in the process.  This same situation continues to repeat itself and we have clients that are not happy. We are going thru this with ▮▮▮▮▮ right now and soon to happen with ▮▮▮▮▮▮▮▮▮▮  The CAMRA client support model for the mREIT is also broken based on consistent feedback from all the mREIT license clients.

BTW - We are waiting for Armour to sign off which is contingent on final payment of $307K outstanding receivable which was invoiced on June 30th, approaching 60 days past due.  I told Josh and Adriana we have to collect the monies by 8/31. I will be calling Jim Mountain.

Daniel M. Pallone
Vice President
Mortgage REITs and Loan Servicing

SS&C Technologies Inc.
1114 Avenue of the Americas, 33th Fl
New York, NY 10036
Tel: 212-659-4631 (NY) / Mobile: 973-476-3928 / 860-298-4980 (CT)
Email: DPallone@sscinc.com


-----Original Message-----
From: Brown, Joshua
Sent: Thursday, August 18, 2016 8:03 AM
To: Pallone, Daniel; Johnson, Adriana
Cc: Doyle, Michael; Holmes, Jason; LaMonica, David
Subject: RE: Armour

Mike and I spoke with Armour yesterday.  Here are the next steps from my perspective:

-- They are sending over their reports for us to take a look at.  They previously had an issue with them, which has now been fixed but we would like to explain what the issue was in addition to seeing that the logic is correct and to see if some of our current reports used in Direct can be of use to them.  We think they might.

We introduce them to Jason, Ross, Fatima, and Taylor.  We provided them contact information as additional resources.

-- Jason provided a high level overview of the month end close process and controls we do.  They commented that this was very helpful and they are looking for more of this type of interaction.

-- Mike spoke with Sasha.  Sasha will be providing formal training at no cost.  This was also communicated.

-- I am drafting a best practices document with the help of the team.  We told them that we will be providing as soon as it is drafted.  The goal is to have something no later than tomorrow (although we left a delivery date to them open).

-- We asked about any immediate issues.  They were not concerned with anything specific at this moment, but want a better outlet for answering questions as they arise.  There biggest complaint is that something different will come up frequently which they feel they are not getting good answers for what is causing the problems and it causes massive delays.  The fact that they now have another outlet for answering questions is a big win.

**EXHIBIT**

tabbies®  D

CONFIDENTIAL

SSC145636

-- We are also working on cleaning up our checklists to make them client friendly and will be sending them along as well.

-- Once they have had time to digest what we send in documentation, they will follow up with us with questions.  We also left it open that we would be happy to have a webex with them to walk them through our processes in more detail.

-- Mike and I are still discussing when we can go out in person for a visit.

-- We are meeting with the PS team today to discuss the true up of the none agency BV's.  We will also provide the PS team with next steps from their perspective.


Joshua Brown, CPA
Senior Director â€" Accounting Policy & Regulatory Reporting

SS&C Technologies, Inc.
80 Lamberton Road
Windsor, CT 06095
Tel:   860.731.5038
Cell:  860.384.9909

JBrown@sscinc.com
www.ssctech.com


-----Original Message-----
From: Pallone, Daniel
Sent: Thursday, August 18, 2016 7:26 AM
To: Johnson, Adriana
Cc: Brown, Joshua; Doyle, Michael; Holmes, Jason; LaMonica, David
Subject: Armour

Adriana,

What are next steps for Armour?

Dan Pallone
973-476-3928

CONFIDENTIAL

SSC145637

**Message**

| | |
|---|---|
| **From:** | Brown, Joshua [JBrown@sscinc.com] |
| **Sent:** | 8/18/2016 12:07:58 PM |
| **To:** | Pallone, Daniel [DPallone@sscinc.com] |
| **CC:** | Holmes, Jason [jholmes@sscinc.com]; Pieper, Ross [rpieper@sscinc.com]; Mahamoon, Fathima [FMahamoon@sscinc.com]; Keith, Taylor [tkeith@sscinc.com] |
| **Subject:** | Our Team |

I would like to thank our team for participating in a call with Armour, being available to them for questions, and helping me with documentation.

Jason did a fantastic job explaining the month end close and the team presented themselves great with the professionalism our clients are looking for.

Thanks so much guys!  Unfortunately, there will be some leaning on the team until we can straighten out the issues with our licensed clients.


Joshua Brown, CPA
Senior Director â€" Accounting Policy & Regulatory Reporting

SS&C Technologies, Inc.
80 Lamberton Road
Windsor, CT 06095
Tel:  860.731.5038
Cell:  860.384.9909

JBrown@sscinc.com
www.ssctech.com


-----Original Message-----
From: Pallone, Daniel
Sent: Thursday, August 18, 2016 7:26 AM
To: Johnson, Adriana
Cc: Brown, Joshua; Doyle, Michael; Holmes, Jason; LaMonica, David
Subject: Armour

Adriana,

What are next steps for Armour?

Dan Pallone
973-476-3928



EXHIBIT

E

CONFIDENTIAL

SSC054003

Message

| | |
|---|---|
| **From:** | Pallone, Daniel [DPallone@sscinc.com] |
| **Sent:** | 11/17/2016 5:09:02 AM |
| **To:** | Reilly, Timothy [treilly@sscinc.com] |
| **Subject:** | Fwd: Armour |

I had Jason reach out to Armour to get a sense of the timing to get the final $100k. His feedback to Sasha is below. Jason did not say this but Mark said the CS team is not adding a lot of value, same comments as we heard in the ██████████████

We will lose the REIT franchise if we don't address the CS issue with the license clients, this was going on prior to Steve's passing.

I have ideas if you want to hear them.

I am not confident we will get $100k by year end with the current support model.

Dan Pallone
973-476-3928

Begin forwarded message:

> **From:** "Holmes, Jason" <jholmes@sscinc.com>
> **Date:** November 16, 2016 at 1:44:55 PM PST
> **To:** "DeMarino, Sasha" <SDeMarino@sscinc.com>
> **Cc:** "Pallone, Daniel" <DPallone@sscinc.com>
> **Subject:** Armour
>
> Hi Sasha,
>
> I just had a conversation with Mark Gruber at Armour. I was calling to touch base on an outstanding invoice but he wanted to talk about their current status (October not closed and sitting on a system date of 11/7).
>
> Mark voiced his displeasure with the Client Support group, mainly around lapses in communication and his perceived abilities of the individuals Armour has been dealing with. He did acknowledge that the loss of Steve D. may have played into some of the miscommunication.
>
> Mark also acknowledged that it was an error that Armour made in the settlement of MBS payments that started the process of them falling behind.
>
> Mark mentioned that he had been in contact with you and that there was a plan to get them current. If SS&C resources are needed, Fathima Mahamoon from the REIT team would have some capacity over the next week to assist. Fathima is familiar with the account and processing. Let us know if we can assist.
>
> A couple of items that Mark wanted me to follow up on:
>
> - In the event they have to break their nightly process again for any reason, what the course of action should be
> - Is there a log of outstanding tickets that are open relating to Armour?



**EXHIBIT**

F

CONFIDENTIAL

SSC146951

If you have time tomorrow, we can touch base by phone or in person if you are in office.

Thank you

CONFIDENTIAL

SSC146952

# Exhibit E



20 Church Street
Hartford, CT 06103-1221

p: 860-725-6200   f: 860-278-3802
hinckleyallen.com

**Kevin J. O'Connor**
*koconnor@hinckleyallen.com*
(617) 345-9000

February 23, 2018

Armour Residential REIT, Inc.
3001 Ocean Drive, Suite 201
Vero Beach, FL 32963-1992

**Re:  Third Party Subpoena in the Matter**
     **Armour Capital Management LP v. SS&C Technologies, Inc.**
     **C.A. No. 3:17-CV-00790 (JAM)**

Dear Sir/Madam:

PLEASE TAKE NOTICE THAT, pursuant to Fed. R. Civ. P. 45, on March 9 at 10:00 a.m., at the Embassy Suites by Hilton West Palm Beach Central, West Palm Beach, FL, or an alternate date or time to be agreed-upon, you will be required to designate a corporate representative to appear for a deposition to testify on behalf of the company in accordance with the enclosed subpoena and topics listed at Exhibit A, and produce documents in accordance with Exhibit B.

Should you have any questions with regard to this matter, please do not hesitate to contact me. Thank you.

            Sincerely,

            HINCKLEY, ALLEN & SNYDER, LLP

            *Kevin J. O'Connor*

KJO/cz
Enclosures

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of Connecticut

| | | |
|---|---|---|
| Armour Capital Management, LP | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   3:17-CV-00790 |
| SS&C Technologies, Inc. | ) | |
| | ) | |
| *Defendant* | ) | |

### SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:      Armour Residential REIT, Inc., 3001 Ocean Drive, Suite 201, Vero Beach, FL 32963-1992

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Exhibit A, attached.

| Place:   Embassy Suites by Hilton West Palm Beach Central 1601 Belvedere Rd. West Palm Beach, FL (or location to be agreed upon) | Date and Time: 03/09/2018 10:00 am |
|---|---|

The deposition will be recorded by this method:    stenographer and videographer

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

       See Exhibit B, attached.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    02/23/2018

         *CLERK OF COURT*

                                       OR

                                         /s/ Kevin J. O'Connor

| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |
|---|---|

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
SS&C Technologies, Inc.                          , who issues or requests this subpoena, are:

Kevin J. O'Connor, Hinckley Allen & Snyder, 28 State Street, Boston, MA, (617)378-4394, koconnor@hinckleyallen.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 3:17-CV-00790

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

    ◻ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

    ◻ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

                          _____

                                   *Server's signature*

                          _____

                                 *Printed name and title*

                          _____

                                 *Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

### DEFINITIONS AND INSTRUCTIONS

For purposes of this subpoena, the following definitions and instructions shall apply:

A. The connectives "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

B. The words "any" and "all" shall include "each and every."

C. The term "Armour" means and includes Armour Capital Management, LP and any and all predecessors, successors, divisions, or subsidiaries thereof, together with any and all controlling or affiliated companies or corporations, and all officers, directors, shareholders, employees, agents, representatives, and all other persons acting or purporting to act, who have acted or who have purported to have acted on behalf of any of the foregoing.

D. The term "You" or "Your" means Armour Residential REIT, Inc. and any and all predecessors, successors, divisions, or subsidiaries thereof, together with any and all controlling or affiliated companies or corporations, and all officers, directors, shareholders, employees, agents, representatives, and all other persons acting or purporting to act, who have acted or who have purported to have acted on behalf of any of the foregoing.

E. The term "Javelin" means Javelin Mortgage Investment Corp., and any and all predecessors, successors, divisions, or subsidiaries thereof, together with any and all controlling or affiliated companies or corporations, and all officers, directors, shareholders, employees, agents, representatives, and all other persons acting or purporting to act, who have acted or who have purported to have acted on behalf of any of the foregoing.

1

F.     The term "SS&C" means and includes SS&C Technologies, Inc. and any and all predecessors, successors, divisions, or subsidiaries thereof, together with any and all controlling or affiliated companies or corporations, and all officers, directors, shareholders, employees, agents, representatives, and all other persons acting or purporting to act, who have acted or who have purported to have acted on behalf of any of the foregoing.

G.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

H.     The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

I.     The terms "document" and "documents" shall have the meanings set forth in the Federal Rules of Civil Procedure, including but not limited to Fed. R. Civ. P. 26 and 34 and shall include writings and recordings of any kind, formal or informal, and items of any sort containing information, data, or data compilations, including electronic data, electronically stored information and electronic mail, sound records and images and shall include both paper and electronic versions of the records regardless of their format or means of storage.

J.     The terms "including" and "includes" means "without limitation" and "by way of example only."

K.     The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

L.     Any word written in the singular shall be construed as plural or vice versa so as to construe a discovery request as broadly as possible.

2

M.     Pursuant to Fed. R. Civ. P. 45(c), You shall produce the requested documents as they are kept in the usual course of business or shall organize and label them to correspond within the categories in this request.

N.     If You withhold any requested document as privileged, set forth the privilege claimed and the facts upon which you rely to support the claim of privilege.  For each document for which privilege is claimed, include at least the following information:

> (i) a brief description of the nature and subject matter of the document, including the title and type of document (e.g., letter, memorandum, drawing, report, meeting minutes, etc.)
>
> (ii) the date appearing on the document or information and if no date appears thereon the schedule shall so state and shall give the date, or approximate date, on which the document was prepared;
>
> (iii) the identity of the document's author(s), including the designation of "Esq." after any attorney;
>
> (iv) the identity of the person(s) to whom the document is addressed, including all person(s) who received copies, including the designation of "Esq." after any attorney;
>
> (v) the identity of the person(s) to whom the document was in fact sent, including the designation of "Esq." after any attorney; and;
>
> (vi) the Request to which the document or withheld information is otherwise responsive.

O.     When a request seeks documents not in Your actual possession, custody, or control, but You have information and/or belief that the information or documents are available elsewhere, identify the person(s) having such knowledge or possessing such documents.

P.     Unless otherwise indicated, this Subpoena requires production of all responsive documents created or sent at any time from **January 1, 2013 to present and testimony concerning documents and events created, occurring or used during the same time period**.

3

## TOPICS OF TESTIMONY

1.      The terms of all agreements and contracts between You and Javelin or Armour.

2.      All documents and internal and external communications concerning Armour's financial reporting and related systems for You or Javelin, including Armour's accounting methodology, accounting controls, asset accounting, asset accounting technology and solutions, back-office or middle office operations or personnel, asset valuations, and financial reporting for You or Javelin.

3.      All documents and internal and external communications concerning the adequacy of, problems or issues identified with, or the actual or potential improvement of, Armour's financial reporting systems or controls for You or Javelin, including Armour's accounting methodology, accounting controls, asset accounting, asset accounting technology and solutions, back-office or middle office operations or personnel, asset valuations, and financial reporting for You or Javelin.

4.      All documents and internal and external communications concerning any evaluation of Armour's internal controls concerning its financial reporting systems, processes or personnel for You or Javelin, including for purposes of the Sarbanes-Oxley Act or otherwise.

5.      Any and all identified internal financial control weaknesses on the part of Armour, You, or Javelin from January 1, 2013 to the present, including all documents and communications related thereto.

6.      All documents and internal and external communications concerning all amounts paid from You to Armour from January 1, 2013 to the present, and the basis for all such payments.

4

7.      All documents and internal and external communications concerning Armour's relationship with SS&C, including but not limited to Armour's potential or actual decision to contract with SS&C, remain engaged with SS&C, or terminate any contract with SS&C.

8.      All documents and internal and external communications concerning CAMRA.

9.      All documents and internal and external communications concerning Armour's actual or prospective merger with, or acquisition of, Javelin and any related accounting elections, issues, or concerns.

10.     All written or oral communications, documents, presentations, draft and final minutes, or other documents, involving, prepared by or presented to the Audit Committee of Your Board of Directors or that of Javelin, concerning SS&C, CAMRA, or any actual or potential issues or concerns regarding financial controls, internal or external financial reporting, the adequacy or effectiveness of Armour's middle-or back-office operations, or the adequacy or effectiveness of its asset-accounting software or solutions for You or Javelin.

11.     All documents and internal and external communications concerning this litigation.

5

## EXHIBIT B

## DEFINITIONS AND INSTRUCTIONS

For purposes of this subpoena, the following definitions and instructions shall apply:

A.    The connectives "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

B.    The words "any" and "all" shall include "each and every."

C.    The term "Armour" means and includes Armour Capital Management, LP and any and all predecessors, successors, divisions, or subsidiaries thereof, together with any and all controlling or affiliated companies or corporations, and all officers, directors, shareholders, employees, agents, representatives, and all other persons acting or purporting to act, who have acted or who have purported to have acted on behalf of any of the foregoing.

D.    The term "You" or "Your" means Armour Residential REIT, Inc. and any and all predecessors, successors, divisions, or subsidiaries thereof, together with any and all controlling or affiliated companies or corporations, and all officers, directors, shareholders, employees, agents, representatives, and all other persons acting or purporting to act, who have acted or who have purported to have acted on behalf of any of the foregoing.

E.    The term "Javelin" means Javelin Mortgage Investment Corp., and any and all predecessors, successors, divisions, or subsidiaries thereof, together with any and all controlling or affiliated companies or corporations, and all officers, directors, shareholders, employees, agents, representatives, and all other persons acting or purporting to act, who have acted or who have purported to have acted on behalf of any of the foregoing.

1

F.    The term "SS&C" means and includes SS&C Technologies, Inc. and any and all predecessors, successors, divisions, or subsidiaries thereof, together with any and all controlling or affiliated companies or corporations, and all officers, directors, shareholders, employees, agents, representatives, and all other persons acting or purporting to act, who have acted or who have purported to have acted on behalf of any of the foregoing.

G.    The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

H.    The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

I.    The terms "document" and "documents" shall have the meanings set forth in the Federal Rules of Civil Procedure, including but not limited to Fed. R. Civ. P. 26 and 34 and shall include writings and recordings of any kind, formal or informal, and items of any sort containing information, data, or data compilations, including electronic data, electronically stored information and electronic mail, sound records and images and shall include both paper and electronic versions of the records regardless of their format or means of storage.

J.    The terms "including" and "includes" means "without limitation" and "by way of example only."

K.    The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

L.    Any word written in the singular shall be construed as plural or vice versa so as to construe a discovery request as broadly as possible.

M.      Pursuant to Fed. R. Civ. P. 45(c), You shall produce the requested documents as they are kept in the usual course of business or shall organize and label them to correspond within the categories in this request.

N.      If You withhold any requested document as privileged, set forth the privilege claimed and the facts upon which you rely to support the claim of privilege. For each document for which privilege is claimed, include at least the following information:

> (i)  a brief description of the nature and subject matter of the document, including the title and type of document (e.g., letter, memorandum, drawing, report, meeting minutes, etc.)
>
> (ii)  the date appearing on the document or information and if no date appears thereon the schedule shall so state and shall give the date, or approximate date, on which the document was prepared;
>
> (iii) the identity of the document's author(s), including the designation of "Esq." after any attorney;
>
> (iv) the identity of the person(s) to whom the document is addressed, including all person(s) who received copies, including the designation of "Esq." after any attorney;
>
> (v)  the identity of the person(s) to whom the document was in fact sent, including the designation of "Esq." after any attorney; and;
>
> (vi) the Request to which the document or withheld information is otherwise responsive.

O.      When a request seeks documents not in Your actual possession, custody, or control, but You have information and/or belief that the information or documents are available elsewhere, identify the person(s) having such knowledge or possessing such documents.

P.      Unless otherwise indicated, this Subpoena requires production of all responsive documents created or sent at any time from **January 1, 2013 to present**.

## REQUESTS FOR PRODUCTION

1.      All documents concerning the terms of all agreements and contracts between You and Javelin or Armour.

2.      All documents concerning the performance, adequacy, or any deficiencies or needs for improvement of Armour's financial reporting and related systems, or middle- or back-office support or operations, for You or Javelin, including Armour's accounting methodology, accounting controls, asset accounting, asset valuations, asset accounting technology and solutions, and financial reporting for You or Javelin.

3.      All documents concerning any evaluation of Armour's internal controls concerning its financial reporting systems or processes for You or Javelin, including for purposes of the Sarbanes-Oxley Act or otherwise.

4.      All documents concerning any actual or potential internal financial control weaknesses on the part of Armour, You, or Javelin.

5.      All documents concerning all amounts paid from You to Armour from January 1, 2013 to the present, and the basis for all such payments.

6.      All documents concerning Armour's compensation of any Armour employees.

7.      All documents concerning Armour's relationship with SS&C, including but not limited to Armour's potential or actual decision to contract with SS&C, remain engaged with SS&C, or terminate any contract with SS&C.

8.      All documents concerning CAMRA.

9.      All documents concerning any accounting issues, elections or decisions concerning Armour's actual or prospective merger with, or acquisition of, Javelin.

4

10. All packets of documents, presentations, draft and final minutes, or other documents, prepared by or presented to the Audit Committee of Your Board of Directors or that of Javelin in connection with any meeting of Your Audit Committee or that of Javelin, and any related communications, concerning SS&C, CAMRA, or any actual or potential issues or concerns regarding financial controls, internal or external financial reporting, the adequacy or effectiveness of Armour's middle- or back-office operations, or the adequacy or effectiveness of its asset-accounting software or solutions for You or Javelin.

11. All packets of documents, presentations, draft and final minutes, or other documents, prepared by or presented to Your Board of Directors or that of Javelin concerning SS&C, CAMRA, or any actual or potential issues or concerns regarding financial controls, internal or external financial reporting, the adequacy or effectiveness of Armour's middle- or back-office operations, or the adequacy or effectiveness of its asset-accounting software or solutions for You or Javelin, and any related communications.

5

# Exhibit F


HINCKLEY
ALLEN

20 Church Street
Hartford, CT 06103-1221

p: 860-725-6200  f: 860-278-3802
hinckleyallen.com


**Kevin J. O'Connor**
*koconnor@hinckleyallen.com*

February 23, 2018

Deloitte LLP
c/o Corporation Service Company
50 Weston Street
Hartford, CT 06120

**Re: Third Party Subpoena in the Matter**
    **Armour Capital Management LP v. SS&C Technologies, Inc.**
    <u>**C.A. No. 3:17-CV-00790 (JAM)**</u>

Dear Sir/Madam:

PLEASE TAKE NOTICE THAT, pursuant to Fed. R. Civ. P. 45 and 30(b)(6), on March 9, 2018 at 10:00 a.m., at the offices of Hinckley Allen & Snyder, LLP, 20 Church Street, Hartford, CT 06102-1221, or an alternate date or time to be agreed-upon, you will be required to designate a corporate representative to appear for a deposition to testify on behalf of the company in accordance with the enclosed subpoena and topics listed at <u>Exhibit A,</u> and produce documents in accordance with <u>Exhibit B</u>.

Should you have any questions with regard to this matter, please do not hesitate to contact me. Thank you.

Sincerely,

HINCKLEY, ALLEN & SNYDER, LLP

*Kevin J. O'Connor*

JCW/cz
Enclosure

▶ALBANY ▶ BOSTON ▶ CONCORD ▶ HARTFORD ▶ NEW YORK ▶ PROVIDENCE

57250354 HINCKLEY, ALLEN & SNYDER LLP, ATTORNEYS AT LAW

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Connecticut

| | | |
|---|---|---|
| Armour Capital Management, LP | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 3:17-CV-00790 |
| SS&C Technologies, Inc. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:        Deloitte, LLP c/o Corporation Service Company, 50 Weston Street, Hartford, CT 06120

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See Exhibit A, attached.

| Place: Hinckley Allen & Snyder<br>20 Church Street<br>Hartford, CT 06103 (or location to be agreed upon) | Date and Time:<br>03/09/2018 10:00 am |
|---|---|

The deposition will be recorded by this method:        stenographer and videographer

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

        See Exhibit B, attached.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:        02/23/2018

                *CLERK OF COURT*

                                                        OR

                                                                        /s/ Kevin J. O'Connor

        _____                _____
                *Signature of Clerk or Deputy Clerk*                                *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*        _____
SS&C Technologies, Inc.                                                        , who issues or requests this subpoena, are:

Kevin J. O'Connor, Hinckley Allen & Snyder, 28 State Street, Boston, MA, (617)378-4394, koconnor@hinckleyallen.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 3:17-CV-00790

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

    ☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____     on *(date)* _____ ; or

    ☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

    $ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

 (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

  (i) disclosing a trade secret or other confidential research, development, or commercial information; or
  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

A.     The connectives "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

B.     The words "any" and "all" shall include "each and every."

C.     The term "Armour" means and includes Armour Capital Management, LP and any and all predecessors, successors, divisions, or subsidiaries thereof, together with any and all controlling or affiliated companies or corporations, and all officers, directors, shareholders, employees, agents, representatives, and all other persons acting or purporting to act, who have acted or who have purported to have acted on behalf of any of the foregoing.

D.     The "Armour REIT" means Armour Residential REIT, Inc. and any and all predecessors, successors, divisions, or subsidiaries thereof, together with any and all controlling or affiliated companies or corporations, and all officers, directors, shareholders, employees, agents, representatives, and all other persons acting or purporting to act, who have acted or who have purported to have acted on behalf of any of the foregoing.

E.     The term "Javelin" means Javelin Mortgage Investment Corp., and any and all predecessors, successors, divisions, or subsidiaries thereof, together with any and all controlling or affiliated companies or corporations, and all officers, directors, shareholders, employees, agents, representatives, and all other persons acting or purporting to act, who have acted or who have purported to have acted on behalf of any of the foregoing.

F.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

1

G.     The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

H.     The terms "document" and "documents" shall have the meanings set forth in the Federal Rules of Civil Procedure, including but not limited to Fed. R. Civ. P. 26 and 34 and shall include writings and recordings of any kind, formal or informal, and items of any sort containing information, data, or data compilations, including electronic data, electronically stored information and electronic mail, sound records and images and shall include both paper and electronic versions of the records regardless of their format or means of storage.

I.     The terms "including" and "includes" means "without limitation" and "by way of example only."

J.     The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

K.     The term "SS&C" means and includes SS&C Technologies, Inc. and any and all predecessors, successors, divisions, or subsidiaries thereof, together with any and all controlling or affiliated companies or corporations, and all officers, directors, shareholders, employees, agents, representatives, and all other persons acting or purporting to act, who have acted or who have purported to have acted on behalf of any of the foregoing.

L.     The term "You" or "Your" means Deloitte LLP. and any and all predecessors, successors, divisions, or subsidiaries thereof, together with any and all controlling or affiliated companies or corporations, and all officers, directors, shareholders, employees, agents, representatives, and all other persons acting or purporting to act, who have acted or who have purported to have acted on behalf of any of the foregoing.

2

M.   Any word written in the singular shall be construed as plural or vice versa so as to construe a discovery request as broadly as possible.

N.   Pursuant to Fed. R. Civ. P. 45(c), You shall produce the requested documents as they are kept in the usual course of business or shall organize and label them to correspond within the categories in this request.

O.   If You withhold any requested document as privileged, set forth the privilege claimed and the facts upon which you rely to support the claim of privilege. For each document for which privilege is claimed, include at least the following information:

> (i) a brief description of the nature and subject matter of the document, including the title and type of document (e.g., letter, memorandum, drawing, report, meeting minutes, etc.)
>
> (ii) the date appearing on the document or information and if no date appears thereon the schedule shall so state and shall give the date, or approximate date, on which the document was prepared;
>
> (iii) the identity of the document's author(s), including the designation of "Esq." after any attorney;
>
> (iv) the identity of the person(s) to whom the document is addressed, including all person(s) who received copies, including the designation of "Esq." after any attorney;
>
> (v) the identity of the person(s) to whom the document was in fact sent, including the designation of "Esq." after any attorney; and;
>
> (vi) the Request to which the document or withheld information is otherwise responsive.

P.   When a request seeks documents not in Your actual possession, custody, or control, but You have information and/or belief that the information or documents are available elsewhere, identify the person(s) having such knowledge or possessing such documents.

3

Q.     Unless otherwise indicated, this Subpoena requires production of all responsive documents created or sent at any time from, **January 1, 2013 to present, and testimony concerning the same time period.**

## TOPICS OF TESTIMONY

1.     All documents and communications involving, prepared or reviewed by You concerning Armour's financial reporting and related systems for the Armour REIT or Javelin, including Armour's accounting methodology, accounting controls, asset accounting, asset valuations, asset accounting technology and solutions, and financial reporting for the Armour REIT or Javelin.

2.     All documents and internal and external communications involving, prepared or reviewed by You concerning the adequacy of, problems or issues identified with, or the actual or potential improvement of, Armour's financial reporting systems or controls for the Armour REIT or Javelin, including Armour's accounting methodology, accounting controls, asset accounting, asset valuations, asset accounting technology and solutions, and financial reporting for the Armour REIT Javelin.

3.     All documents and internal and external communications involving, prepared or reviewed by You concerning any evaluation of Armour's internal controls concerning its financial reporting systems or processes for the Armour REIT or Javelin, including for purposes of the Sarbanes-Oxley Act or otherwise.

4.     Any and all potential or actual internal financial control weaknesses on the part of Armour, the Armour REIT, or Javelin identified by You or the Audit Committee of any of the foregoing entities.

4

5.    All documents and internal and external communications involving, prepared or reviewed by You concerning any amounts paid from the Armour REIT or Javelin to Armour and the basis for any such payments.

6.    All documents and internal and external communications, prepared, involving or reviewed by You concerning Armour's relationship with SS&C, including but not limited to Armour's potential or actual decision to contract with SS&C, remain engaged with SS&C, or terminate any contract with SS&C.

7.    All documents and internal and external communications involving, prepared or reviewed by You concerning CAMRA and Armour, the Armour REIT, or Javelin.

8.    All documents and internal and external communications involving, prepared or reviewed by You concerning this litigation.

9.    All documents and internal and external communications involving, prepared or reviewed by You concerning any accounting elections or concerns arising from Armour's actual or prospective merger with, or acquisition of, Javelin.

10.    The adequacy of, or problems or issues identified with, Armour's financial reporting systems for the Armour REIT or Javelin, including Armour's accounting methodology, accounting controls, asset accounting, asset-accounting technology and solutions, or asset-accounting valuations.

11.    All communications with Armour, the Armour REIT, or Javelin concerning the adequacy of, or problems or issues identified with Armour's financial reporting systems, including its accounting methodology, accounting controls, asset accounting, or valuations, for the Armour REIT or Javelin.

5

12. All of Your internal communications concerning the adequacy of, or problems or issues identified with, Armour's financial reporting systems, including its accounting methodology, accounting controls, asset accounting, asset accounting technology or solutions, back-office or middle office operations or personnel, or asset valuations, for the Armour REIT or Javelin.

13. Any evaluations of Armour's internal controls or asset-accounting solutions concerning Armour's financial reporting systems or processes, including for purposes of the Sarbanes-Oxley Act or otherwise, including all documents and communications related thereto, for the Armour REIT or Javelin.

14. Any identified internal control weakness (material or otherwise) from January 1, 2013 to the present, including all documents and communications related thereto, concerning Armour, the Armour REIT, or Javelin.

6

## EXHIBIT B

## DEFINITIONS AND INSTRUCTIONS

For purposes of this subpoena, the following definitions and instructions shall apply:

A.     The connectives "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

B.     The words "any" and "all" shall include "each and every."

C.     The term "Armour" means and includes Armour Capital Management, LP and any and all predecessors, successors, divisions, or subsidiaries thereof, together with any and all controlling or affiliated companies or corporations, and all officers, directors, shareholders, employees, agents, representatives, and all other persons acting or purporting to act, who have acted or who have purported to have acted on behalf of any of the foregoing.

D.     The "Armour REIT" means Armour Residential REIT, Inc. and any and all predecessors, successors, divisions, or subsidiaries thereof, together with any and all controlling or affiliated companies or corporations, and all officers, directors, shareholders, employees, agents, representatives, and all other persons acting or purporting to act, who have acted or who have purported to have acted on behalf of any of the foregoing.

E.     The term "Javelin" means Javelin Mortgage Investment Corp., and any and all predecessors, successors, divisions, or subsidiaries thereof, together with any and all controlling or affiliated companies or corporations, and all officers, directors, shareholders, employees, agents, representatives, and all other persons acting or purporting to act, who have acted or who have purported to have acted on behalf of any of the foregoing.

F.     The term "communication" means the transmittal of information (in the form of

1

facts, ideas, inquiries, or otherwise).

G.      The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

H.      The terms "document" and "documents" shall have the meanings set forth in the Federal Rules of Civil Procedure, including but not limited to Fed. R. Civ. P. 26 and 34 and shall include writings and recordings of any kind, formal or informal, and items of any sort containing information, data, or data compilations, including electronic data, electronically stored information and electronic mail, sound records and images and shall include both paper and electronic versions of the records regardless of their format or means of storage.

I.      The terms "including" and "includes" means "without limitation" and "by way of example only."

J.      The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

K.      The term "SS&C" means and includes SS&C Technologies, Inc. and any and all predecessors, successors, divisions, or subsidiaries thereof, together with any and all controlling or affiliated companies or corporations, and all officers, directors, shareholders, employees, agents, representatives, and all other persons acting or purporting to act, who have acted or who have purported to have acted on behalf of any of the foregoing.

L.      The term "You" or "Your" means Deloitte LLP. and any and all predecessors, successors, divisions, or subsidiaries thereof, together with any and all controlling or affiliated companies or corporations, and all officers, directors, shareholders, employees, agents, representatives, and all other persons acting or purporting to act, who have acted or who have purported to have acted on behalf of any of the foregoing.

2

M.       Any word written in the singular shall be construed as plural or vice versa so as to construe a discovery request as broadly as possible.

N.       Pursuant to Fed. R. Civ. P. 45(c), You shall produce the requested documents as they are kept in the usual course of business or shall organize and label them to correspond within the categories in this request.

O.       If You withhold any requested document as privileged, set forth the privilege claimed and the facts upon which you rely to support the claim of privilege. For each document for which privilege is claimed, include at least the following information:

> (i) a brief description of the nature and subject matter of the document, including the title and type of document (e.g., letter, memorandum, drawing, report, meeting minutes, etc.)
>
> (ii) the date appearing on the document or information and if no date appears thereon the schedule shall so state and shall give the date, or approximate date, on which the document was prepared;
>
> (iii) the identity of the document's author(s), including the designation of "Esq." after any attorney;
>
> (iv) the identity of the person(s) to whom the document is addressed, including all person(s) who received copies, including the designation of "Esq." after any attorney;
>
> (v) the identity of the person(s) to whom the document was in fact sent, including the designation of "Esq." after any attorney; and;
>
> (vi) the Request to which the document or withheld information is otherwise responsive.

P.       When a request seeks documents not in Your actual possession, custody, or control, but You have information and/or belief that the information or documents are available elsewhere, identify the person(s) having such knowledge or possessing such documents.

3

Q.     Unless otherwise indicated, this Subpoena requires production of all responsive documents created or sent at any time from, **January 1, 2013 to present, and testimony concerning the same time period.**

## REQUESTS FOR PRODUCTION

1.     All documents concerning Armour's financial reporting and related systems for the Armour REIT or Javelin, including Armour's accounting methodology, accounting controls, asset accounting, asset valuations, asset accounting technology and solutions, back-office or middle office operations or personnel, and financial reporting for the Armour REIT or Javelin.

2.     All documents concerning the adequacy of, problems or issues identified with, or the actual or potential improvement of, Armour's financial reporting systems or controls for the Armour REIT or Javelin, including Armour's accounting methodology, accounting controls, asset accounting, asset valuations, asset accounting technology and solutions, back-office or middle office operations or personnel, and financial reporting for the Armour REIT Javelin.

3.     All documents concerning any evaluation of Armour's internal controls surrounding its financial reporting systems, processes or personnel for the Armour REIT or Javelin, including for purposes of the Sarbanes-Oxley Act or otherwise.

4.     All documents concerning any and all potential or actual internal financial control weaknesses on the part of Armour, the Armour REIT, or Javelin identified by You or the Audit Committee of any of the foregoing entities.

5.     All documents concerning any amounts paid from the Armour REIT or Javelin to Armour and the basis for any such payments.

4

6. All documents concerning Armour's relationship with SS&C, including but not limited to Armour's potential or actual decision to contract with SS&C, remain engaged with SS&C, or terminate any contract with SS&C.

7. All documents concerning CAMRA and Armour, the Armour REIT, or Javelin.

8. All documents concerning any accounting elections or concerns arising from Armour's actual or prospective merger with, or acquisition of, Javelin.

9. All documents concerning any evaluations or assessments of, the adequacy of, or problems or issues identified with, Armour's financial reporting systems for the Armour REIT or Javelin, including Armour's accounting methodology, accounting controls, asset accounting, asset-accounting technology and solutions, back-office or middle office operations or personnel, asset-accounting valuations, or compliance with any applicable securities laws or regulations.

10. All documents concerning this litigation or any of the claims or defenses asserted herein.

# EXHIBIT C
# (Letter, Dkt#71, dated March 2, 2018, FN 3)

# Holland & Knight

701 Brickell Avenue, Suite 3300 | Miami, FL 33131 | T 305.374.8500 | F 305.789.7799
Holland & Knight LLP | www.hklaw.com

Allison Kernisky
305-349-2175
allison.kernisky@hklaw.com

March 2, 2018

*Via CM/ECF*

Honorable Jeffrey A. Meyer
U.S. District Judge, District of Connecticut
Richard C. Lee United States Courthouse
141 Church Street, Courtroom 3
New Haven, CT 06510

      Re:    *ARMOUR Capital Mgmt. LP v. SS&C Techs. Inc.*, No. 17-cv-00790-JAM.

Dear Judge Meyer:

    ACM respectfully responds in brief rejoinder to SS&C's March 1, 2016 letter brief.[1]

    At the September 2017 hearing, the Court predicted additional discovery might come to light that would substantiate ACM's need for documents on problems and delays with the implementations for other SS&C clients. *See* Sept. 29, 2017 Hearing Tr. at 30 ("And if it turns out that there is a reason to think that there is some other company out there, that there were similar kinds of complaints or concerns, then you'll have a fuller record to make.").

    This is exactly what has happened. SS&C told ACM there were no other uncompleted implementations. But the truth is there was one, Bimini, which SS&C's Tim Reilly referred to, with ACM, Fortress, and Resource, as the "4 problem REIT implementations." ACM seeks discovery on the implementations for those "licensed REIT clients" because *SS&C* grouped them together. This discovery falls squarely within the Court's September 29, 2017 order.

    ACM's need for this discovery is all the more urgent given SS&C's improper withholding of Bimini[2] documents. Only SS&C's internal documents can tell the true story of what was delaying implementations for Bimini, Resource, and Fortress (as well as ACM) and the impact of those events on ACM. SS&C's resource allocation issues were one cause; discovery may reveal others. This discovery is relevant to SS&C's notice and defects, too.

---

[1] Capitalized terms have the same meaning as in ACM's March 1, 2017 letter brief (ECF No. 68).

[2] Ignoring the irrelevance of relationships between ACM and Bimini executives, ACM must correct one of SS&C's wrong assertions: ACM never shared mutual ownership with Bimini.

Anchorage | Atlanta | Austin | Boston | Charlotte | Chicago | Dallas | Denver | Fort Lauderdale | Houston | Jacksonville | Lakeland
Los Angeles | Miami | New York | Orlando | Portland | San Francisco | Stamford | Tallahassee | Tampa | Tysons
Washington, D.C. | West Palm Beach

Hon. Jeffrey A. Meyer
March 2, 2018
Page 2

Other symptoms of SS&C's delayed and failed implementations also are probative of these issues. Leadership changes within Professional Services—SS&C's implementation team—and the relationship between it and Sales are critical. Three different people ran Professional Services within roughly a 12-month period from late 2015 to late 2016, as ACM's implementation continued to fail. This is hardly a coincidence. Nor is the fact the first of these individuals, Ms. Olszewska, believed Sales was compromising her team's work and making it difficult, a viewpoint held by other executives at SS&C.

SS&C's subpoenas to ARMOUR Residential REIT Inc. and Deloitte should be quashed because SS&C still has not proffered a valid predicate. Lastly, SS&C has not yet produced the "Implementation Playbook." If the Court orders additional production, ACM will likely question SS&C's witnesses, including Ms. Olszewska and Mr. Pallone, about at least some of it. These contingencies prevent ACM from estimating with finality how long questioning those two witnesses will last, although ACM presently believes two hours each will suffice.

Respectfully submitted,

HOLLAND & KNIGHT LLP

Allison Kernisky

CC:    All counsel of record.

# EXHIBIT C
# (Letter, Dkt#84, dated April 2, 2018, FN 3)

# Holland & Knight

701 Brickell Avenue, Suite 3300 | Miami, FL 33131 | T 305.374.8500 | F 305.789.7799
Holland & Knight LLP | www.hklaw.com

Joseph Mamounas
305-789-7491
joseph.mamounas@hklaw.com

April 2, 2018

*Via CM/ECF*

Honorable Jeffrey A. Meyer
U.S. District Judge, District of Connecticut
Richard C. Lee United States Courthouse
141 Church Street, Courtroom 3
New Haven, CT 06510

      Re:    *ARMOUR Capital Mgmt. LP v. SS&C Techs. Inc.*, No. 17-cv-00790-JAM.

Dear Judge Meyer:

In accordance with ECF No. 77, ACM[1] respectfully submits this letter brief in support of four outstanding discovery items: 1) SS&C's previous production of Bimini and other documents and its redaction and designation of those materials; 2) SS&C's withholding of documents relating to Fortress and Resource, two other REIT clients whose implementations were failing at the same time as ACM's; 3) SS&C's objection to ACM's deposition of an SS&C witness, Normand Boulanger; and 4) SS&C's depositions of ARMOUR Residential REIT Inc. ("ARR") and Deloitte.

### *Previous Productions of Bimini and Other Documents*

On March 2, 2018, the Court ordered SS&C to produce internal e-mails relating to its effort to implement CAMRA for Bimini, another of its "4 problem REIT implementations." SS&C made a production on March 26, 2018, but numerous documents also reference ACM and previously should have been—but were not—produced. Whether SS&C's productions are complete thus is unclear. These e-mails also further support the fact that SS&C's deficiencies infected multiple CAMRA implementations, underscoring ACM's need for Resource and Fortress documents.

Further, long after SS&C claimed in 2017 it had no written procedures for implementing CAMRA, ACM learned from one of SS&C's witnesses in February 2018 that SS&C had an "implementation playbook." By agreement, SS&C later produced one template of the "playbook" but has failed to produce any other iterations—including versions SS&C actually used—or related e-mails. These documents are critical for many reasons, including whether SS&C followed its own procedures for implementation and the allocation of tasks between SS&C and clients.

---

[1] All capitalized terms have the same meaning as in ECF Nos. 68 and 71.

Hon. Jeffrey A. Meyer
April 2, 2018
Page 2

Finally, SS&C has made it a practice to redact and designate documents and information about clients other than ACM, including their implementations, as "Attorney's Eyes Only." There are no grounds for doing so. This designation prevents ACM's counsel from discussing these matters with ACM, which prejudices ACM's ability to prepare and prosecute its case, and the redactions prevent ACM from discovering additional relevant information. SS&C's productions moreover contain no information that is so sensitive or secret that it cannot be produced at all or must be shared with counsel only. SS&C has not identified any demand by its other clients to restrict the release of documents or information concerning their implementations in this litigation, and Bimini has authorized full release to ACM. *See* Jan. 29, 2018 Aff. of G. Hunter Haas IV ¶ 9, attached as Ex. A to ECF No. 68. Finally, any sensitive information is years old and thus stale.

### *Fortress and Resource*

As stated in ACM's earlier letter briefs (ECF Nos. 68 and 71), incorporated by reference, ACM seeks a limited set of documents relating to SS&C's efforts to implement CAMRA for Resource and Fortress, including relating to SS&C's resource allocation issues, leadership changes within Professional Services ("PS"), and its strained relationship with Sales prior to the Master Agreement (as described in the third, fifth, and sixth bullet points in Exhibit B to ECF No. 68). The Court's order on SS&C's motion to dismiss (ECF No. 75) (the "Order") does not change the discoverability analysis. Rather, these documents remain probative of notice (e.g., circumstances rendering SS&C's pre-contractual misrepresentations to ACM negligently made), causation (e.g., between either or both of SS&C's breaches or misrepresentations and ACM's damages), and reasons and defects resulting in the failure of SS&C's implementation for ACM.

### *Normand Boulanger*

The parties initially agreed to the deposition of Normand Boulanger, SS&C's President and COO, who once ran PS, SS&C's dedicated implementation team, in exchange for the deposition of Jeff Zimmer, one of ACM's co-CEOs.

SS&C now has reneged on that agreement and refuses to produce Mr. Boulanger on the basis of the Order.[2] But again, the Order does not change the analysis of whether Mr. Boulanger's deposition is appropriate. This is because Mr. Boulanger has important, unique knowledge and information relevant to this case. Not only did Mr. Boulanger sign the Master Agreement and Work Requests 2 and 3,[3] he also has formed a belief that *supports* ACM's claims. In May 2017, Mr. Boulanger told ACM that SS&C in 2014 "should have" sold ACM the outsourcing (i.e., not the hosting) deployment option for CAMRA. ACM alleges that SS&C negligently misrepresented to ACM during the sales process that hosting was appropriate for ACM.

---

[2] In contrast, ACM is not contesting SS&C's deposition of Mr. Zimmer.

[3] Work Request 2 "expressly incorporated the terms of the Master Agreement" and "imposed a renewed obligation on SS&C to implement the software." (*See* Order at 8.) SS&C's breach of that obligation and ACM's millions of dollars in resulting losses are central issues in this dispute.

Hon. Jeffrey A. Meyer
April 2, 2018
Page 3

SS&C also has admitted that Mr. Boulanger was involved in ongoing discussions about the progress of ACM's unsuccessful implementation, ACM's unpaid bills, and ACM's request in early 2017 to meet with him about its implementation. Finally, Mr. Boulanger participated in the sales process for ACM and other mortgage REITs, bi-weekly internal sales calls and approving sales commissions at SS&C, and personnel decisions for the three individuals who ran PS while ACM's and other mortgage REITs' implementations were failing. Mr. Boulanger, in December 2017, also rehired Iwona Olszewska, a key witness in this case whom SS&C just weeks earlier had fired and who since that time has received a paycheck in exchange for virtually no work.

### *ARR and Deloitte*

On March 2, the Court also ordered that SS&C's subpoenas to ARR and ACM's auditors, Deloitte, were only enforceable to the extent they sought production of certain limited documents. In addition to any objections raised by ARR and Deloitte, which are not a subject of the upcoming April 3, 2018 discovery hearing, ACM reiterates its opposition to any further discovery, including depositions, of these entities, given the absence of any reasonable basis for doing so.

For these reasons, ACM respectfully requests that the Court enter an order requiring SS&C to confirm the completeness of its production of Bimini and ACM documents and withdraw its prior redactions and "Attorney's Eyes Only" designations from and refrain from doing so in the future for information and documents relating to other clients; respond to ACM's June 26, 2017 Request Nos. 6, 11, 12, 13, 20 and 24 and ACM's December 22, 2017 Request Nos. 4-11 by producing documents as described in Exhibit B to ECF No. 68; allowing ACM to depose Mr. Boulanger; and precluding any further discovery of ARR or Deloitte.

Respectfully submitted,

HOLLAND & KNIGHT LLP


/s Joseph Mamounas

Joseph Mamounas

CC:     All counsel of record.

EXHIBIT C
(Letter, Dkt#94, dated April 26,
2018, FN 3)

# Holland & Knight

701 Brickell Avenue, Suite 3300 | Miami, FL 33131 | T 305.374.8500 | F 305.789.7799
Holland & Knight LLP | www.hklaw.com

Allison Kernisky
305-349-2175
allison.kernisky@hklaw.com

April 26, 2018

*Via CM/ECF*

Honorable Jeffrey A. Meyer
U.S. District Judge, District of Connecticut
Richard C. Lee United States Courthouse
141 Church Street, Courtroom 3
New Haven, CT 06510

   Re:  *ARMOUR Capital Mgmt. LP v. SS&C Techs. Inc.*, No. 17-cv-00790-JAM.

Dear Judge Meyer:

  In accordance with ECF No. 93, ARMOUR Capital Management LP ("ACM") respectfully submits this letter brief in support of its subpoena for documents and testimony (the "Subpoena")[1] to Hylton Socher, the Chief Technology Officer of Fortress Investment Group ("Fortress").

  SS&C Technologies Inc.'s ("SS&C") anticipated request to quash the Subpoena should be denied for at least three reasons.

  **1.**  **Relevance**. The Subpoena seeks relevant information from Fortress.

  Fortress shares several important similarities with ACM, including: (1) Fortress also is a mortgage REIT, (2) SS&C engaged in parallel sales efforts with respect to Fortress at the same time as ACM, i.e., in mid to late 2014, (3) those sales efforts involved the CAMRA product, (4) the sales efforts also involved the same SS&C salesman, Jeff Fecteau, (5) Fortress also bought a CAMRA license from SS&C and contracted with SS&C for implementation services, and (6) after the sales process concluded, SS&C also deemed Fortress a "problem REIT implementation[]."

  ACM first served a subpoena on Fortress in January 2018. SS&C did not object. In April 2018, ACM served Fortress with the Subpoena, which is more limited and expressly *excludes* the documents at issue in the Court's April 3, 2018 order (ECF No. 90). (Subpoena at 4.) Instead, the Subpoena seeks from Fortress records about SS&C's sales efforts and contracts and a deposition of Mr. Socher. This information is relevant to ACM's claims because it will show what SS&C knew or should have known in relation to its contemporaneous misrepresentations to ACM.

---

[1] A copy of the Subpoena is attached as Exhibit A.

Anchorage | Atlanta | Austin | Boston | Charlotte | Chicago | Dallas | Denver | Fort Lauderdale | Houston | Jacksonville | Lakeland
Los Angeles | Miami | New York | Orlando | Portland | San Francisco | Stamford | Tallahassee | Tampa | Tysons
Washington, D.C. | West Palm Beach

Hon. Jeffrey A. Meyer
April 26, 2018
Page 2

     **2.**  <u>**No Burden**</u>.  The Subpoena does not present an unreasonable burden to Fortress.  The Subpoena seeks only a narrowed set of records from Fortress:  primarily, any documents or communications during the sales process and its contracts with SS&C.  Fortress and SS&C have put forward no facts even to suggest that producing these documents would be burdensome.  In fact, Fortress previously agreed to produce the contracts to ACM and to work with ACM to locate responsive documents using targeted search terms.[2]  Fortress never produced any documents, and ACM subsequently narrowed the scope of the requests to pre-contractual sales communications and the contracts.  This is not burdensome, nor is the deposition of Mr. Socher, who according to SS&C was most involved at Fortress in the sales process and contracting for CAMRA.

     **3.**  <u>**Prior Order**</u>.  The Court's April 3 order does not affect the Subpoena because it has been tailored to exclude the documents at issue in that order.  In any event, the Court denied SS&C's production of those documents—which related to SS&C's floundering efforts to implement CAMRA for Fortress—on the basis of SS&C's burden, not relevance.

     For these reasons, ACM respectfully requests that the Court enter an order denying SS&C's anticipated request to quash the Subpoena.

                           Respectfully submitted,

                           HOLLAND & KNIGHT LLP

                           /s/ Allison Kernisky

                           Allison Kernisky

CC:    All counsel of record.

---

[2] ACM's initial subpoena to Fortress requested all contracts between it and SS&C and documents and communications on "delays, problems, complaints, failures, accidents, incidents, damages, or similar occurrences Fortress had with the implementation of CAMRA."  (*See* Jan. 19, 2018 subpoena, attached at Ex. B.)

# Exhibit A

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### District of Connecticut

| | | |
|---|---|---|
| ARMOUR Capital Management LP | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   17-00790-JAM |
| SS&C Technologies Inc. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
Hylton Socher, C/O Fortress Investment Group
1345 Avenue of the Americas, New York, NY 10105
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Holland & Knight LLP<br>31 West 52nd Street,12th Floor<br>New York, NY 10019 | Date and Time:<br><br>04/30/2018 2:00 pm |
|---|---|

The deposition will be recorded by this method:   Videotape

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See attached "Exhibit A."

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 4-23-18

*CLERK OF COURT*                                    OR

_____                     _____
*Signature of Clerk or Deputy Clerk*                      *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  _____
ARMOUR Capital Management LP
, who issues or requests this subpoena, are:

Joseph Mamounas (joseph.mamounas@hklaw.com), Allison Kernisky (allison.kernisky@hklaw.com)
701 Brickell Avenue, Suite 3300, Miami, FL 33131 (305) 374-8500

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 17-00790-JAM

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                           *Server's signature*

                              _____
                                           *Printed name and title*

                              _____
                                           *Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT "A"

## INSTRUCTIONS

1.    Words and phrases spelled in capital letters in this subpoena shall have the specific meanings and definitions given to them in the "Definitions" section below.

2.    When answering these requests, You must furnish all Documents available to You, including Documents in Your possession, custody or control or in the possession, custody or control of related entities, current or former attorneys, experts, accountants, banks, insurers, agents, investigators, employees, representatives, or any other Persons acting on Your behalf.

3.    If You believe that any of the following requests calls for Documents subject to a claim of privilege, answer or produce what is not objected to, state that part of each request raising an objection and set forth the basis for Your claim of privilege, including a statement identifying the nature of the information withheld; for each Document as to which You claim privilege, state the date and subject matter of the Document, the name(s) of the Person(s) who prepared the Document, and the name(s) of the Person(s) for whom the Document was intended.

4.    If any requested Document was once in Your possession, custody, or control but has been destroyed or lost, set forth in writing the contents of the Document, the date the Document was destroyed or lost, and the name of the Person who authorized or directed the destruction of the Document or was last in possession of the Document.

5.    If You cannot produce any of the Documents in full, produce to the extent possible and specify in writing the reasons for Your inability to produce the remainder of the Document.

6.    **The requests for production below DO NOT include documents relating to efforts to implement CAMRA for Fortress after any agreements between Fortress and SS&C with respect to CAMRA.**

<u>**INSTRUCTIONS AS TO ELECTRONICALLY STORED INFORMATION**</u>

Electronically stored information ("ESI") is to be produced in 300 x 300 DPI Group IV Monochrome Tagged Image File Format (.TIFF or .TIF) files, with color Documents in Joint Photographic Experts Group (.JPEG or .JPG) files. TIFF and JPEG files shall be produced in single-page format along with Concordance image load files (.OPT). All Documents are to be provided with multi-page extracted or OCR text (.TXT) files indicating page breaks. Extracted text and/or OCR text shall not be embedded in the .DAT file but rather shall be provided as separate, Document-level text files, the names of which shall contain the beginning bates number of the Document. If a Document is provided in native format with a placeholder TIFF (e.g., a MS-Excel or .CSV file), the text file shall contain the extracted text of the native file. Provide any metadata values associated with the produced electronic information in the form of a metadata load text file (.DAT file) and using Concordance standard delimiters. Unless such materials contain privileged information, MS-Excel and .CSV spreadsheets shall be produced in native format. The metadata load file (.DAT) shall contain a link to the produced MS Excel spreadsheets via data values called "Native Link" and a "TextPath" field containing the path (including the file name) to the extracted text or OCR file for each Document. The Native Link values shall contain the full directory path and file name of the MS Excel spreadsheet as contained in the produced media. Produce native MS Excel and .CSV files accompanied by a placeholder .TIFF sheet containing the name of the bates number for each produced file. To the extent such materials contain information subject to a claim of privilege, they shall be produced in the form of redacted .TIFF images. Sequential bates numbers and any confidentiality designation shall be electronically branded on each TIFF image of ESI. Each file name shall be unique and match the bates number of the page. The file name shall not contain any blank spaces and shall be zero padded.

## DEFINITIONS

1. "Document" means documents or electronically stored information, including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.

2. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

3. "All/Each," shall both be construed as all and each.

4. "And/Or" shall be construed disjunctively or conjunctively to bring within the scope of the discovery request all responses that might otherwise be construed as outside its scope.

5. "Including" means including but not limited to.

6. The terms "reflecting," or "relating to," mean setting forth, pertaining to, memorializing, constituting, embodying, discussing, analyzing, reflecting, concerning, relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, constitutes, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, or contradicts.

7. The term "Person" or "Persons" shall mean any natural person, individual, corporation, real estate investment trust ("REIT"), partnership, joint venture, firm, voluntary or unincorporated association, other business association, entity or enterprise, proprietorship, trust, estate, governmental agency, board, authority, commission, bureau, department or such other governmental or quasi-governmental entity, group of natural persons, or other entity and includes any other natural person(s) acting on behalf of a natural person in any capacity whatsoever.

8. "Fortress," "You," and "Your" mean Fortress Investment Group, its employees, officers, directors, shareholders, members, partners, attorneys, agents, managers, representatives, and each and every Person acting on its behalf or at its direction, including Hylton Socher.

9. "SS&C" means SS&C Technologies Inc., and its employees, officers, directors, shareholders, members, partners, attorneys, agents, managers, representatives, and each and every Person acting on SS&C's behalf or at its direction.

10. "CAMRA" means, collectively, the products and services offered by SS&C to Fortress, including CAMRA, and any other software and related services, and all versions of such software and all related services, including maintenance, support, hosting, and outsourcing.

## REQUESTS FOR PRODUCTION

1. All Documents, including Communications, reflecting or relating to any inquiry, issue, concern, question, configuration, specification, or requirement regarding CAMRA made prior to any agreements between Fortress and SS&C with respect to CAMRA.

2. All Documents, including Communications, reflecting or relating to any representations or statements regarding CAMRA made by SS&C prior to any agreements between Fortress and SS&C with respect to CAMRA.

3. All Documents reflecting any agreements between Fortress and SS&C with respect to CAMRA, including all attachments, exhibits, work requests, and amendments.

4. All Documents reflecting or relating to Communications between You and SS&C, including its counsel, regarding this action.

# Exhibit B

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Connecticut

| ARMOUR Capital Management LP | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 17-00790-JAM |
| SS&C Technologies Inc. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  FIG LLC d/b/a Fortress Investment Group
c/o the Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: Holland & Knight LLP<br>31 West 52nd Street, 12th Floor<br>New York, NY 10019 | Date and Time:<br><br>02/05/2018 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
ARMOUR Capital Management LP _____ , who issues or requests this subpoena, are:

Joseph Mamounas (joseph.mamounas@hklaw.com), Allison Kernisky (allison.kernisky@hklaw.com)
701 Brickell Avenue, Suite 3300, Miami, FL 33131 (305) 374-8500

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 17-00790-JAM

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
.    **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT "A"

## INSTRUCTIONS

1. Words and phrases spelled in capital letters in this subpoena shall have the specific meanings and definitions given to them in the "Definitions" section below.

2. When answering these requests, You must furnish all Documents available to You, including Documents in Your possession, custody or control or in the possession, custody or control of related entities, current or former attorneys, experts, accountants, banks, insurers, agents, investigators, employees, representatives, or any other Persons acting on Your behalf.

3. If You believe that any of the following requests calls for Documents subject to a claim of privilege, answer or produce what is not objected to, state that part of each request raising an objection and set forth the basis for Your claim of privilege, including a statement identifying the nature of the information withheld; for each Document as to which You claim privilege, state the date and subject matter of the Document, the name(s) of the Person(s) who prepared the Document, and the name(s) of the Person(s) for whom the Document was intended.

4. If any requested Document was once in Your possession, custody, or control but has been destroyed or lost, set forth in writing the contents of the Document, the date the Document was destroyed or lost, and the name of the Person who authorized or directed the destruction of the Document or was last in possession of the Document.

5. If You cannot produce any of the Documents in full, produce to the extent possible and specify in writing the reasons for Your inability to produce the remainder of the Document.

## INSTRUCTIONS AS TO ELECTRONICALLY STORED INFORMATION

Electronically stored information ("ESI") is to be produced in 300 x 300 DPI Group IV Monochrome Tagged Image File Format (.TIFF or .TIF) files, with color Documents in Joint Photographic Experts Group (.JPEG or .JPG) files. TIFF and JPEG files shall be produced in single-page format along with Concordance image load files (.OPT). All Documents are to be provided with multi-page extracted or OCR text (.TXT) files indicating page breaks. Extracted text and/or OCR text shall not be embedded in the .DAT file but rather shall be provided as separate, Document-level text files, the names of which shall contain the beginning bates number of the Document. If a Document is provided in native format with a placeholder TIFF (e.g., a MS-Excel or .CSV file), the text file shall contain the extracted text of the native file. Provide any metadata values associated with the produced electronic information in the form of a metadata load text file (.DAT file) and using Concordance standard delimiters. Unless such materials contain privileged information, MS-Excel and .CSV spreadsheets shall be produced in native format. The metadata load file (.DAT) shall contain a link to the produced MS Excel spreadsheets via data values called "Native Link" and a "TextPath" field containing the path (including the file name) to the extracted text or OCR file for each Document. The Native Link values shall contain the full directory path and file name of the MS Excel spreadsheet as contained in the produced media. Produce native MS Excel and .CSV files accompanied by a placeholder .TIFF sheet containing the name of the bates number for each produced file. To the extent such materials contain information subject to a claim of privilege, they shall be produced in the form of redacted .TIFF images. Sequential bates numbers and any confidentiality designation shall be electronically branded on each TIFF image of ESI. Each file name shall be unique and match the bates number of the page. The file name shall not contain any blank spaces and shall be zero padded.

## DEFINITIONS

1.     "Document" means documents or electronically stored information, including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.

2.     "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

3.     "All/Each," shall both be construed as all and each.

4.     "And/Or" shall be construed disjunctively or conjunctively to bring within the scope of the discovery request all responses that might otherwise be construed as outside its scope.

5.     "Including" means including but not limited to.

6.     The terms "reflecting," or "relating to," mean setting forth, pertaining to, memorializing, constituting, embodying, discussing, analyzing, reflecting, concerning, relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, constitutes, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, or contradicts.

7.     The term "Person" or "Persons" shall mean any natural person, individual, corporation, real estate investment trust ("REIT"), partnership, joint venture, firm, voluntary or unincorporated association, other business association, entity or enterprise, proprietorship, trust, estate, governmental agency, board, authority, commission, bureau, department or such other governmental or quasi-governmental entity, group of natural persons, or other entity and includes any other natural person(s) acting on behalf of a natural person in any capacity whatsoever.

8.     "You," "Your," and "Fortress" means Fortress Investment Group, Your employees, officers, directors, shareholders, members, partners, attorneys, agents, managers, representatives, and each and every Person acting on Your behalf or at Your direction.

9.     "SS&C" means SS&C Technologies Inc., and its employees, officers, directors, shareholders, members, partners, attorneys, agents, managers, representatives, and each and every Person acting on SS&C's behalf or at its direction.

10.     "CAMRA" means, collectively, the products and services offered by SS&C to Fortress, including CAMRA, and any other software and related services, and all versions of such software and all related services, including maintenance, support, hosting, and outsourcing.

## REQUESTS FOR PRODUCTION

1.     All agreements between Fortress and SS&C, including all attachments, exhibits, work requests, and amendments.

2.     All Documents, including Communications, reflecting or relating to delays, problems, complaints, failures, accidents, incidents, damages, or similar occurrences Fortress had with the implementation of CAMRA.