# Exhibit 14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

CIVIL CASE NUMBER:  3:17cv00790 (JAM)

ARMOUR CAPITAL MANAGEMENT LP,

    Plaintiff,

vs.

SS&C TECHNOLOGIES, INC.,

    Defendant.

_____/

VIDEO DEPOSITION OF JAMES MOUNTAIN

DATE:              November 29, 2017

TIME:              10:04 o'clock a.m.

PLACE:             Vero Beach Court Reporters
                   3111 Cardinal Drive, Suite B
                   Vero Beach, Florida  32963

TAKEN BY:          Defendant

REPORTER:          Cynthia L. O'Cain

VIDEOGRAPHER:      Ted Hood

1   Q   Mr. Mountain, I show you what's been marked as
2   Exhibit 4 to your deposition.
3   A   Yes.
4   Q   Exhibit 5.  Do you recognize this document?
5   A   I believe so.
6   Q   This is a document that referred to in the
7   complaint, for your amended complaint, correct?
8       MR. MAMOUNAS:  Objection.
9       THE WITNESS:  Can you point me to the reference
10      in Exhibit 1 that you're referring to?
11  BY MR. O'CONNOR:
12  Q   Can I get Exhibit 1?  Thanks.  Paragraph 16.
13  A   Okay.
14      MR. MAMOUNAS:  Objection.
15      THE WITNESS:  I believe these are the same.  I
16      believe this is the document that you referred to.
17  BY MR. O'CONNOR:
18  Q   Okay.  And do you recall that this was a
19  present -- a presentation document presented by SS&C at a
20  June 2nd, 2014, meeting with yourself and Mr. Gruber?
21  A   Yes.  That's how I recall it.
22  Q   And where did that meeting occur?
23  A   SS&C's offices in New York City.
24  Q   Okay.  And who attended on behalf of SS&C?
25      MR. MAMOUNAS:  Objection.

1  BY MR. O'CONNOR:
2      Q   Oh, I see.  So the phrase, "In support of
3  client's implementation of the software," means?
4      A   An implementation that ARMOUR is purchasing.
5      Q   Now, when did -- sir, why didn't you include
6  that language in the agreement that you entered into with
7  SS&C?
8      A   Because --
9          MR. MAMOUNAS:  Objection.
10         THE WITNESS:  I'm sorry?
11         MR. MAMOUNAS:  You may answer.  I'm sorry.
12         THE WITNESS:  Okay.  Because when I tried to
13     suggest other changes to the contract, basically the
14     answer came back was, this is our form; this is a
15     our stock contract; it's not really editable.
16 BY MR. O'CONNOR:
17     Q   And you had counsel review this before ARMOUR
18 executed the document, correct?
19     A   Yes.
20     Q   The counsel at Akerman Senterfitt reviewed and
21 advised you in connection with document, correct?
22         MR. MAMOUNAS:  Objection.
23         THE WITNESS:  Yes.
24 BY MR. O'CONNOR:
25     Q   And, and is it your testimony -- Strike that.

168

1    A    No.
2    Q    She reported to you directly, didn't she?
3         MR. MAMOUNAS:  Objection.
4         THE WITNESS:  For periods of time, yes.
5         MR. O'CONNOR:  Let's mark this as the next
6    exhibit.
7    BY MR. O'CONNOR:
8    Q    Excuse me.  Before we do that, we
9    discussed -- Strike that.
10        You testified earlier today about ARMOUR's
11   consideration of outsourcing as a deployment option for
12   CAMRA, correct?
13   A    Yes.
14   Q    And if ARMOUR had chosen the outsourcing
15   option, would it have been able to expense the fees and
16   costs associated with the outsourcing option to the
17   publicly traded REITs?
18        MR. MAMOUNAS:  Objection; improper
19   hypothetical.
20        THE WITNESS:  I believe that the management
21   agreement, which are matter of public record, would
22   not provide for that absent separate finding by the
23   board of directors.
24   BY MR. O'CONNOR:
25   Q    And you told that to Mr. Dan Pallone of SS&C,