## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT
## NEW HAVEN DIVISION

| | |
|---|---|
| ARMOUR CAPITAL MANAGEMENT LP,<br><br>Plaintiff,<br><br>v.<br><br>SS&C TECHNOLOGIES INC.,<br><br>Defendant. | Case No. 17-cv-00790-JAM<br><br><br>January 14, 2019 |

### DECLARATION OF JAMES R. MOUNTAIN

James R. Mountain, hereby declares, pursuant to 28 U.S.C. § 1746:

1. I am the Chief Financial Officer of ACM.[1] I have held this position since 2012. I also have served as the Chief Financial Officer and Treasurer, since 2012, and Secretary, since 2014, of Armour and Javelin.

2. I submit this declaration in support of ACM's Opposition, and the SDMF.

3. My statements are based on my personal knowledge that I obtained as an executive officer of ACM, and from my review of ACM's records.

4. ACM is an SEC-registered investment adviser. In December 2014, ACM managed two publicly-traded mortgage REITs, Armour and Javelin. Subsequently, Armour acquired Javelin.

5. Mark Gruber is the Chief Operating Officer, since 2013, and Chief Investment Officer, since 2018, of ACM. Mr. Gruber also has served as the Chief Operating Officer, since 2013, and Chief Investment Officer, since 2018, of Armour and Javelin.

---

[1] Capitalized terms have the same meaning as in ACM's contemporaneously filed Opposition to SS&C's December 17, 2018 Motion for Summary Judgment (the "Opposition").

6. From December 19, 2014, through May 1, 2017, eight ACM full-time staff (Jonna Terry, Kristin Davies, Alicia Hill, Amber Smith, Shane Rand, Richard Edwards, Trevor Spicer, and Cory Graley) and two ACM executive officers (Mark Gruber and I) devoted a substantial portion of our ACM work time to working on SS&C's implementation of CAMRA for ACM.

7. As I previously testified, our effort approximated a total of 5,846 hours, which have been quantified at about $1,467,846 of labor costs.  We expended this effort in reliance on ACM's Master Agreement with SS&C and anticipating that SS&C would implement CAMRA for ACM, as SS&C was obligated.  Our work on the CAMRA implementation continued through May 1, 2017, when ACM terminated the Master Agreement.  At no prior point did Mr. Gruber or I halt this work or instruct any of these employees to stop working on it.  This 5,846 hours of effort does not include any work other than working on SS&C's implementation of CAMRA for ACM.

8. This 5,846 hours of effort was a cost to ACM for the implementation of CAMRA, in addition to the fees and costs ACM paid SS&C under the Master Agreement.  As a comparison, ACM considered hiring a third-party consultant to help with the implementation and reduce ACM's employees' effort on the project.  Jeff Fecteau, an SS&C representative, instructed us not to do so, so that there would be "only one throat to choke" (i.e., SS&C's) in the event of a problem.  Barring Mr. Fecteau's instruction, ACM would have hired such a consultant and paid them fees and costs for the hours ACM employees wound up devoting.

9. Had ACM's employees not worked on the CAMRA implementation, all or at least the bulk of this 5,846 hours of effort would have been spent on numerous other projects for ACM's benefit. By way of example only, these other projects include the implementation of a new general ledger system at ACM, Intacct, including automating the consolidation of subsidiaries' financial statements and streamlining accounts payable processing; upgrading non-agency and derivatives portfolio accounting by implementing them in TPG; implementing new internally developed

2

management reporting tools for estimating daily net asset value, income forecasting, and portfolio risk statistics; redesigning and reformatting monthly investor information reports; and completing the integration of the TPG portfolio accounting system and the Intacct general ledger with the Wdesk financial reporting system. A significant part of this 5,846 hours of effort also would have been spent on business-development opportunities for ACM, the lifeblood of our business.

10. Because of SS&C's breaches and other misconduct, as ACM alleges in this case, ACM lost all benefit of this 5,846 hours of effort, or approximately $1,467,846 in lost labor costs.

11. ACM has not been reimbursed by anyone for the lost labor costs described in paragraphs 6 through 10, above. Among other things, under the Management Agreements, the compensation of ACM's employees is ACM's responsibility and cannot be reimbursed.

12. Under the Master Agreement, ACM paid to SS&C the fees and costs to which ACM alone was obligated to pay SS&C. ACM seeks to recover those fees and costs from SS&C in this lawsuit. Armour and Javelin were not parties to the Master Agreement, and thus they owed SS&C nothing and never paid any money to SS&C. Rather, Armour and Javelin reimbursed ACM for SS&C's fees and costs in the ordinary course of business under the Management Agreements. In the event ACM receives damages from SS&C in this action for the fees and costs it paid to SS&C under the Master Agreement, ACM intends to repay Armour and Javelin the full amount of the reimbursements. Doing so is consistent with the Management Agreements.

13. During my May 11, 2018 deposition as ACM's Rule 30(b)(6) witness, I said I thought all the amounts ACM paid directly to SS&C have been reimbursed by "Armour Capital Management" or Javelin. I meant to say "Armour." ACM cannot reimburse itself. (5/11/18 ACM 30(b)(6) Tr. at 32:25.)

Case No. 17-cv-00790-JAM

    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:    January 14, 2019
            Vero Beach, Florida

                                                              James R. Mountain