UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ARMOUR CAPITAL MANAGEMENT LP,

                      Plaintiff,

 - against -                                        3:17-cv-00790-JAM

SS&C TECHNOLOGIES, INC.,

                      Defendant.

# DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
John F. Baughman
Nora Ahmed
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000
jbaughman@paulweiss.com
nahmed@paulweiss.com

Kevin J. O'Connor
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109-1775
(617) 378-4394
koconnor@hinckleyallen.com

Jeffrey J. Mirman
Alexa T. Millinger
Hinckley, Allen & Snyder LLP
20 Church Street, 18th Floor
Hartford, Connecticut 06103
(860) 331-2762
jmirman@hinckleyallen.com
amillinger@hinckleyallen.com

*Attorneys for Defendant
SS&C Technologies, Inc.*

Doc#:US1:12574262v1

# Table of Contents

                                                                                **Page**

Preliminary Statement ............................................................................................................. 1

Argument .................................................................................................................................. 2

I.     Controlling Connecticut Law Precludes ACM's Negligent Misrepresentation Claim ............................................................................................................................ 2

II.    None of the Representations ACM Advances Qualify as Negligent Misrepresentations ..................................................................................................... 4

        A.     SS&C's "Statements of Opinion" Are Not Actionable .......................................... 5

        B.     Demonstrations, Proposals, and Draft Estimates Are Not Actionable ................... 6

        C.     ACM Raises No Issue of Material Fact Concerning Six True Statements ............ 8

III.   ACM Has Not Suffered Any Contract or Other Damages ................................................. 8

IV.   The Contract Bars ACM's Claim for Lost Employee Time ............................................... 9

V.    ACM's CUTPA and Rescission Claims Necessarily Fail ................................................. 10

Conclusion ............................................................................................................................. 10

## Table of Authorities

**Page(s)**

**CASES**

*Am. Cap. Corp. v. U.S.*,
  63 Fed. Cl. 637 (2005) ..................................................................................................10

*Am.'s Collectibles Network, Inc. v. Sterling Com., Inc.*,
  2016 WL 9132294 (E.D. Tenn. 2016) ...............................................................................6

*Ambrogio v. Beaver Rd. Assocs.*,
  267 Conn. 148 (2003) ......................................................................................................9

*Associated Constr./AP Constr., LLC v. Hanover Ins. Co.*,
  2018 WL 39989968 (D. Conn. 2018) ...............................................................................3

*ATSI Comm., Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ...............................................................................................3

*Batoh v. McNeil-PPC, Inc.*,
  167 F. Supp. 3d 296 (D. Conn. 2016) ...............................................................................5

*Boulevard Assocs. v. Sovereign Hotels Inc.*,
  861 F. Supp. 1132 (D. Conn. 1994) ................................................................................10

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .........................................................................................................4

*Chatlos Sys., Inc. v. Nat'l Cash Register Corp.*,
  635 F.2d 1081 (3d Cir. 1980) .........................................................................................10

*City of Milford v. Coppola Const. Co., Inc.*,
  93 Conn. App. 704 (2006) ...............................................................................................9

*Crabtree v. Hope's Windows, Inc.*,
  2018 WL 2436992 (D. Conn. 2018) .................................................................................4

*Dunn Appraisal Co. v. Honeywell Info. Sys.*,
  687 F.2d 877 (6th Cir. 1982) ............................................................................................7

*Finch v. Tooher, Wocl & Lydon, LLC*,
  2013 WL 163988 (D. Conn. 2013) ...................................................................................8

*Found. Cap. Resources, Inc. v. Prayer Tabernacle Church of Love, Inc.*,
  2018 WL 4697281 (D. Conn. 2018) .................................................................................4

*Gibson v. Capano*,
  241 Conn. 725 (1997) ......................................................................................................3

Doc#:US1:12574262v1

**Page(s)**

*Kelley v. Nationwide Mut. Ins. Co.*,
 48 Conn. L. Rptr. 527 (Sup. Ct. Conn. 2009) ...................................................................8

*Levesque v. D&M Builders, Inc.*,
 170 Conn. 177 (1976) .........................................................................................................9

*Olympic Dreams, LLC v. Clark*,
 2014 WL 4267499 (D. Conn. 2014) ...................................................................................6

*Omega Eng'g., Inc. v. Eastman Kodak Co.*,
 908 F. Supp. 1084 (D. Conn 1995) .....................................................................................7

*SS&C Techs., Inc. v. Providence Inv. Mgmt.*,
 582 F. Supp. 2d 255 (D. Conn. 2008) .................................................................................5

*Superior Edge, Inc. v. Monsanto Co.*,
 44 F. Supp. 3d 890 (D. Minn. 2014) ...................................................................................7

*Western Dermatology Consultants, P.C. v. VitalWorks, Inc.*,
 146 Conn. App. 169 (2013), *aff'd*, 322 Conn. 541 (2016) .......................................1, 2, 3, 4, 6

**STATUTES**

Fed. R. Civ. P. 56 ........................................................................................................................4, 5

**OTHER AUTHORITIES**

15A C.J.S. Common Law § 23 (2018) .............................................................................................9

**Preliminary Statement**[1]

Less than three years ago, the Connecticut courts confirmed that a merger clause bars pre-contract negligent misrepresentation ("NMR") claims. *Western Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 146 Conn. App. 169 (2013), *aff'd*, 322 Conn. 541 (2016). *Western* disposes of ACM's NMR claim because ACM relies exclusively on statements made *before* the parties signed a contract with a merger clause—one that expressly superseded all prior representations made by the parties to each other. While ACM insists this Court should ignore *Western*, because it "cites no Connecticut law" and purportedly is "at odds" with other Connecticut cases, the fact is: *Western* is controlling and the most recent statement by the Supreme Court on the meaning of Connecticut law. Indeed, ACM cites no Connecticut case that postdates *Western* in which a NMR claim survived a merger clause. ACM tries to distinguish *Western* by pointing to immaterial differences in the wording of the merger clause here, or arguing the unremarkable proposition that, in the absence of a merger clause, NMRs may go to the jury. All of this is beside the point and, anyway, ACM's NMR claim also fails because *not a single* ANM is actionable.

Summary judgment also should be granted because ACM has adduced no evidence that it suffered any cognizable damages. Indeed, ACM concedes that it has been *reimbursed in full* for the amounts it paid to SS&C under the Master Agreement and three Work Requests (the "Contract"). ACM accordingly has *no* out-of-pocket damages. The only other source of alleged damages—ACM's claim for "lost employee time"—is barred by the Contract's consequential damages disclaimer. Absent proof of damages (and there is none), ACM cannot satisfy an essential element of each of its claims.

---

[1] Defined terms retain their meaning from SS&C's Memorandum of Law in Support of Its Motion for Summary Judgment ("Mem.") (ECF No. 176-1). "Opp. at __" refers to ACM's Opposition to SS&C's Motion for Summary Judgment. (ECF No. 177). "Mountain Dec. at ___" refers to the January 14, 2019 Declaration of James R. Mountain (ECF No. 177-2).

**Argument**

I.  **Controlling Connecticut Law Precludes ACM's Negligent Misrepresentation Claim**

*Western*'s holding is clear: It is "unreasonable" for a plaintiff "to rely on [pre-contract] representations" in "the presence of [a] merger clause in the contract." *Id.* at 196-97.  As noted, this holding was *affirmed* by the Connecticut Supreme Court.  Connecticut law is thus settled and not subject to reinterpretation by this Court.  In this state, as a matter of law, a plaintiff cannot show reliance on pre-contract negligent statements in the face of a merger clause.  Summary judgment is required by *Western*'s holding because, when ACM negotiated the Contract, SS&C had already made each of the statements ACM now alleges were NMRs.  ACM was free to include all of those statements as specific obligations in the parties' agreement and, if violated, pursue SS&C for breach of contract.  But having opted instead to enter into a written contract defining the parties' obligations, ACM should not be permitted to argue to a jury that it was misled by statements it expressly agreed were "superseded" by the Contract.

Just as in *Western*, the "language of the merger clause made it clear" to ACM that SS&C "did not intend to be bound by any representation made prior to the contract being signed." *Id.* at 197.  The merger clause appears in the same section of the Contract as a series of "Disclaimer and Limitation of Liability" provisions.  One such disclaimer reads: "The provisions of this Section allocate risks under this [Contract] between Client and SS&C.  SS&C's pricing reflects this allocation of risks and limitation of liability." (Ahmed Ex. 1 at 5, § 6.2.4.)  This reflects the parties' actual bargain.  ACM cannot now seek to impose liability in ways beyond what the parties agreed.

Unable to avoid *Western*'s controlling outcome, ACM argues for a different result because the merger clause is not a verbatim replica of the one in *Western*. (Opp. at 21-25.)  According to ACM, *Western* is inapposite because the Contract's merger clause applies only to statements made concerning the "subject matter" of the Contract. (*Id.*)  Nothing in *Western* supports this analysis,

2

but, in any event, a simple reading of the Contract defeats ACM's argument. The Master Agreement itself states that it covers "Software, Maintenance and Support, Professional Services, and Other Services"; it goes on to describe each of those items in detail. (Ahmed Ex. 1 at 1.) Further, Work Request One includes a "Description of Services to be Performed," which states that "SS&C will provide on-site and remote implementation services including business workflow analysis, environment setup, data conversion analysis, interface development and testing in support of Client's implementation of the Software." (*Id.* at 15.) ACM's opposition, however, makes no attempt to identify any supposed NMR that does not, fairly speaking, fall within the "subject matter" of the Contract *as defined by the parties themselves*. An important Second Circuit decision on which *Western* relied reinforces this conclusion. In *ATSI Comm.'s, Inc. v. Shaar Fund, Ltd.*, the court held that a merger clause stating that "all prior agreements and undertakings among the parties hereto with respect to the *subject matter* hereof" barred claims based on alleged NMRs made during negotiations. 493 F.3d 87, 95, 105 (2d Cir. 2007) (emphasis added). The same rule applies here. ACM's remaining arguments are equally unavailing:

*First*, many of the cases ACM cites to argue that courts have "repeatedly" permitted NMR claims in the face of merger clauses address *fraudulent* misrepresentation claims—not NMR claims. (Opp. at 19.) This distinction matters. In Connecticut, while merger clauses may not bar fraud claims, they do dispose of claims, like those here, asserting negligent or innocent statements. *See Associated Constr./AP Constr., LLC v. Hanover Ins. Co.*, 2018 WL 39989968, at *10, n.4 (D. Conn. 2018) (citing *Gibson v. Capano*, 241 Conn. 725 (1997) and *Western*, 146 Conn. App. 169). "Absent questions of unequal bargaining power, fraud, duress, or a contract in violation of public policy" (none of which ACM contends are present), a merger clause is "conclusive evidence" that the parties intended to "fully integrate the agreement," and claims premised on non-fraudulent pre-

contract statements will not lie. *Crabtree v. Hope's Windows, Inc.*, 2018 WL 2436992, at *8 (D. Conn. 2018). *Western* thus is not, as ACM asserts, "at odds with a vast body of Connecticut cases." (Opp. at 18.)

*Second*, ACM's reliance on this Court's decision in *Found. Cap. Resources, Inc. v. Prayer Tabernacle Church of Love, Inc.*, 2018 WL 4697281 (D. Conn. 2018) ("*FCR*") seems misplaced. (Opp. at 20-21.) Not only was no NMR claim at issue there, the parties did not cite *Western* in briefing the fraud claim. Nevertheless, this Court recognized the perverse outcome of permitting a party to claim misrepresentation in the face of a merger clause: "It is unreasonable for one party to come back years later and claim that it relied on fraudulent oral representations, having opted to sign an express disclaimer of such reliance and having been on notice of that disclaimer." *FCR*, at *8. *Western* uses the same reasoning and, in the case of NMR claims, mandates dismissal.

*Third*, ACM insists that summary judgment is not appropriate here because reasonable reliance is a fact question for the jury. (Opp. at 17-18.) ACM misses the point. It may well be that juries are often charged with addressing reliance *in the absence of a merger clause*. And that is what the cases ACM cites hold. (*Id.*) But *Western* makes a different point: It holds that reliance on pre-contract NMRs in the face of a merger clause is "clearly erroneous" *as a matter of law*. 146 Conn. App. at 197. Where an essential element of a claim fails as a matter of law—here, reliance on alleged pre-contract NMRs—"there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate. *Id.*; Fed. R. Civ. P. 56(a).

## II.     None of the Representations ACM Advances Qualify as Negligent Misrepresentations

Summary judgment also should be granted on the NMR claim on the independent ground that none of the ANMs are actionable. (Mem. at 20-32.) The ANMs—which consist of statements

4

about SS&C's "dedicated team" (ANM 9), its readiness to "help" (ANM 3), its "world-class technology" (ANM 4), and its belief that CAMRA would be "the right fit" (ANM 8)—are quintessential examples of non-actionable statements under Connecticut law. (Mem. at 20-32.)[2]

### A. SS&C's "Statements of Opinion" Are Not Actionable

ACM seeks to avoid the well-settled "opinion" rule by turning to inapposite cases applying the laws of states ranging from Minnesota to Tennessee. The only Connecticut decision ACM mentions—*SS&C Techs., Inc. v. Providence Inv. Mgmt.*—did not even consider whether the statements at issue were opinions. 582 F. Supp. 2d 255 (D. Conn. 2008). And, contrary to ACM's contention (Opp. at 10), ANMs premised on opinion statements are appropriately dismissed on summary judgment (ANMs 1, 2, 3, 4, 5, 6, 7, 8, 13, 23). (Mem. at 21-23.)

**ANMs 1, 2.** ACM does not dispute that these ANMs were not on SS&C's website prior to execution of the Contract. (Mem. at 3-4, nn. 3, 4.) Given no evidence that ACM "ever saw" these alleged statements, there are no genuine issues of material fact for a jury to consider. *Batoh v. McNeil-PPC, Inc.*, 167 F. Supp. 3d 296, 315-16 (D. Conn. 2016).

**ANMs 3, 6,**[3] **7, 8, 13.** ANMs 3, 6, 7, and 8 are non-actionable opinions because they do nothing more than discuss how CAMRA, with its "proven" accounting system (ANMs 6, 7), "fit[s]" and can "help" mortgage REITs (ANM 3, 8). (Mem. at 21-23.) ACM wrongly contends that these ANMs speak to the suitability of the "hosted" CAMRA deployment option for ACM. (Opp. at 7-11.) In fact, only ANM 13 mentions the word "hosting." (Ahmed Ex. 23.) Because ANM 13 simply characterizes hosting as a "good deployment option," it too is merely opinion.

---

[2] ACM never discusses ANM 22, let alone explains how it could support any claim.

[3] SS&C showed that a phrase from ANM 6 ("a large portion of SS&C's clients trade in [MBS]") was a true statement. (Mem. at 31.) ACM denies this statement was true, but cites *no evidence* in support of its assertion. (Opp. at 8.) This is insufficient to defeat summary judgment. *See* Fed. R. Civ. P. 56(e)(2).

(Mem. at 22.) ACM's own citation, *Am.'s Collectibles Network, Inc. v. Sterling Com., Inc.*, makes the point. 2016 WL 9132294 (E.D. Tenn. 2016). It holds that "generic statements of quality or ability" are not "specific and quantifiable" and thus are non-actionable opinions. *Id.* at *12-14.

**ANMs 4, 5.** ACM offers no rationale, other than "resource shortages," to argue that statements regarding SS&C's "unique expertise" and "extensive knowledge and experience" are not opinions. (Opp. at 14.) Connecticut courts, however, have held that analogous language constitutes non-actionable opinion. (Mem. at 22.)

**ANM 23**. ACM asserts a new ANM for the first time in its opposition based on the allegation that SS&C "recommended CI Manager" instead of "RECON." (Opp. at 4.) But a recommendation, by definition, is an opinion. *See Olympic Dreams, LLC v. Clark*, 2014 WL 4267499, at *1 (D. Conn. 2014) (dismissing NMR claim premised on recommending horses).

    **B.**    **Demonstrations, Proposals, and Draft Estimates Are Not Actionable**

**ANMs 10, 11, 14.** *Western*'s separate holding—that the parol evidence rule bars reliance on a software demonstration in the face of a warranty disclaimer—disposes of these ANMs, which concern a CAMRA demonstration and proofs of concept. 146 Conn. App. at 189-91. Contrary to ACM's claim, *Western*'s rationale does not turn on whether a software demonstration addresses "*then-existing* capabilities and qualities." Certainly, ACM does not cite any portion of the *Western* opinion stating anything like that. (Opp. at 25.) And ACM ignores that the warranty disclaimer here is functionally identical to the one in *Western*. (*Compare* Ahmed Ex. 1 at 5, § 6.2.5, *with Western*, 146 Conn. App. at 191-92.)

**ANMs 15, 16.** These ANMs all appear in a proposal that SS&C made to ACM in November 2014 (the "November Proposal"). (Ahmed Ex. 24-A.) The cover email sent with that proposal, which ACM fails to mention, included the following disclaimer: the "assumptions"

6

contained herein "may not be 100% correct." (Ahmed Ex. 24 at 1.)[4] Such a disclaimer alone renders these statements non-actionable. (Mem. at 24-29.) In any event, the subject of each of these ANMs was incorporated in the Contract, and therefore cannot form the basis of a NMR claim. (Ahmed Ex. 1 at 12-16 (addressing fees, services, and interfaces); *see also* Mem. at 27-29.) ACM's own case establishes that NMRs are non-actionable in these circumstances. In *Superior Edge, Inc. v. Monsanto Co.*, the court held that statements "incorporated in the Agreement . . . cannot form the basis of a fraudulent inducement claim." 44 F. Supp. 3d 890, 906 (D. Minn. 2014).

**ANM 24.** This ANM—which ACM identifies for the first time in its opposition—addresses SS&C's ability to "import data from AVM." (Opp. at 4.) This ANM also appears in the November Proposal and is dealt with in the Contract. (Ahmed Ex. 24-A at 5 & Ex. 1 at 12-13 (addressing import of data from AVM).) Like ANM 15 and 16, *supra*, this ANM is not actionable.

**ANMs 19, 21.** The "estimates" that SS&C provided to ACM in "draft" proposals—concerning the timeline for the CAMRA implementation and related tasks to be performed by SS&C—are similarly non-actionable because they were non-final and dealt with in the Contract. (Mem. 24-28.) Further, the estimates at issue here, contingent upon actions being performed by more than one contracting party, differ from those that ACM uses to argue that "estimates can be misrepresentations." (Opp. at 16.) *Omega Eng'g., Inc. v. Eastman Kodak Co.* addressed estimates about the shelf life of a product produced by one contracting party. 908 F. Supp. 1084, 1098 (D. Conn 1995). And *Dunn Appraisal Co. v. Honeywell Info. Sys., Inc.* discussed an estimate regarding one party's performance of a task. 687 F.2d 877, 883 (6th Cir. 1982). These cases are irrelevant.

---

[4] ACM also claims that the November Proposal includes ANMs about CAMRA's "automation" and ability to generate "accurate" reports. (Opp. at 9, 12.) But those references merely recount SS&C's "understanding" that these are features ACM is "looking for." (Ahmed Ex. 24 at 1.) ACM does not contest the accuracy of SS&C's understanding. The statements are therefore accurate and not NMRs. (*See also* Mem. at 26 ("Someone participating in a negotiation might accept or decline a proposal, but it makes no sense to say that someone 'relied' on a proposal, particularly one that was rejected.").)

### C. ACM Raises No Issue of Material Fact Concerning Six True Statements

**ANM 18.** Mr. Moore's December 8, 2014 statement—that he was working "to prepare an implementation estimate"—was true. (Mem. at 31.) ACM cannot explain how this is a misstatement about SS&C's "capabilities to deliver the budget and timeline estimates." (Opp. at 15.) Nor does ACM dispute that it received the estimate. In fact, ACM relies on it. (*Id.* at 16.)

**ANMs 9, 12, 17, 20.** SS&C's statements about the qualifications of its Professional Services team (ANMs 9, 17), Mr. Sivadas (ANM 12), and Ms. Olszewska (ANM 20) were also true. (Mem. at 31-32.) Rather than identify an actual falsehood in the statements themselves, ACM asks this Court to read into these statements propositions they plainly do not contain. (Opp. at 13-14.) The fact that SS&C had implemented CAMRA before did not mean that its Professional Services team would never receive internal criticism (*id.* at 14-15); a short note about Mr. Sivadas's prior experience with implementations cannot be read to mean that "someone with experience like his" was going "to work on ACM's implementation" (*id.* at 14); and any statement about Ms. Olszewska's experience implementing CAMRA does not permit ACM's interpretation that none of those implementations experienced any delays (*id.*).

ACM's assertion that SS&C wrongly stated that a third-party consultant was unnecessary for the CAMRA implementation (ANM 17) amounts to a non-actionable opinion. (Mem. at 32, n. 15.) And ACM cites no Connecticut case to the contrary.

### III. ACM Has Not Suffered Any Contract or Other Damages

ACM concedes it suffered no out-of-pocket losses from SS&C's alleged conduct: The REITs reimbursed ACM in full for all "the fees and costs it paid to SS&C under the [Contract]." (Mountain Dec. at ¶ 12.) Damages is an element of ACM's claims (Mem. at 34), and courts routinely grant summary judgment when a plaintiff has no damages. *See, e.g.*, *Finch v. Tooher, Wocl & Lydon, LLC*, 2013 WL 163988 at *5 (D. Conn. 2013); *Kelley v. Nationwide Mut. Ins. Co.*,

8

48 Conn. L. Rptr. 527 (Conn. Super Ct. 2009). The same result should obtain here.

ACM's response—that it is trying to recover damages for the REITs—does not save its claims. (Opp. at 32.) There is no legal basis on which a plaintiff can seek to recover losses suffered by *someone else*. Certainly no such claim can be made here, because the Contract bars the REITs—*by name*—from recovering any monies from SS&C related to the Contract. (Ahmed Ex. 1 at 5, § 6.2.3.) And, ACM's opposition eliminates any question as to whether ACM intends to end-run that contractual prohibition by handing over damages awarded in this action to the REITs—it will. (Mountain Dec. ¶ 12).[5] The REITs may not "do indirectly what cannot be done directly." 15A C.J.S. Common Law § 23 (2018). Few propositions of law are as old or as firm.

ACM further argues that, if this Court finds ACM has suffered no damages, it may still pursue its NMR claim. (Opp. at 26.) But, as with its contract claim, ACM's NMR claim requires proof of damages. (Mem. at 20.) Absent any actual loss, ACM's NMR claim also fails.

## IV. The Contract Bars ACM's Claim for Lost Employee Time

Claiming lost employee time does not cure ACM's inability to prove damages. Those losses, if any, are consequential damages barred by the Contract. (Mem. at 13, 16-17, 35.) The Connecticut Supreme Court recognizes only two types of contractual damages: direct damages and consequential damages. *Ambrogio v. Beaver Rd. Assocs.*, 267 Conn. 148, 155 (2003). Direct damages reflect out-of-pocket losses that specifically arise out of the "failure of the promised performance itself." *City of Milford v. Coppola Const. Co., Inc.*, 93 Conn. App. 704, 715 (2006). By contrast, consequential damages include costs incurred in mitigating or responding to the consequences of an alleged contractual breach. *See Levesque v. D&M Builders, Inc.*, 170 Conn.

---

[5] ACM's reliance on the collateral source rule is beside the point. (Opp. at 29-32.) That evidentiary rule prevents the admission of evidence at trial under certain circumstances; it does not relieve a plaintiff from its burden to prove damages. (Mem. at 34.) And, it should not apply under the circumstances of this case. (*Id.* at 34, n. 17.)

9

177, 180 n.2 (1976).  Damages for lost employee time are considered consequential damages.  *See Chatlos Sys., Inc. v. Nat'l Cash Register Corp.*, 635 F.2d 1081, 1084 (3d Cir. 1980) (finding lost employee time damages award barred by consequential damages disclaimer).

Here, the consequential damages disclaimer clearly covers collateral losses "*of any kind*" that may ensue from an alleged "breach of contract or tortious conduct." (Ahmed Ex. 1 at 5, § 6.2.2 (emphasis added).)  Lost employee time is of the same ilk as other illustrative losses to ACM that the provision prohibits "*without limitation*," such as "loss of profits" or "business interruption." (*Id.* (emphasis added).)  The alleged lost employee time here was performed in connection with "work[] on the CAMRA implementation." (Mountain Dec. ¶¶ 7, 9.)  Indeed, the leading case ACM uses to argue that it is entitled to damages for lost employee time confirms that these costs—"incurred" in connection with the "performance" of a contract—are properly considered "consequential damages." *Boulevard Assocs. v. Sovereign Hotels Inc.*, 861 F. Supp. 1132, 1136-38 (D. Conn. 1994).

ACM's effort to avoid the consequences of the Contract by characterizing lost employee time as "reliance damages" fares no better. (Opp. at 34.)  "Reliance damages *are a form of* consequential damages." *Am. Cap. Corp. v. U.S.*, 63 Fed. Cl. 637, 713 (2005) (emphasis added).  And ACM's own case, *Boulevard*, undermines this argument.  There, the plaintiff was allowed to recover "reliance" damages *because* it had "expressly reserved its right" to sue for such damages. 861 F. Supp. at 1136 (D. Conn. 1994).  ACM made no such reservation here.

V. **ACM's CUTPA and Rescission Claims Necessarily Fail**

ACM ties the fate of its CUTPA and rescission claims to its NMR claim. (Opp. at 36.) Because the NMR claim fails, the CUTPA and rescission claims topple as well.

## Conclusion

SS&C's motion for summary judgment should be granted in its entirety.

10

Dated: New York, New York
       January 28, 2019

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ John F. Baughman*
    John F. Baughman
    Nora Ahmed
    1285 Avenue of the Americas
    New York, New York 10019
    (212) 373-3000
    jbaughman@paulweiss.com
    nahmed@paulweiss.com

Kevin J. O'Connor
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109-1775
(617) 378-4394
koconnor@hinckleyallen.com

Jeffrey J. Mirman
Alexa T. Millinger
Hinckley, Allen & Snyder LLP
20 Church Street, 18th Floor
Hartford, Connecticut 06103
(860) 331-2762
jmirman@hinckleyallen.com
amillinger@hinckleyallen.com

*Attorneys for Defendant
SS&C Technologies, Inc.*

11

## **CERTIFICATION**

I HEREBY CERTIFY THAT ON January 28, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system, as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ *John F. Baughman*
John F. Baughman