UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ARMOUR CAPITAL MANAGEMENT LP,
    *Plaintiff*,

v.

SS&C TECHNOLOGIES, INC.,
    *Defendant*.

No. 3:17-cv-00790 (JAM)

**ORDER ON MOTION TO DISMISS COUNTERCLAIMS**

    Plaintiff ARMOUR Capital Management, LP (ACM) and defendant SS&C Technologies, Inc. (SS&C) are embroiled in a dispute over a software implementation contract gone wrong. After ACM filed suit against SS&C for failing to adequately implement financial services software it had purchased from SS&C, I granted in part and denied in part SS&C's motion to dismiss. *See* Doc. #75; *ARMOUR Capital Mgmt. LP v. SS&C Techs., Inc.*, 2018 WL 1368908 (D. Conn. 2018). SS&C followed by filing an answer and two counterclaims against ACM. Now ACM moves to dismiss the counterclaims. I will grant in part and deny in part ACM's motion to dismiss.

**BACKGROUND**

    ACM is a registered investment advisor that focuses on mortgage-related securities, while SS&C provides financial services software and related services. The following facts are drawn from the allegations of SS&C's counterclaim complaint. Doc. #101. ACM looked to SS&C for a new software platform, and SS&C agreed to provide ACM with a license for its CAMRA software program and to help ACM implement CAMRA. *Id.* at 21 (¶ 14). The parties entered into a "Master Agreement" in December of 2014. *Ibid.* (¶ 13). The Master Agreement included

1

terms for "Hosting Services," for which ACM would pay SS&C $10,000 each month, with a right to terminate on 120 days written notice to SS&C. *Id.* at 22 (¶ 19).[1]

As the project of implementing CAMRA went on, the parties concluded a supplemental agreement known as "Work Request Two." Under Work Request Two, which became effective on March 31, 2016, SS&C agreed to perform additional implementation services for ACM in exchange for no more than $307,300 in fees. Doc. #101 at 22–23 (¶ 21). Work Request Two "'incorporates the terms of' the Master Agreement." Doc. #75 at 3 (quoting Doc. #35-2 at 2).

Over the course of helping to implement CAMRA, SS&C alleges that from 2015 to 2017 it invested thousands of unbilled hours worth more than $800,000. Doc. #101 at 25–26 (¶¶ 36–43). SS&C alleges that while ACM benefited from these services, SS&C has not been paid in return. *Ibid.*

On May 1, 2017, ACM unilaterally terminated the Master Agreement. Doc. #101 at 22 (¶ 20). SS&C alleges that by doing so, ACM failed to provide the required 120-day notice for terminating the agreement's Hosting Services provision, *ibid.*, and argues that ACM's commitment to pay the monthly $10,000 fee remained in effect "through and until August 29, 2017 (120 days from May 1, 2017)." Doc. #117 at 7. Similarly, SS&C alleges that while it performed its obligations under Work Request Two and satisfied the standards for the Work Request Two's "Certificate of Implementation" in 2016, ACM has failed to pay SS&C the balance that remains due ($107,300) under Work Request Two. Doc. #101 at 23 (¶ 22).

ACM sued SS&C on May 15, 2017, for failing to implement CAMRA. Doc. #1. SS&C then moved to dismiss ACM's claims. In reliance on a one-year contractual limitations provision

---

[1] SS&C also notes that the Master Agreement included a "Maintenance Program," providing that ACM would pay SS&C $100,000 annually for maintenance services. Doc. #101 at 22 (¶ 17). While SS&C alleged that ACM improperly terminated the Maintenance Program, *ibid.* (¶ 18), SS&C has clarified that it does not assert a counterclaim based on the maintenance and support agreement. Doc. #117 at 6 n.4; Doc. #169 at 17.

of the Master Agreement, I granted the motion to dismiss in part. *See ARMOUR Capital Mgmt. LP*, 2018 WL 1368908. ACM's remaining claims against SS&C are for breaches of Work Request Two and the subsequent Work Request Three, negligent misrepresentation and an associated claim under the Connecticut Unfair Trade Practices Act (CUTPA), and rescission. *Ibid.*

After I ruled on SS&C's motion to dismiss, SS&C filed an answer along with counterclaims against ACM. Docs. #88 and #101. SS&C alleges in Counterclaim One that ACM breached the Master Agreement and related Work Requests. Doc. #101 at 24 (¶¶ 29-33). SS&C also alleges in Counterclaim Two a claim for unjust enrichment against ACM, conditioned on ACM succeeding on its claim for rescission. *Ibid.* (¶ 34). ACM now moves to dismiss SS&C's counterclaims.

## DISCUSSION

The analysis of a motion to dismiss for failure to state a claim is equivalent for claims and counterclaims. *See Tadayon v. DATTCO, Inc.*, 178 F. Supp. 3d 12, 18 (D. Conn. 2016). The Court must accept as true all factual matters alleged in a counter-claimant's claims, although those claims may not survive unless the facts they recite are enough to state plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014). This "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Because the focus must be on what facts a counterclaim alleges, a court is "not bound to accept as true a legal conclusion couched as a factual allegation" or "to accept as true allegations that are wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014).

### *Counterclaim One – breach of contract*

ACM contends that SS&C's breach of contract claim is barred under the Master Agreement's one-year limit on lawsuits. Doc. #105-1 at 3–4. As I noted in my prior ruling on SS&C's motion to dismiss, Connecticut law not only allows parties to agree to a contractual time limit for when they may sue each other but also exempts those time limits from statutory or equitable tolling rules. *See ARMOUR Capital Mgmt. LP*, 2018 WL 1368908, at *3–*4.

SS&C does not dispute this general rule (much less its application in its favor in my last ruling), but nonetheless makes several arguments for tolling the one-year period as to its counterclaim. First, SS&C argues that it was required under Federal Rule of Civil Procedure 12(a)(4)(A) to wait until after the Court resolved its motion to dismiss ACM's claims before asserting counterclaims in a responsive pleading.[2] I do not agree. Rule 12(a)(4)(A) extends the procedural deadline for filing a responsive pleading such as an answer or counterclaims, but it does not purport to govern any state law limitations period. *See Peekskill City Sch. Dist. v. Colonial Sur. Co.*, 6 F. Supp. 3d 372, 377 (S.D.N.Y. 2014) (noting that even if plaintiff "never missed any deadline set by the Federal Rules of Civil Procedure to serve a responsive pleading or assert any counterclaims . . . it does not follow that the New York limitations period applicable to [plaintiff's] claims was also tolled."), *aff'd*, 595 F. App'x 91 (2d Cir. 2015).

Moreover, SS&C's position that it had to wait until I resolved its motion to dismiss is in tension with another part of Rule 12. Under Rule 12(h)(2)(A), parties may raise a defense for failure to state a claim alongside a responsive pleading. I am therefore unpersuaded that any aspect of Rule 12 extends the time for SS&C to sue on the contract.

---

[2] Rule 12(a) addresses the time for parties to serve a responsive pleading, and Rule 12(a)(4)(A) provides: "(4) Effect of a Motion. Unless the court sets a different time, serving a motion under this rule alters these periods as follows: (A) if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action."

SS&C next argues that, because its contract counterclaims are compulsory, Rule 13(a) of the Federal Rules of Civil Procedure tolls the deadline for asserting those claims.[3] Again, I do not agree. "The text of Rule 13(a) itself does not offer any solution to the problem of whether the institution of an action tolls the running of the limitations period on compulsory counterclaims or reflect any federal policy on the question." CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 6 FED. PRACTICE & PROCEDURE § 1419 (3d ed. updated 2018).

In a diversity case like this one, it is the law of the forum State that governs the limitations period and the related application of any doctrines of equitable tolling. *See Guar. Tr. Co. v. York*, 326 U.S. 99, 108–112 (1945); *Thea v. Kleinhandler*, 807 F.3d 492, 497 (2d Cir. 2015); *Casey v. Merck & Co., Inc.*, 653 F.3d 95, 100 (2d Cir. 2011). Connecticut law is unfriendly to SS&C's position, because—as I have previously ruled in this case—"Connecticut law does not allow for equitable tolling of a contractually agreed-upon statute of limitations, as distinct from a legislative statute of limitations." *ARMOUR Capital Mgmt. LP*, 2018 WL 1368908, at *3–*4. Moreover, "[t]he law of Connecticut is that a counterclaim does not relate back to the date of the complaint." *Bache Halsey Stuart Inc. v. Namm*, 446 F. Supp. 692, 697 (S.D.N.Y. 1978) (applying Connecticut law); *Pacelli Bros. Transp. Inc. v. Pacelli*, 189 Conn. 401, 413–14 (1983) (noting in relevant part that "it is not disputed that the periods allowed by the statute for commencing an action upon the note had expired by the time the defendant filed his counterclaim" and that "an action upon the subject of the counterclaim is deemed to have begun when it is filed").

---

[3] Rule 13(a) governs the assertion of compulsory counterclaims and, subject to exceptions not relevant here, provides that "[a] pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."

Although SS&C argues that this rule should be limited only to non-compulsory counterclaims, the Connecticut Supreme Court has not observed such a limitation. *See Pacelli*, 189 Conn. at 402–03 (plaintiff sued for fraud in sale of interest in corporation, defendant counterclaimed based on promissory note from that sale). Following Connecticut law, I conclude that ACM's filing of its complaint did not toll the contractual statute of limitations period for SS&C to file its counterclaims. *See also Hartford Accident & Indem. Co. v. Pro-Football, Inc.*, 127 F.3d 1111, 1118–19 (D.C. Cir. 1997) (recognizing primacy of state law on limitations question and concluding in light of D.C. law that filing of complaint did not toll limitations period for counterclaim); *King v. Barbour*, 240 F. Supp. 3d 136, 140 (D.D.C. 2017) (same).[4]

Although I reject SS&C's arguments for tolling under Rule 12(a)(4)(A) or Rule 13(a), I conclude that SS&C's next argument does have some merit: that ACM is equitably estopped by its conduct in this litigation from disputing to some extent that ACM's filing of its complaint tolled the one-year limitations provision. Equitable estoppel is distinct from tolling, and it may apply in cases where one party's conduct induces the other into thinking it does not have to timely file suit—even when the second party knows about the deadline for doing so. *See Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 802 (2d Cir. 2014). Courts apply equitable

---

[4] SS&C cites numerous cases for the proposition that "the filing of a complaint tolls the deadline for a defendant to assert its compulsory counterclaims," Doc. #117 at 10, but most of these cases arise from federal causes of action that are not controlled by state law with respect to the statute of limitations. *See Employers Ins. of Wausau v. United States*, 764 F.2d 1572, 1573, 1576 (Fed. Cir. 1985) (federal contract); *Burlington Indus., Inc. v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir. 1982) (antitrust); *Yates v. Washoe Cty. Sch. Dist.*, 2007 WL 3256576, at *2 (D. Nev. 2007) (federal Individuals with Disabilities Education Act); *Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, 2003 WL 22358805, at *1 (S.D.N.Y. 2003) (RICO); *Aramony v. United Way of Am.*, 969 F. Supp. 226, 231 (S.D.N.Y. 1997) (same); *UST Capital Corp. v. Charter Nat'l Life Ins. Co.*, 684 F. Supp. 757, 758 (D. Mass. 1986) (same). The two cases SS&C points to that involve state law counterclaims both rely with little discussion on the Fourth Circuit's decision in *Burlington Industries*, which—as noted above—involved a federal law question. *See Giordano v. Claudio*, 714 F. Supp. 2d 508, 522–23 (E.D. Pa. 2010); *Andre v. Schenectady Cty.*, 1997 WL 135910, at *2 (N.D.N.Y. 1997).

estoppel to toll the running of a contractual limitation-of-suit provision. *See, e.g.*, *VP Elec., Inc. v. Graphic Arts Mut. Ins. Co.*, 2013 WL 4737327, at *4–*5 (D. Conn. 2013).

Equitable estoppel in Connecticut has two main elements. "First, the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and second the other party must change its position on those facts, thereby incurring some injury." *Celentano v. Oaks Condominium Ass'n*, 265 Conn. 579, 614–15 (2003). To invoke equitable estoppel, a party must have acted with due diligence to ascertain the truth of the representation by the party it seeks to estop. *Id.* at 615.

SS&C meets this standard. It cannot claim, of course, that it did not know about the contractual limits on when it could sue, or that it did not know Connecticut law or the Federal Rules would make tolling unavailable. *See ibid.* ("We cannot apply the doctrine of equitable estoppel in a case in which the party requesting the relief claims ignorance of the laws"). But SS&C can and does point to two statements that it and ACM jointly made to the Court that show that ACM indicated it would waive the one-year provision. On July 20, 2017, SS&C stated in the parties' Rule 26(f) report that, following the Court's ruling on its motion to dismiss, "SS&C will assert affirmative defenses to any surviving claims, and may also assert counterclaims for damages arising out of ACM's breach of the parties' Master Services Agreement and Work Requests." Doc. #36 at 6. Both parties signed the report, and I adopted the contemplated dates as part of the initial scheduling order. Doc. #38.

Then, in March of 2018, the parties again submitted a joint statement to the Court, this time asking to extend the pretrial deadlines. Doc. #70. In their joint motion, the parties' proposed fact discovery deadline was "[s]ubject to a reasonable time to conduct discovery on any answer

7

and counterclaims SS&C files following [the Court's] ruling on its motion to dismiss." *Id.* at 1. I then granted the motion. Doc. #73.

I agree with SS&C that the parties' joint statement as approved by the Court could have led SS&C to reasonably believe that ACM would not assert the contractual limitation-of-suit provision as of the date that the Rule 26(f) report was filed on July 20, 2017. ACM contends that it did not make any representation that it would waive the contractual time bar. *See id.* at 27. It is true that in Connecticut "silence will not operate as an estoppel absent a duty to speak," *Celentano*, 265 Conn. at 615 (cleaned up), but ACM was not silent here. It affirmatively signed on to proposed schedules for the litigation that would have SS&C wait to assert its counterclaims until after the Court ruled on its motion to dismiss—timing that could easily extend past the one-year period. ACM did not explicitly use the language of waiver in doing so, but "[w]aiver does not have to be express, [and] may consist of acts or conduct from which waiver may be implied." *Rosado v. Bridgeport Roman Catholic Diocesan Corp.*, 292 Conn. 1, 58 (2009). Agreeing—rather than acquiescing—to a schedule where SS&C would bring counterclaims outside a time limit that the parties had previously imposed by contract on themselves is sufficient to show an affirmative act from which waiver may be implied.

But this waiver is only effective from the date ACM and SS&C filed their Rule 26(f) report—July 20, 2017. If an action of breach took place prior to July 20, 2016—one year prior to the filing of the report—the one-year period for a claim arising from that action would have expired before SS&C and ACM had an agreement that SS&C could have relied upon. SS&C therefore cannot claim that ACM's conduct induced it to sleep on claims arising from those acts. Accordingly, I will grant ACM's motion to dismiss SS&C's counterclaim for breach of contract

solely to the extent that SS&C may rely on actions of breach that took place prior to July 20, 2016.[5]

### *Counterclaim Two - unjust enrichment*

ACM argues that, because SS&C's unjust enrichment claim is contingent on the success of ACM's claim for rescission, this claim fails to present a case or controversy over which the Court has jurisdiction. Doc. #105-1 at 6–7. It is true that constitutional ripeness requires a plaintiff's claim to be "actual or imminent" rather than "conjectural or hypothetical," *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)), but this does not mean that the federal courts have no jurisdiction over any claim that is contingent on the outcome of another claim within the same lawsuit.

ACM relies on cases where Connecticut courts addressed claims that were contingent on the filing or result of *other* lawsuits. *See Milford Power Co., LLC v. Alstom Power, Inc.*, 263 Conn. 616, 626–27 (2003) (declaratory judgment action not justiciable where dependent on as-yet asserted contract rights); *Sosin v. Scinto*, 750 A.2d 478, 480–82 (Conn. App. 2000) (claims not justiciable because premised on outcome of separate pending action for injunction). While claims in those cases might not be "amenable to, and resolved by, the judicial process," *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 774 (2000), courts routinely exercise jurisdiction over counterclaims that depend on the resolution of a plaintiff's primary claims that are before them. *See, e.g.*, *Conopco Inc. v. Wells Enters., Inc.*, 2015 WL

---

[5] Notwithstanding the foregoing analysis, SS&C's claims under the Hosting Services provisions of the Master Agreement would not be time-barred even if the one-year provision applied in full. SS&C alleges that ACM failed to pay it for hosting services when ACM terminated the Master Agreement without the required 120-day notice, Doc. #101 at 22 (¶ 20), and claims damages for the 120-day period after May 1, 2017—the date ACM terminated the agreement. Doc. #117 at 7. SS&C filed its counterclaims on April 2, 2018, and while ACM contends that SS&C cannot recover from damages arising in March of 2017, Doc. #105-1 at 4–5, ACM does concede that SS&C's claim for damages from May of 2017 onward is not barred by the one-year provision, Doc. #118 at 9.

2330115, at *7 (S.D.N.Y. 2015) ("[defendant] is free to assert a counterclaim for infringement that is conditional or contingent upon the outcome of the plaintiff's infringement claim").

Indeed, Rule 8 of the Federal Rules of Civil Procedure explicitly allows for setting out "statements of a claim or defense alternatively or hypothetically." Fed. R. Civ. P. 8(d)(2). ACM's own claim for rescission is brought in the alternative and contingent upon ACM's defeat on its contract claims. *See* Doc. #35 at 21 (¶ 79). By ACM's logic that SS&C's counterclaim is nonjusticiable, ACM's claim would be too. But because neither of these things are true, I will not dismiss the unjust enrichment claim for lack of jurisdiction.

Finally, ACM argues that I should dismiss SS&C's claim for unjust enrichment because it fails to state a plausible claim for relief. Doc. #105-1 at 7–8. In ACM's view, if it succeeds on its claim for rescission, this would mean that it has proved misrepresentation on the part of SS&C, such that SS&C would be unable to recover for unjust enrichment because Connecticut law "refuses to apply unjust enrichment to protect a party from the consequences of its bad acts." *Vanacore v. Kennedy*, 86 F. Supp. 2d 42, 54 (D. Conn. 1998), *aff'd sub nom. Vanacore v. Space Realty, Inc.*, 208 F.3d 204 (2d Cir. 2000); Doc. #105-1 at 8.

ACM's argument fails because it confuses different kinds of misrepresentation. Although the court in *Vanacore* did deny an unjust enrichment cross-claim, it did so because the cross-claimant would stand to profit from its *fraud*. *See* 86 F. Supp. 2d at 50, 54. The other case ACM relies on for this argument, *Haddock v. Nationwide Fin. Servs., Inc.*, 272 F.R.D. 61 (D. Conn. 2010), arose in the context of competing claims for breach of fiduciary duty. Here, however, ACM's claim for rescission is based on SS&C's alleged *negligent* misrepresentation. Doc. #75 at 16. That distinction is important. Willful wrongful conduct may bar a party's recovery in equity, but Connecticut courts have recognized that "[w]hether or not a plaintiff will be barred of

10

remedy in equity against the effect of mistake because of his negligence depends to a large extent upon the circumstances of the particular case." *Conn. Nat'l Bank v. Chapman*, 153 Conn. 393, 398 (Conn. 1966); *see also* RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 5(4) & cmt.f (AM. LAW INST. 2011) ("A claimant does not bear the risk of a mistake merely because the mistake results from the claimant's negligence."). Thus, if SS&C committed negligent misrepresentation and if this afforded ACM a right to rescind the Master Agreement, that negligent misrepresentation would not necessarily bar SS&C's right to recover for unjust enrichment. Because the unjust enrichment claim is not necessarily precluded by the rescission claim, I decline at this time to dismiss the unjust enrichment claim.

## CONCLUSION

For the reasons set forth above, ACM's motion to dismiss SS&C's counterclaims (Doc. #105) is GRANTED in part and DENIED in part. As to Counterclaim One for breach of contract, ACM's motion to dismiss is GRANTED to the extent that SS&C's claim is based on acts of breach that occurred prior to July 20, 2016, but DENIED to the extent that SS&C's claim is based on acts of breach that occurred after July 20, 2016. As to Counterclaim Two for unjust enrichment, ACM's motion to dismiss is DENIED.

It is so ordered.

Dated at New Haven this 19th day of February 2019.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge