PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS    NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING, 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
(212) 373-3986

WRITER'S DIRECT FACSIMILE
(212) 492-0986

WRITER'S DIRECT E-MAIL ADDRESS
nahmed@paulweiss.com

February 26, 2019

**Via CM/ECF**

Honorable Jeffrey Alker Meyer
United States District Judge for the District of Connecticut
Richard C. Lee United States Courthouse
141 Church Street
New Haven, Connecticut 06510

*Armour Capital Management LP v. SS&C Technologies, Inc.*
Case No.: 3:17-cv-00790-JAM

Dear Judge Meyer:

Defendant SS&C Technologies, Inc. ("SS&C") submits this letter in response to the Court's request for comment on the application of *Argentinis v. Gould*, 219 Conn. 151 (1991), to Armour Capital Management LP's ("ACM") breach of contract claim. At issue is whether *Argentinis* supports SS&C's contention in its summary judgment briefing that the collateral source rule should *not* apply to breach of contract claims brought under Connecticut law ("Breach of Contract"). It does: The Connecticut Supreme Court's reasoning strongly supports SS&C's position that the rule should *not* apply to Breach of Contract. Because ACM was fully reimbursed for *all* monies paid to SS&C under the Master Agreement and its addenda (the "Contract"), ACM does not have standing to bring a breach of contract claim against SS&C.

*Argentinis* supports the proposition that the Connecticut Supreme Court would likely fall in line with the "national consensus" against importing the collateral source rule into the law of contracts. *See Asher v. Unarco Material Handling, Inc.*, 862 F. Supp. 2d 551, 554–55 (E.D. Ky. 2012) (collecting cases). In *Asher*, the court relied on the *Restatement (Second) of Contracts* ("*Restatement*"), Section 347 cmt. (e), to observe that "[t]his national consensus exists for good reason: the policies underlying the rule 'are less compelling' in breach of contract cases," which are compensatory in nature, "than in tort actions," which seek to deter and punish bad behavior. *Id.* at 555. Relying on the same section and comment in the *Restatement*, the *Argentinis* court reduced a homeowner's damages award by the amount he had not yet paid to the builders when he initiated a contract action against them. *Argentinis*, 219 Conn. at 157–58. The court reasoned that, in a breach of contract action, the injured party "is entitled to retain nothing in excess of

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Jeffrey Alker Meyer                                                                                         Page 2

that sum which compensates him for the loss of his bargain." *Id.* at 157 (quoting *Vines v. Orchard Hills, Inc.*, 181 Conn. 501, 507 (1980)). It further explained that the law of contract damages limits the injured party to "'damages based on his actual loss caused by the breach.'" *Id.* at 157–58. "[D]oubly compensating" the plaintiff for any "injury occasioned by the breach," the Connecticut Supreme Court held, defeats the purely compensatory nature of contract damages. *Id.* at 158. By the same logic, application of the collateral source rule to Breach of Contract would "'contravene this principle by awarding the non-breaching party more damages than necessary to compensate it for the breach.'" *Asher*, 862 F. Supp. at 555.

Here, ACM concedes that it was reimbursed by its Real Estate Investment Trust clients (the "REITs") for all amounts paid to SS&C under the Contract. ECF No. 177-1, at 21 (Local R. 56(a)(2) Statement). Moreover, as ACM admitted at the summary judgment hearing, not a single provision in the ACM-REIT agreements requires ACM to repay any damages that it may procure in this action on the REITs' behalf. ECF Nos. 176-10 & 176-11 (ACM-REIT agreements). Awarding ACM damages for amounts fully paid by the REITs would allow ACM to reap a windfall at odds with the compensatory purpose of contract damages articulated by the court in *Argentinis*. ACM's assurances during oral argument—that it will not keep the money, and instead plans to hand it over to the REITs—are of no moment. Without actual out-of-pocket losses (*i.e.*, real damages), ACM does not have standing to bring a breach of contract claim. *See Hull v. Burwell*, 66 F. Supp. 3d 278, 281 (D. Conn. 2014) (plaintiffs do not have standing where financial liability at issue has already been paid by a third party). Under *Argentinis*, summary judgment on the breach of contract claim is appropriate.

Although *Argentinis* was decided after trial, the decision does not support ACM's argument that issues related to the apportionment of damages cannot be decided on summary judgment. Indeed, countless Connecticut decisions speak to the fallacy of this position. For example, in *Guarino v. Allstate Property and Cas. Ins. Co.*, 315 Conn. 249 (2015), the Connecticut Supreme Court affirmed a summary judgment ruling in an insurance company's favor because the plaintiff had already settled with tortfeasors who caused the collision. *Id.* at 264–65. In arriving at this conclusion, the court held that summary judgment was appropriate because the plaintiff was not entitled to recoup additional monies. *Id.* In *Haynes v. Yale-New Haven Hosp.*, 243 Conn. 17 (1997), the Connecticut Supreme Court likewise affirmed a summary judgment ruling denying a plaintiff the right to double recovery. *Id.* at 30–32. There, because the plaintiff had already been fully compensated for the death of her mother by car insurance carriers, the case she brought against her mother's surgeon was barred. *Id.* Similarly, in *Shelby v. Rotary Lift*, 2002 WL 1949184 (Conn. Super. Ct. 2002), the court granted summary judgment in defendant lift manufacturer's favor. *Id.* at *3. The court held that, because the plaintiff had already recovered all damages to which she was entitled from the lift operator, she was not allowed to sue the defendant. *Id.* And, in *Gionfriddo v. Gartenhaus Cafe*, 211 Conn. 67 (1989), because the plaintiff had already received "just damages" from the tortfeasor who had caused the drunk-driving accident, the Connecticut Supreme Court held that the trial court had erred in *not* granting summary judgment in defendant restaurant's favor. *Id.* at 75–76. Where, as here, summary judgment is sought in the absence of any issues of

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Jeffrey Alker Meyer                                                                 Page 3

material fact concerning a plaintiff's complete lack of damages, the law dictates that the motion should be granted.

*Argentinis* signals that the Connecticut Supreme Court is likely to follow the national consensus and *not* apply the collateral source rule to Breach of Contract. Application of this principle—and Contract Sections 6.2.3 (barring the REITs from suing SS&C) and 6.2.2 (barring consequential damages of *any kind*)—to the facts of this case establishes that ACM does not have any damages. In the absence of any injury in fact, ACM's entire case collapses for lack of standing. *See Hull*, 66 F. Supp. 3d at 280 (relying on *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Granting SS&C's motion for summary judgment in its entirety is therefore appropriate.

                                                        Respectfully Submitted,

                                                        */s/ Nora Ahmed*
                                                        Nora Ahmed

cc: All counsel of record via ECF