# Holland & Knight

701 Brickell Avenue, Suite 3300 | Miami, FL 33131 | T 305.374.8500 | F 305.789.7799
Holland & Knight LLP | www.hklaw.com

Allison Kernisky
305-349-2175
allison.kernisky@hklaw.com

February 26, 2019

*Via CM/ECF*

Honorable Jeffrey A. Meyer
141 Church Street, Courtroom 3
New Haven, CT 06510

   Re:  *ARMOUR Capital Mgmt. LP v. SS&C Techs. Inc.*, Case No. 17-cv-00790-JAM.

Dear Judge Meyer:

  Per the Court's invitation during oral argument last Thursday, February 21, 2019, ACM submits this letter addressing *Argentinis v. Gould*, 219 Conn. 151 (1991), and further authorities relevant to SS&C's argument for a windfall of all the fees and costs ACM paid to it.[1]

  Initially, *Argentinis* is factually distinguishable. The plaintiffs there agreed to pay the defendants, homebuilders, $340,000 to construct a home. *Id.* at 153. Of that total, $43,000 consisted of a "note and purchase money mortgage." *Id.* The plaintiffs had not paid that portion to the defendants by the time of their disputes, and the Connecticut Supreme Court held that the plaintiffs need not do so because of the defendants' "failure of substantial performance." *Id.* at 154-59. That is, the failure *saved* the plaintiffs from having to pay the defendants $43,000. *Id.*

  Here, there is no dispute that SS&C was *paid* by ACM all the fees and costs ACM seeks as damages in this litigation. SS&C's breaches *did not* save ACM any loss it claims from SS&C. Put differently, if the Court credited SS&C's argument, *SS&C* would be allowed a windfall of the fees and costs ACM paid it (fortuitously, under the "Management Agreements" to which SS&C is not even a party). This result is senseless and stands in contrast to the defendants in *Argentinis*, who *had not been paid* for the "substantial performance" they failed to render.

  *Argentinis* moreover counsels for denying the MSJ. Like SS&C, the defendants argued to the Connecticut Supreme Court that not reducing the plaintiffs' damages by the unpaid $43,000 would result in "'*double recovery*' and . . . an *unwarranted penalty*." *Id.* at 155 (emphases added). In agreeing with the defendants, the Connecticut Supreme Court relied on authorities "[g]uarding against *excessive compensation*." *Id.* at 157 (emphasis added). "Otherwise, [the plaintiffs] would be placed in a *better position* than full performance would have put [them], thereby *doubly compensating* [them] for the injury occasioned by the breach." *Id.* at 158 (emphases added).

---

[1] All capitalized terms have the same meaning as in ACM's Opposition to SS&C's MSJ (ECF No. 177).

Hon. Jeffrey A. Meyer
February 26, 2019
Page 2

No risk of "double recovery," "unwarranted penalty," "excessive compensation," "better position," or "doubly compensating" ACM exists here. The reason is simple: ACM, through its principals, has *sworn under oath* repeatedly—including by declaration in response to the MSJ—that it will repay the REITs the "full amount" of the reimbursed fees and costs ACM recovers from SS&C.[2] (ECF No. 177 at 30; ECF No. 177-1 ¶¶56, 59, 61; ECF No. 177-2 ¶12.) This testimony is binding and undisputed. Applying *Argentinis*, the Connecticut Supreme Court likely would *not* reduce ACM's damages award by the REITs' reimbursements. There would be no reason to.

These basic facts render SS&C's argument about the application of the collateral-source rule to ACM's contract claim irrelevant to the Court's denial of the MSJ.[3] The Eight Circuit's decision in *Ford Motor Credit Co. v. Wintz Cos.*, 184 F.3d 778 (8th Cir. 1999), is on point.

In that case, the plaintiff, a financing company, sued a guarantor "for the deficiency on a defaulted loan." *Id.* at 779. Separately, the plaintiff, like ACM here, had a "loss-sharing agreement" with a non-party to the lawsuit, which required the non-party to "assume responsibility for losses that resulted from default" by the plaintiff's borrowers. *Id.* At trial, the jury awarded the plaintiff nearly $1.4 million in damages, which the guarantor, as SS&C argues here, "sought to have . . . reduced to zero, arguing that [the plaintiff] suffered no injury because [the non-party] would be reimbursing (or had reimbursed) [the plaintiff] for all of the losses it sustained on the transaction, according to the terms of the loss-sharing agreement." *Id.* at 780.

Like SS&C here, the guarantor argued that "the collateral source rule [was] not properly invoked" because it allegedly does not apply to contract claims. *Id.* But the court did not need to decide the question because an "uncontroverted affidavit" affirmed that the plaintiff would repay any recovery to the non-party. *Id.* As the court held, "[e]ven if the collateral source rule does not apply to this case, that is, even if double recovery is prohibited, no reduction in the amount of damages is required *because there is no double recovery*. [The guarantor's] payment of the judgment against him will do no more than *make [the plaintiff] whole*." *Id.* (emphases added).

Here, SS&C has cited no Connecticut or other authorities involving a plaintiff's sworn testimony to repay a non-party's reimbursement that warrant a contrary outcome. (And SS&C's seminal authority on the collateral-source rule, comment e to section 347 of the Restatement (Second) of Contracts, does not disallow application of the rule in all contract cases.)

---

[2] There is no question under Connecticut law that ACM has standing to pursue its contract claim. *West Haven Sound Dev. Corp. v. City of West Haven*, 541 A.2d 858, 862 (Conn. 1988) (citing 3 Restat. (Second) of Contracts § 346(2) (1981)); *Sorensen v. Fayerweather Yacht Club, Inc.*, No. 136033440S, 2013 WL 6989418, at *4 (Conn. Super. Ct. Dec. 13, 2013) (same). This is because "a breach of contract by a party against whom it is enforceable *always* gives rise to a claim for damages." 3 Restatement (Second) of Contracts at § 346(2) (emphasis added).

[3] SS&C does not argue that the collateral-source rule is inapplicable to ACM's tort or other claims. *Saint Bernard Sch. of Montville Inc. v. Bank of Am.*, 95 A.3d 1063, 1080 (Conn. 2014). Nor does SS&C dispute that the REITs' reimbursements are not collateral-source payments. *See, e.g.*, *Grindrod v. Shred-It-USA LLC*, No. CV156028292S, 2017 WL 3461427, at *2 (Conn. Super. Ct. July 5, 2017); Restatement (Second) of Torts § 920A(2) (1979) ("Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.").

Hon. Jeffrey A. Meyer
February 26, 2019
Page 3

      Finally, SS&C cannot raise unfounded doubts about whether ACM indeed will repay the reimbursed fees and costs to the REITs if ACM recovers from SS&C in this case.  This is because, as the Seventh Circuit held in *ADM Investor Services Inc. v. Collins*, 515 F.3d 753 (7th Cir. 2008), "[h]ow [the plaintiff] and [the reimbursing non-party] settle accounts between themselves is none of [the defendant's] business."[4]  *Id.* at 754; *see ADM Investor Servs. v. Ramsay*, 558 F. Supp. 2d 855, 862 (N.D. Ill. 2008).  And SS&C has offered no reason the REITs could not bring claims against ACM if it fails to repay (at a minimum, e.g., for unjust enrichment, as the fees and costs then would no longer be "costs and expenses related to the retention of third parties," as required for reimbursement under the Management Agreements, (ECF No. 176-10 § 2.4.2)).

      In sum, SS&C's argument requires one of two potential resolutions:  either (1) SS&C's breaches allow it a windfall under Management Agreements to which it not even is a party or (2) ACM, having testified repeatedly to repaying the REITs the "full amount" of the reimbursed fees and costs ACM recovers from SS&C, is placed in the "same position" as if SS&C had performed and made "whole." *Argentinis*, 219 Conn. at 157; *Ford Motor Credit*, 184 F.3d at 780.  The former is illogical; the latter follows, and is consistent with, Connecticut law.

      The Court should deny the MSJ in its entirety.

      Respectfully submitted,

      HOLLAND & KNIGHT LLP

      /s Allison Kernisky
      Allison Kernisky

CC:    All counsel of record.

---

[4] Like SS&C, the defendant also claimed that the reimbursed plaintiff was "not the real party in interest." *Collins*, 515 F.3d at 755.  The Seventh Circuit rejected that argument, noting that, as here, "[the plaintiff] did not assign its rights to [the non-party] (there [was] no subrogation agreement), so [the plaintiff was] the proper plaintiff." *Id.* ("That a third party reimburses part of a loss does not disable the injured party from recovering under tort or contract law.").