PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS        NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING, 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
(212) 373-3986

WRITER'S DIRECT FACSIMILE
(212) 492-0986

WRITER'S DIRECT E-MAIL ADDRESS
nahmed@paulweiss.com

March 1, 2019

**Via CM/ECF**
Honorable Jeffrey Alker Meyer
United States District Judge for the District of Connecticut
Richard C. Lee United States Courthouse
141 Church Street
New Haven, Connecticut 06510

*Armour Capital Management LP v. SS&C Technologies, Inc.*
Case No.: 3:17-cv-00790-JAM

Dear Judge Meyer:

We write in response to Armour Capital Management LP's ("ACM") letter brief, filed on February 26, 2019. (ECF No. 188.) In that letter, ACM asks this Court to rewrite contracts that ACM entered into with its Real Estate Investment Trust clients (the "REITs") and with SS&C Technologies, Inc. ("SS&C"). But, as the Supreme Court of Connecticut held in *Tallmadge Bros., Inc., et al. v. Iroquois Gas Transmission Sys., L.P.*, 252 Conn. 479, "contracts voluntarily and fairly made should be held valid and enforced in the courts." *Id.* at 506. As ACM has not challenged the validity of these contracts, its request to remake these bargains should be denied. So too should this Court reject ACM's misapplication of *Argentinis v. Gould*, 219 Conn. 151 (1991), its attempt to end-run the terms of its contract with SS&C, and its bid to evade basic principles of standing.

*First*, ACM does not escape the bar against double recovery articulated by the Supreme Court of Connecticut in *Argentinis*, 219 Conn. 151. (*See* ACM Ltr. Br. at 1–2.) It is undisputed that ACM has been fully reimbursed by the REITs for *all* monies paid to SS&C. (*See id.* at 2.) It is also uncontested that the contracts between ACM and the REITs do not obligate ACM to repay the REITs for any reimbursements. (ECF No. 176-10; ECF No. 176-11.) Moreover, the contract between ACM and SS&C precludes the REITs from suing SS&C, and thereby collecting damages of any kind from it: "SS&C shall have no contractual or other obligations or liability to [the REITs] directly or as third party beneficiaries of this Master Agreement or any other agreement between SS&C and Client." (*See* ECF No. 176-4 at 5, § 6.2.3.) ACM's purported promise to repay the REITs, whether in sworn testimony or otherwise, does not—nor can it—unilaterally amend the terms of ACM's contracts with the REITs or with SS&C. (*See* ACM Ltr. Br. at 2–3.) In fact, the ACM-REIT agreements provide that they "*may not be* amended, modified or changed (in

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Jeffrey Alker Meyer                                                                                     Page 2

whole or in part)" without "a formal definitive written agreement" that "is executed by all of the parties," as well as the REITs' "Board of Directors." (ECF No. 176-10 at 17, § 27; ECF No. 176-11 at 18, § 27 (emphasis added).) The ACM-SS&C contract includes a similar prohibition: "This Master Agreement may be amended *only by written agreement signed by both parties*." (*See* ECF No. 176-4 at 8, § 6.7.5 (emphasis added).) Significantly, ACM has proffered no evidence that any amendments to these contracts were ever executed—let alone contemplated. *Ford Motor Credit Co. v. Wintz Cos.*, 184 F. 3d 778 (8th Cir. 1999), is inapposite. (*See* ACM Ltr. Br. at 2.) There, the court did not consider the question of whether sworn testimony has the capacity to modify the terms of the loss sharing agreement at issue. *Id.*

In the end, ACM is not out-of-pocket a single penny to SS&C. And no matter how many times ACM repeats a supposed commitment to repay the REITs, verbiage in sworn testimony does not operate to change this fact or amend the contracts ACM has with the REITs or with SS&C. It is simply not within the power of this Court "to make a new and different agreement." *Tallmadge Bros.*, 252 Conn. 479, 506. It cannot change ACM's agreements with the REITs, under which ACM has no obligation to give the REITs a cent. Nor can it change the ACM-SS&C agreement, under which SS&C has no liability to the REITs. (*See* ECF No. 176-4 at 5, § 6.2.3.) The simple fact is: were ACM to keep any damages recovery in this case, neither the Court nor SS&C could stop it from doing so. *Argentinis*, which holds that contract damages are strictly compensatory in nature, prevents this outcome. *Id.*, 219 Conn. at 157–58.

*Second*, ACM insists that its arrangement with the REITs is "none of [SS&C's] business." (ACM Ltr. Br. at 3 (citing *ADM Investor Services, Inc. v. Collins*, 515 F.3d 753 (7th Cir. 2008).) But this contradicts ACM's argument that sworn testimony is a legitimate vehicle through which to rewrite the bargains that it entered into with the REITs and with SS&C. (*Id.* at 2.) ACM cannot contend that repayment to the REITs eliminates any double recovery while also declaring that any failure to do so is immaterial to this litigation.

*Third*, permitting ACM to hand over any potential recovery to the REITs, as ACM argues it should be entitled to do (ACM Ltr. Br. at 3), would run counter to the calculated bargain that ACM entered into with SS&C. "[B]argains moved on calculated considerations, and whether provident or improvident, are entitled nevertheless to sanctions of the law." *Tallmadge*, 252 Conn. at 506. ACM cannot skirt the fact that its contract with SS&C bars the REITs from recouping any monies from SS&C related to the subject matter of the contract. (*See* ECF No. 176-4 at 5, § 6.2.3, *supra*.) It is axiomatic that "what cannot be done directly cannot be done indirectly." *Cummings v. Missouri*, 71 U.S. 277, 325 (1866). The Court should not permit ACM to indirectly litigate this case on behalf of the REITs in violation of the terms of ACM's contract with SS&C. What is forbidden to the REITs, and which they cannot do directly, they should not be permitted to do through ACM by pretense or oblique indirection. *See, e.g.*, 15A C.J.S. Common Law § 23 (2018).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Jeffrey Alker Meyer						Page 3

*Finally*, ACM does not have standing to bring this case.  A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and summary judgment appropriate.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(a).  Where, as here, the essential element that cannot be proved is damages, plaintiff lacks any injury in fact and, therefore, standing.  *See Hull v. Burwell*, 66 F. Supp. 3d 278, 281 (D. Conn. 2014) (plaintiffs do not have standing where financial liability at issue has already been paid by a third party).  Because ACM cannot establish any out-of-pocket losses, SS&C's motion for summary judgment should be granted in its entirety.

						Respectfully Submitted,

						*/s/ Nora Ahmed*
						Nora Ahmed

cc: All counsel of record via ECF