# Holland & Knight

701 Brickell Avenue, Suite 3300 | Miami, FL 33131 | T 305.374.8500 | F 305.789.7799
Holland & Knight LLP | www.hklaw.com

Allison Kernisky
305-349-2175
allison.kernisky@hklaw.com

March 1, 2019

*Via CM/ECF*

Honorable Jeffrey A. Meyer
141 Church Street, Courtroom 3
New Haven, CT 06510

      Re:    *ARMOUR Capital Mgmt. LP v. SS&C Techs. Inc.*, Case No. 17-cv-00790-JAM.

Dear Judge Meyer:

      SS&C's interpretation of *Argentinis v. Gould*, 219 Conn. 151 (1991), in its February 26, 2019 letter brief, (ECF No. 187), confirms that the Court should deny the MSJ.[1]

      Though *Argentinis* is silent on the collateral-source rule specifically, SS&C explains that the foundation of both that case and the rule is the principle that "the injured party 'is entitled to nothing in excess of that sum which compensates him for the loss of his bargain.'" (ECF No. 187 at 1-2.) So, if anything, what the Connecticut Supreme Court prohibited in *Argentinis* was double recovery. 219 Conn. at 157-59. SS&C agrees.[2] (ECF No. 187 at 1-2 ("'*[D]oubly compensating*' the plaintiff for any 'injury occasioned by the breach,' . . . defeats the purely compensatory nature of contract damages. By the same logic, application of the collateral-source rule to Breach of Contract would 'contravene this principle . . . .'") (citing, *inter alia*, *id*.) (emphasis added).)

      SS&C never has presented evidence of potential double recovery, "doubly compensating" ACM, or "excess" compensation. There is no such risk because ACM repeatedly has confirmed in sworn testimony that it will repay the REITs for any reimbursements it recovers in this case. (ECF No. 188 at 1-2.) On summary judgment, the Court must accept ACM's evidence as true, construe it in the light most favorable to ACM, and draw all inferences in ACM's favor. *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005); *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 315 (2d Cir. 1997). SS&C's effort to wave away this evidence and the publicly traded REITs' ability to seek repayment from ACM is what is "of no moment." (ECF No. 187 at 2.)

---

[1] All capitalized terms have the same meaning as in ACM's Opposition to SS&C's MSJ (ECF No. 177).

[2] SS&C misses a key distinction between *Argentinis* and this case. Here, ACM paid SS&C all the fees and costs it seeks as damages from SS&C, (ECF No. 188 at 1), but the plaintiffs in *Argentinis* had not paid (and were not required to pay) the defendants the amount of alleged double recovery, 219 Conn. at 158. This means that, unlike in *Argentinis*, were the Court to agree with SS&C's position, *SS&C* is the party that would enjoy a windfall by being permitted to retain $1.78 million in fees and costs ACM paid to it despite its breaches and misconduct. This outcome is senseless.

Hon. Jeffrey A. Meyer
March 1, 2019
Page 2

      SS&C thus is wrong that ACM might "reap a windfall at odds with the compensatory purpose of contract damages articulated by the court in *Argentinis*." (ECF No. 187 at 2.) Where there is no risk of double recovery, Connecticut courts deny summary judgment. *See, e.g.*, *Maher v. Cunningham*, No. 115033953, 2013 WL 1715467, at *2 (Conn. Super. Ct. Mar. 26, 2013) ("the plaintiff is not seeking double recovery here" but "merely . . . to be made whole"); *Torrington Mun. & Teachers FCU v. Whitford*, No. 086000440S, 2010 WL 5610900 at *2 (Conn. Super. Ct. Dec. 21, 2010) (no risk of double recovery because any "excess of the balance due on the debt . . . . will not go to the plaintiff"); *see also Macey v. Carolina Cas. Ins. Co.*, No. 06-cv-1719, 2012 WL 6125200, at *7 (D. Conn. Dec. 10, 2012) (plaintiffs had agreement to assign insurer proceeds of suit, so "no double recovery or windfall."); *Marchevsky v. Allstate Ins. Co.*, No. 980076032, 1999 WL 492636, at * (Conn. Super. Ct. June 22, 1999) ("the weight of authority, as well as principles of equity, statutory construction and logic" support finding that defendant not entitled to reduction for benefits received and paid back by plaintiff); *Ford Motor Credit Co. v. Wintz Cos.*, 184 F.3d 778 (8th Cir. 1999) (uncontroverted affidavit negated risk of double recovery).

      SS&C either misstates or misinterprets the other cases it cites. (ECF No. 187 at 2-3.)

      Most of SS&C's citations involved a plain risk of double recovery with multiple lawsuits by the same plaintiff against joint tortfeasors for the same damages, a far cry from the situation here. *Guarino v. Allstate Prop. & Cas. Ins. Co.*, 315 Conn. 249, 264-65 (2015) (disallowing double recovery in second suit where plaintiff received "exactly what [the decedent] bargained for" in prior settlements); *Haynes v. Yale-New Haven Hosp.*, 243 Conn. 17, 31-32 (1997) (plaintiff not entitled to doubly recover same damages already received from underinsured motorist policy); *Shelby v. Rotary Lift*, No. 555718, 2002 WL 1949184, at *2 (Conn. Super. Ct. July 19, 2002) (plaintiff could not recover "same damages" in two separate lawsuits based on "same incident," involving "same instrumentality" causing "same injuries"); *Gionfriddo v. Gartenhaus Café*, 211 Conn. 67, 75-76 (1989) (rejecting case against second defendant for damages "identical to those claimed, awarded and recovered" in earlier case against different defendant).[3]

      SS&C similarly overstates *Hull v. Burwell*, 66 F. Supp. 3d 278, 281 (D. Conn. 2014), where the plaintiffs in a putative class action had no statutory standing under the federal Medicare statute and the U.S. Constitution's Due Process Clause because Medicaid had paid their healthcare claims. *Id.* The REITs are not Medicaid, ACM has not asserted any Medicare or due-process claims, and, instead, SS&C's argument attacks ACM's claim for breach of contract. As such, for the reasons ACM stated in its February 26, 2019 letter brief, ACM has standing under Connecticut law to pursue that contract claim. (ECF No. 188 at 2 n.2.) *Hull* has no application here.

---

[3] These citations also highlight SS&C's continued failure to show that the REITs' reimbursements are collateral-source payments. *See, e.g.*, *Rametta v. Stella,* 214 Conn. 484, 490 (1990); *Grindrod v. Shred-It-USA LLC*, No. CV156028292S, 2017 WL 3461427, at *2 (Conn. Super. Ct. July 5, 2017); Restatement (Second) of Torts § 920A(2) (1979) ("Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.").

And *Asher v. Unarco Material Handling, Inc.*, 862 F. Supp. 2d 551, 556 (E.D. Ky. 2012) is equally inapposite. (ECF No. 187 at 1.) There, the court found that even if the insurer's contract claim were barred by the collateral-source rule, it still could recover through at least two other remedies against various parties. 862 F. Supp. 2d at 556. Here, ACM's only contract claim for the fees and costs it paid SS&C is the one it has stated against SS&C. If the Court granted the MSJ, ACM would be denied relief for SS&C's breaches, and SS&C would score a windfall.

The bottom line is that SS&C has not cited any Connecticut or other authorities in which, as here, it was undisputed that there was no risk of double recovery. Without such a risk, and following *Argentinis*, the Connecticut Supreme Court likely would not reduce ACM's damages, permit SS&C to enjoy a windfall of more than $1.78 million in fees and costs ACM paid it despite SS&C's breaches and misconduct, or otherwise grant the MSJ.[4] Indeed, none of SS&C's citations provides any reason ACM should not be permitted to try its claim for the $1.78 million in fees and costs for SS&C's breaches to the jury. The Court should deny the MSJ.

Respectfully submitted,

HOLLAND & KNIGHT LLP

/s Allison Kernisky
Allison Kernisky

CC: All Counsel of Record.

---

[4] The instances of SS&C's liberal (at best) descriptions of case law in this case are legion. These include, for example, SS&C's insistence that *Western Dermatology Consultants PC v. VitalWorks, Inc.*, 78 A.3d 167 (Conn. App. Ct. 2013), is a "controlling" statement of Connecticut law by the Connecticut Supreme Court. (ECF No. 179 at 1-2.) It is none of those things. Another example is an argument SS&C raised for the first time during its rebuttal at the February 21, 2019 oral argument: ACM supposedly relies on what SS&C has dubbed a "*Dunn* line of cases" to support the misrepresentations ACM has alleged and Connecticut law somehow is different. SS&C is wrong. *Dunn* is highly persuasive authority; none of ACM's many other supporting software misrepresentation cases (which SS&C never has distinguished) do not cite *Dunn* in any event (with one exception); and Connecticut law, which considers the form of the statement *with* the surrounding circumstances and respective knowledge of the parties to decide what the speaker intended and the listener understood, is entirely consistent with all of the supporting cases ACM cites, (ECF No. 177 at 6-16). *See Dunn Appraisal Co. v. Honeywell Info. Sys.*, 687 F.2d 877, 882-83 (6th Cir. 1982); *Fed. Ins. Co. v. Speedboat Racing LLC*, 200 F. Supp. 3d 312, 345 (D. Conn. 2016) (negligent misrepresentations require analysis of "statement's context, formal nature, the relationship between the parties, or the communicator's status as an individual with specialized knowledge."); *Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 580 (1995); *Meyers v. Cornwell Quality Tools Inc.*, 674 A.2d 444, 450 (Conn. App. 1996); *Woodling v. Garrett Corp.*, 813 F.2d 543, 552 (2d Cir. 1987) (same); *Assoc. Constr./AP Constr., LLC v. Hanover Ins. Co.*, No. 15-cv-1600, 2018 WL 3998971, at *7 (D. Conn. Aug. 21, 2018) (same); *Omega Eng. Inc. v. Eastman Kodak Co.*, 908 F. Supp. 1084, 1098 (D. Conn. 1995) (same). *Cf. Olympic Dreams LLC v. Clark*, No. 11-CV-01103, 2014 WL 4267499 (D. Conn. 2014) (plaintiffs did not even proffer evidence controverting summary-judgment arguments against alleged misrepresentations).