**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

---

| | |
|---|---|
| ARMOUR CAPITAL MANAGEMENT LP, | Case No. 17-cv-00790-JAM |
| Plaintiff, | |
| v. | March 5, 2019 |
| SS&C TECHNOLOGIES INC. | |
| Defendant. | |

---

**ACM'S ANSWER AND AFFIRMATIVE DEFENSES**
**TO SS&C'S FIRST AMENDED COUNTERCLAIMS[1]**

ACM responds to each numbered paragraph of SS&C's First Amended Counterclaims ("Counterclaims") (ECF No. 101) as follows:

**ANSWER**

**GENERAL DENIAL**

In responding to SS&C's Counterclaims, ACM denies any allegations or averments in the headings and "wherefore" clauses of the Counterclaims to the extent any response is required. ACM's admission of an allegation in the Counterclaims does not necessarily admit that ACM knew a particular fact at the time the events at issue in this action occurred.

**PARTIES**

1.      ACM is without sufficient knowledge and information to form a belief as to the allegations in this paragraph.  Therefore, ACM denies these allegations and demands strict proof thereof.

2.      Admit.

---

[1] Unless otherwise specified, capitalized terms have the same meaning as in the First Amended Complaint ("FAC"). (ECF No. 35.)

3.      Admit.

4.      Admit.

5.      Admit.

6.      Admit.

7.      Admit.

8.      Admit.

9.      Admit.

## JURISDICTION

10.     Admit.

11.     Admit.

12.     Admit.

## GENERAL ALLEGATIONS

13.     ACM states that the Master Agreement[2] speaks for itself and is attached to the FAC at Exhibit A (the Master Agreement and Work Request One), Exhibit B (Work Request Two), and Exhibit C (Work Request Three).  ACM denies the remaining allegations of this paragraph and demands strict proof thereof.

14.     ACM states that the Master Agreement speaks for itself and is attached to the FAC at Exhibits A-C.  ACM denies the remaining allegations of this paragraph and demands strict proof thereof.

15.     ACM denies the allegations in this paragraph and demands strict proof thereof.

---

[2] The "Master Agreement" is the "Master Agreement for Software, Maintenance and Support, Professional Services and Other Services" and each attachment and Work Request incorporated thereunto, including Work Request One, Work Request Two and Work Request Three; among other things, Work Request Two incorporates the terms of the Master Agreement.  (ECF No. 35-1 at 1, § 4.1; ECF No. 35-2 at 1.)

16.     ACM states that Work Request Two speaks for itself and is attached to the FAC at Exhibit B.  ACM denies the remaining allegations in this paragraph and demands strict proof thereof.

17.     ACM states that Attachment A.1 to the Master Agreement speaks for itself and is attached to the FAC within Exhibit A.  ACM denies the remaining allegations in this paragraph and demands strict proof thereof.

18.     ACM denies the allegations in this paragraph and demands strict proof thereof.

19.     ACM states that Attachment B.1 to the Master Agreement speaks for itself and is attached to the FAC within Exhibit A.  ACM denies the remaining allegations in this paragraph and demands strict proof thereof.

20.     ACM denies the allegations in this paragraph and demands strict proof thereof.

21.     ACM states that Work Request Two speaks for itself and is attached to the FAC at Exhibit B.  ACM denies the remaining allegations in this paragraph and demands strict proof thereof.

22.     ACM states that Work Request Two speaks for itself and is attached to the FAC at Exhibit B.  ACM denies the remaining allegations in this paragraph and demands strict proof thereof.

23.     ACM denies the allegations in this paragraph and demands strict proof thereof.

24.     ACM states that the Master Agreement speaks for itself and is attached to the FAC at Exhibits A-C.  ACM denies the remaining allegations in this paragraph and demands strict proof thereof.

25.     ACM states that the Master Agreement speaks for itself and is attached to the FAC at Exhibits A-C.  ACM denies the remaining allegations in this paragraph and demands strict proof thereof.

26.     ACM denies the allegations in this paragraph and demands strict proof thereof.

27.     ACM denies the allegations in this paragraph and demands strict proof thereof.

28.     ACM admits that it terminated the Master Agreement on May 1, 2017.  ACM denies the remaining allegations of this paragraph and demands strict proof thereof.

## COUNT I—BREACH OF CONTRACT

29.     ACM re-alleges and incorporates by reference its answers to paragraphs 1-28 above as if fully set forth herein.

30.     ACM does not respond to the allegations of this paragraph to the extent the Court dismissed Count I for acts of breach that occurred prior to July 20, 2016.  ACM states that the Master Agreement speaks for itself and is attached to the FAC at Exhibits A-C.  ACM denies the remaining allegations of this paragraph and demands strict proof thereof.

31.     ACM does not respond to the allegations of this paragraph to the extent the Court dismissed Count I for acts of breach that occurred prior to July 20, 2016.  ACM denies the remaining allegations in this paragraph and demands strict proof thereof.

32.     ACM does not respond to the allegations of this paragraph to the extent the Court dismissed Count I for acts of breach that occurred prior to July 20, 2016.  ACM admits that it terminated the Master Agreement on May 1, 2017.  ACM denies the remaining allegations of this paragraph and demands strict proof thereof.

33.     ACM does not respond to the allegations of this paragraph to the extent the Court dismissed Count I for acts of breach that occurred prior to July 20, 2016.  ACM denies the remaining allegations in this paragraph and demands strict proof thereof.

WHEREFORE, ACM demands judgment in its favor with prejudice on Count I.

## COUNT II—UNJUST ENRICHMENT

34.     ACM denies the allegations in this paragraph and demands strict proof thereof.

35.     ACM re-alleges and incorporates by reference its answers to paragraphs 1-12 above as if fully set forth herein.

36.     ACM denies the allegations in this paragraph and demands strict proof thereof.

37.     ACM denies the allegations in this paragraph and demands strict proof thereof.

38.     ACM states that the Master Agreement speaks for itself and is attached to the FAC at Exhibits A-C.  ACM denies the remaining allegations in this paragraph and demands strict proof thereof.

39.     ACM denies the allegations in this paragraph and demands strict proof thereof.

40.     ACM denies the allegations in this paragraph and demands strict proof thereof.

41.     ACM denies the allegations in this paragraph and demands strict proof thereof.

42.     ACM denies the allegations in this paragraph and demands strict proof thereof.

43.     ACM denies the allegations in this paragraph and demands strict proof thereof.

44.     ACM denies the allegations in this paragraph and demands strict proof thereof.

WHEREFORE, ACM demands judgment in its favor with prejudice on Count II.

## <u>AFFIRMATIVE DEFENSES</u>

ACM states the following affirmative defenses without assuming the burden of proof on any such defenses that would otherwise fall on SS&C.

### First Affirmative Defense

The Counterclaims fail to state a claim against ACM upon which relief can be granted. Among other things, ACM did not breach the Master Agreement but terminated it due to SS&C's breach and failure to cure, and ACM was not unjustly enriched because SS&C did not confer a benefit upon ACM since SS&C never implemented CAMRA for ACM and ACM did not receive anything of value from SS&C despite paying SS&C more than $1.78 million in fees.

**Second Affirmative Defense**

The Counterclaims are barred by the doctrine of waiver.  Among other things, SS&C acknowledged multiple times that the Completion of Implementation standard necessary to trigger payment under Work Request Two had not been met and did not inform ACM at any point before ACM filed this action on May 15, 2017, that SS&C believed the standard had been met.  Further, SS&C negotiated and agreed in Work Request Two to a fixed fee of $728,725 for the implementation of CAMRA for ACM.  SS&C agreed that any additional hours would be described in a new work request, which never occurred.

**Third Affirmative Defense**

The Counterclaims are barred by SS&C's own actions or omissions.  Among other things, SS&C induced ACM to enter into the Master Agreement by making misrepresentations about the suitability of CAMRA on a hosted basis as a software solution for ACM, including CAMRA's functionality, integration, and automation, and SS&C's capabilities, including the expertise and availability of its "Professional Services" team, and its ability to complete the implementation in four to six months.  Further, SS&C failed to implement CAMRA for ACM, as agreed.  Thus, ACM's obligations under the Master Agreement have been discharged.

**Fourth Affirmative Defense**

The Counterclaims are barred because of SS&C's prior independent breach of the Master Agreement.  Among other things, SS&C failed to implement CAMRA for ACM.  Thus, ACM's obligations under the Master Agreement have been discharged.

**Fifth Affirmative Defense**

The Counterclaims are barred under the doctrine of unclean hands.  Among other things, SS&C made misrepresentations to ACM prior to the execution of the Master Agreement to induce ACM to enter into the contract about the suitability of CAMRA on a hosted basis as a software

solution for ACM, including CAMRA's functionality, integration, and automation, and SS&C's capabilities, including the expertise and availability of its "Professional Services" team, and its ability to complete the implementation in four to six months.  ACM would not have entered into the Master Agreement but for SS&C's misrepresentations.

### Sixth Affirmative Defense

The Counterclaims are barred by the doctrine of laches.  Among other things, SS&C knew yet failed to inform ACM that SS&C allegedly incurred over 4,000 hours of unbilled time towards the implementation of CAMRA for ACM from 2015 to 2017.  SS&C never billed ACM for these hours and per the terms of Work Request Two SS&C agreed to a fixed fee to meet the Completion of Implementation standard.  (ECF No. 35-2 at 1.)  If SS&C ever intended to charge ACM in excess of this agreed-upon fixed fee, it unreasonably delayed in notifying ACM.

### Seventh Affirmative Defense

The Counterclaims are barred because SS&C would be unjustly enriched if it were to recover any damages for the 4,000 hours or $800,000 of allegedly unbilled time SS&C spent on the implementation of CAMRA for ACM from 2015 to 2017.  SS&C would be compensated for these hours twice since it agreed in Work Request Two to a fixed fee of $728,725 upon the Completion of Implementation, which never happened.

### Eighth Affirmative Defense

The Counterclaims are barred by the one-year limitations period in the Master Agreement. (ECF No. 35-1 § 6.7.16.)  At a minimum, all of ACM's alleged acts of breach that occurred before July 20, 2016 are barred based on the Court's Order on ACM's Motion to Dismiss the Counterclaims.  (ECF No. 183 at 8-9.)

### Ninth Affirmative Defense

The Counterclaims are barred under the doctrine of equitable estoppel because SS&C's own wrongful conduct caused ACM not to terminate the Master Agreement earlier.  ACM relied to its detriment on SS&C's representations about its ability and intention to complete implementation of CAMRA for ACM.

### Tenth Affirmative Defense

The Counterclaims are barred because ACM performed any and all obligations required of it under the Master Agreement, including payment of more than $1.78 million in fees to SS&C.

### Eleventh Affirmative Defense

The Counterclaims are barred for failure to satisfy conditions precedent.  Among other things, SS&C failed to give ACM notice that it was in material breach of the Master Agreement or an opportunity to cure as required in the contract.  (ECF No. 35-1 § 6.4.2.)

### Twelfth Affirmative Defense

The Counterclaims are barred, in whole or in part, because ACM's actions at all times were undertaken in good faith and for legitimate business reasons.

### Thirteenth Affirmative Defense

The Counterclaims are barred, in whole or in part, because the provision in the Hosting Agreement[3] requiring ACM to provide SS&C with 120 days' written notice prior to termination or pay a $40,000 fine (four times the $10,000 monthly hosting fee) is an unconscionable penalty clause against public policy.  The provision is excessive and has no relation to actual damages, any damages SS&C suffered as a result of ACM's alleged breach are ascertainable and not difficult to prove, and the parties did not intend to liquidate damages in advance.

---

[3] Attachment B.1 to the Master Agreement for "Hosting, Process Automation and Data Management Services."  (ECF No. 35-1 at 12-14.)

### Fourteenth Affirmative Defense

SS&C's unjust enrichment counterclaim is barred because SS&C has an adequate remedy at law under the Master Agreement.

### Fifteenth Affirmative Defense

Without admitting SS&C suffered damages or that ACM is or should be liable for any such damages, SS&C failed to mitigate, minimize, or avoid any loss or damage it allegedly sustained.

### Sixteenth Affirmative Defense

SS&C cannot obtain restitution through unjust enrichment because it conferred the alleged benefit on ACM through its own wrongful conduct, including, among other things, inducing ACM to enter into the Master Agreement by making misrepresentations about the suitability of CAMRA on a hosted basis as a software solution for ACM, including CAMRA's functionality, integration, and automation, and SS&C's capabilities, including the expertise and availability of its "Professional Services" team, and its ability to complete the implementation in four to six months. ACM would not have entered into the Master Agreement but for SS&C's misrepresentations.

### Seventeenth Affirmative Defense

SS&C's damages, if any, were not caused by any action or omission of ACM.

ACM reserves and asserts all defenses and affirmative defenses available under any applicable federal or state law.  ACM reserves the right to assert any additional defenses or affirmative defenses that may develop during the litigation of this action or to correct, supplement, or amend these affirmative defenses up through and including trial.

### <u>TRIAL BY JURY DEMANDED</u>

ACM demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, ACM respectfully requests entry of judgment and the following relief:

(a)      dismissing the Counterclaims in their entirety with prejudice or, alternatively, entering judgment in ACM's favor;

(b)      awarding to ACM the costs of defending against the Counterclaims, including attorneys' fees and costs; and

(e)      granting such other and further relief as the Court deems just and proper.

Dated: March 5, 2019                    Respectfully Submitted,

**HOLLAND & KNIGHT LLP**

By: */s/ Christopher M. Cerrito*
Christopher M. Cerrito (ct17183)
One Stamford Plaza
263 Tresser Boulevard, Suite 1400
Stamford, CT 06901
Phone: (203) 905-4500
Fax: (203) 724-3944
E-mail: chris.cerrito@hklaw.com
and

By: */s/ Allison Kernisky*
Joseph Mamounas (phv09010)
joseph.mamounas@hklaw.com
Allison Kernisky (phv09011)
allison.kernisky@hklaw.com
701 Brickell Avenue
Suite 3300
Miami, FL 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799

*Counsel for ARMOUR Capital Management LP*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 5, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be send by email to all parties by operation of the Court's electronic filing system or by mail to any counsel or self-represented party unable to accept electronic filing, as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: *<u>/s Allison Kernisky</u>*
Allison Kernisky (phv09011)