UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

ARMOUR CAPITAL MANAGEMENT LP,

                Plaintiff,

      - against -

SS&C TECHNOLOGIES, INC.,

                Defendant.

3:17-cv-00790-JAM

---

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE STEVEN KURSH

PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
Robert A. Atkins
Jeannie S. Rhee
Jeffrey J. Recher
Joshua D. Kaye
1285 Avenue of the Americas
New York, New York 10019
ratkins@paulweiss.com
jrhee@paulweiss.com
jrecher@paulweiss.com
jkaye@paulweiss.com
Telephone: (212) 373-3000

Kevin J. O'Connor
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109-1775
koconnor@hinckleyallen.com
Telephone: (617) 378-4394

Jeffrey J. Mirman
Alexa T. Millinger
Hinckley, Allen & Snyder LLP
20 Church Street, 18th Floor
Hartford, Connecticut 06103
jmirman@hinckleyallen.com
amillinger@hinckleyallen.com
Telephone: (860) 331-2762

*Attorneys for Defendant
SS&C Technologies, Inc.*

**Table of Contents**

**Page**

Table of Authorities ..................................................................................................................... ii
Preliminary Statement.................................................................................................................. 1
Argument ..................................................................................................................................... 1
I.    Kursh Offers Improper Legal Conclusions And Engages In Impermissible Fact-Finding .............................................................................................................................. 2
II.    Kursh Advances An Inapplicable Standard of Care That Will Mislead and Confuse the Jury.................................................................................................................. 5
III.    Kursh's Opinion on Lost Employee Time Is Irrelevant........................................................ 7
Conclusion ................................................................................................................................... 8

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Callhoun* v. *McCarthy*,
　No. HHDCV126032045S, 2014 WL 4746698 (Conn. Super. Ct. Aug. 13, 2014)....................6

*Daubert* v. *Merrell Dow Pharm., Inc.*,
　509 U.S. 579 (1993)..................................................................................................................1

*Dominion Resources SVC, Inc.* v. *Alstom Power, Inc.*,
　No. 3:16-CV-544, 2018 WL 3752878 (D. Conn. Aug. 8, 2018) ...............................................2

*Glazer* v. *Dress Barn, Inc.*,
　274 Conn. 33 (2005) .................................................................................................................6

*Highland Capital Mgmt., L.P.* v. *Schneider*,
　379 F. Supp. 2d 461 (S.D.N.Y. 2005).......................................................................................5

*Kidder, Peabody & Co., Inc.* v. *IAG Int'l Acceptance Grp. N.V.*,
　14 F. Supp. 2d 391 (S.D.N.Y. 1998).....................................................................................4, 6

*Lynch* v. *Trek Bicycle Corp.*,
　374 Fed. Appx. 204 (2d Cir. 2010)...........................................................................................1

*Nazami* v. *Patrons Mut. Ins. Co.*,
　280 Conn. 619 (2006) ...............................................................................................................4

*Primavera Familienstifung* v. *Askin*,
　130 F. Supp. 2d 450 (S.D.N.Y. 2001).......................................................................................5

*Sharkey* v. *J.P. Morgan Chase & Co.*,
　978 F. Supp. 2d 250 (S.D.N.Y. 2013).......................................................................................7

*SLSJ, LLC* v. *Kleban*,
　277 F. Supp. 3d 258 (D. Conn. 2017) ............................................................................2, 5, 6, 7

*In re Xerox Corp. Sec. Litig.*,
　746 F. Supp. 2d 402 (D. Conn. 2010).......................................................................................2

**OTHER AUTHORITIES**

Fed. R. Evid. 702 ..........................................................................................................................1, 7

Defendant SS&C Technologies, Inc. ("SS&C") respectfully submits this memorandum of law in support of its motion *in limine* to exclude testimony of Armour Capital Management LP's ("ACM") supposed expert witness, Steven Kursh.

**Preliminary Statement**

The Court should preclude Kursh from testifying at trial for three reasons. *First*, Kursh's testimony invades the province of the jury by offering legal conclusions, making findings about disputed issues of fact, and presenting lawyer arguments about SS&C's alleged conduct. *Second*, Kursh opines on the standard of care that SS&C should have applied in making marketing statements to ACM during the sales process leading up to the parties' contract. But the source from which Kursh derives this supposed standard of care applies only to software ***development and engineering*** (not the sale or marketing of products), has never been applied by any court anywhere to our knowledge, and expressly acknowledges that it is "***inherently unsuited to be a standard***." *Third*, Kursh's testimony that ACM is entitled to damages for "lost employee time" should be excluded because ACM is barred from recovering such damages under the parties' contract as set forth in SS&C's *in limine* motion No. 2 and on the independent ground that it requires no specialized knowledge. As Kursh admitted, "a child in middle school" could do the same thing.

**Argument**

District Courts have a gatekeeping role under Fed. R. Evid. 702 to ensure that expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Lynch* v. *Trek Bicycle Corp.*, 374 Fed. Appx. 204, 206 (2d Cir. 2010); *see also Daubert* v. *Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Expert testimony that cannot meet this standard does not "help the trier of fact" and should be excluded. Fed. R. Evid. 702(a).

## I. Kursh Offers Improper Legal Conclusions And Engages In Impermissible Fact-Finding

Kursh's proposed testimony is almost exclusively devoted to his "opinions" on ultimate questions of liability. Kursh's testimony on questions of liability is inadmissible.

It is black-letter law that experts may not take on the role of the jury and offer legal conclusions masquerading as expert testimony. "[E]xperts are not permitted to present testimony in the form of legal conclusions." *SLSJ, LLC* v. *Kleban*, 277 F. Supp. 3d 258, 275 (D. Conn. 2017) (citing *U.S.* v. *Articles of Banned Hazardous Substances Consisting of an Undetermined No. of Cans of Rainbow Foam Paint*, 34 F.3d 91, 96 (2d Cir. 1994)). When experts offer legal conclusions, they "usurp[]" the jury's role and "do[] not aid the jury in making a decision." *SLSJ*, 277 F. Supp. 3d at 275 (citing *U.S.* v. *Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (internal quotation marks omitted); *see also Dominion Resources SVC, Inc.* v. *Alstom Power, Inc.*, No. 3:16-CV-544, 2018 WL 3752878, at *11 (D. Conn. Aug. 8, 2018). Of direct relevance here, as the court in *In re Xerox* recognized, is that an expert cannot testify as to what a defendant "knew or should have known." *See In re Xerox Corp. Sec. Litig.*, 746 F. Supp. 2d 402, 415 (D. Conn. 2010) (expert in securities fraud action "would not be allowed to give testimony at trial as to what management knew or should have known"); *see also SLSJ*, 277 F. Supp. 3d at 291 (an expert's legal conclusions are "particularly" inappropriate when "an expert tracks the language of a legal standard or statute").

Kursh's opinions are specifically directed to whether SS&C acted reasonably—the very testimony that the *In re Xerox* court and others have held is not admissible. Indeed, ACM *tasked* Kursh with forming opinions on whether SS&C's conduct was reasonable. As Kursh testified, he "was retained to analyze **whether SS&C acted reasonably** under a basic standard of care with respect to its representations pre-contractual [*sic*] that it made to ACM. ***That's what I***

2

*was retained to do*." (Ex. 1, Kursh Deposition dated Aug. 28, 2018 ("Kursh Dep.") 117:18–22 (emphasis added).) Indeed, Kursh defined his "expertise in regards to this matter [as] ***whether or not SS&C acted reasonably under a basic standard of care*** with respect to the truth of pre-contractual sales representations it made to ACM." (*Id.* at 80:12–15 (emphasis added).)

Kursh's report is rife with examples of the very type of legal conclusions that he was retained to provide:

- "***I conclude that SS&C did not act reasonably*** when making a number of pre-contractual representations to ACM, such that ***SS&C knew or at a minimum should and easily could have known that the representations were false***." (Ex. 2, Kursh Expert Report ("Kursh Rep.") ¶ 78 (emphasis added).)

- "***I find that SS&C failed to act reasonably*** in making these representations to [ACM]." (*Id.* ¶ 137 (emphasis added).)

- ACM "invest[ed] millions of dollars and thousands of hours into a software solution and its implementation . . . ***in reliance on SS&C's misrepresentations***." (*Id.* ¶ 116 (emphasis added).)

- "[I]n my opinion, the acceptance standard for Completion of Implementation [under the Master Agreement] was never met." (*Id.* ¶ 244.)

- "[W]hile in sales you have puffing, ***there's a difference between puffing and a standard of care with misrepresentations***, which is that line that was crossed here." (Kursh Dep. 213:23–214:1 (emphasis added).)

Indeed, Kursh's report tracks Connecticut's legal standard for negligent misrepresentation. He repeatedly offers opinions about what SS&C "knew or should have known was false."[1] *See*

---

[1] *See, e.g., id.* ¶ 125 ("I find that *SS&C knew (or should and easily could have known)* it was unable to deliver the solution it knew ACM needed.") (emphasis added); *Id.* ¶ 185 ("SS&C *should and easily could have known* this information prior to ACM becoming a client.") (emphasis added); *Id.* ¶ 228 ("SS&C *fully knew or should or easily could have known* of the issue.") (emphasis added); *Id.* ¶ 240 ("SS&C's precontractual misrepresentations, which promised ACM a 'solution' SS&C *knew (or should and easily could have known)* it could not deliver.") (emphasis added). *See also id.* ¶¶ 78, 103, 109, 112, 123, 153, 156, 174, 188, 200, 203, 218, 221, 231, 233; Kursh Dep. 266:16–20.

*Nazami* v. *Patrons Mut. Ins. Co.*, 280 Conn. 619, 626 (2006) (recognizing that a negligent misrepresentation claim requires proof that the defendant made a statement that it "knew or should have known was false"). Kursh's report, for example, asserts nearly 50 times that SS&C supposedly "knew or should have known" that a statement was false or that SS&C acted unreasonably.[2] Not only does this testimony offer inadmissible legal conclusions, it is of no help to the jury. The "reasonableness of [a party's] conduct" is "the sort of question[] that lay jurors have been answering ***without expert assistance*** from time immemorial." *Kidder, Peabody & Co., Inc.* v. *IAG Int'l Acceptance Grp. N.V.*, 14 F. Supp. 2d 391, 404 (S.D.N.Y. 1998) (emphasis added).

Kursh bases his opinions on little more than his own characterization of what the evidence supposedly shows. This testimony, too, invades the province of the jury and Kursh should be precluded from usurping the jury's role as fact-finder. Kursh's report routinely draws conclusions about disputed issues of fact. Kursh asserts, for example:

- "***SS&C was aware at the time*** it did not have appropriately qualified, experienced or available staff in Professional Services to draw from to work on ACM's implementation. (Kursh Rep. ¶ 166 (emphasis added).)

- "***The evidence shows*** that SS&C's Professional Services lacked project management skills, had limited proficiency in CAMRA, lacked customer communication skills, and thus, did not have the requisite available or qualified resources, or capable management, to staff ACM's implementation." (*Id.* ¶ 174 (emphasis added).)

- "It is my opinion that CAMRA on a hosted basis for ACM was an untested product SS&C was trying to learn to implement as it went along. ***ACM was an unwitting guinea pig***." (*Id.* ¶ 102 (emphasis added).)

Kursh's purported fact finding is likewise an impermissible subject of expert testimony. Experts who lack personal knowledge cannot establish facts and cannot be used as narrators. If Kursh's

---

[2] *See* Kursh Rep., *supra* note 1; *See also id.* ¶¶ 37, 38, 39, 78, 87, 94, 96, 107, 113, 119, 120, 124, 133, 137, 145, 164, 175, 185, 186, 208, 210, 211, 223, 232, 234, 235

4

underlying opinions were admissible (and they are not), he may be permitted to testify about which facts in evidence he relied on to support those opinions. But Kursh should in no event be permitted to engage in a fact-finding exercise or, in effect, give a summation by telling the jury what the evidence supposedly "shows," drawing conclusions about SS&C's state of mind and its supposed "awareness" of certain facts, or engaging in inflammatory characterizations of the evidence. *See Highland Capital Mgmt., L.P.* v. *Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005) ("Whatever expertise [an expert] may possess, no expert may supplant the role of counsel in making argument at trial, and the role of the [fact finder] [in] interpreting the evidence." (internal quotation marks omitted)); *Primavera Familienstifung* v. *Askin*, 130 F. Supp. 2d 450, 529-30 (S.D.N.Y. 2001) (excluding expert testimony where plaintiffs' expert "relie[d] almost exclusively on his interpretation of deposition testimony" and did "no more than counsel . . . will do in argument").

In short, the testimony that Kursh would offer is a "textbook example[] of the sort of judgmental verdict-by-expert's opinion" that Second Circuit law "expressly forbid[s]." *SLSJ*, 277 F. Supp. 3d at 290.

## II.   Kursh Advances An Inapplicable Standard of Care That Will Mislead and Confuse the Jury

Kursh also intends to testify that SS&C's pre-contractual statements to ACM were governed by a heightened standard of care that has never been used by any court before and that, on its own terms, has no applicability here. If permitted to testify, Kursh would opine that SS&C was subject to a standard of care derived from "ISO Technical Report 19759" (the "Technical Report"). Kursh would testify, for example, that the Technical Report required SS&C to conduct a forensic evaluation of ACM's staffing and capabilities before selling CAMRA in order to determine whether CAMRA was suitable for ACM's needs. (Kursh Rep. ¶ 158.) But the Technical Report addresses only ***software engineering and development***. (Ex. 3, ACM's

5

Proposed Ex. 244, Technical Report, 1-5 (Pierre Bourque & Richard E. (Dick) Fairley eds., 2014) (emphasis added).)  As its name suggests, the Technical Report covers, for example, "software design process," "software structure and architecture," "coding," and "testing techniques."  (*Id.* at 2-2, 2-4, 3-7, 4-7.)  It does not, and does not purport to, provide standards or guidance on how to appropriately communicate information in connection with the sale or marketing of a product—the only relevant question here.  And even as to the software engineering guidance that it actually supplies, the Technical Report makes clear that it is "***inherently unsuited to be a standard***" and that the discussion it offers is "descriptive rather than prescriptive."  (*Id.* at B-2, B-3 (emphasis added).)

To permit Kursh to testify that SS&C was subject to a standard of care derived from the Technical Report finds no support in the law, offers no assistance to the trier of fact, and would work substantial prejudice to SS&C.  No court to our knowledge has ever sanctioned the use of the Technical Report as a standard of care in any context—let alone to govern the quintessential jury determination of whether a product seller acted reasonably.  The jury will be asked to consider whether SS&C "fail[ed] to exercise *reasonable care* or competence in obtaining or communicating [false] information" to the plaintiff.  *See Glazer* v. *Dress Barn, Inc.*, 274 Conn. 33, 73 (2005) (emphasis added).[3]  Reasonableness is "a quintessential common law jury question." *SLSJ*, 277 F. Supp. 3d at 278 (citation omitted); *Kidder*, 14 F. Supp. 2d at 404 (lay jurors have considered questions of reasonableness "without expert assistance from time immemorial").

---

[3] *See also Callhoun* v. *McCarthy*, No. HHDCV126032045S, 2014 WL 4746698, at *3 (Conn. Super. Ct. Aug. 13, 2014) ("The test of negligent misrepresentation involves the breach of a duty to exercise *reasonable care* in communicating information upon which another may reasonably be expected to rely in conducting their affairs.") (emphasis added) (citation omitted).

6

Kursh thus should be precluded from inviting the jury to incorrectly conclude that SS&C was subject to a heightened standard of care derived from an inapplicable software development technical report.

### III. Kursh's Opinion on Lost Employee Time Is Irrelevant

Kursh also intends to testify that SS&C's failure to act reasonably caused ACM to suffer financial losses based on "lost employee time." For the reasons set forth in SS&C *in limine* motion No. 2, ACM is barred by the contractual damages waiver in the Master Agreement from recovering for lost employee time.

Kursh's testimony on this subject also is inadmissible for the separate and independent reason that, as Kursh admitted, he applied no specialized knowledge or expertise in calculating this damages estimate. Kursh merely derived alleged "lost employee time" damages by applying an hourly rate to a litigation estimate prepared by ACM of the hours its employees spent using CAMRA. In other words, Kursh did grade school arithmetic. Yet Kursh readily acknowledged the lack of specialized knowledge required to derive his damages opinion. He testified that his "experience and expertise [in] this is high school algebra," and that "[t]here's nothing specific or tricky about it. You can do the spreadsheet, too." (Kursh Dep. 134:16–19.) He later revealed that the "method" he applied to these damages "is basic math. Your expert can do it. You can do it. If you have a child in middle school, she or he could do it." (*Id.* at 310:17–19, 311:4–6.)

Expert testimony concerning "'lay matters,' which are not beyond the jury's ken is not admissible." *SLSJ*, 277 F. Supp. 3d at 279. A court should exclude expert testimony where "a jury is capable of understanding and deciding without the expert's help." *Sharkey* v. *J.P. Morgan Chase & Co.*, 978 F. Supp. 2d 250, 252 (S.D.N.Y. 2013). Kursh's testimony about ACM's lost employee time thus should be excluded under Fed. R. Evid. 702(a).

7

**Conclusion**

The Court should grant SS&C's motion to preclude any testimony by Steven Kursh.

Dated: New York, New York
November 27, 2019

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON &
  GARRISON LLP

By:   /s/ Robert A. Atkins
      Robert A. Atkins
      Jeannie S. Rhee
      Jeffrey J. Recher
      Joshua D. Kaye
1285 Avenue of the Americas
New York, New York 10019
ratkins@paulweiss.com
jrhee@paulweiss.com
jrecher@paulweiss.com
jkaye@paulweiss.com
Telephone: (212) 373-3000

Kevin J. O'Connor
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109-1775
koconnor@hinckleyallen.com
Telephone:  (617) 378-4394

Jeffrey J. Mirman
Alexa T. Millinger
Hinckley, Allen & Snyder LLP
20 Church Street, 18th Floor
Hartford, Connecticut 06103
jmirman@hinckleyallen.com
amillinger@hinckleyallen.com
Telephone:  (860) 331-2762

*Attorneys for Defendant
SS&C Technologies, Inc.*

8