UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ARMOUR CAPITAL MANAGEMENT LP,

Plaintiff,

v.

SS&C TECHNOLOGIES INC.,

Defendant.

Case No. 17-cv-00790-JAM

November 27, 2019

**ACM'S MOTION *IN LIMINE* NO. 2: TO EXCLUDE ANY REFERENCE OR ARGUMENT RELATED TO CERTAIN POST-CONTRACTUAL CONDUCT[1]**

ACM moves to exclude any evidence, reference, or argument concerning or arising out of the parties' post-contractual conduct, unless introduced to establish the falsity and awareness of SS&C's pre-contractual misrepresentations or damages or to rebut SS&C's arguments.

The grounds for this motion are set forth below.

Much post-contractual conduct is no longer at issue in this case, rendering such evidence irrelevant and potentially confusing to the jury. Before the Court's March 16, 2018 Order on Motion to Dismiss (ECF No. 75), ACM's allegations revolved around two core sets of facts.

The first set concerned SS&C's numerous false and misleading misrepresentations leading to the execution of the Master Agreement. Among other things, ACM alleged that SS&C misrepresented: (i) that CAMRA was integrated, automated, and accurate, (ii) CAMRA was suitable and the hosting deployment option was appropriate for ACM; and (iii) SS&C had the experience and capabilities to implement CAMRA for ACM, including within four to six months

---

[1] Unless otherwise specified, capitalized terms have the same meaning as in the First Amended Complaint (ECF No. 35) ("FAC"). The "Master Agreement" is the "Master Agreement for Software, Maintenance and Support, Professional Services and Other Services" and each incorporated attachment and Work Request (ECF No. 35-1 at 1, § 4.1; ECF No. 35-2 at 1).

of contract execution.  (*E.g.*, ECF No. 35 at 4-8, 20-21.)  Discovery—including SS&C's internal documents and its own witnesses' testimony—has revealed the falsity of numerous statements SS&C made to ACM, ultimately causing it more than $3.25 million in damages.

The second set concerned SS&C's breaches of the Master Agreement and related Work Requests, with ACM claiming that SS&C breached the Master Agreement by, among other things, failing to implement CAMRA for ACM or to cure its inability to do so.  (*Id*. at 8-17.)

However, the Court's March 16, 2018 Order on Motion to Dismiss (ECF No. 75) narrowed the triable issues.  There, the Court concluded that ACM's claims arising out of a breach of the Master Agreement and Work Request One were time-barred, but breach claims arising out of Work Requests Two and Three could proceed.  (*Id*. at 6-10.)  The Court also found that ACM's claim for negligent misrepresentation was adequately pled.  In declining to dismiss that claim, the Court explained that the economic-loss rule was inapplicable because ACM's complaint "relied exclusively on pre-contractual misrepresentations that allegedly induced ACM to enter into the Master Agreement with SS&C."  (*Id*. at 12-14.)  However, "[t]o the extent that ACM intends to incorporate post-contractual misrepresentations into its negligent misrepresentation claim, such claims are barred under the economic loss doctrine."  (*Id.* at 14.)  Thus, the legal basis for ACM's negligent-misrepresentation claim was limited to SS&C's pre-contractual misrepresentations.

The Court further focused the triable issues in its September 11, 2019 Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment.  (ECF No. 194.)  There, the Court denied SS&C summary judgment on ACM's negligent-misrepresentation claim and on ACM's CUTPA and rescission claims to the extent they are predicated on the pre-contractual misrepresentations forming the basis of ACM's negligent-misrepresentation claim.  (*Id*. at 10.)  The Court, however, granted summary judgment for SS&C on ACM's contract claim in its

entirety, concluding that there was "no genuine fact issue to show that ACM sustained damages that are subject to recovery by means of a breach of contract claim." (*Id*. at 18.)

As a result of the Court's decisions, the parties' dispute is no longer about whether SS&C breached the Master Agreement, which might call for an examination of why CAMRA was not implemented at ACM. Instead, the trial will decide whether SS&C made false, untrue, and/or misleading misrepresentations or engaged in deceptive and unfair trade practices in violation of CUTPA, causing ACM damages. Since ACM's remaining claims do not "arise out of the breach of any contractual obligation," but rather "implicate contract formation," only a limited subset of post-contractual facts is relevant. *Ulbrich v. Groth*, 78 A.3d 76, 98-99 (Conn. 2013); *Ryder v. J.P. Morgan Chase Bank*, 13-CV-01929, 2015 WL 13793263, at *9 (D. Conn. Aug. 19, 2015).

Nevertheless, ACM anticipates that SS&C will seek to introduce evidence at trial of post-contractual conduct by ACM to argue that it caused, or at least contributed to causing, the failed implementation of CAMRA at ACM (and also by SS&C to argue (baselessly) its alleged good post-contractual conduct). There is, however, no basis in law to support the admissibility of such evidence, which is irrelevant to ACM's claims, SS&C's defenses, and SS&C's remaining counterclaim. If allowed, such evidence will unfairly prejudice the jury if admitted at trial.

To succeed on its claim for negligent misrepresentation, ACM must prove that: (i) SS&C supplied ACM with untrue or false information; (ii) SS&C failed to use reasonable care in making or communicating the information to ACM; (iii) SS&C supplied the untrue or false information to ACM to induce it to enter into the Master Agreement; and (iv) ACM justifiably relied on the untrue or false information that SS&C provided, and was injured as a result. *Glazer v. Dress Barn Inc.*, 873 A.2d 929, 955-56 (Conn. 2005) (citing 3 Restatement (Second) Torts § 552 (1979)).

Only the second and fourth elements of that claim, and the related elements for CUTPA and rescission, allow for a limited class of post-contractual evidence at trial.

The second element requires ACM to prove that SS&C knew or should have known that the untrue or false information supplied to ACM was false at the time it was communicated. *Glazer*, 873 A.2d at 955-56.  The Connecticut Supreme Court has explained that "[s]ubsequent conduct may be probative of whether a declarant knew or should have known a statement was false at the time it was made."  *Id*. (citing *Updike, Kelly & Spellacy, P.C. v. Beckett*, 850 A.2d 145, 166 (Conn. 2004) (evidence that attorney's fees accrued well above estimate shortly after filing litigation provided reasonable basis to conclude declarant should have known estimate was false when given));  *Associated Constr./AP Constr., LLC v. Hanover Ins. Co*., 15-CV-1600, 2018 WL 3998971, at *9 (D. Conn. Aug. 21, 2018).  Thus, under settled Connecticut law, ACM should be permitted to introduce at trial evidence of SS&C's *post*-contractual conduct for the limited purpose of proving SS&C knew or should have known its *pre*-contractual statements were false.

There are numerous examples of post-contractual conduct showing the falsity of SS&C's pre-closing misrepresentations throughout the discovery in this case, including:

- SS&C knew the importance to ACM of automation and presented a module called CI Manager as an automated reconciliation tool, which ACM selected.  But SS&C's then-head of Professional Services, Iwona Olszewska, stated in post-contractual documents that CI Manager could present an "operational difficulty" for ACM and provided "limited at best functionality to cover for best practice."  ACM Ex. 103.  Ms. Olszewska also conceded that SS&C did not sell ACM the "right" or "valid" solution and "RECON should have been strongly suggested."  ACM Ex. 94; ACM Ex. 101.  SS&C's Don Johnson agreed, testifying that "all [SS&C] clients should purchase Recon."  6/6/2018 D. Johnson Tr. at 362:21-363:13.  This indicates SS&C knew or should have known before the contract was executed that CAMRA without RECON likely would not be automated for ACM.

- SS&C also knew that an important feature in ACM's selection of CAMRA was its ability to integrate data from different third-party providers.  One of ACM's third-party providers was AVM, which SS&C knew and with which it represented that CAMRA could integrate.  SS&C also knew that it never had attempted to integrate CAMRA with AVM but failed to tell ACM this or to stop using AVM.  Further, post-contractually, SS&C learned that using AVM would "add[] time to the reconciliation" and would be "all manual."  ACM Ex. 34; ACM Ex. 101.  This evidence is probative of whether SS&C knew or should have known its pre-contractual representations about integrating CAMRA with AVM were false.

- SS&C also represented that it had experienced and capable professionals to implement CAMRA for ACM.  Post-contractually, none of these individuals worked on ACM's

implementation and according to SS&C's Manuel Antonio Gonzalez and Daniel Pallone, the project manager SS&C assigned, Adriana Johnson, was not a strong project manager. ACM Ex. 123; 5/2/2018 D. Pallone Tr. at 328:10-335:20.  Mr. Gonzalez also testified that he would have removed Scott Rice, the SS&C employee who worked the most on ACM's implementation, for poor performance but had no suitable replacement.  4/30/2018 T. Gonzalez Tr. at 235:23-238:10.  This evidence is probative of the truthfulness of SS&C's pre-contractual representations about the capabilities of its implementation staff.

- SS&C's experience with Bimini Capital Management Inc. ("Bimini"), which began after its contract with ACM, further evidences that SS&C knew or should have known its pre-contractual representations to ACM about the suitability of CAMRA and appropriateness of the hosted deployment option were false.  ACM and Bimini are relatively similarly sized mortgage REITs.  Like ACM, SS&C sold CAMRA to Bimini with the hosted deployment option.  Also like ACM, SS&C's implementation of CAMRA on hosting at Bimini failed. Bimini ultimately "pulled the plug," with one of its principals, Hunter Haas, describing SS&C's implementation as a "dumpster fire" and "total nightmare" and testifying that Bimini was "paying [SS&C] to fix [its] system." Haas 5/7/18 Tr. at 12:2-13:18; 85:2-91:2; 93:2-5.  This evidence suggests that SS&C at least should have known its pre-contractual representations to ACM about CAMRA and hosting were false.

The fourth element requires ACM to establish that its injuries were caused by SS&C's misrepresentations.  *Johnson v. Chesebrough-Pond's USA Co.*, 918 F. Supp. 543, 548 (D. Conn. 1996).  This calls for post-contractual evidence to show ACM sustained such injuries.  Having proved that SS&C made misrepresentations, this evidence is limited to showing the consequences logically flowing from SS&C's misconduct.  For example, SS&C misrepresented that CAMRA was suitable and hosting was appropriate for ACM, and so ACM may introduce evidence that CAMRA was not implemented at ACM.  Or because SS&C misrepresented that CAMRA was integrated and automated, ACM may introduce evidence that its CAMRA setup was neither (including that its third-party connections essentially were inoperative for more than a year).

Conversely, SS&C cannot be permitted to introduce evidence of ACM's alleged post-contractual negligence to argue that ACM—and not SS&C—caused ACM's damages.  This is because none of SS&C's affirmative defenses implicates ACM's post-contractual conduct. Determinatively, SS&C has not pleaded a supervening or intervening cause so as to provide that ACM's allegedly negligent post-contractual conduct was the proximate cause of its injuries.  (ECF

No. 101.)  In Connecticut, "superseding cause is a special defense that admits the allegations of a complaint but seeks to establish that the plaintiff cannot prevail."  *Snell v. Norwalk Yellow Cab, Inc*., 212 A.3d 646, 658 (Conn. 2019).  But "[a] defendant's failure to plead a special defense precludes the admission of evidence on the subject . . . [and] constitute[s] a waiver of that defense."[2]  *Oakland Heights Mobile Park Inc. v. Simon*, 651 A.2d 281, 283 (Conn. App. Ct. 1994).

Moreover, SS&C has not sought to apportion damages based on each parties' respective negligence, and even if it had, doing so would be improper under Connecticut law because comparative negligence principles are inapplicable to negligent misrepresentation claims seeking only purely economic damages.  *Williams Ford Inc. v. Hartford Courant Co*., 657 A.2d 212, 222-25 (Conn. 1995); *Andersen v. Bitondo*, No. 970081677S, 1998 WL 279810, at *1 (Conn. Super. Ct. May 18, 1998) (damages sought for negligent misrepresentation "not within the scope of the apportionment statute"); *Vaught v. Pequot Props. LLC*, No. 554980, 2001 WL 717446, at *1 (Conn. Super. Ct. June 1, 2001) (purely commercial losses resulting from negligent misrepresentations not subject to apportionment).[3]  This is precisely the case here.

Additionally, SS&C's only remaining breach claim against ACM pertains to the termination of the "Hosting Services" agreement.  According to SS&C, "the parties agreed in Attachment B-1 of the Master Agreement to enter into a five-year agreement for 'Hosting Services' for a monthly fee of $10,000, terminable by ACM at any time upon 120 days written notice to SS&C."  (ECF 101 at 22.)  SS&C asserts that ACM "failed to provide SS&C with the required

---

[2] "Federal law governs whether a defense has been waived in federal court, but state law governs which defenses must be pleaded affirmatively to avoid waiver."  *Brent v. Wayne Cty. Dep't of Human Servs*., 901 F.3d 656, 680 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1551 (2019).

[3] SS&C's "First Affirmative Defense" alleges that "[t]his action is barred in whole or in part because ACM has not suffered any injury or damage as a result of any act or omission of SS&C, or, in the alternative, because ACM was contributorily negligent in any injury or damage that ACM claims to have sustained."  (ECF No. 101 at 18.)  But this defense is irrelevant, as Connecticut has abolished contributory negligence.  *Williams Ford,* 657 A.2d at 222-25.

120-day written notice of ACM's termination of the Hosting Services" in 2017 and so is owed

$40,000.  (*Id.*)  But whatever ACM's remaining obligations under the Master Agreement, they

have been discharged by SS&C's misrepresentations and deceptive and misleading conduct.  Thus,

evidence concerning or relating to ACM's post-contractual conduct during the failed CAMRA

implementation likewise is irrelevant to SS&C's breach claim and should be excluded at trial.

For the same reasons, the Court should preclude SS&C's proposed expert witnesses—

Brooks Hilliard and Michael Maffattone—from rendering any opinions or testifying about the

parties' post-contractual conduct.  For example, Mr. Hilliard and Mr. Maffattone seek to opine on

the following issues, all of which are irrelevant: (i) "ACM's ability or unwillingness to completely

carry out its implementation responsibilities"; (ii) "SS&C fulfilled its implementation

responsibilities, as required by Work Request One and Work Request Two, with an effort that

exceeded the normal and customary practices common for the commercial software industry"; (iii)

"the CAMRA contracts at issue in this case follow industry standards and are typical of those

entered into between accounting software vendors and buyers"; and (iv) "ACM thwarted [the]

successful long-term implementation of CAMRA."  (*See* Expert Report of Brooks L. Hilliard at

30-48; Expert Report of Michael Maffattone at 21-27.)[4]  All of this evidence is irrelevant and, if

permitted, would be unfairly prejudicial to ACM given the remaining triable issues.

Finally, an additional area in which ACM should be permitted to introduce post-contractual

evidence is to rebut certain arguments made by SS&C.  For example, despite not having raised an

affirmative defense of waiver or ratification,[5] (*see* ECF No. 101 at 18), SS&C seeks to shoehorn

such a defense into its Proposed Verdict Form (at Question 11) and Proposed Jury Instructions (at

Instructions 2 and 4).  SS&C's theory is that "ACM ratified the Master Agreement by entering

---

[4] The Expert Reports of Brooks Hilliard and Michael Maffattone are attached at Exhibits B and C, respectively, to the Joint Trial Memorandum.

[5] As such, SS&C has waived these defenses.

into Work Request No. 2 or by otherwise accepting the parties' contractual arrangement." (Proposed Verdict Form Question 11.)  If SS&C is permitted to raise this argument at trial, SS&C will have opened the door to ACM's introduction of post-contractual rebuttal evidence, including but not limited to SS&C's own statements on which ACM may have relied in "entering into Work Request No. 2" or "otherwise accepting the parties' contractual agreement." *Vereen v. City of New Haven*, No. 17-CV-1509, 2018 WL 6069098, at \*3 (D. Conn. Nov. 20, 2018); *U.S. v. Elfgeeh*, 515 F.3d 100, 128 (2d Cir. 2008).  ACM should be permitted to introduce such evidence.

WHEREFORE, ACM respectfully requests that the Court exclude any evidence, reference, or argument concerning or arising out of the parties' post-contractual conduct, unless introduced to establish the falsity of SS&C's pre-contractual misrepresentations, damages, or for rebuttal, as more fully set forth above, and award ACM such further relief as is just and proper.

Case No. 17-cv-00790-JAM

Dated: November 27, 2019

Respectfully Submitted,

**HOLLAND & KNIGHT LLP**

By: */s Joseph Mamounas*
Christopher M. Cerrito (ct17183)
chris.cerrito@hklaw.com
One Stamford Plaza
263 Tressler Boulevard, Suite 1400
Stamford, CT 06901
Telephone: (203) 905-4500
Facsimile: (203) 724-3944

Joseph Mamounas (phv09010)
joseph.mamounas@hklaw.com
Allison Kernisky (phv09011)
allison.kernisky@hklaw.com
Manuel Miranda
*(pro hac vice application forthcoming)*
manuel.miranda@hklaw.com
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799

Daniel Mateo (phv10323)
daniel.mateo@hklaw.com
2929 Arch Street
Suite 800
Philadelphia, PA  19104
Telephone: (215) 252-9543
Facsimile: (215) 867-6070

*Attorneys for Plaintiff ARMOUR*
*Capital Management LP*

9

Case No. 17-cv-00790-JAM

**CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be send by email to all parties by operation of the Court's electronic filing system or by mail to any counsel or self-represented party unable to accept electronic filing, as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: */s Allison Kernisky*
Allison Kernisky (phv09011)

10