UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARMOUR CAPITAL MANAGEMENT LP,<br><br>                        Plaintiff,<br><br>v.<br><br>SS&C TECHNOLOGIES INC.,<br><br>                        Defendant. | Case No. 17-cv-00790-JAM<br><br>November 27, 2019 |

**ACM'S MOTION *IN LIMINE* NO. 4: TO EXCLUDE ANY REFERENCE OR ARGUMENT RELATED TO SECTION 6.2.2 OF THE MASTER AGREEMENT[1]**

ACM moves to exclude any evidence, reference, or argument concerning or arising out of Section 6.2.2 of the Master Agreement. The grounds for this motion are set forth below.

Section 6.2.2 of the Master Agreement provides:

> <u>Exclusion of Consequential Damages and Absolute Limitation of SS&C's Liability.</u>  SS&C is not liable for any indirect, special, incidental or consequential damages of any kind, including without limitation, loss of profits, loss of use, business interruption, loss of data, or cost of cover in connection with or arising out of the furnishing, performance of any services under the Master Agreement, any Attachment or any Work Request, or use of the Software furnished hereunder or for breach of this Master Agreement, whether alleged as a breach of contract or tortious conduct, even if SS&C has been advised of the possibility of such damages. SS&C's liability under this Master Agreement for damages will not, in any event, exceed three times in the aggregate the fees paid by Client to SS&C under the relevant Attachment or Work Request giving rise to the claim for damages.

At trial, ACM expects SS&C will seek to introduce the Master Agreement to argue that SS&C is not liable "for any indirect, special, incidental or consequential damages" arising out of SS&C's liability on ACM's negligent-misrepresentation and CUTPA claims.

---

[1] Unless otherwise specified, capitalized terms have the same meaning as in the First Amended Complaint (ECF No. 35) ("FAC"). The "Master Agreement" is the "Master Agreement for Software, Maintenance and Support, Professional Services and Other Services" and each incorporated attachment and Work Request (ECF No. 35-1 at 1, § 4.1; ECF No. 35-2 at 1).

This evidence is irrelevant and unduly prejudicial and should be excluded.

On December 17, 2018, SS&C filed a Motion for Summary Judgment, arguing, *inter alia*, that ACM had no contract damages because Section 6.2.2 of the Master Agreement "bars ACM's claim for lost employee time." (ECF No. 176-1 at 40.) This is because, SS&C argued, "the parties agreed that ACM's remedy in the event of a **breach** was strictly limited to direct contract damages." (*Id*. at 18 (emphasis added).) SS&C also asserted that ACM's CUTPA claim failed because ACM did not suffer any ascertainable loss, as required by Connecticut law. (*Id*. at 40-41 ("Master Agreement Section 6.2.2 bars claims for incidental damages of any kind.").)

On September 11, 2019, the Court entered the Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment (ECF No. 194) (the "Order"). There, the Court evaluated whether ACM was entitled to contract damages "of at least $1.4 million for lost employee time of over 5,000 hours in the course of the unsuccessful effort to implement the CAMRA product." (Order at 16-18.) ACM had argued, *inter alia*, "that lost employee time [was] not a form of consequential damages." (*Id*. at 16.) But the Court disagreed, finding that "ACM's claim for lost employee time . . . [was] subject to the parties' agreed-upon exclusion for consequential damages." (*Id.* at 18.) The Court later granted summary judgment for SS&C on ACM's contract claim. (*Id.*) The Court, however, rejected SS&C's argument concerning CUTPA, finding that it "d[id] not agree with SS&C's argument that there is no genuine fact issue with respect to whether ACM can satisfy CUTPA's 'ascertainable loss' requirement." (*Id.* at 10.)

But the Master Agreement's limitation of liability provision is inapplicable to ACM's negligent-misrepresentation and CUTPA (and rescission) claims for two principal reasons.

First, ACM's damages were not sustained "***in connection with or arising out of*** the furnishing, performance of any services under the Master Agreement, any Attachment or any Work Request, or use of the Software furnished [under the Master Agreement]" but rather as a result of

SS&C's false, untrue, and/or misleading precontractual statements to ACM. (Master Agreement § 6.2.2 (emphasis added).) Thus, Section 6.2.2 is inapplicable to ACM's claims at trial.

In *Ulbrich v. Groth*, the Connecticut Supreme Court explained that "a plaintiff that has a contractual relationship with the defendant can bring a negligent misrepresentation claim against the defendant when the negligent misrepresentations induced the plaintiff to enter into a contract." 78 A.3d 76, 98-99 (Conn. 2013). "Such a claim would not 'arise out of' the breach of any contractual obligation because it would implicate contract formation." *Id.*; *Ryder v. J.P. Morgan Chase Bank*, No. 13-CV-01929, 2015 WL 13793263, at *9 (D. Conn. Aug. 19, 2015); *see also Richard Parks Corrosion Tech. Inc. v. Plas-Pak Indus. Inc.*, No. 10-CV-437, 2012 WL 4471258, at *4 (D. Conn. Sept. 27, 2012) ("merger clause does not prevent [plaintiff] from asserting its negligent misrepresentation count because [plaintiff]'s claim is directed at its inducement to enter the contract rather than altering [its] terms"). As a result, "a remedy on the contract and a remedy for negligent misrepresentation may be independent remedies." *Ulbrich*, 78 A.3d at 98-99.

For this reason, courts nationwide hold that "limitation of liability clauses do not apply to misrepresentations made to induce a party to enter into an agreement." *Sear-Brown Grp. v. Jay Builders Inc.*, 665 N.Y.S.2d 162, 163 (N.Y. 1997); *BHC Dev. L.C. v. Bally Gaming Inc.*, No. 12-2393, 2014 WL 1875161, at *6 (D. Kan. May 9, 2014) (provision limiting damages to the sum paid by plaintiff for a particular hardware or software did not apply to "plaintiffs' claim for negligent misrepresentation," as "the misrepresentation claim stems from defendant's alleged negligence in conveying inaccurate information ***before*** plaintiffs entered the Agreement" (emphasis added)); *Peregrine Pharm. Inc. v. Clinical Supplies Mgmt. Inc.*, No. 12-1608, 2014 WL 3791567, at *15 (C.D. Cal. July 31, 2014) (decisions uniformly hold that limitation of damages "clauses are inapplicable to . . . claims for negligent misrepresentation"); *Standard Register Co. v. Bolton-Emerson Inc.*, 38 Mass. App. Ct. 545, 550, 649 N.E.2d 791, 794 (1995) (same).

Here, ACM's negligent-misrepresentation and CUTPA (and rescission) claims implicate formation of the Master Agreement, not the contract itself. Thus, the damages sustained by ACM as a result of SS&C's conduct were not incurred "in connection with or arising out of" the Master Agreement. Section 6.2.2 of the Master Agreement accordingly is irrelevant, and SS&C should be barred from referencing or arguing it at trial. Were this evidence to be presented to the jury at trial, there exists a substantial risk that the jury will erroneously believe that ACM's claim for lost employee time under its negligent-misrepresentation and CUTPA (and rescission) claims is barred by the Master Agreement, contrary to well-settled Connecticut law. Thus, excluding this evidence is the only means to avoid unfair prejudice to ACM. Fed. R. Evid. 403.

Second, SS&C failed to plead limitation of liability, whether under Section 6.2.2 or otherwise, as an affirmative defense to ACM's negligent-misrepresentation and CUTPA (and rescission) claims. In Connecticut, "a release of liability must be pleaded as a special defense." *New England Sav. Bank v. FTN Properties Ltd. P'ship*, 628 A.2d 30, 32 (Conn. App. Ct. 1993). That is because "[a] limitation of liability, whether contractual or statutory, is, in substance and effect, a partial release of liability." *Id.*[2] Here, SS&C failed to plead a release of liability as a special defense. (ECF No. 101 at 18.) Without having alleged such a defense (and, instead, having waived the defense), Section 6.2.2 of the Master Agreement is irrelevant and inadmissible.

WHEREFORE, ACM respectfully requests that the Court exclude any evidence, reference, or argument concerning or arising out of Section 6.2.2 of the Master Agreement and also grant it such further just and proper relief.

---

[2] "Federal law governs whether a defense has been waived in federal court, but state law governs which defenses must be pleaded affirmatively to avoid waiver." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 680 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1551 (2019).

Case No. 17-cv-00790-JAM

Dated: November 27, 2019						Respectfully Submitted,

**HOLLAND & KNIGHT LLP**

By: */s Joseph Mamounas*
Christopher M. Cerrito (ct17183)
chris.cerrito@hklaw.com
One Stamford Plaza
263 Tressler Boulevard, Suite 1400
Stamford, CT 06901
Telephone: (203) 905-4500
Facsimile: (203) 724-3944

Joseph Mamounas (phv09010)
joseph.mamounas@hklaw.com
Allison Kernisky (phv09011)
allison.kernisky@hklaw.com
Manuel Miranda
*(pro hac vice application forthcoming)*
manuel.miranda@hklaw.com
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799

Daniel Mateo (phv10323)
daniel.mateo@hklaw.com
2929 Arch Street
Suite 800
Philadelphia, PA  19104
Telephone: (215) 252-9543
Facsimile: (215) 867-6070

*Attorneys for Plaintiff ARMOUR Capital Management LP*

Case No. 17-cv-00790-JAM

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be send by email to all parties by operation of the Court's electronic filing system or by mail to any counsel or self-represented party unable to accept electronic filing, as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: */s Allison Kernisky*
Allison Kernisky (phv09011)