UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARMOUR CAPITAL MANAGEMENT LP,<br><br>Plaintiff,<br><br>v.<br><br>SS&C TECHNOLOGIES INC.,<br><br>Defendant. | Case No. 17-cv-00790-JAM<br><br>November 27, 2019 |

**ACM'S MOTION *IN LIMINE* NO. 3: TO EXCLUDE ANY EVIDENCE OF THE MANAGEMENT AGREEMENTS AND COLLATERAL-SOURCE PAYMENTS[1]**

ACM moves to exclude any evidence, reference, or argument concerning or arising out of the Management Agreements or collateral-source payments received by ACM.

The grounds for this motion are set forth below.

ACM delivers management services to Armour Residential REIT, Inc. ("Armour") and Javelin Mortgage Investment Corp. ("Javelin") under Management Agreements.  In connection with doing so, ACM is "authorized" by the Armour and Javelin REITs to engage the services of third parties, and "costs and expenses related to the retention of third parties shall be the sole cost and expense of the REIT[s]."  (DX-502-DX-505, attached at Composite Ex. 1.)

ACM retained SS&C to deliver and implement CAMRA, and Armour and Javelin reimbursed ACM for the related fees ACM paid to SS&C.

---

[1] Unless otherwise specified, capitalized terms have the same meaning as in the First Amended Complaint (ECF No. 35) ("FAC").  The "Master Agreement" is the "Master Agreement for Software, Maintenance and Support, Professional Services and Other Services" and each incorporated attachment and Work Request (ECF No. 35-1 at 1, § 4.1; ECF No. 35-2 at 1).

At trial, ACM expects SS&C will seek to introduce the Management Agreements and other evidence of collateral-source payments to argue that ACM sustained no damages in relation to the Master Agreement.² This evidence is irrelevant and unduly prejudicial and must be excluded.

On December 17, 2018, SS&C filed a Motion for Summary Judgment, arguing, *inter alia*, that "ACM cannot prove any contract damages because Armour and Javelin—not ACM—were responsible for all fees paid to SS&C." (ECF No. 176-1 at 38-39.) SS&C recognized that "[i]n Connecticut, the 'collateral source rule' prevents a tort defendant from arguing that it need not compensate a plaintiff that already received compensation from a collateral source." (*Id*. at 39 n.17 (citing *Lashin v. Corcoran*, 152 A.2d 639, 641 (Conn. 1959)).) However, SS&C argued that the Court should refuse to import the collateral-source rule into the law of contract. (*Id*. at 39.)

On September 11, 2019, the Court entered the Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment (ECF No. 194) (the "Order"). There, the Court evaluated whether ACM was entitled to "contract damages for fees that ACM paid to SS&C, because ACM has already received full reimbursement from [Armour] and Javelin for all the fees paid to SS&C." (Order at 11.) ACM argued, *inter alia*, that any funds it received from Armour and Javelin as to the Master Agreement "should be disregarded under the collateral source rule." (*Id*.) The Court disagreed, finding that "SS&C [was] entitled to summary judgment as to its contract claim insofar as it seeks damages for the fees that ACM paid to SS&C." (*Id.* at 16.)

In so holding, the Court analyzed the applicability of the collateral-source rule in breach of contract and tort actions. (*Id.* at 11-16.) The Court explained that "[t]he Connecticut Supreme Court has repeatedly recognized the applicability of the collateral source rule in tort cases and often described it as a doctrine that applies to tort cases." (*Id.* at 11 (collecting cases).) "This

---

² Through this motion, ACM seeks to exclude SS&C's exhibits DX-501—DX-505, DX-561, DX-566, DX-567, DX-667, DX-780, DX-812, DX-815, and DX-819. (*See* Composite Ex. 1.)

longstanding practice" showcases the "primary rationale for the collateral source rule: 'to fulfill the general tort policy of deterring similar tortfeasors from wrongful conduct.'" (*Id*. at 12 (citing *Haynes v. Yale-New Haven Hosp*., 699 A.2d 964, 967 (Conn. 1997))); *St. Bernard Sch. of Montville Inc. v. Bank of Am*., 95 A.3d 1063, 1080 (Conn. 2014) ("'The reason for the rule . . . is that a windfall ought not to be granted to a defendant. . . . If there must be a windfall certainly it is more just that the injured person shall profit therefrom, rather than the wrongdoer shall be relieved of his full responsibility for his wrongdoing.'"). In contrast, as the Court observed in granting SS&C summary judgment on ACM's contract claim, "the justification for the collateral source rule is less compelling in the contract context because—to a far lesser extent than tort law— the purpose of damages in contract law is generally not deterrence and punishment." (*Id.*)

ACM's remaining claims are for negligent misrepresentation, CUTPA, and rescission. (*Id.* at 18.) There can be no dispute that ACM's claim for negligent misrepresentation is a tort, *Williams Ford Inc. v. Hartford Courant Co*., 657 A.2d 212, 220 (Conn. 1995); Restatement (Second) of Torts § 552 (1977), or that ACM's CUTPA and rescission claims are "predicated" on false, untrue, and/or misleading statements that also form the basis for ACM's negligent misrepresentation claim. (Order at 10.) Thus, the collateral-source rule is implicated.

Here, ACM was injured by the tortious conduct of SS&C. The fact that Armour and Javelin may have reimbursed ACM for expenses incurred under the Master Agreement does not prevent ACM from recovering in tort for the damages it sustained as a result of SS&C's false, untrue, and/or misleading statements and misconduct. As the Court and SS&C previously acknowledged, Connecticut courts have determined that evidence of collateral-source payments is irrelevant and inadmissible in the tort context. *See, e.g.*, *Lashin*, 152 A.2d at 641 ("defendant is not entitled to be relieved from paying any part of the compensation due for injuries proximately resulting from his act where payment comes from a collateral source, wholly independent of him").

The risk of unfair prejudice to ACM due to the introduction of evidence pertaining to the Management Agreements and collateral-source payments is especially significant here because ACM repeatedly has affirmed that any reimbursements it receives as damages will be returned to Armour and Javelin.  (ECF No. 177 at 35-38; ECF No. 177-1 at 20-23.)  Were this evidence to be presented to the jury, there exists a substantial risk that the jury erroneously will believe that ACM stands to recover double if it is awarded damages for the fees and costs ACM paid SS&C.  As ACM has explained numerous times, this is not the case.  Excluding this evidence thus is the only means to avoid unfair prejudice from befalling ACM.  Fed. R. Evid. 403.[3]

WHEREFORE, ACM respectfully requests that the Court exclude any evidence, reference, or argument concerning or arising out of the Management Agreements or any collateral-source payments received by ACM and also grant it such further relief the Court deems just and proper.

---

[3] Part of the evidence that should be excluded is Jeffrey J. Zimmer ("Zimmer") and James Mountain's deposition testimony concerning the Management Agreements and ACM's receipt of collateral-source payments from Armour and Javelin, which SS&C has designated as trial evidence.  (4/9/18 J. Zimmer Dep. Tr. at 12:12-16:23; 82:1-83:14, 11/29/17 J. Mountain Dep. Tr. at 154:10-156:5, attached at Composite Ex. 2.)

Case No. 17-cv-00790-JAM

Dated: November 27, 2019                    Respectfully Submitted,

**HOLLAND & KNIGHT LLP**

By: */s Joseph Mamounas*
Christopher M. Cerrito (ct17183)
chris.cerrito@hklaw.com
One Stamford Plaza
263 Tressler Boulevard, Suite 1400
Stamford, CT 06901
Telephone: (203) 905-4500
Facsimile: (203) 724-3944

Joseph Mamounas (phv09010)
joseph.mamounas@hklaw.com
Allison Kernisky (phv09011)
allison.kernisky@hklaw.com
Manuel Miranda
*(pro hac vice application forthcoming)*
manuel.miranda@hklaw.com
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799

Daniel Mateo (phv10323)
daniel.mateo@hklaw.com
2929 Arch Street
Suite 800
Philadelphia, PA  19104
Telephone: (215) 252-9543
Facsimile: (215) 867-6070

*Attorneys for Plaintiff ARMOUR Capital Management LP*

Case No. 17-cv-00790-JAM

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be send by email to all parties by operation of the Court's electronic filing system or by mail to any counsel or self-represented party unable to accept electronic filing, as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: */s Allison Kernisky*
Allison Kernisky (phv09011)