UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARMOUR CAPITAL MANAGEMENT LP,<br><br>Plaintiff,<br><br>v.<br><br>SS&C TECHNOLOGIES INC.,<br><br>Defendant. | Case No. 17-cv-00790-JAM<br><br>November 27, 2019 |

**ACM'S MOTION *IN LIMINE* NO. 5: TO EXCLUDE
<u>MICHAEL MAFFATTONE AND THE THIRD OPINION OF BROOKS HILLIARD</u>[1]**

ACM moves to exclude the "expert" testimony of SS&C witness Michael Maffattone and the third opinion proffered by SS&C witness Brooks Hilliard and as grounds states the following.

Maffattone's testimony should be excluded because: (1) Maffattone is not qualified as an expert witness and is merely a paid fact witness impermissibly disguised as an "expert"; and (2) his testimony is entirely cumulative of SS&C's other "expert" Hilliard. Thus, Maffattone's testimony violates Federal Rules of Evidence 702 and 403 and must be excluded.

Hilliard's third opinion should also be excluded because it addresses the accuracy of SS&C's pre-contractual misrepresentations to ACM, on which Hilliard cannot opine as an expert.

**I.   BACKGROUND.**

In September 2018, SS&C served ACM with the Expert Report of Michael Maffattone (the "Maffattone Report").[2] In his report, Maffattone disclosed that he has *no prior experience* as an

---

[1] Unless otherwise specified, capitalized terms have the same meaning as in the First Amended Complaint (ECF No. 35) ("FAC"). The "Master Agreement" is the "Master Agreement for Software, Maintenance and Support, Professional Services and Other Services" and incorporated each attachment and Work Request (ECF No. 35-1 at 1, § 4.1; ECF No. 35-2 at 1).

[2] The Expert Reports of Brooks Hilliard and Michael Maffattone are attached at Exs. B and C, respectively, to the Joint Trial Memorandum.

expert witness and presented no evidence that would qualify him as an expert. (*See* Maffattone Report at 2.) In fact, Maffattone claims no experience with the implementation of CAMRA except for when he served as the Chief Technology Officer of Annaly Capital Management ("Annaly") and "supported" the implementation of CAMRA at a related entity, Chimera Investment Corporation ("Chimera"). In both instances, Maffatone was working for an SS&C customer who purchased CAMRA and not as implementation lead or expert. Also, the CAMRA implementations at Annaly and Chimera are incomparable because, unlike ACM which purchased CAMRA on a hosted basis, they both fully licensed CAMRA. Further, Annaly manages the largest publicly-traded US mortgage REIT with significantly more employees than ACM. Moreover, Annaly and Chimera have different asset classes and more assets under management ("AUM") than ACM. In other words, the only CAMRA implementations in which Maffattone was involved are entirely different than ACM's in terms of deployment method, size, number of employees, asset classes, and AUM. And his other generalized experience with software implementations is not relevant and is wholly insufficient to qualify him as an expert in software implementation. Thus, he is not qualified to opine on SS&C's failed CAMRA implementation for ACM.

Further, Maffattone does not describe in his report any reliable principles or methods he used to reach his opinions and merely recites what he observed as an employee of an SS&C customer and what SS&C told him about ACM's implementation. Thus, Maffattone's testimony should be excluded under Federal Rule of Evidence 702.

Maffattone nevertheless purports to opine on six topics, including, among other things, the "wide" use of CAMRA as a "leading" portfolio accounting software; the adequacy of information SS&C gathered about ACM during the sales process; the accuracy and reasonableness of SS&C's pre-contractual representations about CAMRA; ACM's contract with SS&C; and who is to blame for the unsuccessful implementation at ACM. (*See* Maffattone Report at 3.) Importantly, these

topics are nearly identical to the six topics identified in the report of SS&C's other "expert" witness, Hilliard (the "Hilliard Report").  (*Compare* Maffattone Report at *3 with* Hilliard Report at 2.)  Thus, in addition to lacking the requisite reliability, Maffattone's proffered expert testimony is cumulative of Hilliard's expert testimony and should also be excluded under FRE 403.

## II. ARGUMENT.

### 1. Maffattone Is a Paid Fact Witness and Not an Expert.

Maffattone's testimony should be excluded because he is not qualified by "knowledge, skill, experience, training or education" to serve as an expert witness and he has not employed any reliable methods that would aid the jury.  Fed. R. Evid. 702.  In fact, Maffattone is nothing more than a paid fact witness who regurgitates SS&C's theory of the case.

Federal Rule of Evidence 702 establishes a two-part reliability test for determining the admissibility of expert testimony.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 589, 590 (1993) ("Proposed testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known.").  First, the expert must be "qualified as an expert by knowledge, skill, experience, training, or education."  *Id*.  Second, the expert's opinion must meet a four-part threshold test: (1) the opinion must "help the trier of fact to understand the evidence or to determine a fact in issue," (2) it must be based on "sufficient facts or data," (3) it must be "the product of reliable principles and methods," and (4) the expert must have "reliably applied the principles and methods to the facts of the case" to derive the opinion.  Fed. R. Evid. 702.

The Court acts as a gatekeeper to determine whether a proposed expert is qualified and the proffered testimony is "competent, relevant, and reliable."  *Perkins v. Origin Medsys. Inc.*, 299 F. Supp. 2d 45, 52 (D. Conn. 2004) (citing Advisory Committee Notes, 2000 Amendments, Fed. R. Evid. 702 (noting that trial judges have "the responsibility of acting as gatekeepers to exclude unreliable expert testimony.")); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 145 (1999);

s*ee also Lynch v. Trek Bicycle Corp.*, 374 F. App'x 204, 206 (2d Cir. 2010) (quoting *Amorgianos v. Nat'l R .R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002)). As such, the Court does not have to admit evidence "connected to existing data only by the *ipse dixit* of the expert" but may conclude that "there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). The proponent of expert testimony must establish by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied. *U.S. v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).

SS&C cannot meet this burden.

### i. Maffattone Is Not Qualified as an Expert Witness.

Whether an expert is qualified depends on whether he has "such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for the truth." *Lamoureux v. AnazaoHealth Corp.*, No. 03-1382, 2009 U.S. Dist. LEXIS 37089, at *17 (D. Conn. Apr. 30, 2009). "If an expert lacks the requisite qualifications, any analysis of the reliability of their methods by the court is superfluous." *Lamela v. City of N.Y.*, 560 F. Supp. 2d 214, 224 (E.D.N.Y. 2008).

Maffattone is not qualified because he bases his opinions solely on his own personal experience with the CAMRA implementations at Annaly and Chimera while serving as Chief Technology Officer of Annaly and on other irrelevant software implementations. (Maffattone Report at 2, 6-7.) But those implementations were entirely different than and not reasonably comparable to the failed implementation of CAMRA for ACM for several reasons.

First, Annaly and Chimera both purchased CAMRA on a fully licensed basis, not hosting. (Maffattone Tr. at 317:5-14, attached at Ex. 1; DX-828, attached at Ex 2.) Implementation for a licensed customer is markedly different than for a hosted one in several important ways. (Hilliard Report at 14 (identifying location of the data, managerial control of the server, and the level of

4

service and support from the vendor as some differences between licensed and hosted deployment methods).) Fundamentally, a fully licensed customer has minimal support from the vendor and is essentially required to perform many of the functions itself. (11/8/18 Hilliard Tr. at 172:10-12 (noting in fully licensed deployments, "the customer has basically full control of everything . . . "), attached at Ex. 3.) On the other hand, a hosted deployment is "a hybrid" between licensing and outsourcing, and the customer has less responsibility than full licensing. (*Id.* at 172:21.) Maffattone purports to be an expert in the implementation of CAMRA, yet he lacks any experience whatsoever on an implementation of CAMRA on a hosted basis. Thus, his experience with the implementation of CAMRA for two fully licensed customers is irrelevant and insufficient as a foundation for his opinions, especially in the context of non-licensed customers.

Second, ACM is vastly different than Annaly and Chimera. For example, Annaly and Chimera were larger and had more staff than ACM and thus more capacity to assist in the implementations. Indeed, Annaly manages the largest publicly traded US mortgage REIT and in 2014 had approximately 150 employees, a dedicated "business technology team" with over 10 employees, and "more than 10" accountants on staff. (11/13/18 Maffattone Tr. at 101:22-102:7, 105-21-107:17; DX-828; 11/29/17 J. Mountain Tr. at 146:21-25, attached at Ex. 4.) Chimera is related to Annaly, and they shared the same 15-20 person IT staff (compared to ACM's 2-person IT staff and 19 total employees). (Maffattone Tr. at 109:20-23.) Further, Annaly (which managed Chimera) had significantly more assets under management than ACM, and both Annaly and Chimera invested in different asset classes than ACM. (*Id.* at 108:10-21, 244:6-15.)

Thus, Maffattone has no comparable experience to qualify him as an expert. *See* Fed. R. Evid. 702 (expert must have specialized "knowledge, skill, experience, training, or education"); *Daubert*, 509 U.S. at 597; *Zaremba v. General Motors Corp.*, 360 F.3d 355, 360 (2d Cir. 2004); *Lamoureux,* 2009 U.S. Dist. LEXIS 37089, at *15-17.

### ii. Maffattone's Opinions Are Not Reliable.

Even if the Court were to find that Maffattone was qualified as an expert, and it should not, his testimony still would be inadmissible under Rule 702 because his opinions are not based on sufficient facts or data and not the product of reliable principles and methods, and he has not reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

Under *Daubert,* the Court can consider four non-exclusive criteria to apply to a proposed expert's reasoning or methodology: (1) whether the expert's concept is capable of being, and has been, tested; (2) whether it has been subjected to peer review; (3) what the known rate of error is; and (4) whether the technique and theory is generally accepted by the scientific community to which it belongs. *Daubert*, 509 U.S. at 593-94. In assessing whether proffered testimony is reliable, the court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant filed." *Kumho*, 526 U.S. at 152.

Further, Rule 702 requires the Court to "make a third inquiry: whether the expert's testimony (as to a particular matter) will assist the trier of fact" *Nimelv v. City of N.Y.*, 414 F.3d 381, 397 (2d Cir. 2005); *Pugliano v. U.S.*, 315 F. Supp. 2d 197, 202 (D. Conn. 2004) ("final requirement' is expert "must be able to assist the trier of fact to reach accurate results")

Here, Maffattone again falls short. He has not conducted any relevant testing, his conclusions lack any underlying scientific foundation, and his reports and testimony are completely silent with respect to any applied scientific principles or methodologies. He simply extolls the virtues of CAMRA based on personal—not scientific experience—and then draws impermissible and unreliable conclusions and inferences therefrom. The complete lack of any scientific principles in Maffattone's analysis makes his report and testimony merely those of subjective, conclusory opinions that would provide no assistance whatever to the jury.

It is clear that Maffattone's testimony as to his limited personal experience with CAMRA implementations for two licensed customers of SS&C and his regurgitation of facts about SS&C's failed implementation for ACM told to him by SS&C witnesses will not help the jury better understand the facts. Repackaged assumptions based entirely on hearsay are not expertise. "An expert who simply regurgitates what a party has told him provides no assistance to the trier of fact through the application of specialized knowledge." *Arista Records LLC v. Usenet.com*, 608 F. Supp. 2d 409, 424 (S.D.N.Y. 2009). Maffattone's opinions lack any independent verification or analysis of the relevant facts and in effect amount to an SS&C customer testimonial.

### iii. Maffattone and Hilliard Cannot Opine as to "Accuracy."

Maffattone's inadmissible fourth opinion is that "SS&C's pre-contractual representations about the suitability and performance of CAMRA were accurate and reasonable." (Maffattone Report at 12.) This opinion mirrors Hilliard's third opinion. (*See* Hilliard Report at 3 ("Whether the pre-sale representations SS&C made to ACM before the Master Agreement was signed were accurate.").) Neither Maffattone nor Hilliard can opine on the accuracy of SS&C's pre-contractual statements to ACM. To do so would render them fact witnesses. *See Highland Capital Mgmt. L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005) ( "[A]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence.").

Further, the jury will not be aided by Maffattone's or Hilliard's opinions about the truth of SS&C's representations. Such a determination is the exclusive province of the jury. Proffered expert testimony on "lay matters" that are "neither scientific nor in any way beyond the jury's ken is not admissible." *Andrews v. Metro North Commuter R. Co*., 882 F.2d 705, 708 (2d. Cir. 1989).

Thus, Maffattone's fourth opinion and Hilliard's third opinion should be excluded.

### 2. Maffattone's Testimony Is Cumulative of Hilliard.

Even if the Court finds that Maffattone has sufficient expertise, his testimony should still be excluded because his opinions are almost entirely duplicative of Hilliard's and the testimony is cumulative pursuant to Federal Rule of Evidence 403. Under Rule 403, the trial court has the discretion to exclude otherwise relevant evidence if "its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence." Fed. R. Evid. 403; *Minerals & Res. S.A. v. Pappas*, 96 F.3d 586, 596 (2d Cir. 1996). When opinions are excluded, it is because they are "unhelpful and therefore superfluous and a waste of time." Advisory Committee Notes, 2000 Amendments, Fed. R. Evid. 702 (citing 7 Wigmore § 1918).

Courts have consistently limited a party to only one expert witness when the addition of others would be cumulative. *See Levinson v. Westport Nat. Bank*, No. 09-CV-1955, 2013 WL 2181042, at *4 (D. Conn. May 20, 2013) (granting motion in limine to exclude cumulative industry expert testimony); *Arista Records LLC v. Lime Group LLC*, No. 06-cv-5936, 2011 U.S. Dist. LEXIS 47416, at *35 (S.D.N.Y. May 2, 2011) (prohibiting one of defendant's proposed expert witnesses from testifying on same subject matter as another expert who was more "specifically qualified" to offer opinions); *Members Servs. Inc. v. Sec. Mut. Life Ins. Co.*, No. 06-cv-1164, 2010 U.S. Dist. LEXIS 103776, at *90 (N.D.N.Y. Sept. 30, 2010) (precluding use of expert witness who largely recited opinion of another expert who would be presented at trial because proposed testimony was duplicative); *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 571 (S.D.N.Y. 2017) (granting motion to exclude expert testimony to the extent opinions are "duplicative and cumulative"). It is only where an additional expert addresses a distinct issue that such testimony would not be cumulative. *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, MDL No. 1358, 2008 WL 1971538, at *13 (S.D.N.Y. 2008).

Maffattone's testimony is indeed cumulative of Hilliard's. As described above, they both opine on the same six topics and SS&C has presented no justification for the Court to allow Maffattone to opine on the same topics as Hilliard. Thus, there is no need for SS&C to present both experts at trial; only prejudice to ACM could result. *See Capo v. Edel*, No. 98-7789, 1999 U.S. App. LEXIS 8125, at *4 (2d Cir. 1999) (affirming decision of district court to exclude one proposed expert witness because plaintiff "never identified any evidence that [the excluded expert] would have added to [the expert] testimony [that was admitted]"); *see also Reilly v. Natwest Mkts. Group Inc.*, 181 F.3d 253 (2d Cir. 1999) (affirming decision of district court to exclude two fact witnesses because "their testimony would have been cumulative in light of the testimony of [the defendant's] expert"). Indeed, ACM offers only one expert witness, Steven R. Kursh.

WHEREFORE, ACM respectfully requests that the Court exclude the testimony of Michael Maffattone in its entirety and the third opinion of Brooks Hilliard and also grant it such further just and proper relief.

Case No. 17-cv-00790-JAM

| | |
|---|---|
| Dated: November 27, 2019 | Respectfully Submitted,<br><br>**HOLLAND & KNIGHT LLP**<br><br>By: */s Joseph Mamounas*<br>Christopher M. Cerrito (ct17183)<br>chris.cerrito@hklaw.com<br>One Stamford Plaza<br>263 Tresser Boulevard, Suite 1400<br>Stamford, CT 06901<br>Telephone: (203) 905-4500<br>Facsimile: (203) 724-3944<br><br>Joseph Mamounas (phv09010)<br>joseph.mamounas@hklaw.com<br>Allison Kernisky (phv09011)<br>allison.kernisky@hklaw.com<br>Manuel Miranda<br>*(pro hac vice application forthcoming)*<br>manuel.miranda@hklaw.com<br>701 Brickell Avenue, Suite 3300<br>Miami, FL 33131<br>Telephone: (305) 374-8500<br>Facsimile: (305) 789-7799<br><br>Daniel Mateo (phv10323)<br>daniel.mateo@hklaw.com<br>2929 Arch Street<br>Suite 800<br>Philadelphia, PA  19104<br>Telephone: (215) 252-9543<br>Facsimile: (215) 867-6070<br><br>*Attorneys for Plaintiff ARMOUR Capital Management LP* |

Case No. 17-cv-00790-JAM

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be send by email to all parties by operation of the Court's electronic filing system or by mail to any counsel or self-represented party unable to accept electronic filing, as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: <i>/s Allison Kernisky</i><br>Allison Kernisky (phv09011)