# EXHIBIT M

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ARMOUR CAPITAL MANAGEMENT LP,

                     Plaintiff,

 - against -                                         3:17-cv-00790-JAM

SS&C TECHNOLOGIES, INC.,

                     Defendant.

## **DEFENDANT'S PROPOSED JURY INSTRUCTIONS**

Pursuant to the Court's Standing Order Regarding Trial Memoranda in Civil Cases, Defendant SS&C Technologies, Inc. ("SS&C"), respectfully submits the following Proposed Jury Instructions. SS&C reserves the right to withdraw, amend, modify and/or add to these proposed jury instructions at any time before closing argument. SS&C has concurrently and separately objected to Plaintiff's Proposed Jury Instructions.

Dated:  New York, New York
        November 27, 2019

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:  /s/ Robert A. Atkins
     Robert A. Atkins
     Jeannie S. Rhee
     Jeffrey J. Recher
     Joshua D. Kaye
     1285 Avenue of the Americas
     New York, New York 10019
     ratkins@paulweiss.com
     jrhee@paulweiss.com
     jrecher@paulweiss.com
     jkaye@paulweiss.com
     Telephone: (212) 373-3000

     Kevin J. O'Connor
     Hinckley, Allen & Snyder LLP
     28 State Street
     Boston, MA 02109-1775
     koconnor@hinckleyallen.com
     Telephone:  (617) 378-4394

     Jeffrey J. Mirman
     Alexa T. Millinger
     Hinckley, Allen & Snyder LLP
     20 Church Street, 18th Floor
     Hartford, Connecticut 06103
     jmirman@hinckleyallen.com
     amillinger@hinckleyallen.com
     Telephone:  (860) 331-2762

     *Attorneys for Defendant*
     *SS&C Technologies, Inc.*

# NEGLIGENT MISREPRESENTATION CLAIM[1]

Armour Capital Management ("ACM") claims that SS&C made negligent pre-contractual misrepresentations about CAMRA and the implementation of CAMRA for ACM. To find SS&C liable for negligent misrepresentation, you must find that ACM has proven each of the following elements by a preponderance of the evidence:

1. That SS&C made a misrepresentation of fact to ACM;
2. That SS&C knew or should have known the misrepresentation was false;
3. That ACM reasonably relied on the misrepresentation;
4. That ACM suffered an actual monetary harm as a result of its reliance on that misrepresentation.[2]

**Negligent Misrepresentation – First Element – Misrepresentation of Fact**

First, ACM must prove that SS&C made a factual statement to ACM before December 19, 2014. ACM also must prove that the factual statement was false at the time that it was made by SS&C to ACM.[3] In determining whether SS&C made a false factual statement to SS&C, you should only consider the following [number] statements identified by ACM: [identify remaining actionable negligent misrepresentations].

You may not find SS&C liable for negligent misrepresentation based on statements made by SS&C after the parties entered into the Master Agreement on

---

[1] SS&C reserves the right "on a fuller trial evidence record to seek jury instructions that limit or preclude the jury from considering particular statements as the basis for ACM's negligent misrepresentation claim." Order Granting in Part and Den. in Part Def's. Mot. Summ. J. 10, ECF No. 194.
[2] *Nazami* v. *Greater New York Mut. Ins. Co.*, 280 Conn. 619, 626 (2006).
[3] *Glazer* v. *Dress Barn, Inc.*, 274 Conn. 33, 73–74 (2005); *Larobina* v. *Wells Fargo Bank, N.A.*, No. 3:1-cv1279 (MRK), 2012 WL 1032953, at *4-5 (D. Conn. Mar. 27, 2012) (finding plaintiff failed "to assert a false statement of fact" in his negligent misrepresentation claim).

December 19, 2014.[4]  Therefore, you may only consider as potential misrepresentations those statements made by SS&C to ACM before December 19, 2014.

There are several types of statements that the law does not consider to be statements of fact.  SS&C's opinion, including an opinion that something will happen in the future, cannot be a misrepresentation of fact.[5]  SS&C's opinions about its products or products' abilities that amount to "sales talk" or "puffery" cannot be misrepresentations of fact.  In determining whether statements constituted mere "puffery" or "sales talk," you may consider whether they were oral or written, whether they were specific or general, and whether ACM was encouraged and allowed to verify the statements for itself.  Statements that are not capable of measurement, or which are vague, ambiguous or subjective are more likely to constitute "puffery" or "sales talk."  An oral general representation which the customer is invited or allowed to verify is likely to be mere "puffery" and not a misrepresentation of fact.[6]

If you find that SS&C made a statement of fact, you must consider whether that statement of fact made by SS&C was false.  ACM's subjective conclusions about what SS&C's words meant or the implications that ACM drew from those words should not

---

[4] Order Mot. Dismiss 14, ECF No. 75 ("To the extent that ACM intends to incorporate post-contractual misrepresentations into its negligent misrepresentation claim, such claims are barred under the economic loss doctrine").

[5] *Barton* v. *City of Bristol*, 291 Conn. 84, 104–05 (2009); *456 Corp.* v. *United Natural Foods, Inc.*, No. 3:09cv1983(JBA), 2011 WL 87292, at *3 (D. Conn. 2011).

[6] *See Anthem Sports, LLC* v. *Under the Weather,* LLC, 320 F. Supp. 3d 399, 415 (D. Conn. 2018); *see also Roscoe* v. *Elim Park Baptist Home, Inc.*, 2015 WL 9871344, at *6 (Conn. Super. Ct. Dec. 22, 2015) (finding "plaintiffs' allegations are based on statements of fact by the defendant, not opinions or puffery" and therefore "plaintiffs have sufficiently alleged claims of both negligent and fraudulent misrepresentation."); *Trefoil Park, LLC* v. *Key Holdings, LLC*, No. 3:14-CV-00364(VLB), 2015 WL 1138542, at *7-8, 12 (D. Conn. Mar. 13, 2015) (finding "assertions of optimistic puffery do not constitute statements of fact"); *see also* 12 Conn. Prac. Unfair Trade Practices Appendix I, ¶ 20.

4

factor into your analysis.[7]  You must consider only whether the words actually communicated by SS&C to ACM were false at the time they were made.[8]

### Negligent Misrepresentation – Second Element – Knowledge of Falsity

Second, ACM must prove that SS&C knew, or should have known, that the statement was false at the time it was made.[9]  It is not enough for ACM to simply present evidence that a statement was false at the time it was made.  Rather, ACM must prove that SS&C knew or should have known the statement was false at the time it made the statement.[10]  In proving that SS&C should have known the statement was false, ACM must show that SS&C acted unreasonably regarding the truth or falsity of the statement.[11]

### Negligent Misrepresentation – Third Element – Reasonable Reliance

Third, ACM must prove that it reasonably relied on the misrepresentation.[12]  To prove this element, ACM must prove that it actually relied on the statement made by SS&C and that it was reasonable for ACM to have relied on SS&C's statement.[13]

To prove that it actually relied on the statement made by SS&C, ACM must prove that ACM would not have entered into the Master Agreement if SS&C had not made the statement, and that ACM changed its position because of the statement made by SS&C.[14]

---

[7] *See Nygren* v. *Greater New York Mut. Ins. Co.*, No. 3:07CV00462(DJS), 2009 WL 807470, at *8 (D. Conn. 2009) ("A misrepresentation must be an actual statement, not an implication.  There is no cause of action for 'negligent implication'.").

[8] *Id.*

[9] *Glazer* v. *Dress Barn, Inc.*, 274 Conn. 33, 73–74 (2005).

[10] *Bellsite Development, LLC* v. *Town of Monroe*, 122 A.3d 640, 654 (2015).

[11] *W. Alliance Ins. Co.* v. *Wells Fargo Alarm Servs.*, 965 F. Supp. 271, 275-76 (D. Conn. 1997).

[12] *Nazami* v. *Greater New York Mut. Ins. Co.*, 280 Conn. 619, 626 (2006).

[13] *Stuart* v. *Freiberg*, 316 Conn. 809, 829 (2015) ("Without *actual* reliance, reasonable reliance cannot possibly exist.").

[14] *Gonzales* v. *Hilton Worldwide, Inc.*, No. FSTCV166029385S, 2017 WL 4080294, at *5 (Conn. Super. Ct. 2017) (citing *Cefaratti* v. *Aranow*, 321 Conn. 593, 623 (2016)) ("In most instances, when courts discuss reliance on a representation, that entails a change of position or alteration in otherwise likely-to-occur behavior.  A claim of 'no change' in reliance on a claimed misrepresentation is fatally ambiguous

In addition, ACM must prove that its decision to enter into the Master Agreement based on SS&C's statements was a reasonable one. Whether ACM's reliance was reasonable is a question for you to decide based on all the circumstances, including the relationship of the parties, the context in which the alleged misrepresentations were made, and the circumstances and terms of the Master Agreement and the Work Requests.[15]

**Negligent Misrepresentation – Fourth Element – Actual Monetary Harm**

Fourth, ACM must prove that it suffered a monetary loss as a result of its reliance on SS&C's statement. To satisfy this element, ACM must prove that any monetary harm to SS&C resulted solely from the statement made by SS&C and not from other factors.[16]

For ACM to prevail on its negligent misrepresentation claim, you must find that ACM has proven each and every element I outlined by a preponderance of the evidence.[17] If ACM failed to prove any one or more of these elements, then you must find in favor of SS&C.

---

without at least a suggestion that, but for (reasonable) reliance on the misrepresentation, there would have been a change, i.e. that there was a difference as a result of the reliance") (internal citations omitted); *see also Ruffalo* v. *CUC Int'l., Inc.*, 989 F. Supp. 430, 434–35 (D. Conn. 1997) (denying defendant's summary judgment motion on a negligent misrepresentation claim and noting that "to show reliance" a party must show "that he incurred some sort of detriment in belief that the promise was true.")

[15] *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 580 (1995); *National Groups, LLC* v. *Nardi*, 145 Conn. App. 189, 194–95 (2013); *Visconti* v. *Pepper Partners Ltd. Partnership*, 77 Conn. App. 675, 682–84 (2003) (finding contractual representations made by the plaintiff, including "specific assertions of assumption of risk" relevant to reasonable reliance).

[16] *Glazer* v. *Dress Barn, Inc.*, 274 Conn. 33, 78 (2005); *see also Marino* v. *Guilford Specialty Grp., Inc.*, No. 3:14CV705(AVC), 2015 WL 1442749 (D. Conn. Mar. 27, 2015) ("In addition to showing that but for defendant's alleged misrepresentations plaintiff would not have suffered his asserted damages, plaintiffs must also show that the misstatements were the reason plaintiffs suffered those damages"); *Vaccaro* v. *U.S. Bank, N.A.*, No. CV146050373S, 2016 WL 8488123, at *6 (Conn. Super. Ct. Nov. 8, 2016) (finding plaintiffs "failed to allege that any loss allegedly suffered was a result of this misrepresentation" because they "failed to allege that any loss suffered was solely a result of alleged misrepresentations").

[17] CT Civil Jury Instructions – 3.2-1 – Standard of Proof.

Keep in mind the limited focus of your inquiry here: you are only being asked to consider whether there was a factual statement made by SS&C that it knew or should have known at the time was false and, if so, whether ACM entered into the Master Agreement and lost money as a result of its reasonable reliance on that statement. You are not being asked to decide whether SS&C violated the Master Agreement or failed to perform its obligations under that Master Agreement. You must not base your decision on your views about whether SS&C's performance could have been better or different, or whether the implementation of CAMRA lived up to ACM's expectations.

### Negligent Misrepresentation – SS&C's Affirmative Defenses – Waiver and Ratification

You may find that ACM is not permitted to pursue its negligent misrepresentation claim against SS&C because it either waived its right to do so or ratified the Master Agreement. To find that ACM waived its right to bring its claims, SS&C must prove that ACM intentionally gave up or abandoned its right to claim that it was improperly induced into entering the Master Agreement by SS&C's misrepresentations. You can decide whether ACM intended to give up or abandon its claims based on all the circumstances. You do not need to find that ACM expressly stated that it was giving up or abandoning its claims.[18] To find that ACM ratified the Master Agreement, SS&C must prove either (1) that ACM demonstrated an intent to continue the parties' relationship and be bound by the Master Agreement by entering into Work Request No. 2 or by otherwise accepting the parties' contractual arrangement, or (2) that ACM acted in a manner

---

[18] *See Kelley* v. *Five S Grp., LLC*, No. HHDCV 085023936S, 2011 WL 782725, at *11-12 (Conn. Super. Ct. Feb. 1, 2011); *see also Indep. Party of CT-State Cent.* v. *Merrill*, No. HHDCV166071180S, 2018 WL 4326318, at *14 (Conn. Super. Ct. Aug. 21, 2018).

7

inconsistent with avoiding the Master Agreement by entering into Work Request No. 2 or by otherwise accepting the parties' contractual arrangement.[19]

## CUTPA

ACM claims that SS&C violated the Connecticut Unfair Trade Practices Act, a Connecticut law, commonly known as CUTPA, based on alleged negligent misrepresentations made before December 19, 2014.[20] You may not find SS&C liable for a violation of CUTPA based on statements made by SS&C after the parties entered into the Master Agreement on December 19, 2014.

If you find that ACM failed to prove one or more of the elements of its negligent misrepresentation claim, you must find in favor of SS&C on the CUTPA claim as well.

If you find SS&C liable on the negligent misrepresentation claim, you must also find that ACM proved each of the following elements by a preponderance of the evidence for ACM to prevail on its CUTPA claim:

1. SS&C's negligent misrepresentation constituted an unfair act or that it constituted a deceptive trade practice;

2. SS&C's unfair act or deceptive trade practice caused ACM to suffer an ascertainable loss.[21]

### CUTPA – First Element – Unfair Act or Practice

To establish whether an act or practice was an unfair trade practice that violates CUTPA, ACM must prove by a preponderance of the evidence that SS&C's

---

[19] *See Doe No. 1* v. *Knights of Columbus*, 930 F. Supp. 2d 337, 375 (D. Conn. 2013).
[20] Order Mot. Dismiss 16, ECF No. 75; Order Granting in Part and Den. in Part Def's. Mot. Summ. J. 10, ECF No. 194.
[21] Conn. Gen. Stat. § 42-110b(a).

8

negligent misrepresentation met at least one of the following elements:  (1) it offended public policy as it has been established by the statutes, the common law or other established concept of unfairness; (2) it was immoral, unethical, oppressive or unscrupulous; or (3) it caused substantial injury to consumers, competitors or other business persons.[22]  If you find that ACM was not able to prove at least one of these elements by a preponderance of the evidence, then you must find that SS&C did not commit an unfair trade practice that violates CUTPA.

In order for an act or practice to have caused substantial, unjustified injury to consumers, competitors or other business persons, you must find that all three of the following criteria have been met:

First, the injury caused must have been substantial;

Second, the injury caused must not have been outweighed by any countervailing benefits to consumers or competitors that the practice produces; and

Third, the injury caused must have been an injury that the consumer, competitor or other business person could not reasonably have avoided.[23]  If you find that ACM's own act or failure to act was a proximate cause of its injury—in other words, an actual cause that was a substantial factor in causing its injury—you must find that ACM's injury was one that ACM could reasonably have avoided.[24]

---

[22] CT Civil Jury Instructions – 5.2-3 – CUTPA – Unfair Trade Practice – "Cigarette Rule"; *Landmark Inv. Grp., LLC* v. *CALCO Const. & Dev. Co.*, 318 Conn. 847, 880 (2015).
[23] 12 Conn. Prac. Unfair Trade Practices Appendix I, ¶ 7; *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 592 (1995).
[24] 12 Conn. Prac. Unfair Trade Practices Appendix I, ¶ 10.

9

**CUTPA – First Element – Deceptive Act or Practice**

ACM also alleges that SS&C's statements before December 19, 2014 constituted a deceptive trade practice that violates CUTPA. To establish a deceptive trade practice that violates CUTPA, ACM must prove by a preponderance of the evidence that SS&C's negligent misrepresentation meets each of the following elements:

First, ACM must prove that SS&C made a representation, omission or other practice likely to mislead ACM;

Second, ACM must prove that it interpreted the message reasonably under the circumstances; *and*

Third, ACM must prove that the misrepresentation, omission or other practice was material; that is, likely to affect ACM's decisions or conduct.[25]

If you find that ACM failed to prove even one of these three elements, then you must find that SS&C did not commit a deceptive trade practice that violates CUTPA.

Not every misrepresentation, however insignificant, is necessarily an unfair or deceptive act or practice which violates CUTPA.[26] Favorable comments by sellers with respect to their products are universally accepted in the marketplace and do not violate CUTPA when they constitute mere "puffing" or "sales talk."[27] In determining whether statements constituted mere "puffing," you may consider whether they were oral or written, whether they were specific or general, and whether ACM was encouraged and allowed to verify the statements for itself. Statements that are not capable of measurement, or which

---

[25] CT Civil Jury Instructions – 5.2-7 – CUTPA – Deceptive Act or Practice; *Southington Sav. Bank* v. *Rodgers*, 40 Conn. App. 23, 28 (1995), citing *Caldor, Inc.* v. *Heslin*, 215 Conn. 590, 597 (1990).
[26] 12 Conn. Prac. Unfair Trade Practices Appendix I, ¶ 20.
[27] *Anthem Sports, LLC* v. *Under the Weather,* LLC, 320 F. Supp. 3d 399, 419-420 (D. Conn. 2018); *Vezina* v. *Nautilus Pools, Inc.*, 27 Conn. App. 810, 816 (1992).

are vague, ambiguous or subjective are more likely to constitute mere "puffing." An oral general representation which the customer is invited or allowed to verify is likely to be mere "puffing" and not a misrepresentation in violation of CUTPA.[28]

### CUTPA – Second Element – Ascertainable Loss

Even if you find that ACM proved by a preponderance of evidence that SS&C committed an unfair or deceptive trade practice that violates CUTPA, ACM must also prove that it has suffered an ascertainable loss of money as a result of SS&C's unfair or deceptive trade practice.[29]

An "ascertainable loss" means a loss that is capable of being discovered, observed or established.[30] In order to establish that it has suffered an ascertainable loss, ACM is not required to prove the amount of the ascertainable loss and is not required to prove actual damages of a specified dollar amount.[31] The term "loss" encompasses a broader meaning than the term "damage" and is synonymous with deprivation, detriment, or injury.[32] There is no need to prove the amount of the ascertainable loss in order to be entitled to bring an action under CUTPA.[33] ACM must, however, provide some evidence of an ascertainable loss of money or property.[34] A loss may be ascertainable if it is measurable, even though the precise amount of the loss is not known.[35]

---

[28] 12 Conn. Prac. Unfair Trade Practices Appendix I, ¶ 20.
[29] *Id.*, at ¶ 31; Conn. Gen. Stat. § 42-110g(a); *D'Angelo Development & Const. Corp.* v. *Cordovano*, 121 Conn. App. 165, 181-82 (2010).
[30] 12 Conn. Prac. Unfair Trade Practices Appendix I, ¶ 32; *Marinos* v. *Poirot*, 308 Conn. 706, 714 (2013).
[31] 12 Conn. Prac. Unfair Trade Practices Appendix I, ¶ 32.
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*.

11

### CUTPA – SS&C's Affirmative Defenses – Waiver and Ratification

You may find that ACM is not permitted to pursue its CUTPA claim against SS&C because it either waived its right to do so or ratified the Master Agreement. To find that ACM waived its right to bring its claims, SS&C must prove that ACM intentionally gave up or abandoned its right to claim that it was improperly induced into entering the Master Agreement by SS&C's misrepresentations. You can decide whether ACM intended to give up or abandon its claims based on all the circumstances. You do not need to find that ACM expressly stated that it was giving up or abandoning its claims.[36] To find that ACM ratified the Master Agreement, SS&C must prove either (1) that ACM demonstrated an intent to continue the parties' relationship and be bound by the Master Agreement by entering into Work Request No. 2 or by otherwise accepting the parties' contractual arrangement, or (2) that ACM acted in a manner inconsistent with avoiding the Master Agreement by entering into Work Request No. 2 or by otherwise accepting the parties' contractual arrangement.[37]

### SS&C'S BREACH OF CONTRACT COUNTERCLAIM

SS&C claims that ACM breached its contract with SS&C by terminating the Master Agreement and failing to make monthly hosting fee payments it owed under the Agreement for a four-month period. To find ACM liable for breach of contract, you must find that SS&C has proven each of the following elements by a preponderance of the evidence:

1. The formation of an agreement with ACM;

---

[36] *See Kelley* v. *Five S Grp., LLC*, No. HHDCV 085023936S, 2011 WL 782725, at *10-11 (Conn. Super. Ct. Feb. 1, 2011); *see also Indep. Party of CT-State Cent.* v. *Merrill*, No. HHDCV166071180S, 2018 WL 4326318, at *14 (Conn. Super. Ct. Aug. 21, 2018).

[37] *See Doe No. 1* v. *Knights of Columbus*, 930 F. Supp. 2d 337, 375 (D. Conn. 2013).

    2. That SS&C performed its obligations under the agreement;
    3. That ACM failed to perform its obligations under the agreement; and
    4. As a result, SS&C sustained damages.[38]

Because ACM does not dispute that there was an agreement, you will only be considering three of the four elements.

### Breach of Contract – Second Element – SS&C's Performance

SS&C must prove that it performed its obligations under the agreement.[39]

### Breach of Contract – Third Element – ACM's Failure to Perform Its Obligations

SS&C must prove that ACM failed to perform its obligations under the Master Agreement.[40]

### Breach of Contract – Fourth Element – SS&C's Damages

SS&C must prove that it has sustained damages from ACM's failure to perform its obligations under the Master Agreement.[41]

For SS&C to recover for breach of contract, you must find that SS&C has proven each and every element I outlined by a preponderance of the evidence.[42] If SS&C failed to prove any of these elements, then you must find in favor of ACM.

### **DAMAGES**

I will now instruct you on the issue of damages. If—and only if—you conclude that ACM or SS&C has proven at least one of its claims should you consider how much, if any, in money damages to award. If neither party has proven one or more elements of a particular claim, then you should find in favor of the other party and you should not

---

[38] CT Civil Jury Instructions – 4.1-15 – Breach of Contract; *Keller* v. *Beckenstein*, 117 Conn. App. 550, 558, *appeal denied*, 294 Conn. 913 (2009).
[39] *Keller* v. *Beckenstein*, 117 Conn. App. 550, 558, cert. denied, 294 Conn. 913 (2009).
[40] *Id.*
[41] *Id.*
[42] CT Civil Jury Instructions – 3.2-1 – Standard of Proof.

consider the issue of damages with respect to any such claim or claims. You should not interpret the fact that I am providing you with instructions about how to calculate damages as an indication that I believe that either party has or has not proven its claims.[43]

You should award damages only for those injuries that you find a party has proven by a preponderance of the evidence to have been proximately caused by the other party's conduct. Damages are proximately caused by the other party's conduct where the conduct is an actual cause that is a substantial factor in the resulting harm.[44] You should not award damages more than once for the same injury.

Damages means the amount of money that will fairly and reasonably compensate the claimant for injuries it proves were proximately caused by the other's conduct. Damages represent a sum of money that will make the plaintiff whole, that is, compensate it for the damage suffered.[45]

If you return a verdict for ACM on its negligent misrepresentation claim, then you must determine the amount of money, if any, to award to ACM as damages. If you find that ACM has proven by a preponderance of the evidence that it suffered a loss as a direct result of a negligent misrepresentation, you may award damages in the amount of the loss ACM suffered less any benefit it received.[46]

If you return a verdict for ACM on its CUTPA claim, then you must determine the amount of money to award to ACM as damages. If you find that ACM has

---

[43] *Grewcock* v. *Yale-New Haven Health Services Corp.*, No. 16-cv-00452 (JAM) (D. Conn. Mar. 9, 2019), ECF No. 65 at 12.
[44] *See New London Cnty. Mut. Ins. Co.* v. *Sielski*, 159 Conn. App. 650, 664-65 n.6 (2015) (discussing definition of "proximate cause" in determining negligent misrepresentation claim).
[45] *Grewcock* v. *Yale-New Haven Health Services Corp.*, No. 16-cv-00452 (JAM) (D. Conn. Mar. 9, 2019), ECF No. 65 at 12-13.
[46] *Updike, Kelly and Spellacy, P.C.* v. *Beckett*, 269 Conn. 613, 645 n.25 (2004); Restatement (Second) of Torts § 552B (1976).

proven by a preponderance of the evidence that it suffered a loss as a direct result of a violation of CUTPA, you may award damages that would fairly and justly compensate ACM for the loss it suffered.[47]

Even if you return a verdict for ACM on both its negligent misrepresentation claim and its CUTPA claim, you cannot award the same amount of damages more than once.

ACM is not entitled to recover as damages amounts more than what ACM actually paid to SS&C. This is the case regardless of whether you find liability on the negligent misrepresentation claim, the CUTPA claim, or both. You may, however, award no damages or damages less than the amount ACM actually paid to SS&C.

If you return a verdict for SS&C on its breach of contract claim, then you must determine the amount of money to award, if any, to SS&C as contract damages. SS&C must prove by a preponderance of the evidence the amount of any damages to be awarded. The evidence must give you a sufficient basis to estimate the amount of damages to a reasonable certainty. Although damages may be based on reasonable and probable estimates, you may not award damages on the basis of guess, speculation or conjecture.[48]

Any damages you award SS&C should be designed to put SS&C, so far as can be done by money, in the same position as that which it would have been in had the contract been fully performed.[49]

---

[47] *See* Conn. Gen. Stat. § 42-110g(a).
[48] CT Jury Instructions – 4.5-4 – Plaintiff's Burden of Proof as to Amounts; *Meadowbrook Center, Inc.* v. *Buchman*, 149 Conn. App. 177, 189 (citing *Leisure Resort Tech., Inc.* v. *Trading Cove Assocs.*, 277 Conn. 21, 35 (2006)).
[49] CT Jury Instructions – 4.5-6 – Damages – Expectation/Benefit of the Bargain/Make Whole; *Ambrogio* v. *Beaver Road Assocs.*, 267 Conn. 148, 155 (2003).

You may not guess or speculate as to the proper amount of the award of damages, but absolute certainty is not required. Reasonable certainty is the test. You must be able, in view of the evidence which is offered, to arrive with a reasonable degree of certainty at some conclusion as to what the damaged party lost. You should not award damages more than once for the same injury.[50]

---

[50] *Edible Arrangements Int'l, Inc.* v. *Incredible Franchise Corp.*, No. 3:07-cv-01788-WWE (D. Conn., Oct. 14 2010), ECF No. 197 at 12-13; *see also Beverly Hills Concepts, Inc.* v. *Schatz and Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 69 (1998).