# EXHIBIT N

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ARMOUR CAPITAL MANAGEMENT LP,

     Plaintiff,

v.                                        Case No. 17-cv-00790

SS&C TECHNOLOGIES INC.,

     Defendant.

_____

**DEFENDANT'S OBJECTIONS TO
<u>PLAINTIFF'S PROPOSED JURY INSTRUCTIONS</u>**

Pursuant to the Court's Standing Order Regarding Trial Memoranda in Civil Cases, Defendant SS&C Technologies, Inc. ("SS&C"), respectfully submits the following objections to Plaintiff ARMOUR Capital Management LP's ("ACM") Proposed Jury Instructions.   SS&C reserves the right to withdraw, amend, modify and/or add to these objections.   SS&C has separately proposed its own jury instructions.

Dated:   New York, New York
              November 27, 2019

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON &
   GARRISON LLP

By:     /s/ Robert A. Atkins
             Robert A. Atkins
             Jeannie S. Rhee
             Jeffrey J. Recher
             Joshua D. Kaye
       1285 Avenue of the Americas
       New York, New York 10019
       ratkins@paulweiss.com
       jrhee@paulweiss.com
       jrecher@paulweiss.com
       jkaye@paulweiss.com
       Telephone: (212) 373-3000

       Kevin J. O'Connor
       Hinckley, Allen & Snyder LLP
       28 State Street
       Boston, MA 02109-1775
       koconnor@hinckleyallen.com
       Telephone:  (617) 378-4394

       Jeffrey J. Mirman
       Alexa T. Millinger
       Hinckley, Allen & Snyder LLP
       20 Church Street, 18th Floor
       Hartford, Connecticut 06103
       jmirman@hinckleyallen.com
       amillinger@hinckleyallen.com
       Telephone:  (860) 331-2762

       *Attorneys for Defendant*
       *SS&C Technologies, Inc.*

1

## <u>JURY INSTRUCTION NO. 1</u>

In your deliberations, you will consider and decide distinct claims.

ACM has asserted two claims against SS&C for your consideration.  The first claim is for negligent misrepresentation.  The second claim is for a violation of the Connecticut Unfair Trade Practices Act ("CUTPA").

SS&C has asserted one claim against ACM for your consideration, commonly referred to as a counterclaim.  That counterclaim is for breach of contract.

Each party has denied the claims alleged against them and has asserted defenses and affirmative defenses to each claim.  Although these claims have been tried together, each claim is separate from the others, and each party is entitled to have you separately consider each claim as it affects that party.  Therefore, in your deliberations, you should consider the evidence as it relates to each claim separately, as you would had each claim been tried before you separately.

[**DEFENDANT'S OBJECTION:  SS&C objects to the part of this instruction stating "[a]lthough these claims have been tried together, each claim is separate from the others, and each party is entitled to have you separately consider each claim as it affects that party.  Therefore, in your deliberations, you should consider the evidence as it relates to each claim separately, as you would had each claim been tried before you separately." ACM does not cite any authority or precedent in support of this instruction.  But this instruction also is inaccurate in this case.  As this Court found in its summary judgment opinion, ACM cannot prove its Connecticut Unfair Trade Practices Act ("CUTPA") claim if the jury finds that ACM has not proven one or more elements of its negligent misrepresentation claim.  *See* ECF No. 94 at 10 ("I will also deny summary judgment on the related claims under CUTPA . . . to the extent they are predicated on the claim for negligent misrepresentation.").  Thus, proof of ACM's CUTPA claim is in fact dependent on proof of its negligent misrepresentation claim.**]

2

## JURY INSTRUCTION NO. 2

ACM claims that SS&C negligently made misrepresentations to induce ACM to enter into the Master Agreement.  ACM must prove this claim by a preponderance of the evidence.

First, ACM must prove that SS&C supplied untrue or false information.  Subsequent conduct may be probative of whether a declarant knew or should have known a statement was false or untrue at the time it was made.[1]

Second, ACM must prove that SS&C failed to use reasonable care in making or communicating the information to ACM.

Third, ACM must prove that SS&C supplied the untrue or false information to ACM to induce it to enter into the Master Agreement.

Fourth, ACM must prove that it justifiably relied on the untrue or false information that SS&C provided, and was injured as a result.[2]  ACM is not required to conduct an independent investigation as to the truth of an ascertainable fact.  That is because a duty to investigate arises only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of her or his senses.[3]

---

[1] *Associated Constr. / AP Constr., LLC v. Hanover Ins. Co.*, No. 15-CV-1600, 2018 WL 3998971, at *9 (D. Conn. Aug. 21, 2018) ("[s]ubsequent conduct may be probative of whether a declarant knew or should have known a statement was false at the time it was made."  (quoting *Glazer v. Dress Barn, Inc.*, 274 Conn. 33, 75 (2005)); *IM Partners v. Debit Direct Ltd.*, 394 F. Supp. 2d 503, 521 (D. Conn. 2005) ("Falsity is an essential element of a negligent misrepresentation claim, and [the plaintiff] bears the burden of demonstrating that the defendants made certain representations . . . that were in fact untrue."  (quoting *Daley v. Aetna Life & Cas. Co.*, 249 Conn. 766, 791-94 (1999)); *Sierra v. Williamson*, 2013 WL 12237672, at *3 (W.D. Ky., 2013) ("what evidence the jury may consider during certain periods can be guided and corrected by instructions that the Court gives to the jury"); *see generally* Connecticut Standard Jury Instructions § 2.4.

[2] Connecticut Standard Jury Instructions § 3.16-1; *see Glazer*, 274 Conn. at 72-73 (2005) ("[A]n action for negligent misrepresentation requires the plaintiffs in the present case to prove that Dress Barn made a misrepresentation of fact, that Dress Barn knew or should have known that it was false, that the plaintiff reasonably relied upon the misrepresentation, and that the plaintiffs suffered pecuniary harm as a result thereof." (citing 3 Restatement (Second) Torts § 552 (1979)).

[3] *Doe No. 1 v. Knights of Columbus*, 930 F. Supp. 2d 337, 374 (D. Conn. 2013) ("As Plaintiff states, [i]t has long been the law in Connecticut that the victim of a misrepresentation has no duty to investigate the truthfulness of the deceit.  [N]o authority can be found to warrant the doctrine, that a man must use diligence to prevent being defrauded, otherwise he shall be entitled to no remedy.  That is because a duty to investigate arises only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses." (citations and omitted)); *Kavarco v. T.J.E., Inc.*, 478 A.2d 257, 262 (Conn. App. Ct. 1984), *overruled on other grounds by Kaczynski v. Kaczynski*, 981 A.2d 1068 (Conn. 2009) ("The defendants' argument raises the issue of whether the law should choose either to allow the person who fraudulently misrepresented a basic fact to use the armament of caveat emptor to escape

Misrepresentations can be made in many different ways.[4]   Liability for negligent misrepresentation can be found based on statements made or information provided as well as a failure to disclose known facts if requested or if the circumstances otherwise impose a duty to speak.[5]   But a negligent misrepresentation claim cannot be based on representations that are promissory, conclusory, opinions of value or future expectations, or mere puffery.[6]

**[DEFENDANT'S OBJECTION:   SS&C objects to this proposed instruction for four reasons.   *First*, although the portions of the instruction describing the elements of a negligent misrepresentation claim are based on Connecticut Civil Jury Instruction 3.16-1, they do not reflect the leading Connecticut case law on the elements of negligent misrepresentation.   In contrast, SS&C's proposed instruction on the elements of negligent misrepresentation (on page 1) reflects current Connecticut law.   In *Nazami* v. *Patrons Mut. Ins. Co.*, 280 Conn. 619, 626 (2006), the Connecticut Supreme Court held that "an action for negligent misrepresentation requires the plaintiff to establish (1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result."   These elements have been applied by all levels of state court in Connecticut and federal courts, including after the date upon which Connecticut Civil Jury Instruction 3.16-1 was revised.   *See Stuart* v. *Freiberg*, 316 Conn. 809, 821-22 (2015) ("To establish liability for negligent misrepresentation, a plaintiff must be able to demonstrate by a preponderance of the evidence: (1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary**

---

liability, or not to require the person to whom the misrepresentation was made to conduct an independent investigation as to the truth of an ascertainable fact.  The Restatement chooses the latter.  This court does also.").

[4] *Miller v. Appleby*, 183 Conn. 51, 55 (1981) ("Fraud and misrepresentation cannot be easily defined because they can be accomplished in so many different ways.  They present, however, issues of fact." (quoting *Hathaway v. Bornmann*, 137 Conn. 322, 324 (1950)); *Centimark Corp. v. Village Manor Associates Ltd. Partnership*, 113 Conn. App. 509, 521-22, *cert. denied*, 292 Conn. 907, 973 A.3d 103, 973 A.2d 103 (2009) (same).

[5] *Johnnycake Mountain Associates v. Ochs*, 104 Conn. App. 194, 206, 932 A.2d 472 (2007), *cert. denied*, 286 Conn. 906, 944 A.2d 978 (2008); *Weingarden v. Milford Anesthesia Associates, P.C.*, Superior Court, New Haven, No. CV–11–6016353–S (May 30, 2013, Wilson, J.).

[6] There is authority for excluding an instruction on "mere puffery" or "opinion."  *United States v. Skilling*, 554 F.3d 529, 552 (5th Cir. 2009), *aff'd in part, vacated in part on other grounds, remanded*, 561 U.S. 358 (2010) (denying a challenge to "the district court's materiality instruction on the ground that the court should have specifically instructed the jury on puffery" because some statements of opinion "cannot, as a matter of law, be deemed immaterial puffery, and the district court was correct to leave the determination of their materiality to the jury").  *But see Capuano v. Island Computer Prod.*, 238 F.R.D. 51, 56 (D. Conn. 2006) (discussing a jury instruction that read, "a negligent misrepresentation claim cannot be based on representations that are promissory, conclusory, opinions of value or future expectations, or mere puffery").  ACM offers this instruction without waiver of the argument that an instruction of opinion or puffery is neither necessary nor appropriate in this action.

harm as a result."); *Coppola Const. Co.* v. *Hoffman Enterprises Ltd. P'ship*, 309 Conn. 342, 351–52 (2013) (same); *Clark* v. *Stop & Shop Supermarket*, No. 3:15-CV-00304 (JCH), 2016 WL 4408983, at \*9 (D. Conn. Aug. 16, 2016) (same); *Heche* v. *Maldonado*, No. FBTCV176067124S, 2019 WL 3321720, at \*6 (Conn. Super Ct. June 20, 2019) (same). ACM's proposed instruction is substantively different from the requirements set forth in *Nazami* and *Stuart*. For example, under ACM's proposed instruction, ACM need only prove that it "justifiably relied," rather than "reasonably relied," on the alleged misrepresentations. ACM also need only prove that it "was injured" as a result of the alleged misrepresentations, rather than that it suffered "pecuniary harm."

*Second*, the statement that "[s]ubsequent conduct may be probative of whether a declarant knew or should have known a statement was untrue at the time it was made" is inappropriate for instructions to the jury because it invades the province of the jury by suggesting the weight that should be given to particular evidence. *See Preisner* v. *Illman*, 1 Conn. App. 264, 267 (1984) ("It is the privilege of the jury to believe or disbelieve any evidence and to attribute any evidence whatever weight it feels is merited."). This problem is further compounded by the fact that ACM's instructions single out only one category of evidence and therefore suggest it is entitled to more or different weight than other types of evidence. Furthermore, the statement may confuse the jury into finding liability based on a breach of contract—a claim already dismissed by this Court. *See* ECF No. 194 at 18 ("The Court GRANTS the motion for summary judgment as to ACM's contract claim").

*Third*, ACM's claim that it was "not required to conduct an independent investigation as to the truth of an ascertainable fact" risks confusing the jury. As an initial matter, it is improper to instruct the jury what ACM is not required to do to show reliance, without giving the jury any guidance on what *does* constitute reasonable reliance under Connecticut law. Furthermore, it is not the case that there is never a duty to investigate as part of the reasonable reliance inquiry. *See, e.g., Crigger* v. *Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006) ("Only when matters are held to be peculiarly within defendant's knowledge is it said that plaintiff may rely without prosecuting an investigation, as he had no independent means of ascertaining the truth . . . A plaintiff . . . cannot demonstrate reasonable reliance without making inquiry and investigation if he has the ability through ordinary intelligence, to ferret out the reliability or truth about an investment . . . The law is indulgent of the simple or untutored; but the greater the sophistication of the investor, the more inquiry that is required" (citations, quotation marks and alterations omitted)).

*Fourth*, the proposed instruction states that "misrepresentations can be made in many different ways." This instruction is unhelpful to the jury and improperly suggestive of SS&C's liability. Furthermore, the proposed instruction states that "[l]iability for negligent misrepresentation can be found based on statements made or information provided as well as a failure to disclose known facts if requested or if the circumstances otherwise impose a duty to speak." This instruction does not reflect the parties' pleadings in the case, which do not allege liability for omissions. The instruction also fails to explain the legal meaning of the phrase "duty to speak."]

<u>JURY INSTRUCTION NO. 3</u>

Negligence is the failure to use reasonable care.  Negligence does not require an intentional, willful, or deliberate act.  Rather, a person fails to use reasonable care if he or she does something that a reasonably careful person would not do in the same situation, or if he or she fails to do something that a reasonably careful person would do in the same situation.  In considering ACM's claim for negligent misrepresentation, you must decide how a reasonably careful company would have acted in SS&C's situation.[7]

[**DEFENDANT'S OBJECTION:   SS&C objects to this proposed instruction for two reasons.   *First*, it is not linked in any way to the element of ACM's negligent misrepresentation claim to which it relates—the element that SS&C "should have known" its statements of fact were false.   Rather, it is a pure negligence instruction that is likely to be confusing to the jury.   Although Plaintiff cites to Connecticut Civil Jury Instructions 3.6-3 ("Common Law Negligence Defined") and 3.6-4 ("Reasonable Care"), ACM's proposed instruction does not incorporate the concepts contained in those instructions—in particular, the concept of a reasonably prudent person and the circumstances the jury should consider in determining the care a reasonably prudent person would use in the same circumstances.**

***Second*, ACM provides no Connecticut case law to support its propositions that (1) "a person fails to use reasonable care if he or she does something that a reasonably careful person would not do in the same situation, or if he or she fails to do something that a reasonably careful person would do in the same situation" and (2) "[y]ou must decide how a reasonably careful company would have acted in SS&C's situation."   These instructions are problematic because they fail to direct the jury to take into account the circumstances of SS&C when determining reasonableness.   SS&C's proposed instructions accurately reflect the law and recognize that it is the role of the jury to determine reasonableness.   Those instructions state that "[i]n proving SS&C should have known the statement was false, ACM must show that SS&C acted unreasonably regarding the truth or falsity of the statement."   *See W. Alliance Ins. Co.* v. *Wells Fargo Alarm Servs.*, 965 F. Supp. 271, 275-76 (D. Conn. 1997).]**

---

[7] *See DaCruz v. State Farm Fire & Cas. Co.*, 268 Conn. 675, 693 (2004) ("[T]he same conduct [cannot] reasonably be determined to have been both intentionally and negligently tortious. [I]ntentional conduct and negligent conduct, although differing only by a matter of degree; are separate and mutually exclusive . . . .   Although in a given case there may be doubt about whether one acted intentionally or negligently, the difference in meaning is clear.   As [Oliver Wendell] Holmes observed, even a dog knows the difference between being tripped over and being kicked." (first alteration added) (citations and internal quotation marks omitted)); *Hoelter v. Mohawk Services, Inc.*, 170 Conn. 495, 501 (1976); *see also* Connecticut Standard Jury Instructions §§ 3.6-3, 3.6-4; California Civil Jury Instruction No. 401; Vermont Civil Jury Instruction Committee, Plain English Jury Instructions § 3.0.

## JURY INSTRUCTION NO. 4

ACM is entitled to receive fair, just, and reasonable compensation for all injuries and losses, past and future, caused by SS&C's misrepresentations.  The purpose of an award of compensatory damages is not to punish or penalize SS&C, but to compensate ACM for its resulting injuries and losses.

Insofar as money can do it, you must attempt to put ACM in the same position that it would have been in had SS&C not made misrepresentations.  Once ACM has proven the nature and extent of its compensable injuries and losses, it becomes your job to determine what is fair, just, and reasonable compensation for ACM's injuries and losses.  There may not be a mathematical formula in making this determination.[8]

**[DEFENDANT'S OBJECTION: SS&C objects to this instruction for two reasons.  *First,* the instruction fails to address the need for ACM to prove that any monetary harm to SS&C resulted solely from the statement made by SS&C and not from other factors, as reflected in SS&C's proposed jury instructions (at pages 4 to 5).  *See Glazer* v. *Dress Barn Inc.*, 274 Conn. 33, 72-73 (2005) (requiring plaintiffs to prove that they "suffered pecuniary harm as a result [of the alleged negligent misrepresentations]"); *Marino* v. *Guilford Specialty Grp., Inc.*, No. 3:14CV705(AVC), 2015 WL 1442749, at \*7 (D. Conn. Mar. 27, 2015) ("In addition to showing that but for defendant's alleged misrepresentations plaintiff would not have suffered his asserted damages, plaintiffs must also show that the misstatements were the reason plaintiffs suffered those damages"); *Vaccaro* v. *U.S. Bank, N.A.*, No. CV146050373S, 2016 WL 8488123, at \*6 (Conn. Super. Ct. Nov. 8, 2016) (finding plaintiffs "failed to allege that any loss allegedly suffered was a result of this misrepresentation" because they "failed to allege that any loss suffered was solely a result of alleged misrepresentations").**

**_Second_, the proposed instruction fails to instruct the jury that (1) it cannot award ACM damages amounts greater than what ACM actually paid to SS&C, (2) that the jury is entitled to award no damages or damages less than the amount actually paid to SS&C, and (3) it cannot award the same amount of damages more than once, irrespective of whether SS&C is held liable on both ACM's CUTPA and negligent misrepresentation claims.]**

---

[8] Connecticut Standard Jury Instructions §§ 3.4-1, 4.5-2; 4.5-9; *see Tuite v. Stop & Shop Cos.*, 45 Conn. App. 305, 310-11 n. 2 (1997); *see also* 3 Restatement (Second), Contracts § 349 (1979); 11 Williston, Contracts (3d ed. 1979) §§ 1363, 1363A.

## JURY INSTRUCTION NO. 5

In addition to its negligent misrepresentation claim, ACM also claims that SS&C violated the Connecticut Unfair Trade Practices Act, a Connecticut law commonly known as CUTPA, by making false or misleading statements to ACM and other conduct.

ACM must prove SS&C engaged in an unfair or deceptive practice or an unfair method of competition in the conduct of trade or commerce and that this caused ACM to sustain an ascertainable loss.[9]  ACM must prove this claim by a preponderance of the evidence.

**[DEFENDANT'S OBJECTION:  SS&C objects to this proposed instruction for three reasons.  *First*, ACM seeks to widen the scope of its CUTPA claim by stating that its CUTPA claim is not only based on SS&C's alleged misrepresentations but also unspecified "other conduct."  But the only basis for alleged CUTPA liability in this case are SS&C's supposed misrepresentations prior to the time when the parties entered into the contract.  No other conduct is pleaded as forming a basis for ACM's CUTPA claim in its Amended Complaint and this Court has held that its claim cannot be based on post-contractual representations.  *See* Am. Compl. ¶¶ 60-66; ECF No. 75 at 16 ("ACM's CUTPA claim may proceed to the extent that it relies on negligent misrepresentations prior to the execution of the Master Agreement").  Furthermore, ACM's CUTPA claim survived summary judgment only "to the extent that [it is] predicated on the claim for negligent misrepresentation."  ECF No. 194 at 10.  ACM's instruction therefore incorrectly tells the jury that it may find liability based on "other conduct" apart from the challenged, pre-contractual misrepresentations.**

***Second*, and relatedly, the proposed instruction does not make clear, in accordance with this Court's motion to dismiss decision, that ACM's negligent misrepresentation claim is limited to statements made before December 19, 2014, and therefore ACM's CUTPA claim is similarly limited in timeframe.  ECF No. 75 at 16 ("ACM's CUTPA claim may proceed to the extent that it relies on negligent misrepresentations prior to the execution of the Master Agreement").  SS&C's proposed instructions appropriately assist the jury and ensure that it does not suffer a misimpression about the specific statements that may give rise to liability.  The proposed instructions state at page 6 that "ACM claims that SS&C violated the Connecticut Unfair Trade Practices Act . . . based on alleged misrepresentations made before December 19, 2014.  You may not find SS&C liable for a violation of CUTPA based on statements made by SS&C after the parties entered into the Master Agreement on December 19, 2014."**

***Third*, the proposed instruction does not make clear to the jury that SS&C's liability for CUTPA is first dependent on SS&C's liability for negligent misrepresentation—that is, if ACM fails to prove its negligent misrepresentation claim against SS&C, SS&C is not liable under CUTPA.  *See* ECF No. 194 at 10 ("I will also deny summary judgment on the related claims under CUTPA and for rescission to the extent that they are predicated on the claim for negligent misrepresentation.").  SS&C's proposed instructions also articulate this point to assist the jury.  The instructions state at page 6, "[i]f you find that ACM failed to prove**

---

[9] Connecticut Standard Jury Instructions § 5.2-1; *see* Conn. Gen. Stat. § 42-110b(a).

one or more of the elements of its negligent misrepresentation claim, you must find in favor of SS&C on the CUTPA claim as well.]

## JURY INSTRUCTION NO. 6

As the first step in deciding whether SS&C violated CUTPA, you must determine whether SS&C's actions were carried out in the course of its trade or commerce.

An action is carried out in SS&C's trade or commerce if it is part of:

- the advertising,

- the sale, rent, or lease,

- the offering for sale, rent, or lease, or

- the distribution

of any services, property (tangible, intangible, real, personal, or mixed), or other article, commodity, or thing of value in Connecticut.  The conduct at issue must occur in SS&C's primary trade or business; it must not be merely incidental to SS&C's trade or business.

If you do not find that the conduct occurred in SS&C's trade or commerce, you must find that there was no CUTPA violation.[10]

[**SS&C does not object to the addition of this instruction to SS&C's Proposed Final Jury Instructions**]

---

[10] Connecticut Standard Jury Instructions § 5.2-2; *see* Conn. Gen. Stat. § 42-110a(4); *McCann Real Equities Series XXII LLC v. David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 523, *cert. denied*, 277 Conn. 928 (2006) ("CUTPA violation may not be alleged for activities that are incidental to an entity's primary trade or commerce.").

## JURY INSTRUCTION NO. 7

ACM claims SS&C violated CUTPA by engaging in unfair or deceptive trade acts.

Certain guidelines have been established as to what constitutes unfair or deceptive trade acts.

ACM need only establish that one of SS&C's false or misleading statements or other conduct meet at least one of the three following criteria:

1)      it offends public policy as it has been established by statutes, the common law, or other established concept of unfairness; *or*

2)      it is unethical, immoral, oppressive, or unscrupulous; *or*

3)      it causes substantial injury to consumers, competitors, or other business persons.

I will now give additional instructions on each of these criteria.[11]

**[DEFENDANT'S OBJECTION:   SS&C objects to the proposed instruction for three reasons.   *First*, the proposed instruction fails to articulate that ACM's CUTPA claim is premised on alleged negligent misrepresentations made by SS&C before December 19, 2014.   *See* ECF No. 194 at 10 (making clear that ACM is only permitted to pursue its CUTPA claim "to the extent [it is] predicated on the claim for negligent misrepresentation.")   Thus, the proposed instruction should not refer generically to the possibility that the jury could find CUTPA liability on any basis other than the specific challenged statements that remain in the case, including "unfair or deceptive trade acts," "false or misleading statements," or "other conduct."**

***Second***, **although the instruction refers throughout to "unfair or deceptive trade acts," Connecticut Civil Jury Instruction 5.2-3, upon which this instruction is based, refers only to "unfair trade practice."   This is consistent with the fact that the three criteria listed in**

---

[11] Connecticut Standard Jury Instructions § 5.2-3; *see Edmands v. CUNO Inc.*, 277 Conn. 425, 450 n.16 (2006) ("It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the [F]ederal [T]rade [C]ommission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons] . . . .   All three criteria do not need to be satisfied to support a finding of unfairness." (citation omitted)); *Willow Springs Condo. Assn. Inc. v. Seventh BRT Dev. Corp.*, 245 Conn. 1, 43 (1998); *Fink v. Golenbock*, 238 Conn. 183, 215 (1996); *Larsen Chelsey Realty Co. v. Larsen*, 232 Conn. 480, 507 (1995); *Tarka v. Filipovic*, 45 Conn. App. 46, 55, *cert. denied*, 242 Conn. 903 (1997); *Meyers v. Cornwell Quality Tools Inc.*, 41 Conn. App. 19, 35 (1996).

the instruction are criteria that address whether a practice is "unfair" rather than whether it is "deceptive." *See also Landmark Inv. Grp., LLC* v. *CALCO Constr. & Dev. Co.*, 318 Conn. 847, 880 (2015) (describing three criteria as the criteria for determining whether practice "unfair").

*Third*, the proposed instruction is in the present tense even though the alleged negligent misrepresentations forming the basis of the CUTPA claim occurred in the past.]

## JURY INSTRUCTION NO. 8

First, ACM asserts that the false or misleading statements made by SS&C give rise to common-law causes of action that offend the public policy of the state of Connecticut and thus constitute unfair or deceptive trade acts. If you find that SS&C made such false or misleading statements to ACM, SS&C engaged in unfair or deceptive trade acts and you should consider whether ACM has proven an ascertainable loss establishing a violation of CUTPA.[12]

**[DEFENDANT'S OBJECTION: SS&C objects to the proposed instruction for three reasons. *First*, the proposed instruction suggests that SS&C's alleged misrepresentations "[gave] rise to *common law causes of action* that offend the public policy of the state of Connecticut" (emphasis added), but this Court made clear that ACM is only permitted to pursue its CUTPA claim "to the extent [it is] predicated on the claim for negligent misrepresentation." ECF No. 194 at 10. The instruction should direct the jury to consider only whether ACM has proven its negligent misrepresentation claim in determining whether SS&C has "offend[ed] the public policy of the state of Connecticut."**

***Second*, the proposed instruction substantially deviates from Connecticut Civil Jury Instruction 5.2-4, which, among other things, (1) requires the instruction to state the public policy of the state, and (2) describes conduct that "offends public policy" as an "unfair trade practice," not "deceptive trade acts." *See also Landmark Inv. Grp., LLC v. CALCO Constr. & Dev. Co.*, 318 Conn. 847, 880 (2015) (listing "offends public policy" as one criterion for determining whether a practice is "unfair.")**

***Third*, Connecticut Civil Jury Instruction 5.2-4 states that statutory violations do not automatically result in a CUTPA violation and this instruction should contain a similar caveat as to common law causes of action.]**

---

[12] Connecticut Standard Jury Instructions § 5.2-4; *see Edmands v. CUNO Inc.*, 277 Conn. 425, 450 n.16 (2006); *Willow Springs Condo. Assn.*, 245 Conn. at 43 (1998); *Jacobs v. Healey Ford-Subaru Inc.*, 231 Conn. 707, 727 (1995); *Normand Josef Enters. v. Conn. Nat'l Bank*, 230 Conn. 486, 524-25 (1994) (describing the first prong, "[W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness" (citation and quotation marks omitted)); *Worcester v. Salzillo*, No. NNHCV085019588S, 2009 WL 5511544, at *3 (Conn. Super. Ct. Dec. 16, 2009) ("In order to meet the first prong of the cigarette rule, a showing of actions by the defendant in violation of public policy, the complaint alleges that [the defendant] has engaged in negligent misrepresentation, a cause of action established and recognized in the common law. Therefore, because a common-law cause of action can serve as the basis of a public policy violation under CUTPA, and the plaintiff has alleged sufficient facts to bring a claim of common-law negligent misrepresentation, the plaintiff has sufficiently pleaded the first prong."); *Weglarz v. Plaza Ford, Inc.*, No. CV 94 0071519 (Conn. Super. Ct. Aug. 30, 1995).

## JURY INSTRUCTION NO. 9

To show that SS&C made false or misleading statements so as to engage in unfair or deceptive trade acts and violate CUTPA, ACM must prove three requirements.

First, there must be a representation, omission, or other practice that is false or likely to mislead ACM.  Second, ACM must have interpreted the misleading statement, omission, or other practice reasonably under the circumstances.  Third, the misleading statement, omission, or practice must be material – that is, likely to affect ACM's decisions or conduct.

ACM does not have to prove that SS&C intended to deceive ACM or that SS&C knew its statements were false.  Innocent misrepresentations are actionable under CUTPA.  If SS&C made misrepresentations to ACM, it does not matter that such misrepresentations were innocent.  ACM is entitled to recover for SS&C's misrepresentations even without fraud, bad faith, or deceit.

If you find that ACM proves these three requirements, SS&C engaged in unfair or deceptive trade acts and you should consider whether ACM has proven an ascertainable loss establishing a violation of CUTPA.[13]

**[DEFENDANT'S OBJECTION:  SS&C objects to the proposed instruction for three reasons.  *First*, there is no basis in law for ACM's proposed language regarding "innocent misrepresentations" in paragraph three.  The cases cited by ACM in support do not suggest that a purely innocent misrepresentation, absent negligence, can support a CUTPA violation.  *See, e.g., Assoc. Inv. Co. P'ship* v. *Williams Assocs. IV*, 230 Conn. 148, 158 (1994) (addressing only proof of intent to deceive, to defraud, or to mislead, not negligence);**

---

[13]  Connecticut Standard Jury Instructions § 5.2-7; *see Cheshire Mortg. Serv. Inc. v. Montes*, 223 Conn. 80, 106 & n.36 (1992); *Caldor Inc. v. Heslin*, 215 Conn. 590, 597 (1990), *cert. denied*, 498 U.S. 1088 (1991) (citing *In re Figgie Int'l Inc.*, 107 F.T.C. 313, 374 (1986)); *Web Press Serv. Corp. v. New London Motors Inc.*, 203 Conn. 342, 362-63 (1987); *Assoc. Inv. Co. P'ship v. Williams Assocs. IV*, 230 Conn. 148, 158, 645 A.2d 505, 510 (1994) ("In addition to establishing a standard of conduct more flexible than traditional common law claims, the expansive language of CUTPA prohibits unfair or deceptive trade practices without requiring proof of intent to deceive, to defraud, or to mislead."); *Prishwalko v. Bob Thomas Ford, Inc.*, 33 Conn. App. 575, 588, 636 A.2d 1383, 1388, 1390 (1994) ("not a prerequisite of a CUTPA violation to prove that a car dealer intended to deceive" and "[i]nnocent misrepresentations . . . are still actionable"); *see also Willow Springs Condo. Ass'n*, 245 Conn. at 43 (1998); *Matyas v. Minck*, 37 Conn. App. 321, 332–33, 655 A.2d 1155, 1161 (1995) (upholding jury instruction, stating, "The rule of law applicable to misrepresentations is that if a person makes a statement in regard to a matter upon which a hearer may reasonably suppose he has the means of information, and the statement is made as part of a business transaction, or to induce action from which the speaker expects to gain advantage, he should be held liable for the consequences of reliance upon the misstatement.  If the [Matyases], in fact, misrepresented the location of the septic system, it does not matter that such misrepresentation was innocent, for a party is entitled to recover for the consequences of reliance upon misrepresentation even if there was no fraud or bad faith or deceit.  In other words, an innocent or mistaken representation would still allow the plaintiffs to recover."); *Friedlander Ltd. P'ship v. Cohen*, 2005 WL 1091449, at *2 (Conn. Super. Ct. Apr. 15, 2005).

14

*Prishwalko* v. *Bob Thomas Ford, Inc.*, 33 Conn. App. 575, 588 (1994) (only noting that an intent to deceive is not a "prerequisite" to a CUTPA violation and noting *in the context of the Uniform Commercial Code*, that "innocent misrepresentations . . . are still actionable"); *Matyas v. Minck*, 37 Conn. App. 321, 332–33 (1995) (not discussing the requirements for a CUTPA action).

*Second*, the proposed instruction states that it pertains to "unfair . . . trade acts" but it is largely based on Connecticut Civil Jury Instruction 5.2-7 and that instruction pertains to the requirements for a deceptive practice, not "unfair trade acts."   Instruction 5.2-7 recognizes this distinction, stating in the notes to the model instruction "[t]his instruction is not intended for an 'unfair trade practice' or 'unfair method of competition' violation of CUTPA.

*Third*, the proposed instruction unnecessarily deviates from Connecticut Civil Jury Instruction 5.2-7 by, among other things, (1) omitting a description of ACM's claim, (2) stating that the representation, practice or omission at issue can be "false" or "likely to mislead."]

### JURY INSTRUCTION NO. 10

Second, ACM asserts that SS&C's false or misleading statements or other conduct constitute unfair or deceptive trade acts because they are "immoral, unethical, oppressive or unscrupulous."  If you find that SS&C's false or misleading statements or other conduct were "immoral, unethical, oppressive or unscrupulous," SS&C engaged in unfair or deceptive trade acts and you should consider whether ACM has proven an ascertainable loss establishing a violation of CUTPA.[14]

[**DEFENDANT'S OBJECTION:  SS&C objects to the proposed instruction for three reasons.  *First*, the proposed instruction fails to articulate that ACM's CUTPA claim is premised on alleged negligent misrepresentations made by SS&C before December 19, 2014.  *See* ECF No. 194 (making clear that ACM is only permitted to pursue its CUTPA claim "to the extent [it is] predicated on the claim for negligent misrepresentation.")  Thus, the proposed instruction should not refer generically to the possibility that the jury could find CUTPA liability on any basis other than the specific challenged statements that remain in the case, including "unfair or deceptive trade acts," "false or misleading statements," or "other conduct."**

***Second***, **a practice that is "immoral, unethical, oppressive or unscrupulous" is an "unfair trade practice" not a "deceptive trade practice."  *See Landmark Inv. Grp., LLC* v. *CALCO Constr. & Dev. Co.*, 318 Conn. 847, 880 (2015) (listing "immoral, unethical, oppressive, or unscrupulous" as one criterion for determining whether a practice is "unfair.")**

***Third***, **the proposed instruction should be framed in past tense given that the alleged conduct at issue—negligent misrepresentations before December 19, 2014—occurred in the past.**]

---

[14] Connecticut Standard Jury Instructions § 5.2-5; *see Walk v. Lupia Renovating Co, Inc.*, No. CV 00 0504205 (Conn. Super. Ct. Apr. 18, 2001); *Bartold v. Wells Fargo Bank N.A.*, No. 14-CV-00865, 2015 WL 7458504, at *6 n.2 (D. Conn. Nov. 24, 2015) ("The alleged acts viewed in the light most favorable to Plaintiff would also constitute immoral, unethical, oppressive, or unscrupulous conduct—for example, Defendant is alleged to have repeatedly given Plaintiff false information in response to Plaintiff's inquiries, used those false representations to coerce Plaintiff to accept less money than he was owed, and then after the misrepresentation was finally disproven, Defendant refused to correct its error, instead attempting to coerce Plaintiff into further reducing his monthly payments.").

## JURY INSTRUCTION NO. 11

Third, ACM asserts that SS&C committed unfair or deceptive trade acts because its false or misleading statements or other conduct caused "substantial injury to consumers, competitors or other business persons."

To show such unfair or deceptive trade acts, ACM must prove that SS&C's false or misleading statements or other conduct caused an injury to ACM that is: 1) substantial; 2) not outweighed by countervailing benefits ; and 3) that ACM could not have reasonably avoided.

If you find that ACM proves these three requirements, SS&C engaged in unfair or deceptive trade acts and you should consider whether ACM has proven an ascertainable loss establishing a violation of CUTPA.[15]

**[DEFENDANT'S OBJECTION:   SS&C objects to this proposed instruction for four reasons.  *First*, the proposed instruction fails to articulate that ACM's CUTPA claim is premised on alleged negligent misrepresentations made by SS&C before December 19, 2014.  *See* ECF No. 194 (making clear that ACM is only permitted to pursue its CUTPA claim "to the extent [it is] predicated on the claim for negligent misrepresentation.")  Thus, the proposed instruction should not refer generically to the possibility that the jury could find CUTPA liability on any basis other than the specific challenged statements that remain in the case, including "unfair or deceptive trade acts," "false or misleading statements," or "other conduct."**

***Second***, **a practice that causes "substantial injury to consumers, competitors, or other business persons" is an "unfair trade practice" not a "deceptive trade practice."   *See Landmark Inv. Grp., LLC* v. *CALCO Constr. & Dev. Co.*, 318 Conn. 847, 880 (2015) (listing "substantial injury to consumers, [competitors or other businesspersons]" as one criterion for determining whether a practice is "unfair").**

***Third***, **the proposed instruction omitted language from the Connecticut Civil Jury Instruction 5.2-6 stating that ACM "must prove all three of these elements."**

***Fourth***, **the proposed instruction fails to state what type of injury "ACM could not have reasonably avoided."  Defendant's proposed instruction states at pages 7 to 8—as derived from the paragraphs 7 and 10 of the Connecticut Practice Unfair Trade Practices Appendix I—that "[i]f you find that ACM's own act or failure to act was a proximate cause of its injury—in other words, an actual cause that was a substantial factor in causing its**

---

[15]  Connecticut Standard Jury Instructions § 5.2-6; *see McLaughlin Ford Inc. v. Ford Motor Co.*, 192 Conn. 558, 567-70 (1984); *Calandro v. AllState Ins. Co.*, 63 Conn. App. 602, 613 (2001) ("[our Supreme Court] has set forth a three part test for satisfying the substantial injury criterion: [1] [the injury] must be substantial; [2] it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and [3] it must be an injury that consumers themselves could not reasonably have avoided." (quoting *Hartford Elec. Supply Co. v. Allen–Bradley Co.*, 250 Conn. 334, 368, 736 A.2d 824 (1999)); *Prishwalko*, 33 Conn. App. at 585-86.

17

injury—you must find that ACM's injury was one that ACM could reasonably have avoided."]

<u>**JURY INSTRUCTION NO. 12**</u>

A single act or transaction may violate CUTPA.  It is not necessary for ACM to prove multiple acts of wrongdoing to establish that SS&C violated CUTPA.[16]

[**DEFENDANT'S OBJECTION:   SS&C objects to the references in the proposed instruction to generic "act[s]," "transaction[s]," or "multiple acts of wrongdoing" because the First Amended Complaint only alleges that SS&C is liable for a violation of CUTPA based on its alleged misrepresentations.  *See* Am. Compl. ¶¶ 60-66.  Furthermore, this Court only permitted ACM to proceed with its CUTPA claim against SS&C "to the extent that [it is] predicated on the claim for negligent misrepresentation."  ECF No. 194 at 10.]**

---

[16] Langer, Morgan & Belt, *Connecticut Unfair Trade Practices, Business Torts, and Antitrust* (2019-20 ed.) Model Jury Instruction #13 at App. I-13; Conn. Gen. Stat. § 42-110g(a); *Hart v. Carruthers*, 77 Conn. App. 610, 619 (2003) (rejecting argument that plaintiff needed to prove that "defendant has committed the alleged wrongful acts with such frequency as to indicate a general business practice"); *Johnson Elec. Co. v. Salce Contracting Assocs.*, 72 Conn. App. 342, 344 *cert. denied*, 262 Conn. 922 (2002); *Biggs v. Se. Inv. Corp.*, 651 F. Supp. 1419, 1421 (D. Conn. 1987).

## JURY INSTRUCTION NO. 13

Even if ACM proves that SS&C committed an unfair or deceptive act that violates CUTPA, ACM cannot recover unless it sustained an ascertainable loss as a result of those unfair or deceptive acts.  ACM has the burden of proving such ascertainable loss.  An ascertainable loss is a deprivation, detriment, or injury that is capable of being discovered, observed, or established but need not be measured by a dollar amount.[17]

[**SS&C does not object to this proposed instruction.**]

---

[17]  Connecticut Standard Jury Instructions § 5.2-9; *see Collins v. Anthem Health Plans Inc.*, 275 Conn. 309, 344-45 (2005) ("Although there is no need to allege or to prove the amount of the ascertainable loss, the plaintiffs must show that it is more likely than not that they suffered such a loss as a result of the challenged practice."); *Serv. Rd. Corp. v. Quinn*, 241 Conn. 630, 644 (1997) ("A loss of prospective customers constitutes a deprivation, detriment, [or] injury that is capable of being discovered, observed, or established.  Such a loss appears to be precisely the type of business injury for which the legislature intended to provide redress when it enacted CUTPA." (quoting *Hinchliffe v. Am. Motors Corp.*, 184 Conn. 607, 613 (1981)); *Hinchliffe*, 184 Conn. at 613; *Prishwalko*, 33 Conn. App. at 586.

## JURY INSTRUCTION NO. 14

In addition to seeking compensatory damages, ACM seeks an award of punitive damages. Punitive damages are damages awarded not to compensate ACM for any injury or losses but to punish SS&C for outrageous conduct and to deter it and others like it from similar conduct in the future. Punitive damages may be awarded for conduct that is outrageous, because of SS&C's reckless indifference to the rights of others or an intentional and wanton violation of those rights. You may award punitive damages only if you unanimously find, from facts established by a preponderance of the evidence, that the conduct of SS&C was, in fact, outrageous.

The law does not require you to award punitive damages. It is, instead, a matter for your sound discretion. An award of punitive damages must not reflect bias, prejudice, or sympathy with respect to any part. It must instead be fairly based on the evidence in the case.

There is no exact standard for fixing the amount of punitive damages. The amount awarded, if any, should be the amount you unanimously find necessary for achieving the objectives of punitive damages that I have described. You should consider the degree of reprehensibility of SS&C's misconduct and the actual or potential harm suffered by ACM.[18]

[**DEFENDANT'S OBJECTION:  SS&C objects to this instruction because none of ACM's remaining claims can support an award of punitive damages.**]

---

[18] Connecticut Standard Jury Instructions § 3.4-4;  *see Votto v. Am. Car Rental, Inc.*, 273 Conn. 478, 485-86 (2005); *Gaudio v. Griffin Health Serv. Corp.*, 249 Conn. 523, 551 (1999); *Ames v. Sears, Roebuck & Co.*, 8 Conn. App. 642, 655, *cert. denied*, 201 Conn. 809 (1986); *Wedig v. Brinster*, 1 Conn. App. 123, 134 (1983), *cert. denied*, 192 Conn. 803 (1984).

21

**INSTRUCTIONS CONCERNING SS&C'S COUNTERCLAIM AND ACM'S
AFFIRMATIVE DEFENSES**

**JURY INSTRUCTION NO. 15**

In this case, SS&C has asserted a counterclaim for breach of contract against ACM.

In response, ACM has asserted multiple affirmative defenses.  That means, even if SS&C proves the elements of its counterclaim, ACM can nevertheless prevail if it proves one or more of its affirmative defenses.

You should consider each affirmative defense separately.

**[SS&C does not object to this instruction if the proposed instruction specifies that SS&C's counterclaim is for "breach of the Master Agreement."]**

22

## INSTRUCTIONS CONCERNING SS&C'S COUNTERCLAIMS

### JURY INSTRUCTION NO. 16

SS&C claims that ACM breached the Master Agreement.  In order to recover on a breach of contract claim, SS&C must prove (i) the formation of an agreement with ACM; (ii) that SS&C performed its obligations under the agreement; (iii) that ACM failed to perform its obligations under the agreement; and (iv) as a result, SS&C suffered damages.

SS&C claims that the Master Agreement constituted a contract between ACM and SS&C. SS&C claims that ACM breached the Master Agreement by unilaterally terminating the Master Agreement and related Work Requests without prior notice, and without paying for all goods and services ACM received thereunder.  As a direct and proximate result of ACM's actions, SS&C claims it has been damaged.[19]

**[DEFENDANT'S OBJECTION:  SS&C objects to this proposed instruction for three reasons.  *First*, it fails to state that SS&C does not need to prove the existence of a binding contract between ACM and SS&C because ACM has already conceded that the Master Agreement constituted a contract between ACM and SS&C.  *See* ECF No. 35 (Am. Compl.) at ¶ 56.**

***Second***, **the proposed instruction fails to state that SS&C is only required to prove the elements of its breach of contract claim by a preponderance of the evidence.  *See Foley* v. *Huntington Co.*, 42 Conn. App. 712, 732, n.7 (1996) (A "breach of contract claim . . . requires proof by a preponderance of the evidence.")**

***Third***,  **the third paragraph of the proposed instruction fails to accurately state the basis for SS&C's breach of contract claim.  As noted on pages 10 to 11 of SS&C's proposed jury instructions, "SS&C claims that ACM breached its contract with SS&C by terminating the Master Agreement and failing to make monthly hosting payments it owed under the Agreement for a four-month period."]**

---

[19] Connecticut Standard Jury Instructions § 4.1-15; *see Keller v. Beckenstein*, 117 Conn. App. 550, 558, *cert. denied* 294 Conn. 913 (2009).

### INSTRUCTIONS CONCERNING ACM'S AFFIRMATIVE DEFENSES

### JURY INSTRUCTION NO. 17

In response to SS&C's counterclaim, ACM asserts the defense of excuse or discharge. The actions or omissions of a party claiming breach of contract may excuse or discharge recovery under that claim.[20]

If ACM is able to establish that SS&C's conduct and/or misrepresentations induced ACM to enter into the contract, that would serve as a basis for excusing or discharging ACM's breach including payment of fees under the Master Agreement.[21]   Additionally, if ACM establishes that SS&C failed to implement CAMRA for ACM, as agreed in the Master agreement, such conduct would also serve as basis for excusing or discharging ACM's breach.

[**DEFENDANT'S OBJECTION:   SS&C objects to this proposed instruction for three reasons.**

---

[20] *State v. Lex Assocs.*, 730 A.2d 38, 45 (Conn. App. Ct. 1999) ("Lex's material breach discharged the state from any further obligations under the lease, including its erstwhile obligation to make further rental payments to Lex." (citing 2 Restatement (Second), Contracts §§ 237, 242 (1981)); *Shah v. Cover-It Inc.*, 859 A.2d 959, 963 (Conn. App. Ct. 2004) ("It is a general rule of contract law that a total breach of the contract by one party relieves the injured party of any further duty to perform further obligations under the contract."); *Rokalor Inc. v. Connecticut Eating Enter. Inc.*, 558 A.2d 265 (Conn. App. Ct. 1989).

[21] *Johnnycake Mountain Assocs. v. Ochs*, 201, 932 A.2d 472, 476–77 (Conn. App. Ct. 2007) (discussing "negligent misrepresentation as a defense in [a] foreclosure action); *see Ursini v. Bank*, No. 3:07CV00490(AVC), 2008 WL 11483446, at *5 (D. Conn. Feb. 7, 2008) ("The appellate court of Connecticut has recognized misrepresentation as a valid defense to a foreclosure action"); *Hernandez v. Vermont Mut. Ins. Co.*, No. HHDCV065002352S, 2008 WL 1823051, at *6 (Conn. Super. Ct. Apr. 4, 2008) (discussing a prior Connecticut "case involving a misrepresentation defense to breach of contract"); *see also Abulaynain v. New York Merch. Bankers Mut. Fire Ins. Co.*, 128 A.D.2d 575, 576, 513 N.Y.S.2d 5, 6 (1987) ("Although even an innocently made factual misrepresentation may serve to void an insurance contract, such is the case only if knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract." (citation omitted)); *Rocky Creek Ret. Properties Inc. v. Estate of Fox ex rel. Bank of Am., N.A.*, 19 So. 3d 1105, 1110 (Fla. Dist. Ct. App. 2009) ("To avoid a contract based on negligent misrepresentation, the party seeking to avoid the contract must establish the . . . elements" of negligent misrepresentation).

[22] Connecticut Standard Jury Instructions § 4.2-22;  *see RBC Nice Bearings, Inc. v. SKF USA, Inc.*, 318 Conn. 737, 747-50 (2015) ("Waiver is defined generally as the voluntary relinquishment of a known right.  In the contract context, waiver refers to the excuse of the nonoccurrence of or a delay in the occurrence of a condition of a duty.  Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied. . . .  [W]aiver may be inferred from the circumstances if it is reasonable to do so.  Accordingly, although an [i]ntention to relinquish must appear . . . acts and conduct inconsistent with [the] intention to terminate the contract are sufficient." (citations omitted)).

**First**, to the extent the defense is based on SS&C's alleged failure to implement CAMRA, it is disputed whether the contract contains any requirement that obligated SS&C to do so. SS&C's alleged failure to implement CAMRA cannot provide the basis for ACM's excuse or discharge defense unless it proves that the implementation of CAMRA was required under the Master Agreement.

**Second**, the instruction is ambiguous because it states that "SS&C's conduct [that] induced ACM to enter into the contract" "would serve as a basis for excusing or discharging ACM's breach" without specifying what the phrase "other conduct" refers to or how that conduct provides a basis for the defense. ACM cites no authority for the proposition that any conduct, whether wrongful or innocent, can provide the basis for ACM's excuse of discharge defense.

**Third**, the proposed instruction fails to articulate that ACM has the burden of proving excuse of discharge by a preponderance of the evidence. *See Barton Grp., Inc.* v. *NCR Corp.*, 796 F. Supp. 2d 473, 499 (S.D.N.Y. 2011), *aff'd*, 476 F. App'x 275 (2d Cir. 2012) (affirming instruction to jury that defendant bore the burden of proving by a preponderance of evidence its defense to breach of contract action that the plaintiff failed to satisfy its contractual representations and warranties).]

### JURY INSTRUCTION NO. 18

In response to SS&C's counterclaim, ACM asserts that it is not liable to SS&C because SS&C waived compliance with the relevant provisions of the Master Agreement.

Waiver acts to excuse a noncompliance or a delay of compliance as to an obligation imposed under the contract. Waiver is defined as the voluntary relinquishment of a known right. For this defense to excuse ACM from liability, ACM bears the burden of proving that:

1. SS&C knew that ACM did or need not fulfill all its obligations under the contract; and

2. SS&C voluntarily intended to give up the right to enforce compliance by ACM.

A waiver need not be expressly announced by SS&C, but can consist of actions, inaction, or other conduct by SS&C, in the context of all the surrounding circumstances, that reasonably imply that SS&C knew of and voluntarily relinquished the right to require that ACM fulfill that particular term of the contract. ACM can demonstrate that a waiver occurred through evidence of explicit acknowledgment of waiver by SS&C or through evidence of SS&C's conduct amid existing circumstances, or a combination of both types of evidence, that logically and reasonably support the conclusion that SS&C knew of ACM's delinquency and specifically intended to give up any right to enforce compliance.

In reaching your decision as to whether ACM has proven the defense of waiver, you may consider such factors as whether SS&C continued to maintain the relationship with ACM after learning of ACM's noncompliance or whether SS&C voiced any objection or issued any warning to ACM about noncompliance.[22]

**[DEFENDANT'S OBJECTION:   SS&C objects to the proposed instruction for three reasons.  *First*, ACM's waiver defense is barred by the Master Agreement.  Section 6.7.2 provides that "[a]ny waiver of the provisions of this Master Agreement or of a party's rights or remedies under this Master Agreement must be in writing to be effective.  Failure, neglect, or delay by a party in enforcing the provisions of this Master Agreement or its rights or remedies will not be construed and will not be deemed to be a waiver of such party's rights under this Master Agreement."**

***Second*, it fails to identify, as required by Connecticut Civil Jury Instruction 4.2-22, the relevant provisions of the Master Agreement of which ACM alleges SS&C waived compliance.**

---

[22] Connecticut Standard Jury Instructions § 4.2-22;  *see RBC Nice Bearings, Inc. v. SKF USA, Inc.*, 318 Conn. 737, 747-50 (2015) ("Waiver is defined generally as the voluntary relinquishment of a known right.  In the contract context, waiver refers to the excuse of the nonoccurrence of or a delay in the occurrence of a condition of a duty.  Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied. . . .  [W]aiver may be inferred from the circumstances if it is reasonable to do so.  Accordingly, although an [i]ntention to relinquish must appear . . . acts and conduct inconsistent with [the] intention to terminate the contract are sufficient." (citations omitted)).

***Third***, the second paragraph deviates from Connecticut Civil Jury Instruction 4.2-22 by stating that ACM bears the burden of proving that "SS&C knew that ACM did or need not fulfill its obligations under the contract."   Connecticut Civil Jury Instruction 4.2-22 states this element as follows: "[T]hat the plaintiff knew that the defendant failed to comply with the *<particular provision of the contract>*."   ACM has provided no authority supporting its proposition that ACM can avoid liability by proving that SS&C knew ACM "need not fulfill" its obligations under the Master Agreement.]

## JURY INSTRUCTION NO. 19

In response to SS&C's counterclaim, ACM asserts the defense of laches.  A long delay in asserting a right may be grounds to prevent a party from asserting a claim.  Laches consists of (i) an inexcusable delay and (ii) prejudice to the defendant.

The defense of laches is proved if ACM establishes that (i) it was an inexcusable delay for SS&C to wait until after this litigation began to demand payment, and that (ii) ACM was prejudiced by the delay.[23]

**[DEFENDANT'S OBJECTION:   SS&C objects to this instruction because it fails to instruct the jury that a defense of laches cannot be successful for an action in law where the claim is brought within the applicable statute of limitations.  *See Doe* v. *Hartford Roman Catholic Diocesan Corp.*, 317 Conn. 357, 399 (2015) ("[L]aches does not apply when a plaintiff has brought an action seeking legal relief within the statutory limitations period."); *Wiblyi* v. *McDonald's Corp.*, 168 Conn. App. 92, 104 (2016) ("Our Supreme Court recently has observed that the defense of laches has only a limited applicability [citing *Doe*].  In that case, the court concluded that laches did not apply to actions at law brought within the statutory time period").  A breach of contract action for damages is a legal action.  *Coppola Constr. Co.* v. *Hoffman Enterprises Ltd.* P'ship, 157 Conn. App. 139, 167, n.17 (2015) ("An action seeking damages for breach of contract is indisputably legal in nature, i.e., an action at law, not equity.")  In this case, ACM entered into the Master Agreement—the contract at issue—in December 2014 and SS&C's counterclaim was brought on April 2, 2018.  Thus, it is indisputable that SS&C's claim falls within the six-year statute of limitations for breach of contract.  *See* General Statutes §52-576(a) ("No action . . . on any contract in writing, shall be brought but within six years after the right of action accrues.")]**

---

[23] *Unified Sch. Dist. No. 1 v. Conn. Dep't of Educ.*, 64 Conn. App. 273, 284 (2001); *Brock v. Cavanaugh*, 1 Conn. App. 138, 140, 468 A.2d 1242, 1243 (1984) ("Laches consists of two elements.  First, there must have been an inexcusable delay, and, second, that delay must have prejudiced the defendant.").

<u>**JURY INSTRUCTION NO. 20**</u>

  In response to SS&C's counterclaim, ACM claims that it has substantially performed under the Master Agreement.  Even if ACM has not complied exactly with the terms of the Master Agreement, it has substantially performed under the contract where its performance is so similar to the required performance that it is nearly equivalent to the performance for which the parties bargained.  A party has substantially performed under the contract when any deviation from the contract is minor and unimportant and does not seriously impair the purpose of the provision of the contract in question. [24]

  ACM claims that SS&C's counterclaims are barred because ACM substantially performed its obligations under the Master Agreement.  That performance included the payment of more than $1.78 million in fees to SS&C.

**[DEFENDANT'S OBJECTION:  SS&C objects to this proposed instruction because it omits the statement in Connecticut Civil Jury Instruction 4.2-14: "If ACM has not complied with a material term of the contract, it has not substantially performed the contract."  It is well established under Connecticut law that substantial performance is not a defense to breach of contract where a material term of the contract has been breached.  *See City of New Haven Water Pollution Control Auth.* v. *Town of Hamden*, No. CV91-0318934, 1995 WL 326098, at \*2 (Conn. Super. Ct. May 22, 1995) ("[A] showing of material nonperformance defeats a claim [of substantial performance].")  A "[f]ailure to tender payment is generally deemed a material breach of a contract."  *See ARP Films, Inc.* v. *Marvel Entertainment Grp., Inc.*, 952 F.2d 643, 649 (2d Cir. 1991); *see also Edgewood Mac, LLC* v. *MIRG Mystic Harbour, LLC*, No. CV065002009, 2008 WL 4635456, at \*3 (Conn. Super. Ct. Sept. 23, 2008) (Defendant's "failure to pay . . . constituted a material breach of the Settlement Agreement as payment . . . was essentially [defendant's] sole obligation under the Agreement.")]**

---

[24] Connecticut Standard Jury Instructions § 4.2-14; *see Argentinis v. Gould*, 219 Conn. 151, 157 (1991); *Mortg. Elec. Reg. Sys., Inc. v. Goduto*, 110 Conn. App. 367, *cert. denied*, 289 Conn. 956 (2008); *Borrelli v. H & H Contracting Inc.*, 100 Conn. App. 680, 692 n.6 (2007), *appeal dismissed*, 285 Conn. 553, 940 (2008); S. Williston, Contracts (4th Ed. 2000) §§ 44.54, 44.55.

## JURY INSTRUCTION NO. 21

In response to SS&C's counterclaim, ACM claims that SS&C failed to provide ACM notice that it was in material breach of the Master Agreement or an opportunity to cure as required in the Master Agreement.   A party's failure to comply with a contractual notice requirement amounts to a material breach of the contract.   That is because a party who deviates from the terms and the circumstances in the contract for giving notice may be regarded as having repudiated the contract, with all the effects of repudiation including giving the injured party a right to damages.

ACM must prove that the Master Agreement contained a notice requirement.   Unless SS&C proves that it complied with that requirement, ACM did not breach the Master Agreement.[25]

[**DEFENDANT'S OBJECTION: SS&C objects to this proposed instruction for two reasons.   *First*, the proposed instruction is misleading because it characterizes SS&C's alleged failure to provide notice as an affirmative defense, when it only goes to whether SS&C performed its obligations under the Master Agreement—an element of SS&C's claim.   *See SLC Turnberry, Ltd.* v. *The Am. Golfer, Inc.*, 240 F.R.D. 50, 55 (D. Conn. 2007) (finding that plaintiff's alleged non-performance of a contract was "not an affirmative defense that must be specifically pleaded and on which defendants will bear the burden of proof, but rather is an essential element of plaintiffs' claim.")**

***Second*, ACM cites no authority supporting the proposition that a failure to provide notice can act as an affirmative defense to a breach of contract claim *arising from events prior to the failure to provide notice*—that is, ACM's failure to make monthly hosting payments it owed under the Master Agreement for a four-month period.   *See, e.g., Coppola Const. Co. v. Hoffman Enter. Ltd. P'ship*, 157 Conn. App. 139, 169, 172 (2015) (noting that a party's failure to comply with a notice provision "invalidates any attempted termination" but does not act as an affirmative defense to material breaches of, for example, payment provisions of a contract).]**

---

[25] *See Christophersen v. Blount*, 216 Conn. 509, 512 (1990); *Coppola Const. Co. v. Hoffman Enter. Ltd. P'ship*, 157 Conn. App. 139, 169, (2015) ("One who deviates from the terms and circumstances specified in the agreement for giving notice . . . may be regarded as having repudiated the contract, with all the effects of repudiation including giving the injured party a right to damages . . . ." (quoting 13 J. Perillo, Corbin on Contracts (Rev. Ed. 2003) § 68.9(3); *id.* at 171 ("Here, a finding of a breach of contract inevitably follows from the court's findings that the defendant's actions amounted to a 'de facto' termination without cause of the plaintiff's involvement in the project but that the defendant failed to give the plaintiff proper notice under the contract's termination for convenience clause.   As previously stated, a party's failure to comply with the notice provision in a termination clause invalidates any attempted termination and amounts to a material breach of the contract."); Florida Pattern Jury Instruction 416.21.

## JURY INSTRUCTION NO. 22

In response to SS&C's counterclaim, ACM claims that SS&C failed to mitigate its damages.  ACM claims that SS&C could have mitigated, minimized, or avoided any loss or damage it allegedly sustained by, among other things, satisfying in full its obligations under the Master Agreement, such as implementing CAMRA for ACM and taking reasonable efforts to collect ACM's alleged balance before the current lawsuit. SS&C had a duty to exercise reasonable care to minimize the damages resulting from any breach by ACM.  It is ACM's burden to prove by a preponderance of the evidence that SS&C failed to exercise reasonable care to minimize its damages.

If you find that ACM has met this burden, you must reduce any award of damages to SS&C for or on its counterclaim by the amount of damages that SS&C reasonably could have avoided.[26]

**[DEFENDANT'S OBJECTION:   SS&C objects to this proposed instruction for two reasons.  *First*, ACM's allegation that SS&C could have mitigated its loss by performing its obligations under the Master Agreement reflects a misunderstanding of the mitigation defense.  Mitigation examines whether a nonbreaching party could have minimized or reasonably avoided losses *after* the breach of a contract—here, *after* ACM terminated the Master Agreement.  *See Gianetti* v. *Norwalk Hosp.*, 64 Conn. App. 218, 221 n.2 (2001), *rev'd in part on other grounds*, 266 Conn. 544 (2003) ("The doctrine of mitigation of damages requires the nonbreaching party to a contract to make reasonable efforts to minimize damages *arising from the breach*" (emphasis added)).**

**Second, the proposed instruction omits the language from Connecticut Civil Jury Instruction 4.5-14 placing the burden of proving this defense on ACM.]**

---

[26] Connecticut Standard Jury Instructions § 4.5-14; *see Cweklinsky v. Mobile Chem. Co.*, 267 Conn. 210, 223 (2004); *Newington v. Gen. Sanitation Serv. Co.*, 196 Conn. 81, 85-86 (1985); *Camp v. Cohn*, 151 Conn. 623, 627 (1964); 3 Restatement (Second) Contracts § 350 (1979).

**INSTRUCTION CONCERNING SS&C'S AFFIRMATIVE DEFENSES**

**JURY INSTRUCTION NO. 23**

You may find that ACM is not permitted to pursue its CUTPA claim against SS&C because it either waived its right to do so or ratified the Master Agreement.  To find that ACM waived its right to bring its claims, SS&C must prove that ACM intentionally gave up or abandoned its right to claim that it was improperly induced into entering the Master Agreement by SS&C's misrepresentations.  You can decide whether ACM intended to give up or abandon its claims based on all the circumstances.  You do not need to find that ACM expressly stated that it was giving up or abandoning its claims.  For this defense to excuse SS&C from liability, SS&C bears the burden of proving that:

    1. ACM knew that SS&C did fulfill all its obligations under the contract; and

    2. ACM voluntarily intended to give up the right to enforce against SS&C. [27]

[**DEFENDANT'S OBJECTION: SS&C objects to this proposed instruction for two reasons.  *First*, as noted in Defendant's Proposed Jury Instructions, this defense applies to both ACM's negligent misrepresentation and CUTPA claims.  ACM has not provided any authority to support its failure to instruct the jury on waiver and ratification in connection with its negligent misrepresentation claim.**

*Second***, Connecticut Civil Jury Instruction 4.2-22 is inapplicable to SS&C's defense as it relates purely to waiver of a right under a contract rather than the waiver and ratification of a right through conduct.  *See, e.g., Doe No. 1* v. *Knights of Columbus***, 930 F. Supp. 2d 337, 375 (D. Conn. 2013).  In the latter case, as noted in SS&C's Proposed Jury Instructions, the question is whether ACM demonstrated an intent to continue the parties' relationship and be bound by the Master Agreement by entering into Work Request No. 2 or by otherwise accepting the parties' contractual arrangement, or (2) whether ACM acted in a manner inconsistent with avoiding the Master Agreement by entering into Work Request No. 2 or by otherwise accepting the parties' contractual arrangement.  *See* SS&C's Proposed Jury Instructions at 5, 10.  Furthermore, ACM omits pertinent portions of Connecticut Civil Jury Instruction 4.2-22, such as the fact the jury may consider "whether the plaintiff continued to maintain the relationship with the defendant after learning of the defendant's noncompliance or whether the plaintiff voiced any objection or issued any warning to the defendant about noncompliance."**

---

[27] Connecticut Standard Jury Instructions § 4.2-22;  *see RBC Nice Bearings, Inc. v. SKF USA, Inc.*, 318 Conn. 737, 747-50 (2015) ("Waiver is defined generally as the voluntary relinquishment of a known right.  In the contract context, waiver refers to the excuse of the nonoccurrence of or a delay in the occurrence of a condition of a duty.  Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied. . . .  [W]aiver may be inferred from the circumstances if it is reasonable to do so.  Accordingly, although an [i]ntention to relinquish must appear . . . acts and conduct inconsistent with [the] intention to terminate the contract are sufficient." (citations omitted)).