# EXHIBIT O

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARMOUR CAPITAL MANAGEMENT LP,<br><br>                                    Plaintiff,<br><br> - against -<br><br>SS&C TECHNOLOGIES, INC.,<br><br>                                    Defendant. | 3:17-cv-00790-JAM |

**OBJECTIONS TO DEFENDANT'S PROPOSED JURY INSTRUCTIONS**

Pursuant to this Court's Order granting the Joint Motion for Extension of Time to File Joint Trial Memorandum and Oppositions to Motions in Limine, ECF 210, and the Standing Order Regarding Trial Memoranda in Civil Cases, Plaintiff, ARMOUR Capital Management LP ("ACM"), hereby submits its Objections to Defendant's Proposed Jury Instructions. ACM offers its objections pursuant to Fed. R. Civ. P. 51, and reserves the right to withdraw, amend, modify and/or add to its objections as appropriate before the jury retires.

Dated: November 27, 2019

Respectfully Submitted,

**HOLLAND & KNIGHT LLP**

By: <u>*Joseph Mamounas*</u>

Christopher M. Cerrito (ct17183)
chris.cerrito@hklaw.com
One Stamford Plaza
263 Tresser Boulevard, Suite 1400
Stamford, CT 06901
Telephone: (203) 905-4500
Facsimile: (203) 724-3944

Joseph Mamounas (phv09010)
joseph.mamounas@hklaw.com
Allison Kernisky (phv09011)
allison.kernisky@hklaw.com
Manuel Miranda
(*pro hac vice* application forthcoming)
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799

Daniel Mateo (phv10323)
daniel.mateo@hklaw.com
2929 Arch Street
Suite 800
Philadelphia, PA 19104
Telephone: (215) 252-9543
Facsimile: (215) 867-6070

*Attorneys for ARMOUR*
*Capital Management LP*

**I.     General Objections**

ACM objects to SS&C's proposed jury instructions because, on the whole, they are prejudicial, confusing, misleading, inconsistent, duplicative, and argumentative. Moreover, ACM objects to SS&C's proposed instructions in whole or in part to the extent that they are contrary to or misstate the law. And, the jury instructions are incomplete to the extent they include instructions directed to SS&C's affirmative defenses, but exclude any instructions directed to ACM's affirmative defenses. SS&C's proposed verdict form could lead to error if adopted.

**II.    Objections to Proposed Jury Instruction 1 – Negligent Misrepresentation.**

ACM objects to this instruction in its entirety as incomplete, misleading, contrary to law, and prejudicial.

First, SS&C has attempted to eliminate the element of negligence from this instruction. Instead of discussing negligence, i.e. the failure to use reasonable care, the instruction emphasizes that ACM must establish that SS&C "knew or should have known the misrepresentation was false." The elimination of language pertaining to negligence from a *negligent* misrepresentation instruction is improper and risks misleading the jury and prejudicing ACM.

Second, SS&C materially deviated from Connecticut's model instruction for negligent misrepresentation. Connecticut Standard Jury Instructions § 3.16-1. ACM acknowledges that "[t]he language used in the model jury instructions, although instructive in considering the adequacy of a jury instruction is not binding on this court." *Snell v. Norwalk Yellow Cab, Inc.*, 212 A.3d 646, 670 (Conn. 2019) ([T]he model jury instructions … [were] revised only to 2008 and, consequently, do not reflect our subsequent cases …. for reasons like these that we previously have cautioned that the civil jury instructions found on the Judicial Branch website are intended as a guide only"). However, ACM sees no reason for SS&C's departure from the model's

description of the elements of negligent misrepresentation, because the case upon which SS&C relies, *Nazami v. Patrons Mut. Ins. Co.*, 910 A.2d 209, 213 (Conn. 2006), pre-dates the latest revision of the model instruction, January 1, 2008. *See* Connecticut Standard Jury Instructions § 3.16-1. Therefore, the 2008 Model Instruction would have considered and taken into account the case upon which SS&C's instruction is based.

Third, instead of using's the model's description of the first two elements,[1] SS&C uses the undefined term "misrepresentation." That is neither helpful nor clarifying, but rather risks confusing the jury as SS&C has defined negligent misrepresentation in terms of "misrepresentations." The model's language "supplied false information" is significantly more helpful to the jury.

Fourth, SS&C modified the element of injury. Instead of using the model's language, "justifiably relied on the information to its injury[,]" SS&C proposed "suffered an actual monetary harm as a result of its reliance." The term "suffered" is unnecessary and serves only to prejudice ACM. Additionally, SS&C's cited support does not use the phrase "actual monetary harm" but rather states the injury requirement as "suffered pecuniary harm as a result." *Nazami*, 910 A.2d at 213. The term "actual" is unnecessary and risks misleading the jury, implying that ACM must prove something more than economic harm. In other words, it risks imposing a heightened burden of proof. If it is SS&C's position that actual monetary harm is required, to the extent that causation is discussed in the damages instructions, it is more appropriately placed there.

---

[1] "First, the plaintiff must prove that the defendant supplied false information. Second, the plaintiff must prove that the defendant failed to exercise reasonable care in obtaining or communicating the information." Connecticut Standard Jury Instructions § 3.16-1.

4

**III.    Objections to Proposed Jury Instruction 1(a) – Negligent Misrepresentation – First Element – Misrepresentation of fact.**

ACM objects to this instruction in its entirety, and each instruction on the individual elements of negligent misrepresentation, as cumulative, argumentative, and unnecessary. In this context, there is no need for duplicative instructions on each element of misrepresentation in isolation, evidenced by the fact that the Model Instructions do not provide for individual instructions on the elements. SS&C has proposed the unnecessarily segmented instructions so that it can insert its legal and factual arguments into the jury instructions, they are not needed for clarity.

ACM also objects to this instruction as misleading, confusing, and contrary to law.

First, the proposed language – stating to the jury that they "may only consider as potential misrepresentations those statements made by SS&C to ACM before December 19, 2014" – risks misleading the jury. In other words, SS&C's proposed language implies that any evidence after December 19, 2014 is irrelevant. The law is clear that falsity is determined from the context and circumstances and that "[s]ubsequent conduct may be probative of whether a declarant knew or should have known a statement was false at the time it was made." *Associated Constr./AP Constr., LLC v. Hanover Ins. Co.*, No. 3:15-cv-1600 (MPS), 2018 WL 3998971, at *9 (D. Conn. Aug. 21, 2018) (quoting *Glazer v. Dress Barn, Inc.*, 873 A.2d 929, 955 (Conn. 2005)).[2]

Second, ACM objects to this instruction's description of the range of statements that may qualify as a statement of fact. Specifically, the paragraph beginning with "There are several types

---

[2] The Court has already made clear that the negligent misrepresentation claim may be based only on those statements made prior to December 19, 2014. (Order on the Motion to Dismiss, ECF No. 75.) ACM has adhered to that mandate since, at least, its amended complaint. (*Id.* at 13 ("Count Four of ACM's amended complaint appears to rely exclusively on pre-contractual misrepresentations that allegedly induced ACM to enter into the Master Agreement with SS&C.").) The inclusion of language to that effect in the instruction only serves to improperly cabin the scope of evidence to evaluate the potential misrepresentations.

5

of statements that the law does not consider to be statements of fact. …" risks confusion and prejudice to ACM.  The fact-centric inquiry to determine what statements constitute statements of fact does not lend itself to detailed descriptions of what could and what could not qualify as a statement of fact. *Miller v. Appleby*, 438 A.2d 811, 813 (Conn. 1981) ("Fraud and misrepresentation cannot be easily defined because they can be accomplished in so many different ways.…") (quoting *Hathaway v. Bornmann*, 77 A.2d 91, 93 (Conn. 1950)).

Accordingly, SS&C's language stating that "[a]n oral general representation which the customer is invited or allowed to verify is *likely* to be mere 'puffery' and not a misrepresentation of fact[]," impermissibly implies strict categorical divides into this inquiry and may mislead the jury.  *See United States v. Skilling*, 554 F.3d 529, 552 (5th Cir. 2009), *aff'd in part, vacated in part on other grounds, remanded*, 561 U.S. 358 (2010) (denying a challenge to "the district court's materiality instruction on the ground that the court should have specifically instructed the jury on puffery" because some statements of opinion "cannot, as a matter of law, be deemed immaterial puffery, and the district court was correct to leave the determination of their materiality to the jury"); *Associated Constr./AP Constr., LLC*, 2018 WL 3998971, at *7 ("The test for whether a statement is one of opinion or fact is whether 'under the circumstances surrounding the statement, the representation was intended and understood as one of fact as distinguished from one of opinion.'") (citations omitted).

Moreover, to the extent that SS&C argues that its language is supported by 12 Conn. Prac. Unfair Trade Practices Appendix I, ¶ 20, it is not.  The instruction SS&C relies on pertains to CUTPA.  While ACM disputes that such language is appropriate at all, if anywhere, an instruction modeled on CUTPA should be in the CUTPA instruction.[3]

---

[3] SS&C has included a version of that instruction in its CUTPA instructions.

Third, ACM objects to SS&C's proposed language stating that: "ACM's subjective conclusions about what SS&C's words meant or the implications that ACM drew from those words should not factor into your analysis." This language implies that ACM cannot make any conclusions from the statements made by SS&C. That is not so, the case that SS&C relies on states that "[t]here is no cause of action for 'negligent implication.'" *Nygren* v. *Greater New York Mut. Ins. Co.*, No. 07-cv-00462 (DJS), 2009 WL 807470, at *8 (D. Conn. 2009). In that case, there was no actual statement to base the claim on, rather the plaintiff claimed negligent misrepresentation on the basis that defendant represented that it "would be the … exclusive claims adjuster in Connecticut[] … [and that] this exclusivity was 'implied' because it did 'all' of the … Connecticut work." *Id.* Thus, "negligent implication" refers to scenarios where there was no "actual statement[.]" *Id.* That is not the case here, SS&C made affirmative statements. Accordingly, allowing SS&C's proposed language here is misleading and confusing to the jury because it implies that ACM cannot draw reasonable conclusions from SS&C's statements.[4]

Lastly, SS&C's placement of the operative inquiry ("must consider whether the statement of fact made by SS&C was false") in the fourth and final paragraph compounds the potential confusion discussed above. Under the model instruction, falsity is the first not final element for consideration.

**IV.   Objections to Proposed Jury Instruction 1(b) – Negligent Misrepresentation – Second Element – Knowledge of Falsity.**

The objections and arguments regarding the elimination of "negligence," as described in the first objection, *supra*, are incorporated by reference.

---

[4] Practically, ACM's conclusions about what SS&C's words meant are a necessary part of the reasonable reliance inquiry. Such conclusions are properly considered by the jury.

7

ACM objects to this instruction in its entirety, and each instruction on the individual elements of negligent misrepresentation, as cumulative, argumentative, and unnecessary.

ACM objects to this instruction as misleading and incomplete. To the extent the Court permits an instruction on the second element of negligent misrepresentation in isolation and it should not – it must include language making clear to the jury that "[s]ubsequent conduct may be probative of whether a declarant knew or should have known a statement was false at the time it was made." *Glazer*, 873 A.2d at 955. Such an addition is supported by *Glazer*, the same case upon which SS&C relies for its proposed instruction.

### V. Objections to Proposed Jury Instruction 1(c) – Negligent Misrepresentation – Third Element – Reasonable Reliance.

ACM objects to this instruction in its entirety, and each instruction on the individual elements of negligent misrepresentation, as cumulative, argumentative, and unnecessary.

ACM objects to this instruction as inconsistent, misleading, confusing, prejudicial, and contrary to law.

First, SS&C's proposed language – "ACM must prove that ACM would not have entered into the Master Agreement if SS&C had not made the statement, and that ACM changed its position because of the statement made by SS&C." – is inconsistent and risks misleading the jury. ACM agrees that it must demonstrate that it changed position because of SS&C's statements. *See Updike, Kelly & Spellacy, P.C. v. Beckett,* 850 A.2d 145, 165-68 (Conn. 2004) (negligent misrepresentation requires evidence of pecuniary loss caused by justifiable reliance upon information at issue); *Glazer*, 873 A.2d at 957. ACM, however, objects to the instruction to the extent SS&C's framing of the operative inquiry, in the inverse, requires ACM to prove that it changed its position, while also proving that it would not have changed its position (entered into the contract) because of the statements made by SS&C. Instead, to prevent misleading or

8

confusing the jury, the instruction should be framed consistently: since ACM must prove a change of position, that change of position is entering into the contract.

Second, SS&C's proposed language – "It is not enough for ACM to simply present evidence that a statement was false at the time it was made." – is argumentative and prejudicial to ACM, contrary to law, and unnecessary. The falsity of the statement must be established in SS&C's first element of misrepresentation, thus there is no need to reference the first element in the instruction on the second element. The repetition risks confusing the jury, and that redundant language seemingly was added only for its prejudicial effect. Importantly, that language also implies that ACM's evidence of falsity cannot be evidence of SS&C's negligence and/or knowledge. That is not the law. Such evidence can be properly applied to reasonable reliance. *Nat'l Groups, LLC v. Nardi*, 75 A.3d 68, 73 (Conn. App. 2013) ("The trier of fact considers all relevant circumstances in determining whether reliance is reasonable. The plaintiff's knowledge of the misrepresentation carries significant weight.") (citing *Williams Ford, Inc. v. Hartford Courant Co.*, 657 A.2d 212 (Conn. 1995)); *Valencis v. Nyberg*, 125 A.3d 1026, 1036 (Conn. App. 2015). Accordingly, SS&C's proposed language is prejudicial and contrary to law.

Third, to the extent SS&C has offered this instruction to address the "inducement" prong of the negligent misrepresentation, it should include the term "inducement" and plainly define it as such. SS&C's attempt to modify ACM's burden of proof with respect to inducement by merging it into the reasonable reliance inquiry is argumentative, misleading, and prejudicial.

### VI. Objections to Proposed Jury Instruction 1(d) – Negligent Misrepresentation – Fourth Element – Actual Monetary Harm.

The objections and arguments as to the use of the term "actual," as described in the first objection, *supra*, are incorporated by reference and apply here because of the instruction's title.

9

ACM objects to this instruction in its entirety, and each instruction on the individual elements of negligent misrepresentation, as cumulative, argumentative, and unnecessary.

ACM objects to this instruction as misleading, contrary to law, and imposing an unjustified and heightened burden on ACM.

First, SS&C's proposed language improperly imports the term "solely" – "To satisfy this element, ACM must prove that any monetary harm to SS&C resulted solely from the statement made by SS&C and not from other factors."  Negligent misrepresentation only requires proof that the injury occurred as a result of the misrepresentation – it does not require that it be the sole and only cause. *Coppola Const. Co. v. Hoffman Enterprises Ltd. P'ship*, 71 A.3d 480, 487 (Conn. 2013) ("Traditionally, an action for negligent misrepresentation requires the plaintiff to establish … [that it] suffered pecuniary harm *as a result*.") (emphasis added).  The use of the word "solely" improperly heightens ACM's burden as it implies a threshold that is inconsistent with Connecticut law. *New London Cty. Mut. Ins. Co. v. Sielski*, 123 A.3d 925, 934 (Conn. App. 2015) (discussing negligent misrepresentation, the test "is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries").[5]

---

[5] ACM notes that the "solely" language stems from case-law where there were two independent and potentially sufficient causes of the complained of injury. In the case SS&C relies on for that language, *Vaccaro v. U.S. Bank, N.A.*, No. CV146050373S, 2016 WL 8488123, at *6 (Conn. Super. Ct. Nov. 8, 2016), the court determined that the loss at issue – being "forced to defend against … the misrepresentations in … [a] foreclosure action" – was not suffered "solely [as] a result of the alleged misrepresentations, rather than as a result of the default and the foreclosure action." *Id.* That was because the plaintiffs "were in the position of having to defend against the foreclosure action because as their allegations necessarily imply, there was an indebtedness that had been defaulted on." *Id.; see also Glazer*, 873 A.2d at 957 ("plaintiffs cannot prevail on this claim because they have failed to prove that they suffered a loss as a result of these misrepresentations, rather than as a result of the loss of financing"). The facts here are not analogous, there is no independent and potentially sufficient cause for loss attributable to SS&C's misrepresentations and later failure to implement.

Moreover, to the extent SS&C's language references its defense of contributory negligence, it risks confusion by including language on a defense in the charge for an element of negligent misrepresentation. If SS&C raised and preserved that defense, it would be more appropriately placed within SS&C's instruction on its affirmative defenses.

Second, SS&C's use of the term "solely" in conjunction with its proposed language – "[y]ou must not base your decision on your views about whether SS&C's performance could have been better or different, or whether the implementation of CAMRA lived up to ACM's expectations" – is misleading and contrary to law. The term "solely" is misleading, as it implies that only the statements themselves could have caused ACM's injury. That cannot be true. Hypothetically, if SS&C had fully implemented the CAMRA software on schedule there would have been no injury or monetary harm to ACM. That example highlights why the statements cannot be considered in isolation and separate and apart "from other factors." And the direction to the jury to ignore SS&C's performance is contrary to Connecticut law. *Glazer*, 873 A.2d at 956 ("Subsequent conduct may be probative of whether a declarant knew or should have known a statement was false at the time it was made.") (citing *Updike, Kelly & Spellacy, P.C.*, 850 A.2d at 166-67 (concluding that evidence that attorney's fees accrued well above estimate shortly after commencing litigation provided reasonable basis to conclude declarant should have known estimate was false when given)).

## VII. Objections to Proposed Jury Instruction 2 – CUTPA - Introduction.

ACM reincorporates its objections made in response to Instruction 1(a) to the inclusion of the temporal limitation of December 19, 2014.

ACM objects to this instruction as misleading, contrary to law, imposing an unjustified and heightened burden on ACM, and argumentative.

First, SS&C's proposed language – "If you find that ACM failed to prove one or more of the elements of its negligent misrepresentation claim, you must find in favor of SS&C on the CUTPA claim as well." – is an incorrect statement of law. CUTPA "proscribes a broader range of conduct than did the common-law action for innocent misrepresentation. … For the plaintiff victimized by such conduct, CUTPA provides an action more flexible and a remedy more complete than did the common law.  The increased flexibility of the action stems from the absence of certain obstacles to recovery under the common-law action. *The CUTPA plaintiff need not prove reliance or that the representation became part of the basis of the bargain.*" *Hinchliffe v. Am. Motors Corp.,* 440 A.2d 810, 815-16 (Conn. 1981) (emphasis added); *see also Milford Paintball, LLC v. Wampus Milford Assocs., LLC*, 115 A.3d 1107, 1112 (Conn. App. 2015) (same).

Second, SS&C's proposed language – "If you find SS&C liable on the negligent misrepresentation claim, you must also find that ACM proved each of the following elements by a preponderance of the evidence for ACM to prevail on its CUTPA claim: 1. SS&C's negligent misrepresentation constituted an unfair act or that it constituted a deceptive trade practice … ." – is an incorrect statement of law. If SS&C proves negligent misrepresentation it has proven that SS&C's actions offend public policy and constitute an unfair trade act. *Worcester v. Salzillo*, No. NNHCV085019588S, 2009 WL 5511544, at *3 (Conn. Super. Ct. Dec. 16, 2009) ("In order to meet the first prong of the cigarette rule, a showing of actions by the defendant in violation of public policy, the complaint alleges that [the defendant] has engaged in negligent misrepresentation, a cause of action established and recognized in the common law. Therefore, because a common-law cause of action can serve as the basis of a public policy violation under CUTPA, and the plaintiff has alleged sufficient facts to bring a claim of common-law negligent misrepresentation, the plaintiff has sufficiently pleaded the first prong.").  SS&C's proposed

language imposes an impermissible "double" burden on ACM, requiring it to prove an unfair act or deceptive trade practice even if it already proved negligent misrepresentation.

SS&C may argue that this Court's Order on the Motion to Dismiss acts as the law of case, tying the success of the CUTPA claim to ACM's negligent misrepresentation claim. (Order on the Motion to Dismiss, ECF No. 75.) If so, SS&C has misunderstood the Court's language. The Court stated that "ACM's CUTPA claim may proceed to the extent that it relies on negligent misrepresentations prior to the execution of the Master Agreement." (*Id.* at 16.) That ruling merely establishes that the economic loss doctrine would bar tort claims, such as those under CUTPA, based on misrepresentations made post-execution. The use of the term "negligent misrepresentations" does not imply that the misrepresentation claim is the lynchpin, but rather that ACM's CUTPA claim is limited temporally in the same manner as ACM's negligent misrepresentation claim. Moreover, the Court's language in the Summary Judgment Order (ECF No. 194), "deny summary judgment … under CUTPA … to the extent … predicated on the claim for negligent misrepresentation[,]" stands for the same proposition. The use of the word claim in front of negligent misrepresentation does not represent a significant departure from CUTPA precedent, contrary to SS&C's interpretation.

Third, ACM objects to the description of the second element of CUTPA. SS&C's proposed language uses the phrase "to suffer" which is not in the model instruction (Connecticut Standard Jury Instructions § 5.2-1), which reads "to sustain." Such language is argumentative and used by SS&C for its prejudicial effect. That is especially so as SS&C's cited support is the legislative intent section of CUTPA and merely reads "(a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).

13

**VIII. Objections to Proposed Jury Instruction 2(a) – CUTPA – First Element – Unfair Act or Practice.**

ACM objects to this instruction as misleading, confusing, argumentative, and duplicative.

First, SS&C states the three ways a CUTPA plaintiff may satisfy the unfair act or practice requirement, but only provides a detailed analysis of the third and final element. The model instructions (Connecticut Standard Jury Instructions §§ 5.2-3, 5.2-4; 5.2-5, 5.2-6) provide three separate instructions for each of the three elements. SS&C chooses only to include a description of the third and final element. It has departed from the model instruction by combining two of the original four instructions and excluding the remainder. That reflects an attempt by SS&C to have the jury focus its inquiry on the third element at the exclusion of the others. Moreover, the model has separated the general and three specific inquiries because they present distinct legal issues, thus SS&C should not be allowed to confuse and mislead the jury by blending a subset of those issues and ignoring others.

Second, the last sentence of the first paragraph – "If you find that ACM was not able to prove at least one of these elements by a preponderance of the evidence, then you must find that SS&C did not commit an unfair trade practice that violates CUTPA." – is argumentative and duplicative given that the instruction already makes clear that ACM must prove "at least one of the following elements[.]"

Third, SS&C also modified the description of Substantial Injury as compared to the model instruction. Connecticut Standard Jury Instructions § 5.2-6. SS&C added the word "any" in front of "countervailing benefits[.]" Its addition risks confusing the jury with respect to the weighing of benefits of SS&C misrepresentations as compared to the injury to ACM.

Fourth, SS&C improperly attempts to charge an affirmative defense of superseding cause in the last sentence of the charge on the claim – "If you find that ACM's own act or failure to act

14

was a proximate cause of its injury—in other words, an actual cause that was a substantial factor in causing its injury—you must find that ACM's injury was one that ACM could reasonably have avoided." That language cannot stand as the addition of a defense to the burden of proof instruction risks jury confusion. If SS&C had properly raised and preserved that defense, it would be more appropriately placed within SS&C's instruction on its affirmative defenses. That defense, however, has not been preserved and should be stricken from the instructions entirely.

### IX. Objections to Proposed Jury Instruction 2(b) – CUTPA – First Element – Deceptive Act or Practice.

ACM objects to this instruction as confusing and misleading as it represents the second "CUTPA – First Element."

ACM also objects to this instruction as misleading and contrary to law. SS&C's proposed language – "Favorable comments by sellers with respect to their products are universally accepted in the marketplace and do not violate CUTPA when they constitute mere 'puffing' or 'sales talk.'" – uses the term "universally accepted" as a means to confuse the jury and immunize any statements made regarding their products. *See Skilling*, 554 F.3d 529, 552 (5th Cir. 2009), *aff'd in part, vacated in part on other grounds, remanded*, 561 U.S. 358 (denying a challenge to "the district court's materiality instruction on the ground that the court should have specifically instructed the jury on puffery" because some statements of opinion "cannot, as a matter of law, be deemed immaterial puffery, and the district court was correct to leave the determination of their materiality to the jury"); *Associated Constr./AP Constr., LLC*, 2018 WL 3998971, at *7 ("The test for whether a statement is one of opinion or fact is whether 'under the circumstances surrounding the statement, the representation was intended and understood as one of fact as distinguished from one of opinion.'" (citations omitted)). Factual inquiries, especially in the negligent misrepresentation context, do not lend themselves to "universal" truths. Even the case upon which SS&C relies does

15

not speak in such absolutes. *See Anthem Sports, LLC v. Under the Weather, LLC*, 320 F. Supp. 3d 399, 420 (D. Conn. 2018) ("Statements of opinion or puffery, however, **generally** do not give rise to CUTPA liability.") (emphasis added).

X. **Objections to Proposed Jury Instruction 2 and 4 – SS&C's Affirmative Defenses – Waiver and Ratification**

ACM objects to this instruction in its entirety because of its implication that ACM may have ratified or waived the Master Agreement based on conduct prior to ACM's knowledge of the falsity of the misrepresentations and prior to the benefits of the contract being realized (implementation never was). Such language is misleading, prejudicial to ACM, and contrary to law.

ACM also objects on the basis that SS&C failed to raise an affirmative defense of ratification or waiver.

SS&C's proposed language improperly implies that ACM waived or ratified the contract by staying in the contractual relationship with SS&C – "To find that ACM ratified the Master Agreement, SS&C must prove either (1) that ACM demonstrated an intent to continue the parties' relationship and be bound by the Master Agreement by entering into Work Request No. 2 or by otherwise accepting the parties' contractual arrangement, or (2) that ACM acted in a manner inconsistent with avoiding the Master Agreement by entering into Work Request No. 2 or by otherwise accepting the parties' contractual arrangement." That is prejudicial because it assumes that ACM was aware of the misrepresentations falsity upon execution. That is not so, it took significant time for the misrepresentation to be proved untrue. *Gengaro v. City of New Haven*, 984 A.2d 1133, 1139 (Conn. App. 2009) ("in accordance with the Restatement, that ratification results, as a matter of law, if the party who executed the contract under duress accepts the benefits flowing from it or remains silent or acquiesces in the contract for any considerable length of time after opportunity is afforded to annul or avoid it.") (citation and internal quotation marks omitted);

16

*see E. Devoe Tompkins, Inc., v. City of Bridgeport*, 123 A. 135, 137 (Conn. 1923) ("We need not, however, pursue the question whether the plaintiffs ever had any right to rescind the contract, or to have it set aside, because of the misrepresentations alleged; for the law is so that, if the plaintiffs ever had such a right, or such a remedy, they have lost it by electing to perform and by fully performing their contract *after full knowledge of the truth*. The law on that point is well settled in this state.") (emphasis added).

Moreover, SS&C's language risks misleading the jury because Connecticut law makes clear that such waiver or ratification occurs after the benefits of the agreement have flowed to, and been retained by, ACM. *Id.*; *see Doe No. 1 v. Knights of Columbus*, 930 F. Supp. 2d 337, 375–76 (D. Conn. 2013) ("Specifically, by retaining the benefits of a contract obtained by fraud, 'the defrauded party waives any right to assert fraud as a ground to avoid the agreement.'"). Because implementation was never achieved, the primary benefit of the bargain has not been delivered or retained by ACM.

## XI. Objections to Proposed Jury Instruction 4 – Damages.

ACM reincorporates its objection regarding the term "actual" here. An instruction that follows this Court's prior language would be more appropriate. For example, "An act or omission is a proximate cause of an injury if it was a substantial factor in bringing about a plaintiff's injury, and if the injury was a reasonably foreseeable consequence of the defendant's acts or omissions[,]" does not risk confusion due to conflation of "actual cause" and "substantial factor." *Grewcock* v. *Yale-New Haven Health Services Corp.*, No. 16-cv-00452 (JAM), ECF No. 65 at 12-13 (D. Conn. Mar. 9, 2019) (Meyer, J.).

ACM objects to this instruction in its entirety because SS&C's proposed language combines two distinct charges, risking confusing and misleading the jury. The undue length of the instruction is exemplified by the fact that the charge discusses ACM's misrepresentation and

17

CUTPA claims, yet also includes discussion of SS&C's counterclaim. Damages as to claims and as to counterclaims, at the least, should be separate instructions.

ACM also objects to this instruction as misleading, contrary to law, unduly long, argumentative and imposing an unjustified and heightened burden on ACM. SS&C's proposed language – "If you find that ACM has proven by a preponderance of the evidence that it suffered a loss as a *direct* result of a violation of CUTPA…" (emphasis added) – goes beyond the statutory language which merely requires that the loss be "as a result of" the violation of CUTPA. *Stevenson Lumber Co.-Suffield v. Chase Assocs., Inc.*, 932 A.2d 401, 406 (Conn. 2007) ("Thus, in order to prevail in a CUTPA action, a plaintiff must establish both that the defendant has engaged in a prohibited act *and* that, 'as a result of' this act, the plaintiff suffered an injury"); *see Wise v. Cavalry Portfolio Servs., LLC*, No. 3:09-CV-86CSH, 2010 WL 1286884, at *4 (D. Conn. Mar. 30, 2010) ("As Defendant correctly notes, in order to prevail in a CUTPA action, a plaintiff must establish both that the defendant has engaged in a prohibited act and that, as a result of this act, the plaintiff suffered an injury. The language as a result of requires a showing that the prohibited act was the proximate cause of a harm to the plaintiff." (quoting *Stevenson Lumber Company–Suffield, Inc. v. Chase Assocs.*, 932 A.2d 401, 408 (Conn. 2007)) (internal citations omitted). The use of the term "direct" acts to impermissibly raise SS&C's burden.

Lastly, ACM objects to SS&C's language – "ACM is not entitled to recover damages amounts more than what ACM actually paid to SS&C." That is contrary to clearly established law. CUTPA makes clear that damages are limited to an "ascertainable loss," there is no limitation to fees paid under the contract. *Ulbrich v. Groth*, 78 A.3d 76, 100 (Conn. 2013) ("CUTPA provides a private cause of action to [a]ny person who suffers *any ascertainable loss of money*") (emphasis added). And negligent misrepresentation claims are limited to "pecuniary loss."

18

*Glazer*, 873 A.2d at 954 ("One who[] [makes a negligent misrepresentation] is subject to liability for pecuniary loss."). SS&C's proposed language is incorrect as a matter of law, is argumentative, and risks substantially misleading the jury.