UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARMOUR CAPITAL MANAGEMENT LP,<br><br>Plaintiff,<br><br>v.<br><br>SS&C TECHNOLOGIES INC.<br><br>Defendant. | Case No. 17-cv-00790-JAM<br><br>November 27, 2019 |

**ACM'S MOTION *IN LIMINE* NO. 6: PERMITTING REFERENCE TO ALL OF SS&C'S MISREPRESENTATIONS[1]**

At trial, ACM anticipates that SS&C will seek to limit the universe of pre-contractual misrepresentations to the 22 misrepresentations identified in ACM's responses to broad and burdensome interrogatories, made far before the close of fact discovery. (*See* Plaintiff's Amended Objections And Responses To Defendant's Interrogatory Nos. 5-10 ("Interrogatory Responses"), attached at Ex. 1.) Additionally, ACM anticipates that SS&C will seek to "slice-and-dice" the misrepresentations and ask the jury to consider each misrepresentation in a vacuum.

There is no justification to so limit ACM. First, the Court has already refused to "slice-and-dice" the misrepresentations given "the extended course of the parties' dealings and the possible linkages between one or more statements." (ECF No. 194 at 10.) Doing so at trial would be improper. Second, there is no basis to limit the universe of the misrepresentations to those listed in the Interrogatory Responses. For one, ACM explicitly objected to SS&C's Interrogatories

---

[1] Unless otherwise specified, capitalized terms have the same meaning as in the First Amended Complaint (ECF No. 35) ("FAC"). The "Master Agreement" is the "Master Agreement for Software, Maintenance and Support, Professional Services and Other Services" and incorporated each attachment and Work Request (ECF No. 35-1 at 1, § 4.1; ECF No. 35-2 at 1).

Nos. 6 and 8, requesting identification of the bases for ACM's CUTPA and negligent misrepresentation claims. Those requests were premature and burdensome, in part, because discovery was ongoing. (Ex. 1 at 8, 24.) Moreover, ACM reserved the right to later supplement the list of misrepresentations, indicated that the list was not exhaustive, and immediately stated prior to the list: "include, *among others*: . . . ." (*Id.* (emphasis added).) More importantly, SS&C's own conduct confirms ACM's position. And as discovery progressed, ACM identified a wider class of statements in its summary-judgment briefing, to which SS&C did not object.

Thus, ACM requests that the Court grant ACM's motion and deny SS&C's anticipated motion on the same subject. Any objection or argument SS&C had to ACM's subsequent identification of statements, as contemplated in ACM's interrogatory responses, is baseless. ACM provided unambiguous notice of the full scope of statements that would be at issue at trial.

I.   **BACKGROUND.**

On January 19, 2018, almost six months before the fact discovery cut-off date, ACM served its Interrogatory Responses, offering 22 examples of SS&C's pre-contractual misrepresentations in response to SS&C's request for the "basis" of its CUTPA claim. (*Id.* at 8.)

ACM objected to that request:

> **Objection**. This contention **interrogatory is premature, while discovery is ongoing,** and burdensome to the extent it seeks information that is equally available to SS&C, including information available in documents produced in this action. Subject to and without waiving its objections, ACM states that its claim for SS&C's violation of the Connecticut Unfair Trade Practices Act ("CUTPA") (Count II) in the Amended Complaint is based principally on the following salient facts currently available to it, which **it reserves the right to later supplement**.

(*Id*. (emphases added).) ACM then described the general substance of the specific statements made by SS&C, which preceded the list of 22 example statements:

> Prior to the execution of the Master Agreement, SS&C made misrepresentations to ACM regarding its ability to implement CAMRA, which constitute unfair and deceptive trade practices because SS&C knew or should have known that it was not

> qualified to, and could not, implement CAMRA for ACM, but marketed itself as qualified and capable of doing so. SS&C also misrepresented the appropriateness for ACM of the hosting deployment option for CAMRA and the time in which SS&C was capable of implementing CAMRA for ACM, which misrepresentations SS&C knew or should have known were false. After ACM entered into the Master Agreement, SS&C continued to falsely represent that it could implement CAMRA for ACM—for over two years—which it failed to do. SS&C also knew or should have known that these misrepresentations were false. SS&C's conduct is immoral, unethical, unscrupulous, and offends public policy, in violation of CUTPA, because through its misrepresentations, SS&C induced ACM, to its detriment, to enter into the Master Agreement, not terminate the agreement earlier than it did, not make a warranty claim, and continue to pay SS&C money it was not entitled to, including a $200,000 "progress payment," ultimately costing ACM over $2.28 million.
>
> Specifically, SS&C's pre- and post-contractual misrepresentations **include, among others**: . . . . [listing 22 examples].

(*Id.* (emphasis added).) ACM objected for the same reasons and provided the same list in response to SS&C's request for the basis of ACM's negligent-misrepresentation claim. (*Id.* at 24-27.)

In ACM's summary-judgment briefing, after further discovery, ACM identified additional bases for its CUTPA and negligent misrepresentation claims. (*See* ACM's Opposition to SS&C's Motion For Summary Judgment, ECF No. 177.) For example, ACM discussed the statements made by SS&C that "CAMRA on a Hosted Basis Was a Suitable Solution for ACM." ACM then identified specific statements which were not explicitly enumerated in the list of 22 but subsumed by the general substantive description of SS&C's misrepresentations. Those statements were clearly identified in its summary-judgment briefing, including, but not limited to: "SS&C understood from this process that ACM wanted to convert . . . to one that was 'automated,' and 'easy to use' with 'better integration for improved efficiency and control,' and 'timely and accurate accounting and reporting[.]'" (ECF No. 177 at 9 (emphases omitted) (citing SDMF ¶71).)

Additionally, ACM discussed SS&C's statements pertaining to it having "Misrepresented CAMRA's Existing Capabilities." It then identified specific statements which were not explicitly enumerated in the list of 22 but subsumed by the general substantive description of SS&C's

3

misrepresentations. Those statements were also clearly identified in its summary-judgment briefing, including, but not limited to:

> the accuracy of CAMRA's reports (SS&C is equipped to 'help mortgage REITs' produce "fully auditable accounting and reporting processes and eliminate the use of spreadsheets.");
>
> SS&C told ACM that SS&C had the capability to quickly establish interfaces to ACM's custodians, Citi and BONY, based largely on its purported prior experience with these custodians. Yet, SS&C had never set up interfaces with Citi or BONY for a mortgage REIT, particularly not one with the hosting deployment option . . . .;
>
> SS&C told ACM that SS&C and CAMRA could import and load data from AVM. But SS&C had never attempted to integrate CAMRA with AVM, a fact SS&C withheld from ACM, and SS&C did nothing to validate AVM's capabilities, other than to ask ACM for a list of services AVM provided; and
>
> SS&C also told ACM that CAMRA was capable of generating accurate reports. In reality, reports generated in CAMRA often did not match the data in CAMRA or the data ACM generated outside of CAMRA using its existing accounting processes.

(ECF No. 177 at 11-13 (citing SDMF ¶¶ 94, 95, 99, 108).)[2]

ACM similarly identified statements relating to "SS&C['s] Capab[ilities] of Implementing CAMRA for ACM," including but not limited to, statements that SS&C had "unique expertise" with mortgage REITs, and that SS&C had "accounting and operations professionals [with] extensive experience supporting financial reporting requirements of organizations such as [ACM]." (ECF No. 177 at 13-14 citing (Response No. 8 ¶¶ 1, 4, 5, 6.).) And, in its summary-judgment briefing, ACM described the "proven" misrepresentation more completely, as both an omission and affirmative statement in its summary judgement:

> SS&C told ACM that CAMRA was "proven," but this was false because before December 2014, SS&C had never implemented a mortgage REIT on a hosted basis. SS&C's purpose in showing ACM a list of other mortgage REIT clients in the June 4, 2014 PowerPoint was to convince ACM that CAMRA would work for it. What

---

[2] ACM also identified the statements regarding AVM in its description of the classes of misrepresentations made by SS&C, "SS&C assured ACM it could import data from AVM, a third-party provider; SS&C had never worked with AVM before and made no effort to learn enough about AVM." (ECF No. 177 at 4.)

> SS&C did not say is that those mortgage REITs all had CAMRA implemented on a licensed basis, where the customer takes on most of the effort, or on an outsourced basis, where SS&C does most of the effort.

(ECF No. 177 at 7-8 (citing SDMF ¶¶ 29, 82, 86).)

Importantly, SS&C's briefing confirms that the universe of statements alleged to be misrepresentations are not limited to the original 22 identified. SS&C did not object to ACM's detailed description identifying the statements it contended were misrepresentations. Instead, it specifically labeled and addressed statements outside of the original 22 listed:

> **ANM 23.** ACM asserts a new ANM for the first time in its opposition based on the allegation that SS&C "recommended CI Manager" instead of "RECON." (Opp. at 4.) But a recommendation, by definition, is an opinion.
>
> **ANM 24**. This ANM—which ACM identifies for the first time in its opposition—addresses SS&C's ability to "import data from AVM." This ANM also appears in the November Proposal and is dealt with in the Contract. Like ANM 15 and 16, supra, this ANM is not actionable.

(ECF No. 179 at 6, 7 (emphasis in original) (citations omitted).) Not only did SS&C fail to object, it responded to ACM's "new" statements on the merits, claiming the statements were opinion or otherwise not actionable due to them tying with the Master Agreement. (*Id.*)

Finally, on November 22, 2019, ACM received a draft of SS&C's Proposed Verdict Form, which proposes having the jury parse out and decide each misrepresentation in isolation:

> 1. Has ACM proved by a preponderance of the evidence that any of the following statements, as set out in Appendix A, are statements of fact?
>
>    Statement 1    Yes___    No___
>
>    Statement 2    Yes___    No___
>
>    Statement 3    Yes___    No___
>
>    …

## II.     ARGUMENT.

ACM has consistently maintained that SS&C made a wide variety of statements that it alleges are negligent misrepresentations and/or CUTPA violations, and has provided detailed accounts of those statements. The determination of what statements qualify as false statements of fact is rightfully left to the jury. These statements should not be viewed in a vacuum, as SS&C proposes, but holistically, in conjunction with each other and the context and circumstances surrounding this case. As the Court noted in its summary judgment order: "In light of the extended course of the parties' dealings and the *possible linkages between one or more statements,* it would be premature for me to try to slice-and-dice which particular statements identified by ACM as the basis for its claims are non-actionable as a matter of law." (ECF No. 194 at 10 (emphasis added); *id.* at 9 ("these highly fact-bound issues of the actionability of particular statements should remain for the jury to consider in light of the context and circumstances of this case.").)

The Court's ruling is supported by ample case law. *See, e.g.*, *SS&C Techs. Inc. v. Providence Inv. Mgmt.*, 582 F. Supp. 2d 255, 258-59 (D. Conn. 2008) (noting in prejudgment remedy context involving same corporate defendant that "while a jury may find that SS & C's representations to [plaintiff] PIM regarding the capabilities, ease of use, and timetable for implementation of the CAMRA software system were accurate, truthful, and made in good faith, . . . [g]iven the significant, repeated, and continuing problems encountered during the CAMRA implementation process, a jury could find that SS & C did in fact misrepresent their capabilities to PIM in some way"); *Fed. Ins. Co. v. Speedboat Racing LLC*, 200 F. Supp. 3d 312, 345 (D. Conn. 2016) (negligent misrepresentations require analysis of "statement's context, formal nature, the relationship between the parties, or the communicator's status as an individual with specialized knowledge"); *Williams Ford, Inc. v. Hartford Courant Co.*, 657 A.2d 212, 222 (Conn. 1995); *Meyers v. Cornwell Quality Tools Inc.*, 674 A.2d 444, 450 (Conn. App. Ct. 1996); *Woodling v.*

6

*Garrett Corp.*, 813 F.2d 543, 552 (2d Cir. 1987) (same); *Omega Eng. Inc. v. Eastman Kodak Co.*, 908 F. Supp. 1084, 1098 (D. Conn. 1995) (same); *Assoc. Constr./AP Constr., LLC v. Hanover Ins. Co.*, No. 15-cv-1600, 2018 WL 3998971, at *7 (D. Conn. Aug. 21, 2018) ("The test for whether a statement is one of opinion or fact is whether 'under the circumstances surrounding the statement, the representation was intended and understood as one of fact as distinguished from one of opinion.'"); *see also Dunn Appraisal Co. v. Honeywell Info. Sys. Inc.*, 687 F.2d 877, 882 (6th Cir. 1982) ("trial court was not repeating a verbatim quotation, but was summarizing the fair import of the various statements . . . . A false representation may be implied as well as actual").

Additionally, SS&C has no basis to restrict or limit the universe of misrepresentations to the 22 identified in the Interrogatory Responses. That is for two reasons. First, ACM objected to the relevant interrogatories as premature, in part, because discovery was not complete, reserved the right to later amend and/or supplement, and indicated that the list of 22 misrepresentations was not exhaustive. Second, after discovery had progressed and ACM identified the broader range of statements in its summary-judgment briefing, SS&C did not object or move to exclude consideration of such statements at that time prior to the Court's Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment. (ECF No. 194.)

The failure to object was critical. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 55 (2d Cir. 2005) (by failing to make a timely objection and by arguing, and otherwise citing to, the documents defendants sought exclude, the court found defendants had waived their objection); *Sandberg v. Virginia Bankshares, Inc.*, 891 F.2d 1112, 1122 (4th Cir. 1989) (rejecting defendant's argument against inclusion of certain misrepresentations to the jury because they were never "disclosed or . . . if they [had been], they were not material omissions or misrepresentations," because of defendant's "failure to object."); *see also Johnson v. U.S. Postal Serv.*, 64 F.3d 233, 237 (6th Cir.

1995) (ruling that the "failure to object to evidentiary material submitted in support of a summary judgment motion constitutes a waiver of those objections."). Instead, SS&C addressed these additional misrepresentations head on, citing two of the additional statements (as #23 and #24) in its briefing and providing substantive arguments in response. In sum, it is proper for the jury to consider statements beyond the 22 identified in the Interrogatory Responses, including those more fully articulated by ACM in its summary-judgment briefing (to which SS&C never objected), and any argument regarding preclusion or waiver by ACM is thus inapplicable.

WHEREFORE, ACM respectfully requests that the Court grant this motion ruling that ACM is not restricted to the non-exhaustive list of 22 misrepresentations identified in its Interrogatory Responses but can rely on all misrepresentations made by SS&C; preclude SS&C from asserting that each misrepresentation should analyzed in an isolated vacuum; and/or deny any Motion in Limine or other argument by SS&C seeking to limit the scope of alleged misrepresentations to the 22 SS&C desires; award ACM such further just and proper relief.

| | |
|---|---|
| Dated: November 27, 2019 | Respectfully Submitted, |

                                                **HOLLAND & KNIGHT LLP**

By: */s Joseph Mamounas*
Christopher M. Cerrito (ct17183)
chris.cerrito@hklaw.com
One Stamford Plaza
263 Tresser Boulevard, Suite 1400
Stamford, CT 06901
Telephone: (203) 905-4500
Facsimile: (203) 724-3944

Joseph Mamounas (phv09010)
joseph.mamounas@hklaw.com
Allison Kernisky (phv09011)
allison.kernisky@hklaw.com
Manuel Miranda
*(pro hac vice application forthcoming)*
manuel.miranda@hklaw.com
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799

Daniel Mateo (phv10323)
daniel.mateo@hklaw.com
2929 Arch Street
Suite 800
Philadelphia, PA  19104
Telephone: (215) 252-9543
Facsimile: (215) 867-6070

*Attorneys for Plaintiff ARMOUR Capital Management LP*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be send by email to all parties by operation of the Court's electronic filing system or by mail to any counsel or self-represented party unable to accept electronic filing, as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                          By: */s Allison Kernisky*
                                               Allison Kernisky (phv09011)