UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ARMOUR CAPITAL MANAGEMENT LP,

                Plaintiff,

- against -                    3:17-cv-00790-JAM

SS&C TECHNOLOGIES, INC.,

                Defendant.

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO ACM'S MOTION *IN LIMINE* NO. 2: TO EXCLUDE ANY REFERENCE OR ARGUMENT RELATED TO CERTAIN POST-CONTRACTUAL CONDUCT

PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
Robert A. Atkins
Jeannie S. Rhee
Jeffrey J. Recher
Joshua D. Kaye
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
ratkins@paulweiss.com
jrecher@paulweiss.com
jkaye@paulweiss.com

Kevin J. O'Connor
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109-1775
Telephone: (617) 378-4394
koconnor@hinckleyallen.com

Jeffrey J. Mirman
Alexa T. Millinger
Hinckley, Allen & Snyder LLP
20 Church Street, 18th Floor
Hartford, Connecticut 06103
Telephone: (860) 331-2762
jmirman@hinckleyallen.com
amillinger@hinckleyallen.com

*Attorneys for Defendant
SS&C Technologies, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ................................................................................................................................ 2

    I.    Evidence of Post-Contractual Conduct Should be Precluded ................................. 2

    II.   SS&C Should be Permitted to Introduce Evidence of Post-Contractual Conduct to the Same Extent as ACM ...................................................................... 6

CONCLUSION ............................................................................................................................. 8

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Glazer* v. *Dress Barn Inc.*,
 873 A.2d 929 (Conn. 2005) ................................................................................................3

*Associated Constr./AP Constr., LLC* v. *Hanover Ins. Co.*,
 No. 15-cv-1600 (MPS), 2018 WL 3998971 (D. Conn. Aug. 21.2018) ....................................3

*Marino* v. *Guilford Specialty Grp., Inc.*,
 No. 3:14CV705(AVC), 2015 WL 1442749 (D. Conn. Mar. 27, 2015)....................................7

*Nazami* v. *Patrons Mut. Ins. Co.*,
 280 Conn. 619 (2006) .........................................................................................................7

*Snell v. Norwalk Yellow Cab, Inc.*,
 212 A.3d 646 (Conn. 2019) ................................................................................................7

Defendant SS&C Technologies, Inc. ("SS&C") respectfully submits the following memorandum of law in opposition to Armour Capital Management LP's ("ACM") motion *in limine* no. 2 to exclude any reference or argument related to certain post-contractual conduct.

## PRELIMINARY STATEMENT

By moving to exclude certain "evidence, reference, or argument concerning or arising out of the parties' post-contractual conduct," ACM seemingly agrees with SS&C on the need to limit the scope of post-contractual evidence. ACM appears to agree with SS&C that the probative value of such evidence is minimal, conceding that "[m]uch post-contractual conduct is no longer at issue in this case, rendering such evidence irrelevant and potentially confusing to the jury." (Pl.'s Mot. Lim. No. 2 ("Mot.") at 1.) But ACM nevertheless takes the position that it should be permitted to rely on evidence regarding the parties' post-contractual conduct to support its own claims, while SS&C should be precluded from using such evidence to defend itself. This position is untenable and unfairly prejudicial to SS&C.

ACM's filing reveals that it seeks to convince the jury that SS&C knew its alleged pre-contractual statements were false before the contract based on events after the contract. ACM intends to prove its misrepresentation claim by putting on evidence from months or years after the parties entered into the Master Agreement which, according to ACM, shows that the CAMRA product did not work or did not live up to ACM's expectations. ACM admits as much in its description of the case: "Twenty-eight months later, the proof of SS&C's misrepresentations was in the proverbial pudding: CAMRA was not implemented and was unusable." (Joint Trial Mem. 3–4, ECF No. 221.) That is precisely the sort of evidentiary presentation this Court should preclude. ACM's supposed difficulties with the CAMRA product have no bearing on the *falsity* or *negligence* of statements made months or years earlier.

1

The Court should therefore exclude *all* evidence, reference to, or argument regarding post-contractual conduct. But if ACM is permitted to introduce evidence of the parties' post-contractual conduct to support its claims, SS&C should be afforded the same opportunity. If ACM, for example, is permitted to introduce evidence about how CAMRA did not live up to its expectations, SS&C should be permitted to (1) rebut that evidence by proving that SS&C's post-contractual conduct was, in fact, in compliance with SS&C's obligations and alleged representations, and (2) show, among other things, that ACM's problems with the CAMRA product were caused by its failure to discharge its own commitments and responsibilities with respect to CAMRA implementation and use.

## ARGUMENT

### I. Evidence of Post-Contractual Conduct Should be Precluded

ACM argues that evidence of SS&C's post-contractual conduct is probative of two elements of its negligent misrepresentation claim. But ACM fails to show how such evidence is probative. ACM's arguments do, however, reveal its true intention—which is to try its dismissed breach of contract claim through the backdoor of its negligent misrepresentation claim, and to transform SS&C's pre-contractual statements into warranties. ACM's strategy, if permitted, would be confusing to the jury, highly prejudicial to SS&C, and amount to an end-run around the Court's summary judgment order.

*First*, ACM claims that it should be permitted to introduce post-contractual evidence to "establish the falsity and awareness of SS&C's pre-contractual misrepresentations." (Mot. at 1.) More specifically, ACM argues that it "should be permitted to introduce at trial evidence of SS&C's *post*-contractual conduct for the limited purpose of proving SS&C knew or should have known its *pre*-contractual statements were false." (*Id.* at 4.) But, as argued by SS&C in its Fourth Motion *in Limine* (ECF No. 214-1), an alleged breach of contract cannot be the basis

2

for an alleged inducement claim. Otherwise, every breach of contract claim would be transformed into a fraud or misrepresentation claim. The authorities cited by ACM—*Glazer* v. *Dress Barn Inc.*, 873 A.2d 929, 955–56 (Conn. 2005) and *Associated Constr. / AP Constr., LLC* v. *Hanover Ins. Co.*, No. 15-cv-1600 (MPS), 2018 WL 3998971, at *9 (D. Conn. Aug. 21.2018)—are not to the contrary. Neither *Glazer* nor *Hanover* stands for the proposition that a party has free rein to introduce post-contractual evidence to support a negligent misrepresentation claim. In *Glazer*, the Court considered the defendant's conduct commencing *four days* after it had committed to certain deadlines, including certain statements made by individuals, to be probative of whether the defendant should have known it would be unable to meet the promised deadlines made just days before. *Glazer*, 873 A.2d at 955–56. Similarly, in *Hanover*, the Court considered the involvement of an individual in the drafting and preparation of certain bonds to be probative of whether he should have known his misrepresentation regarding the operation of the bonds was false. *Hanover*, 2018 WL 3998971, at *9. The evidence at issue in those cases was therefore far removed from the type of evidence at issue in this case—evidence of SS&C's alleged breaches of contract from, by ACM's own account, *28 months after* the alleged misrepresentations were made.

Although ACM claims "[t]here are numerous examples of post-contractual conduct showing the falsity of SS&C's pre-closing misrepresentations," its four cherry-picked examples—presumably ACM's best examples—are not probative of ACM's negligent misrepresentation claim:

- ACM seeks to introduce evidence regarding SS&C's experience with Bimini Capital Management, Inc. ("Bimini"), another SS&C customer. (Mot. at 5.) As discussed in detail in SS&C's Fifth Motion *in Limine* (ECF No. 214-1), Bimini did not become an SS&C client, and the sale process at Bimini did not even begin, until **months after** ACM had

entered into the Master Agreement with SS&C. ACM does not articulate how SS&C's *subsequent* experience with Bimini could have informed statements made to ACM months earlier.

- ACM seeks to introduce post-contractual statements by SS&C employees about SS&C's CI Manager and RECON products—both of which assist CAMRA users in comparing their records in CAMRA with external accounts, such as custodial accounts, and identifying any discrepancies. But the opinion of a different SS&C employee about the relative merits of CI Manager and RECON more than six months after the parties' contract was signed has no bearing on the falsity or state of mind of SS&C *when the challenged statement was made*.[1]

- ACM seeks to introduce post-contractual statements by SS&C employees about the integration of data from AVM—a third party provider to ACM—with CAMRA. (Br. at 4.) Again, ACM does not identify a specific statement by SS&C that it contends was false. ACM's intended use of this evidence illustrates the very issue—ACM intends to use an alleged failure to satisfy ACM's contractual expectations *almost a year after* entry into the Master Agreement to prove SS&C negligently made false statements prior to entry into the contract.

- ACM cites testimony to the effect that some of SS&C's employees did not do a good job implementing SS&C's software pursuant to the parties' contract. This purportedly proves that some statements allegedly made by SS&C *after the contract* about the experience and expertise of these employees were known by SS&C *before the contract* to be false. ACM

---

[1] In any event, this argument is fallacious because SS&C *did* offer the RECON software tool *before* entry into the Master Agreement and ACM rejected it.

4

cites no evidence whatsoever that SS&C knew before the contract that these particular employees allegedly lacked experience and expertise. An opinion about these employees that was not formed until *months or years* after the contract is not evidence that an alleged representation about these employees made before the contract was untrue. Indeed, according to the testimony cited by ACM, these alleged opinions were formed on the basis of post-contract conduct, not pre-contract conduct—in other words, there is no way the allegedly positive pre-contract assessment of these employees could have been knowingly false when the conduct giving rise to the allegedly negative assessment did not take place until after the contract.

*Second*, ACM claims that it should be permitted to introduce "post-contractual evidence to show ACM sustained . . . injuries" from SS&C's alleged misrepresentations. More specifically, it claims it is entitled to "introduce evidence that CAMRA was not implemented at ACM" to show it was damaged by SS&C's alleged misrepresentations. (Mot. at 5.) ACM may be entitled to introduce evidence as to the quantum of its damages, but it has not demonstrated why it must therefore have limitless license to introduce the entire universe of evidence relating to SS&C's implementation of CAMRA—for example, ACM's criticisms of the "CAMRA setup" or the circumstances around whether CAMRA was "implemented" do not tend to prove the amount of damages suffered by ACM.[2]

---

2   ACM also argues that it should be permitted to introduce post-contractual evidence to rebut SS&C's waiver and ratification defenses. (Mot. at 7–8). But the post-contractual evidence relevant to these defenses is limited in scope only to whether or not ACM waived its claims, or ratified the Master Agreement, by entering into Work Request No. 2. More specifically, evidence concerning SS&C's performance of the Master Agreement is not probative of whether ACM waived or ratified its obligations under the Master Agreement.

5

## II. SS&C Should be Permitted to Introduce Evidence of Post-Contractual Conduct to the Same Extent as ACM

At the same time as ACM argues it should be permitted to introduce evidence of SS&C's post-contractual conduct, ACM asserts that SS&C should be precluded from introducing evidence of ACM's post-contractual conduct to prove (1) that SS&C did not know of the falsity of the alleged misrepresentations, or acted reasonably with respect to truth of those representations, or (2) that ACM's reliance on SS&C's alleged misrepresentations did not cause ACM's damages, as well as expert testimony supporting the foregoing. ACM provides no rational explanation for why, in the event it is permitted to rely on post-contractual evidence, SS&C should not also be permitted to do so.

For example, ACM seeks to use evidence of SS&C's alleged poor performance of the Master Agreement, or difficulties with the implementation of CAMRA, to show that "SS&C knew or should have known" that its alleged misrepresentations were false. To the extent ACM is permitted to do so, SS&C should be permitted to introduce post-contractual evidence that undermines ACM's contention. The evidence SS&C would seek to introduce includes, among other things, evidence that SS&C did perform its obligations under the Master Agreement and that it was *ACM* that failed to assign sufficient resources to the CAMRA implementation process, despite SS&C's repeated warnings to ACM that a successful implementation required dedicated and experienced personnel. SS&C likewise should be able to show that ACM personnel failed to attend CAMRA trainings administered by SS&C and supplied faulty data.

The same is true with respect to damages. If ACM is permitted to introduce post-contractual evidence showing "the consequences logically flowing from SS&C's misconduct," (Mot. at 5), SS&C should be permitted to introduce evidence that SS&C was not the cause of ACM's damages, including, for example, evidence that SS&C performed its obligations under

6

the Master Agreement, evidence that ACM's own conduct contributed to its damages, and expert evidence regarding ACM's conduct. Despite ACM's assertions to the contrary, such arguments do not constitute an affirmative defense[3]—ACM carries the burden of proving that SS&C's misrepresentations caused its damages. *See Nazami* v. *Patrons Mut. Ins. Co.*, 280 Conn. 619, 626 (2006); *see also Marino* v. *Guilford Specialty Grp., Inc.*, No. 3:14CV705(AVC), 2015 WL 1442749, at *5–7 (D. Conn. Mar. 27, 2015). SS&C is entitled to introduce evidence that calls into question ACM's proof and challenges whether it can meet its burden.[4]

---

[3] ACM argues that SS&C cannot rely on post-contractual evidence to prove ACM caused its own damages because SS&C is seeking to prove the "superseding cause" affirmative defense—a defense it has not pleaded. (Mot. at 5–6.) But ACM cites no authority for the proposition that SS&C is precluded from introducing evidence to show that ACM has not met its burden to prove that its reliance on SS&C's alleged misrepresentations caused its damages. *Snell v. Norwalk Yellow Cab, Inc.*, 212 A.3d 646, 658 (Conn. 2019) (noting that the special defense of "superseding cause" only applies *after* proof that the defendant's actions proximately caused the injuries).

[4] ACM suggests in a footnote that SS&C failed to plead, and therefore waived, its waiver and ratification defenses. (Mot. at 7 n.5.) ACM is wrong. SS&C pled multiple defenses that put ACM on notice that it intended to assert such arguments. For example, SS&C pled that ACM's claims are barred by, among other reasons, its "failure to provide timely notice of its claims" and by "the parties' Master Agreement and/or related Work Requests." (Answer, ECF No. 101, at 18.) ACM entered into Work Request No. 2 knowing all the relevant facts that now form the basis of its claims; yet, it neither provided SS&C with notice that it would press those claims or otherwise sought to retain them. Nor can this defense come as a surprise to ACM because discovery focused extensively on Work Request No. 2. In any event, SS&C reserved its rights "to assert any and all affirmative or other defenses that [were] available after reasonable discovery or additional disclosures." (*Id.*)

**CONCLUSION**

The Court should deny ACM's motion *in limine* no. 2.

Dated:   New York, New York                    Respectfully submitted,
         December 10, 2019

                                               PAUL, WEISS, RIFKIND, WHARTON &
                                                 GARRISON LLP

                                               By:   */s/ Robert A. Atkins*
                                                     Robert A. Atkins
                                                     Jeannie S. Rhee
                                                     Jeffrey J. Recher
                                                     Joshua D. Kaye
                                               1285 Avenue of the Americas
                                               New York, New York 10019
                                               Telephone: (212) 373-3000
                                               ratkins@paulweiss.com
                                               jrhee@paulweiss.com
                                               jrecher@paulweiss.com
                                               jkaye@paulweiss.com

                                               Kevin J. O'Connor
                                               Hinckley, Allen & Snyder LLP
                                               28 State Street
                                               Boston, MA 02109-1775
                                               Telephone:  (617) 378-4394
                                               koconnor@hinckleyallen.com

                                               Jeffrey J. Mirman
                                               Alexa T. Millinger
                                               Hinckley, Allen & Snyder LLP
                                               20 Church Street, 18th Floor
                                               Hartford, Connecticut 06103
                                               Telephone:  (860) 331-2762
                                               jmirman@hinckleyallen.com
                                               amillinger@hinckleyallen.com

                                               *Attorneys for Defendant*
                                               *SS&C Technologies, Inc.*