UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ARMOUR CAPITAL MANAGEMENT LP,

                Plaintiff,

      - against -

SS&C TECHNOLOGIES, INC.,

                Defendant.

3:17-cv-00790-JAM

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
TO ACM'S MOTION *IN LIMINE* NO. 3: TO EXCLUDE ANY EVIDENCE OF THE
<u>MANAGEMENT AGREEMENTS AND COLLATERAL-SOURCE PAYMENTS</u>**

PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
Robert A. Atkins
Jeannie S. Rhee
Jeffrey J. Recher
Joshua D. Kaye
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
ratkins@paulweiss.com
jrecher@paulweiss.com
jkaye@paulweiss.com

Kevin J. O'Connor
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109-1775
Telephone: (617) 378-4394
koconnor@hinckleyallen.com

Jeffrey J. Mirman
Alexa T. Millinger
Hinckley, Allen & Snyder LLP
20 Church Street, 18th Floor
Hartford, Connecticut 06103
Telephone: (860) 331-2762
jmirman@hinckleyallen.com
amillinger@hinckleyallen.com

*Attorneys for Defendant
SS&C Technologies, Inc.*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii
ARGUMENT .......................................................................................................................... 1
I.    ACM's Management Agreements and Related Testimony Are Highly Probative of SS&C's Defense and Not At All Unfairly Prejudicial to ACM ....................................... 2
II.   The Collateral Source Rule Does Not Bar the Introduction of Otherwise Probative Evidence ................................................................................................................. 3
CONCLUSION ....................................................................................................................... 6

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Gurliacci* v. *Mayer*,
 590 A.2d 914 (Conn. 1991) ...............................................................................................3, 4

*Haynes* v. *Yale-New Haven Hosp.*,
 699 A.2d 964 (Conn. 1997) ...................................................................................................4

*Howard* v. *Wal-Mart Stores East, LP*,
 No. 5:12-CV-111-R, 2013 WL 5657648 (W.D. Ky. Oct. 15, 2013) ......................................4

*Lashin* v. *Corcoran*,
 152 A.2d 639 (Conn. 1959) ...................................................................................................4

*McGrath* v. *Consolidated Rail Corp.*,
 136 F.3d 838 (1st Cir. 1998) ..................................................................................................4

*ML Healthcare Servs., LLC* v. *Public Super Markets, Inc.*,
 881 F.3d 1293 (11th Cir. 2018) .............................................................................................4

*Ne. Utilities Serv. Co.* v. *Am. Elec. Testing Co., Inc.*,
 No. X10UWYCV106005436, 2015 WL 4571172 (Conn. Super. Ct. June 26,
 2015) .....................................................................................................................................3

*Quintero* v. *U.S.*,
 No. 1:08–cv–01890–OWW–SMS, 2010 WL 5071045 (E.D. Cal. Dec. 7,
 2010) .....................................................................................................................................4

*Saint Bernard School of Montville, Inc.* v. *Bank of America*,
 95 A.3d 1063 (Conn. 2014) ...................................................................................................4

*Vega-Ruiz* v. *Montefiore Med. Ctr.*,
 No. 1:17-CV-01804 (SDA), 2019 WL 4891760 (S.D.N.Y. Oct. 4, 2019) .............................3

Defendant SS&C Technologies, Inc. ("SS&C") respectfully submits the following memorandum of law in opposition to Armour Capital Management LP's ("ACM") motion *in limine* no. 3 to exclude any evidence, reference, or argument concerning or arising out of the Management Agreements or collateral-source payments received by ACM.

## ARGUMENT

ACM's motion to exclude "any evidence of the management agreements" and related payments is premised on the false assumption that the purpose of that evidence is only to show that ACM has already been made whole. The purpose of that evidence is to refute one of ACM's central allegations: that it chose the "hosting," rather than "outsourcing," method for implementing SS&C's software (CAMRA) because of SS&C's alleged misrepresentations about hosting. The evidence will show, however, that ACM sought out and selected hosting, even though it lacked the personnel to handle the responsibilities associated with this option, because it would have had to bear the cost of outsourcing but could fully recoup the cost of hosting under the Management Agreements between ACM and Armour Residential REIT, Inc. ("Armour") and Javelin Mortgage Investment Corp. ("Javelin") (together, the "REITs"). Accordingly, there are few pieces of evidence more relevant to and probative of SS&C's defense. ACM cannot use the collateral source rule to try to avoid dismissal of its negligent misrepresentation claims *and* to try to prevent SS&C from disproving those claims.[1]

---

[1] The Management Agreements are identified on SS&C's exhibit list as DX-502, DX-503, DX-504, DX-505, DX-566, and DX-567. ACM also seeks through its motion *in limine* no. 3 to exclude other exhibits. But neither DX-501 (ECF No. 219-1 at 2) nor DX-815 (ECF No. 219-1 at 735) mentions any reimbursement payments. And while DX-561 (ECF No. 219-1 at 203), DX-667 (ECF No. 219-1 at 355), DX-780 (ECF No. 219-1 at 467), DX-812 (ECF No. 219 at 599) and DX-819 (ECF No. 219-1 at 742), all of which are SEC filings, refer to reimbursements from the REITs to ACM, they do not specify that those reimbursements relate to CAMRA expenses. Nor does ACM's motion identify any offending passages in these

1

I.  **ACM's Management Agreements and Related Testimony Are Highly Probative of SS&C's Defense and Not At All Unfairly Prejudicial to ACM**

ACM's case centers on the allegation that it was misled into choosing to implement CAMRA on a "hosted" basis because of allegedly false statements made by SS&C about the suitability of hosting. For example, it relies on an email from an SS&C employee reporting to ACM that "based on the feedback" from ACM's IT personnel, "it sounded like hosting the CAMRA application in SS&C's data center would really be a good deployment option for ARMOUR." (*See, e.g.*, Pl's. Am. Objs. & Resps. Def's. Interrogs. Nos. 5–10 at 25, Jan. 19, 2018, ECF No. 214-6.) But for that email, ACM contends, it would not have contracted with SS&C to "host" CAMRA in SS&C's own data center.

ACM's Management Agreements with the REITs show that the cost of hosting would be—and, in fact, was—paid by the REITs. The cost of alternative software deployment options, such as outsourcing to SS&C, would not have been reimbursed by the REITs. Thus, ACM's reimbursement arrangement relates directly to ACM's claims and to SS&C's defense.[2] The evidence will show that ACM's decision to select the hosted implementation was based on its ability to be reimbursed for hosting—and its inability to be reimbursed for outsourcing. (*See, e.g.*, ECF No. 219-1 (DX-504 at 104, § 2.4.2; DX-505 at 9, § 2.4.2); *see also, e.g.*, Ex. A (Nov. 28,

---

exhibits. ACM's attempt to exclude these exhibits for the reasons it sets out in its motion *in limine* no. 3 is therefore groundless.

[2] In addition to the hosted option ACM ultimately chose, ACM was also presented with a licensed option, in which ACM would install a licensed copy of CAMRA on its own servers, and an outsourced option, in which SS&C would host CAMRA on its computers and SS&C's accountants would operate the software for ACM. (*See, e.g.*, Ex. B (DX 508) at 6 ("Deployment Options: One Size Doesn't Fit All" and listing available options).)

2017 Deposition of Mark Gruber ("Gruber Dep. Tr.")) 284:10–285:24.)[3]  Indeed, the evidence will show that ACM actually *raised* the price of SS&C's software knowing that others would have to pay for it.

SS&C should not have its hands tied by being prohibited from using this critical evidence.  ACM alleges that it chose hosting in reliance on an SS&C representation, when the evidence shows that ACM's decision was based on other factors.  Apart from proving the truth of SS&C's representations, refuting ACM's alleged reliance is the heart of SS&C's defense.  The jury should be permitted to assess the significance of ACM's preference for hosting in its full context and preventing SS&C from proving that context would be unfairly prejudicial *to SS&C*.  *See, e.g.*, *Vega-Ruiz* v. *Montefiore Med. Ctr.*, No. 1:17-CV-01804 (SDA), 2019 WL 4891760, at *2–3 (S.D.N.Y. Oct. 4, 2019) (denying plaintiff's motion *in limine* to exclude evidence that was relevant to "one of the very issues to be tried in this case" because the probative value was not "substantially outweighed by a danger of unfair prejudice").

II. **The Collateral Source Rule Does Not Bar the Introduction of Otherwise Probative Evidence**

While ACM might contend that the collateral source rule allows it to proceed with its negligent misrepresentation claims, despite the fact that it has "already been made whole for the fees it paid to SS&C," (Order Granting and Den. in Part Def's Mot. Summ. J. 16, ECF No. 194), the rule is not a bar to SS&C presenting evidence to disprove those claims.  *See Gurliacci* v. *Mayer*, 590 A.2d 914, 928 (Conn. 1991) (finding that the trial court erred by excluding evidence

---

[3]  Moreover, to the extent post-contractual evidence is permitted at trial, the evidence of ACM's economic motives is also relevant to ACM's refusal of SS&C's offer to consider transitioning to outsourcing as a way to improve ACM's experience.

3

of collateral source payments without weighing the probative value of the evidence against its potential prejudicial effect).

Rather, courts must weigh the probative value of the evidence against its prejudicial effect. *See Gurliacci*, 590 A.2d at 928 (Conn. 1991); *see also, e.g.*, *Ne. Utilities Serv. Co.* v. *Am. Elec. Testing Co., Inc.*, No. X10UWYCV106005436, 2015 WL 4571172, at *6 (Conn. Super. Ct. June 26, 2015) (permitting the introduction of evidence of an insurance policy because it was "independently probative of the parties' intent"); *McGrath* v. *Consolidated Rail Corp.*, 136 F.3d 838, 841 (1st Cir. 1998) (finding the district court properly allowed evidence of collateral source payments because such evidence was more probative than prejudicial under Rule 403 balancing test); *ML Healthcare Servs., LLC* v. *Public Super Markets, Inc.*, 881 F.3d 1293, 1302–03 (11th Cir. 2018) (evidence of collateral source payments properly admitted under Rule 403 because it was relevant to show bias); *Howard* v. *Wal-Mart Stores East, LP*, No. 5:12-CV-111-R, 2013 WL 5657648, at *3 (W.D. Ky. Oct. 15, 2013) (finding evidence of collateral source payments admissible under Rule 403 balancing test); *Quintero* v. *U.S.*, No. 1:08–cv–01890–OWW–SMS, 2010 WL 5071045, at *7 (E.D. Cal. Dec. 7, 2010) ("[E]vidence of collateral source payments is admissible under the Federal Rules of Evidence unless its probative value is substantially outweighed by the danger of unfair prejudice.").[4]

---

[4] The cases cited in ACM's motion do not present circumstances where the collateral source payment was relevant to anything other than a potential reduction of damages. *See Lashin* v. *Corcoran*, 152 A.2d 639, 640–41 (Conn. 1959) (lost earning capacity resulting from an automobile accident); *Haynes* v. *Yale-New Haven Hosp.*, 699 A.2d 964, 966–69 (Conn. 1997) (recovery of underinsured motorist insurance benefits by the plaintiff from an automobile accident does not bar recovery in a medical malpractice action for care received by the plaintiff after the automobile accident); *Saint Bernard School of Montville, Inc.* v. *Bank of America*, 95 A.3d 1063, 1066, 1080 (Conn. 2014) (insurance proceeds recovered by the plaintiff related to a theft by an employee was not a basis for remittitur in a negligence action).

5

There can be no real debate that the evidence relating to the Management Agreements is highly relevant to ACM's alleged reliance and highly probative of the other considerations that factored into ACM's purchasing decision. The risk of prejudice to ACM is small and any potential for confusion can be addressed, if necessary, through a limiting instruction to the jury. *See Gurliacci*, 590 A.2d at 929. The prejudice here would be to SS&C if ACM tries to use the collateral source rule as both a sword to avoid dismissal of its claims and as a shield to prevent SS&C from defending against those claims.

## CONCLUSION

The Court should deny ACM's motion *in limine* no. 3.

Dated:  New York, New York
December 10, 2019

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:  */s/ Robert A. Atkins*
Robert A. Atkins
Jeannie S. Rhee
Jeffrey J. Recher
Joshua D. Kaye
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
ratkins@paulweiss.com
jrhee@paulweiss.com
jrecher@paulweiss.com
jkaye@paulweiss.com

Kevin J. O'Connor
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109-1775
Telephone:  (617) 378-4394
koconnor@hinckleyallen.com

Jeffrey J. Mirman
Alexa T. Millinger
Hinckley, Allen & Snyder LLP
20 Church Street, 18th Floor
Hartford, Connecticut 06103
Telephone:  (860) 331-2762
jmirman@hinckleyallen.com
amillinger@hinckleyallen.com

*Attorneys for Defendant
SS&C Technologies, Inc.*

6