UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ARMOUR CAPITAL MANAGEMENT LP,

                              Plaintiff,

          - against -                                3:17-cv-00790-JAM

SS&C TECHNOLOGIES, INC.,

                              Defendant.

**DEFENDANT'S MEMORANDUM OF LAW IN
OPPOSITION TO ACM'S MOTION *IN LIMINE* NO. 5: TO EXCLUDE
MICHAEL MAFFATTONE AND THE THIRD OPINION OF BROOKS HILLIARD**

PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
Robert A. Atkins
Jeannie S. Rhee
Jeffrey J. Recher
Joshua D. Kaye
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
ratkins@paulweiss.com
jrecher@paulweiss.com
jkaye@paulweiss.com

Kevin J. O'Connor
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109-1775
Telephone: (617) 378-4394
koconnor@hinckleyallen.com

Jeffrey J. Mirman
Alexa T. Millinger
Hinckley, Allen & Snyder LLP
20 Church Street, 18th Floor
Hartford, Connecticut 06103
Telephone: (860) 331-2762
jmirman@hinckleyallen.com
amillinger@hinckleyallen.com

*Attorneys for Defendant
SS&C Technologies, Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................................................... ii

ARGUMENT .............................................................................................................................. 1

    I.     Maffattone Is Qualified as an Expert Witness .............................................. 1

    II.    Maffattone's Opinions Are Sufficiently Reliable ...................................... 4

    III.   SS&C's Experts Should Not Be Precluded From Responding to ACM's
         Experts ........................................................................................................ 6

    IV.   SS&C's Expert Testimony Is Not Cumulative ........................................... 6

CONCLUSION ........................................................................................................................... 8

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*CSL Silicones, Inc.* v. *Midsun Grp. Inc.*,
No. 3:14-CV-1897 (CSH), 2017 WL 6055380 (D. Conn. Dec. 7, 2017) ............................2, 3

*Dover* v. *British Airways, PLC (UK)*,
254 F. Supp. 3d 455 (E.D.N.Y. 2017) .................................................................................2

*Emig* v. *Electrolux Home Prods. Inc.*,
No. 06-CV-4791 (KMK), 2008 WL 4200988 (S.D.N.Y. 2008)..........................................4

*In re Gen. Motors LLC Ignition Switch Lit.*,
No. 14-MD-2543 (JMF), 2016 WL 4077117 (S.D.N.Y. Aug. 1, 2016)...............................7

*Klorczyk* v. *Sears, Roebuck & Co.*,
No. 3:13-cv-00257 (JAM), 2019 WL 1433645 (D. Conn. Mar. 29, 2019) ..........................5

*Media Glow Digital, LLC* v. *Panasonic Corp. N. Am.*,
No. 16 CIV. 7907 (HBP), 2019 WL 1055527 (S.D.N.Y. Mar. 6, 2019)..............................3

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
No. 1:00-1898, 2008 WL 1971538 (S.D.N.Y. 2008) .........................................................6

*Nicholas* v. *Bratton*,
376 F. Supp. 3d 232 (S.D.N.Y. 2019).................................................................................4

*Olutosin* v. *Gunsett*,
No. 14-CV-00685 (NSR), 2019 WL 5616889 (S.D.N.Y. Oct. 31, 2019) ............................7

*Pension Comm. of Univ. of Montreal Pension Plan* v. *Banc of Am. Sec., LLC*,
691 F. Supp. 2d 448 (S.D.N.Y. 2010).................................................................................4

*SLSJ, LLC* v. *Kleban*,
277 F. Supp. 3d 258 (D. Conn. Sept. 29, 2017).................................................................2

OTHER AUTHORITIES

Fed. R. Evid. 702 ......................................................................................................2, 4

ISO Technical Report 19759 ...........................................................................................6

Defendant SS&C Technologies, Inc. ("SS&C") respectfully submits the following memorandum of law in opposition to Armour Capital Management LP's ("ACM") motion *in limine* no. 5 to exclude Michael Maffattone and the Third Opinion of Brooks Hilliard.

## ARGUMENT

SS&C intends to introduce at trial expert testimony from Michael Maffattone and Brooks Hilliard.  The testimony of these experts will show that the heightened standard of care proposed by ACM's expert, Steven Kursh, is inapplicable to a negotiation for a contract to license software like CAMRA.[1]  SS&C's expert testimony also will rebut Kursh's claim that the pre-contractual representations SS&C made, which ACM now claims were negligent misrepresentations, were unreasonable, and show that the relevant post-contractual conduct by the parties is consistent with that opinion.

## I.    Maffattone Is Qualified as an Expert Witness

Michael Maffattone is to opine as an expert witness at trial.  Among other topics, Maffattone has offered opinions on the comprehensive pre-contract information gathering from ACM that SS&C undertook, that CAMRA is a widely used and leading accounting software, and that ACM's expert, Steven Kursh, incorrectly characterizes the standard of care and incorrectly opines that SS&C's conduct was unreasonable.

Maffattone has extensive experience and background in the information technology and financial sectors that uniquely qualify him as an expert to opine on these topics.  He has worked for over 35 years in the Information Technology industry, focusing specifically on investment accounting software.  He has previously worked as Chief Technology Officer at both Harvard

---

[1]    For the reasons set forth in SS&C's Motion *In Limine* To Exclude Steven Kursh (ECF No. 213-1), Kursh's opinions and testimony are not admissible at trial.

1

Management Company and Annaly Capital Management, the largest publicly traded mortgage REIT in the country.  (Maffattone Expert Report ("Maffattone Rep.") 29–30, ECF No 221-3.)  Before that, he was Chief Information Officer at the hedge fund Caxton Associates LLC and spent nearly twenty years at the Federal Reserve Bank of New York.  (*Id.* at 31.)  Over that time, Maffattone has managed over 100 software implementations, including six portfolio accounting software systems.  (*Id.* at 2.)  In fact, Maffattone's background in information technology and financial services is of precisely the same character that ACM contends qualifies its own expert, Kursh, to opine on similar topics.  (*See* Expert Report of Steven R. Kursh ("Kursh Rep.") ¶¶ 18–21, ECF No. 221-1.)  In some contrast, however, Kursh has "never used CAMRA" and never been involved with a software implementation for a mortgage REIT.  (Ex. A (Aug. 28, 2018 Deposition of Steven R. Kursh ("Kursh Dep.") 124:7; 117:23–118:6).)  Maffattone's wealth of industry experience qualifies him under Fed. R. Evid. 702 to opine as an expert on the sales process and implementation of portfolio accounting software like CAMRA.

ACM's argument that Maffattone is not qualified despite his extensive software implementation experience is meritless.  (Pl.'s Mot. Lim. No. 5 ("Mot.") at 4–5.)  As an initial matter, Second Circuit courts do not apply the kind of "overly narrow test" proposed by ACM, but rather "liberally construe[] expert qualification requirements."  *CSL Silicones, Inc.* v. *Midsun Grp. Inc.*, No. 3:14-cv-1897 (CSH), 2017 WL 6055380, at *2 (D. Conn. Dec. 7, 2017).  Courts "considering an expert's practical experience" focus on "whether the expert's knowledge of the subject is such that his opinion will likely assist the trier of fact in arriving at the truth."  *SLSJ, LLC* v. *Kleban*, 277 F. Supp. 3d 258, 265 (D. Conn. Sept. 29, 2017).  Maffattone's ample experience in purchasing and implementing investment accounting software gives him precisely the type of experience that will allow him to assist the trier of fact here, in a case about the

purchasing and implementation of investment accounting software.  And ACM is simply incorrect that Maffattone should be disqualified because he has not previously served as an expert.  *See, e.g.*, *Dover* v. *British Airways, PLC (UK)*, 254 F. Supp. 3d 455, 459 (E.D.N.Y. 2017) (finding that the fact that proffered expert "has not previously testified [as] an expert witness" does "not render the opinions inadmissible").

ACM's attempt to cast Maffattone's implementation experience as "entirely different" (because it was not a hosted implementation) and for "vastly different" mortgage REITs is unavailing.  (Mot. at 4–5.)

*First*, ACM claims that Maffattone's experience implementing CAMRA—twice—for clients on a fully licensed basis, rather than on a hosted basis, somehow makes his experience "irrelevant."  Curiously, ACM's basis for this assertion is its claim that, in an implementation on a licensed basis, the customer has *more* responsibility than a customer in an implementation on a hosted basis because the customer is "essentially required to perform many of the functions itself." (Mot. at 5.)  Thus, if anything, Maffattone has *more* experience because, by ACM's account, he had all of the responsibilities of a customer in a licensed implementation *and* some of the responsibilities of the software provider as well.

*Second*, ACM claims that the REITs at which Maffattone implemented CAMRA, Annaly and Chimera, are "vastly different" because Annaly and Chimera were larger than ACM.  But in its proxy statement Armour lists Annaly as among the "focused peer group of seven publicly-traded mortgage REITs" that compete against Armour.  (*See* Ex. B (DX-819) at 15 of 48.)  ACM may well choose to use these purported distinctions to cross-examine Maffattone, but they are hardly the kind of "unrealistic and contradictory," "bad faith," or "apples and oranges comparison[s]" that would warrant exclusion.  *See CSL Silicones*, 2017 WL 6055380 at *3 (citing

*Boucher* v. *U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)); *see also Media Glow Digital, LLC* v. *Panasonic Corp. N. Am.*, No. 16 CIV. 7907 (HBP), 2019 WL 1055527, at *3–4 (S.D.N.Y. Mar. 6, 2019) (denying defendant's motion to preclude plaintiff's expert witness who had "over 20 years of experience in the [LED] industry," and rejecting defendant's argument that proffered expert was unqualified because he "has never been involved in the manufacture of a sign similar to the [LED sign at issue]").  At most, these distinctions "go to the weight of [his] testimony, not its admissibility." *Id.* at 4.  Accordingly, Maffattone's experience qualifies him to offer expert opinions in this case.

## II.   Maffattone's Opinions Are Sufficiently Reliable

Maffattone's opinions are also sufficiently reliable under Fed. R. Evid. 702. ACM's insistence that Maffattone's opinions are unreliable because they "lack any scientific foundation," and are "based on personal—not scientific experience" (Mot. at 6) misstates the reliability requirements of Rule 702.  The reliability analysis under Rule 702 "does not necessarily require an expert witness to testify with exact precision or through the use of scientific methodology; the reliability inquiry may instead turn on the experiential knowledge of the expert." *Nicholas* v. *Bratton*, 376 F. Supp. 3d 232, 289 (S.D.N.Y. 2019).  Moreover, "[i]ndustry practices are not like scientific hypotheses."  *Pension Comm. of Univ. of Montreal Pension Plan* v. *Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 464 (S.D.N.Y. 2010).  Instead, industry experts may satisfy the reliability criterion by drawing "industry standards" from their "experience." *Id.*  Such experts may use the same "methodology" that they "utilize[] in the real world of American Industry." *Emig* v. *Electrolux Home Prods Inc.*, No. 06-CV-4791 (KMK), 2008 WL 4200988, at *8 (S.D.N.Y. 2008) (internal quotation marks omitted).  The key is that the expert "demonstrat[es] a connection between his experience and the process he used and the conclusions he reached." *Id.*

Maffattone reaches his various conclusions by applying his many years of experience, and the process he has regularly used, in the software industry.  For example, Maffattone's opinion that the standard of care urged by ACM's expert Kursh does not apply to the CAMRA sales process draws upon his experience vetting hundreds of "software products and proposals" and "over 50 software contracts," as well as his "35 years of experience" with "pre-contract [software] discussions and packaged software implementations."  (Maffattone Rep. 4, ECF No. 221-3.)

Maffattone's opinion that "SS&C's pre-contract information gathering regarding ACM's requirements exceeded industry custom and practice," relies on his "experience procuring existing software solutions for portfolio asset accounting—including [his] work on over 100 software implementation projects, and serving as the lead IT manager for the implementation of six portfolio accounting software implementations." (*Id.* at 8–9.)  And when asked to describe the methodologies he relied on from his professional experience, Maffattone testified in detail about the processes for "Software Analysis and Recommendation" and for "Project Management" that he has used for "implementing portfolio accounting systems" and for "other software implementations." (Ex. C (Nov. 13, 2018 Deposition of Michael Maffattone ("Maffattone Dep.") 67:11–72:120)).  ACM's criticisms should, if anything, be the subject of cross-examination. *See Klorczyk* v. *Sears, Roebuck & Co.*, No. 3:13-cv-00257 (JAM), 2019 WL 1433645, at *9 (D. Conn. Mar. 29, 2019) ("Defendants may object to steps that [expert] took or failed to take in his analysis, but those objections go to the weight—rather than the admissibility—of [expert's] testimony, and defendants are free to raise these points for impeachment at trial.")  ACM's objections to Maffattone's reliability thus fall flat.

**III.    SS&C's Experts Should Not Be Precluded From Responding to ACM's Experts**

This Court also should reject ACM's effort to preclude SS&C's expert testimony as to the "accuracy of SS&C's pre-contractual statements to ACM." (Mot. at 7.) The limited statements by SS&C's expert witnesses in their reports on whether SS&C's pre-contractual representations were "accurate" or "reasonable" responded directly to "opinions" offered by ACM's own expert, Kursh, in his report. Nearly the entirety of Kursh's report is directed to whether SS&C's statements were accurate or reasonable. Kursh opines, for example, that "SS&C knew or should and easily could have known the [pre-contractual] representations were inaccurate," (Kursh Rep. ¶ 156, ECF No. 221-1); that "SS&C could have avoided its mistakes and either ensured the accuracy of its promises," (*id.* ¶ 206); and opined on "the inaccuracy of SS&C [sic] implementation budget," (*id.* ¶ 278, n.273). Kursh also repeatedly concluded that SS&C acted unreasonably.[2] For the reasons set out in SS&C's motion to exclude Steven Kursh (ECF No. 213-1), SS&C believes that Kursh's testimony is inadmissible. If the Court grants SS&C's motion, SS&C's experts will not need to offer any rebuttal in kind. But ACM cannot have it both ways. It should not be permitted to offer expert testimony on the same topics on which it seeks to preclude SS&C's from making an appropriate response.

**IV.    SS&C's Expert Testimony Is Not Cumulative**

The anticipated testimony of Maffattone and Hilliard at trial is not cumulative. Maffattone addresses specific aspects of the process of purchasing and managing the implementation of accounting portfolio software. (Maffattone Rep. 2, ECF No. 221-3.) Hilliard, on the other hand, opines as an experienced consultant for software purchase and implementations

---

[2]    (*See* Kursh Rep. ¶¶ 37, 38, 39, 78, 87, 94, 96, 107, 113, 119, 120, 124, 133, 137, 145, 164, 175, 185, 186, 208, 210, 211, 223, 232, 234, 235, ECF No. 221-1.)

who is a member of the IEEE Computer Society and who is familiar with, and has used, ISO Technical Report 19759, the source of ACM's proffered expert's heightened standard of care. (Expert Report of Brooks L. Hilliard ("Hilliard Rep). 7–8, ECF No. 221-2.)  The mere fact that different experts address similar issues in the case does not render their testimony cumulative.  *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 1:00-1898, 2008 WL 1971538, at *8–9, *13 (S.D.N.Y. 2008) (denying defendants' cumulative objection where "two experts both address[ed] ethanol production capacity" because the respective testimonies focused on "logistics" and "business development").

Insofar as ACM believes the expert testimony presented at trial is cumulative, it is free to object on that basis at the time.  But there is no reason to consider whether testimony is cumulative before it is even presented and without context or the benefit of any trial record.  *See In re Gen. Motors LLC Ignition Switch Lit.*, No. 14-MD-2543 (JMF), 2016 WL 4077117, at *4–5 (S.D.N.Y. Aug. 1, 2016) (reserving judgment until trial on plaintiffs' cumulative objection where "[b]oth experts opine[d] that Plaintiff was impaired by alcohol at the time of her crash"); *see also Olutosin* v. *Gunsett*, No.. 14-CV-00685 (NSR), 2019 WL 5616889, at *7–*8 (S.D.N.Y. Oct. 31, 2019) (reserving decision on admissibility of testimony "until trial, where the cumulative nature of any or all of these individuals' testimony can be properly assessed in context," and denying motion to preclude defendant's expert while also allowing plaintiff to "challenge [expert's] testimony to the extent it will, in fact, be cumulative of other testimony at trial").

## <u>CONCLUSION</u>

The Court should deny ACM's motion *in limine* no. 5.

Dated:   New York, New York
         December 10, 2019

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON &
  GARRISON LLP

By:  */s/ Robert A. Atkins*
     Robert A. Atkins
     Jeannie S. Rhee
     Jeffrey J. Recher
     Joshua D. Kaye
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
ratkins@paulweiss.com
jrhee@paulweiss.com
jrecher@paulweiss.com
jkaye@paulweiss.com

Kevin J. O'Connor
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109-1775
Telephone:  (617) 378-4394
koconnor@hinckleyallen.com

Jeffrey J. Mirman
Alexa T. Millinger
Hinckley, Allen & Snyder LLP
20 Church Street, 18th Floor
Hartford, Connecticut 06103
Telephone:  (860) 331-2762
jmirman@hinckleyallen.com
amillinger@hinckleyallen.com

*Attorneys for Defendant*
*SS&C Technologies, Inc.*