# Exhibit B

CONFIDENTIAL
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION
CASE No. 17-CV-00790-JAM

ARMOUR CAPITAL MANAGEMENT LP,

    Plaintiff,

-vs-

SS&C TECHNOLOGIES, INC.,

    Defendant.
_____
CONFIDENTIAL
** ATTORNEYS' EYES ONLY TESTIMONY **
VIDEOTAPED DEPOSITION OF
JAMES MOUNTAIN and MARK GRUBER,
REPRESENTATIVES OF ARMOUR CAPITAL MANAGEMENT
FED. R. CIV. P. 30(B)(6)

Friday, May 11, 2018
10:48 a.m. - 6:41 p.m.

701 Brickell Avenue,
Suite 3300
Miami, Florida 33131

Reported By:
Shirley D. King, RPR, FPR
Notary Public, State of Florida
West Palm Beach Office  Job #1728423

1              THE VIDEOGRAPHER:  And we're back on the video
2       record at 11:02 a.m.
3              MR. O'CONNOR:  And so we have Exhibit 2,
4       right?
5              MR. MAMOUNAS:  Allow me to give the marked
6       copy to the court reporter, bypassing Mr. O'Connor
7       entirely, for purposes of the safety of that
8       exhibit.
9              MR. O'CONNOR:  Yes.  Hopefully they'll be
10       returned without coffee stains.
11              MR. MAMOUNAS:  We hope so.
12  BY MR. O'CONNOR:
13       Q.   All right.  Mr. Gruber [sic], can you tell me
14  all the allegedly false or misleading statements that
15  SS&C made to Armour in advance of the parties entering
16  into the Master Agreement?
17       A.   Mr. Gruber hasn't been sworn yet.
18       Q.   Excuse me.  Mr. Mountain.
19              MR. MAMOUNAS:  Objection.
20  BY MR. O'CONNOR:
21       Q.   Mr. Mountain, can you tell me all of the
22  alleged false-and-misleading statements by SS&C to
23  Armour Capital Management upon which your company bases
24  any of its claims or defenses in this action?
25              MR. MAMOUNAS:  Objection.

1    THE WITNESS:  So, in the first instance, I
2    would refer you to our amended complaint and the
3    interrogatories in this litigation.  And without
4    sort of limiting otherwise, I would say that the
5    false-and-misleading statements by SS&C to Armour,
6    upon which Armour relied to its peril and
7    detriment, include the -- SS&C's representation
8    that CAMRA was an appropriate software solution for
9    the needs of Armour Capital Management in serving
10   Armour Residential REIT and Javelin Mortgage
11   Acceptance Corporation; that SS&C had substantial
12   knowledge and experience in the subject matter
13   of -- you know, the business subject matter to
14   which the software related, and in the
15   implementation and operation of software in this
16   business area in general, and their software
17   products in particular; that, in that particular,
18   the CAMRA product and their hosting solution had
19   data connectivity to important information sources
20   and custodians that we rely on for business
21   process, not the least of which are Bloomberg as a
22   data source, for example, and, more importantly,
23   custodians such as Bank of New York Mellon and
24   Citibank; that, you know, this implementation that
25   they were undertaking on Armour's behalf was