UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

|  |  |  |
|---|---|---|
| ARMOUR CAPITAL MANAGEMENT LP, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 17-cv-00790-JAM |
| SS&C TECHNOLOGIES, INC., | : | |
| Defendant. | : | |

**PLAINTIFF'S SUBMISSION OF SUPPLEMENTAL AUTHORITY
IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN TESTIMONY
FROM DEFENDANT'S EXPERT MICHAEL MAFFATONE**

Pursuant to this Court's January 3, 2020 Supplemental Briefing and Disclosure Order [ECF No. 275], Plaintiff Armour Capital Management, LP ("Armour") hereby submits supplemental authority in support of its motion to exclude certain testimony from Defendant SS&C Technologies, Inc.'s ("SS&C's") proffered expert, Michael Maffatone.

Armour does not object to Mr. Maffatone's testifying as an expert in rebuttal to the testimony that will be presented by Armour's expert, Dr. Steven Kursh, consistent with the scope of expert testimony outlined by this Court in its January 5, 2020 Order on Pending Motions *in Limine* [ECF No. 276]. That is, Armour does not object to Mr. Maffatone's rebuttal expert testimony regarding (a) industry customs and practices with respect to the sale of enterprise software and software implementation, and (b) technical differences and aspects of the method of implementation that may explain why an implementation may succeed with one company while not succeeding with another (as addressed in, *e.g.*, paragraphs 53 and 99 of Dr. Kursh's report).

Armour does not intend to call Dr. Kursh to testify regarding CAMRA-specific functionality and implementation requirements.[1]

Mr. Maffatone was presented solely as a rebuttal expert.  The scope of his testimony should accordingly be confined to a rebuttal of Dr. Kursh's testimony.  In that event, Armour's objections to other topics as to which SS&C had designated Mr. Maffatone to testify – namely, his proffered testimony regarding his own experiences with CAMRA – may now be moot.  Armour has asked SS&C to confirm that it will proceed on this basis, but has not yet received a response.

If, however, SS&C contemplates calling Mr. Maffatone to testify beyond the scope of a rebuttal to Dr. Kursh, and intends to offer testimony from him regarding his experience with CAMRA as the Chief Technology Officer of another mortgage REIT management company (Annaly Capital Management ("Annaly")), CAMRA's perceived stature in the field, and the like, Armour objects to any such proffer and moves to preclude that testimony.

Mr. Maffatone has only ever been identified as a rebuttal expert.  He did not submit an opening report on any issue calling for expert testimony.  SS&C has never designated him as a fact witness, whether in its Rule 26 initial disclosures, in the Joint Trial Memorandum [ECF No. 221] or otherwise.  Armour thus had no opportunity to submit rebuttal expert testimony as to expert opinions that SS&C would have Mr. Maffatone testify to beyond his rebuttal of Dr. Kursh's opinions.  Nor was Armour on notice, when it deposed Mr. Maffatone as an expert, that it should also be exploring the extent to which his proffered testimony regarding Annaly's experience with CAMRA was based on personal knowledge (which a fact witness can testify to) as opposed to his understanding of facts relayed to him by, *e.g.*, other Annaly employees (which is likely to be

---

[1] SS&C represented to the Court on January 3, 2020 that it is likely to call Mr. Maffatone as its sole expert, and does not intend to call its other designated expert, Brooks Hilliard.  (1/3/20 Hr'g Tr. at 115:12-17.)  If SS&C changes its position and seeks to call both its experts, Armour reserves the right to renew its separate objection to the proffer of duplicative and cumulative testimony.

hearsay that a fact witness cannot testify to). Mr. Maffatone's report does not distinguish between facts known to him personally and facts he has considered from other sources in his role as an expert, Armour had no fair opportunity to take discovery on that point, and Armour would be materially prejudiced at trial if Mr. Maffatone were free to testify either as an expert witness to opinions that Armour had no fair opportunity to rebut or as a fact witness to information beyond his personal knowledge, the extent of which Armour had no fair opportunity to discover.

Although expert witnesses can, in appropriate circumstances, testify in a dual capacity as a fact and lay witness, courts have recognized numerous concerns with such testimony and have used various precautionary measures to avoid jury confusion and prejudice.

As one treatise explains:

> There are at least five concerns with testimony provided by a dual witness that the precautions are designed to address: (1) the dual-witness testimony may cause the jury to infer that the witness's testimony as a fact witness is more credible because he or she is an "expert"; (2) it complicates opposing counsel's cross-examination in that a failure to impeach the witness's expert testimony may improperly bolster his or her credibility as a fact witness; (3) it complicates the trial judge's job to ensure that expert testimony is based on reliable methods reliably applied, thereby deviating from the protections afforded by Rules 702 and 403; (4) it will likely lead to juror confusion; and (5) in a criminal case, the prosecution's dual witness may communicate inadmissible hearsay evidence to the jury and thereby run afoul of the accused's Confrontation rights.
>
> To address these concerns, the courts usually suggest one or more of the following precautions at trial: (1) bifurcate the witness's testimony so that he or she testifies at different times in each capacity so as to make it clear when the witness is testifying to facts as a lay witness and when he or she is offering an opinion as an expert; (2) give a cautionary instruction to the jury before the witness testifies about the dual nature of his or her testimony, explaining the differences between the two; (3) require the proffering party to establish the witness's qualifications and foundation for offering opinion testimony as an expert; (4) grant opposing counsel broad latitude to cross-examine the witness about the underlying bases for his or her testimony in each of the two capacities; (5) closely monitor the witness's examination to ensure that he or she does not begin to conflate the two types of testimony and confuse the jury; (6) require all counsel to ground each question in either fact or expertise to prevent the witness from comingling lay and expert testimony during direct or cross-examination.

Robert E. Larsen, NAVIGATING THE FEDERAL TRIAL § 11.71 (2019 ed.) (citing cases). *See also, e.g., United States v. Freeman*, 498 F.3d 893, 904 (9th Cir. 2007) ("the blurred distinction between Shin's expert and lay testimony may have allowed him to rely upon and convey inadmissible hearsay evidence. Once Shin stopped testifying as an expert and began providing lay testimony, he was no longer allowed ... to testify based on hearsay information, and to couch his observations as generalized 'opinions' rather than as firsthand knowledge.") (citation and quotation omitted).

The precautions that courts usually employ to avoid juror confusion and prejudice when a witness testifies both as a fact witness and an expert, however, will not cure the prejudice to Armour in this case if Mr. Maffatone is permitted to testify to Annaly's experience with CAMRA, for the reasons noted above. SS&C never designated Mr. Maffatone as a fact witness, thereby depriving Armour of the opportunity to depose him in that capacity and assess the extent of his personal knowledge of CAMRA. And SS&C never proffered an opening report from Mr. Maffatone on opinions beyond the scope of what Dr. Kursh will testify to, thereby depriving Armour of the opportunity to submit rebuttal expert testimony to any such opinions.

WHEREFORE, Plaintiff Armour Capital Management Company LP respectfully requests that this Court enter an Order precluding Michael Maffatone from (a) testifying as a fact witness and (b) presenting expert testimony beyond the scope of proper rebuttal to the expert testimony of Dr. Steven Kursh.

Dated: January 5, 2020                                          Respectfully Submitted,

                                                          **HOLLAND & KNIGHT LLP**

                                                          By: */s/ Allison Kernisky*
                                                          Christopher M. Cerrito (ct17183)
                                                          chris.cerrito@hklaw.com
                                                          One Stamford Plaza
                                                          263 Tresser Boulevard, Suite 1400
                                                          Stamford, CT 06901
                                                          Phone: (203) 905-4500

Joseph Mamounas (phv09010)
joseph.mamounas@hklaw.com
Allison Kernisky (phv09011)
allison.kernisky@hklaw.com
Manuel Miranda (phv10405)
manuel.miranda@hklaw.com
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799

Daniel Mateo (phv10323)
daniel.mateo@hklaw.com
Tracy Quinn (phv10430)
tracy.quinn@hklaw.com
Greg Miraglia (*pro hac vice* pending)
2929 Arch Street, Suite 800
Philadelphia, PA 19104
Telephone: (215) 252-9543
Facsimile: (215) 867-6070

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be send by email to all parties by operation of the Court's electronic filing system or by mail to any counsel or self-represented party unable to accept electronic filing, as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: */s/ Allison Kernisky*
Allison Kernisky (phv09011)